Robert H. Tyler, Esq., CA Bar No. 179572
rtyler@tylerbursch.com
Nada N. Higuera, Esq. CA Bar No. 299819
nhiguera@tylerbursch.com
Cody J. Bellmeyer, Esq. CA Bar No. 326530
cbellmeyer@tylerbursch.com
TYLER & BURSCH, LLP
25026 Las Brisas Road
Murrieta, California 92562
Tel:  (951) 600-2733
Fax:  (951) 600-4996

Dean R. Broyles, Esq., CA Bar No. 179535
dbroyles@nclplaw.org
NATIONAL CENTER FOR LAW & POLICY
539 West Grand Avenue
Escondido, California 92025
Tel:  (760) 747-4529
Fax: (760) 747-4505

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **CALVARY CHAPEL SAN JOSE**, a California Non-Profit Corporation; **PASTOR MIKE MCCLURE**, an individual; **SOUTHRIDGE BAPTIST CHURCH OF SAN JOSE CALIFORNIA dba SOUTHRIDGE CHURCH**, a California Non-Profit Corporation; **PASTOR MICAIAH IRMLER**, an individual;<br><br>          Plaintiffs, | Case No.:<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

vs.

**SARA H. CODY, M.D.**, in her official capacity as Santa Clara County Public Health Officer; **MIKE WASSERMAN**, in his official capacity as a Santa Clara County Supervisor; **CINDY CHAVEZ**, in her official capacity as a Santa Clara County Supervisor; **DAVE CORTESE**, in his official capacity as a Santa Clara County Supervisor; **SUSAN ELLENBERG**, in her official capacity as a Santa Clara County Supervisor; and **JOE SIMITIAN**, in his official capacity as a Santa Clara County Supervisor;

Defendants.

## INTRODUCTION

1.      This Action primarily presents facial and as-applied challenges to the most recent Stay-at-Home Order of the Health Officer of the County of Santa Clara dated May 18, 2020 ("County Order") which violates Plaintiffs' constitutional rights by banning indoor religious worship services.

2.      The May 18, 2020 County Order includes updates, effective June 5, 2020. Prior to the updates, the County of Santa Clara ("County") banned all drive-in and in-person worship services from March 16, 2020 to June 5, 2020.

3.      The June 5, 2020 updates allow drive-in worship services with up to 100 cars and outdoor services for 25 people or less. However, indoor church services remain completely banned for an indefinite period of time.

4.      Although Plaintiffs appreciate the County's significant efforts to protect the health and safety of its residents, the current pandemic does not give the County the power to indefinitely restrict any and all constitutional rights.

///

5.      Now more than ever, religion and religious worship is central to thousands of Santa Clara County residents, and corporate worship provides a critical opportunity for members of the community to seek comfort and solace.

6.      According to the Census Bureau, the COVID-19 pandemic has resulted in one third of Americans showing signs of clinical anxiety or depression.[1]

7.      The Census Bureau has confirmed what Plaintiffs have experienced with their congregants: their church members are experiencing a significant increase of anxiety, loneliness, depression, grief, and marital issues since the quarantine started.

8.      The United States is facing the highest unemployment rate since the Great Depression. When combined with social isolation and other stressors, this increases deaths of despair (a term for an alarming rise in early deaths among young and mid-life Americans, from suicide, drug overdoses, and alcoholism).[2]

9.      A recent modeling study from the Well Being Trust, relying, in part, upon unemployment data from the Great Recession of 2008-2009, warns of the likelihood that 75,000 Americans will die from suicide due to the economic conditions. The Well Being Trust further warns that a higher estimate may be more accurate considering the negative impact of isolation and uncertainty during the shutdown. [3]

10.      Children are likewise negatively affected by the Covid-19 crisis. According to another study, post-traumatic stress scores were four times higher in children who had been quarantined than children who were not.[4]

---

[1] See Center for Disease Control and Prevention, National Center for Health Statistics, "Household Pulse Survey," https://www.cdc.gov/nchs/covid19/pulse/mental-health.htm; See also Gaby Galvin,  Coronavirus Survey: One-Third of U.S. Adults Have Symptoms of Depression or Anxiety, US NEWS (May 27, 2020) https://www.usnews.com/news/healthiest-communities/articles/2020-05-27/one-third-of-us-adults-have-signs-of-depression-anxiety-during-pandemic.

[2] See Bethany Ao and Aubrey Whelan, Impact of COVID-19 shutdown — and now police brutality — may cause increase in 'deaths of despair', THE PHILIDELPHIA INQUIRER (June 1, 2020) https://www.inquirer.com/health/coronavirus/coronavirus-covid-19-deaths-of-despair-anxiety-depression-unemployment-20200601.html.

[3] See The COVID Pandemic Could Lead to 75,000 Additional Deaths from Alcohol and Drug Misuse and Suicide, WELL BEING TRUST https://wellbeingtrust.org/areas-of-focus/policy-and-advocacy/reports/projected-deaths-of-despair-during-covid-19/.

[4] See Samantha K. Brooks and Rebecca K. Webster, et.al, The psychological impact of quarantine and how to reduce it: rapid review of the evidence, THE LANCENT (March 14, 2020) https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30460-8/fulltext.

11.     The Kaiser Family Foundation conducted a study from March 25-30, 2020 and found that 45 percent of adults say the pandemic has affected their mental health, and 19 percent say it has had a major impact.[5]

12.     According to CNN, the Disaster Distress Helpline, a federal crisis hotline, saw an increase of 891% in calls for help in March 2020 compared to March 2019.[6]

13.     Reports of persons relapsing and/or overdosing on opioids and other drugs due to the stress of the shutdown are widespread.[7]

14.     Further exacerbating the issue, as of June 1, 2020, the County has experienced numerous acts of violence against first responders and peaceful protesters and millions of dollars in damage to both public and private property amid ongoing protests over the police killing of George Floyd in Minneapolis.[8] This violence, vandalism, and looting is unprecedented, especially in the city of San Jose, where Plaintiffs are located.

15.     The spiritual services of houses of worship are essential to the health and welfare of the people of Santa Clara County, especially during this time of devastation and despair.

16.     A study published on May 6, 2020, in JAMA Psychiatry found "that religious service attendance is associated with a lower risk of death from despair among registered nurses and health care professionals. These results may be important in understanding trends in deaths from despair in the general population."[9]

---

[5] See Joel Achenbach, Coronavirus is harming the mental health of tens of millions of people in U.S., new poll finds, THE WASHINGTON POST (April 2, 2020) https://www.washingtonpost.com/health/coronavirus-is-harming-the-mental-health-of-tens-of-millions-of-people-in-us-new-poll-finds/2020/04/02/565e6744-74ee-11ea-85cb-8670579b863d_story.html.

[6] See Amanda Jackson, A crisis mental-health hotline has seen an 891% spike in calls, CNN (April 10, 2020) https://www.cnn.com/2020/04/10/us/disaster-hotline-call-increase-wellness-trnd/index.html.

[7] See Harmeet Kaur, The opioid epidemic was already a national crisis. Covid-19 could be making things worse, CNN NEWS (May 7, 2020) https://www.cnn.com/2020/05/07/health/opioid-epidemic-covid19-pandemic-trnd/index.html. See Haley Hudson, COVID 19 is causing people to relapse, ADDICTION CENTER (April 30, 2020) https://www.addictioncenter.com/news/2020/04/covid-19-is-causing-people-to-relapse/.

[8] See Matt Kawahara, San Jose imposes curfew in bid to reduce violence amid George Floyd protests, SAN FRANCISCO CHRONICLE (May 31, 2020) https://www.sfchronicle.com/bayarea/article/San-Jose-imposes-curfew-in-bid-to-reduce-violence-15307218.php.

[9] See Religious Service Attendance and Deaths Related to Drugs, Alcohol, and Suicide Among US Health Care Professionals, JAMA PSYCHIATRY (May 6, 2020) https://jamanetwork.com/journals/jamapsychiatry/fullarticle/2765488.

17.   According to a poll conducted by Plaintiff Southridge Baptist Church of San Jose California ("Southridge Church") of 4,000 people who have attended Southridge Church, 79% of people polled stated that attending a religious service would help their mental health and the mental health issues they are struggling with.

18.   Yet it is unlawful in Santa Clara County for even two individuals from different households to worship together inside a church, even if all Center for Disease Control ("CDC") and California guidelines applicable to houses of worship are fully implemented.

19.   The May 18, 2020 County Order allows a whole host of other activities it has subjectively deemed acceptable and relatively safe in a pandemic, including in-store shopping at retail and shopping centers, television, radio, and other media services, real estate offices, hardware stores, farmers' markets, bicycle supply shops, airports, outdoor dining at restaurants, grocery stores, dog groomers, recreational institutions, and summer camps.

20.   In addition, the County Order requires that hosts of "Small Outdoor Ceremonies and Religious Gatherings … maintain a list with the names and contact information of all participants" and "shall assist the County Public Health Department in any case investigation and contact tracing associated with the gathering." No other activities or gatherings are required to maintain such a list.

21.   Defendants, collectively and individually, have no compelling justification for their discriminatory treatment of places of worship, nor have they attempted in any way to tailor their regulations to the least restrictive means necessary to meet any arguable compelling interest.

## PARTIES – PLAINTIFFS

22.   Plaintiff CALVARY CHAPEL SAN JOSE ("CCSJ"), a California non-profit corporation, is a Christian church organized exclusively for religious purposes. CCSJ is located in the city of San Jose, California.

23.   Plaintiff MIKE MCCLURE is a resident of Santa Clara County and the lead pastor of CCSJ.

24.   Plaintiff SOUTHRIDGE CHURCH is a domestic non-profit corporation Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code.  Southridge Church is located in the City of San Jose, California.

25.   Plaintiff MICAIAH IRMLER is a resident of Santa Clara County and the lead pastor of Southridge Church.

## PARTIES – DEFENDANTS

26.   Defendant SARA H. CODY, M.D. is the Public Health Officer for Santa Clara County, California. She is sued in her official capacity only.  She signed the Santa Clara County "Stay at Home" Orders dated March 16, 2020, March 31, 2020, April 29, 2020 and May 18, 2020 (collectively "County Orders").

27.   Defendants MIKE WASSERMAN, CINDY CHAVEZ, DAVE CORTESE, SUSAN ELLENBERG, and JOE SIMITIAN are each sued in their official capacities as a members of the Santa Clara County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't. Code § 25000, *et seq*.; Cal. Health & Safety Code § 101000.

## JURISDICTION AND VENUE

28.   This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. § 1983.

29.   This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

30.   This action also arises under Article I, §§ 2, 3 and 4 of the California Constitution (freedom of speech, right of assembly, and religious free exercise).

31.   This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

32.   This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

33.   Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because all Defendants are situated in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND

**A.   Governor Newsom's Executive Order**

34.   On March 4, 2020, Governor Gavin Newsom declared a State Emergency because of the threat of COVID-19.[10]

35.   On March 19, 2020, Governor Gavin Newsom issued Executive Order N-33-20 ("State Order"), which prohibited all in-person worship services in California for an indefinite period until the threat of the pandemic has subsided as determined exclusively by the Governor.  A true and correct copy of this Executive Order is attached as Exhibit 1.

36.   On May 19, 2020, the United States Department of Justice wrote Governor Newsom a letter explaining that Governor Newsom's State Order was likely unconstitutional based on "unequal treatment of faith communities." A true and correct copy of this Letter is attached as Exhibit 2.

---

[10] See Proclamation of a State of Emergency, EXECUTIVE DEPARTMENT STATE OF CALIFORNIA
https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.

37.    On May 22, 2020, President Donald Trump announced that new CDC guidance will classify houses of worship as "essential," and he called on all governors to allow houses of worship to immediately reopen.[11]

38.    On May 22, 2020, the CDC issued "Interim Guidance for Communities of Faith" that outlines precautions for houses of worship to take when reopening to keep their staff and congregations safe. A true and correct copy of this guidance is attached as Exhibit 3.

39.    On May 22, 2020, Governor Gavin Newsom explained that the State of California has "been very aggressive in trying to put together guidelines that will do justice to people's health and their fundamental need and desire to practice their faith."[12]

40.    On May 25, 2020, Governor Gavin Newsom announced the re-opening of places of worship in California. This was accomplished by the California Department of Public Health issuing guidance for houses of worship to support a safe, clean environment for staff and congregants.  A true and correct copy of these guidelines is attached as Exhibit 4.

**B.    Santa Clara County Orders Prohibiting Non-Essential Gatherings**

41.    The recent County Order dated May 18, 2020 prohibits "all public and private gatherings…except for the limited purposes expressly permitted in this Order." A true and correct copy of the Santa Clara Order is attached as Exhibit 5.

42.    The County had three previous similar orders: the first dated March 16, 2020, the second dated March 31, 2020, and the third dated April 29, 2020. True and correct copies of these orders are attached as Exhibits 6, 7, and 8, respectively.

43.    By these orders, the County continued to ban drive-in services even after the State declared such services permissible.  On April 13, 2020, after a civil rights lawsuit

---

[11]Marisa Shultz, Trump announces that houses of worship are essential calls on governors to open them up, FOX NEWS (May 22, 2020) https://www.foxnews.com/politics/trump-announces-that-houses-of-worship-are-essential-calls-on-governors-to-open-them-up.
[12] Newsom Promises Guidelines For Reopening Houses Of Worship By Monday Despite Trump Order, CBS SF BAY AREA (May 22, 2020) https://sanfrancisco.cbslocal.com/2020/05/22/newsom-guidelines-religious-gatherings-houses-worship-trump-order/.

was filed against the State, California Attorney General Xavier Becerra explained in opposition papers to a Temporary Restraining Order that drive-in religious services were permitted under Governor Newsom's Executive Stay-At-Home Order with no limit placed on the number of cars permitted (*Gish v. Newsom*, 5:20-cv-00755-JGB-KK, Document 13 (E.D. Cal. April 13, 2020) ("Indeed, drive-in worship services are permitted under the existing Executive Order.").

44.     The County updated its May 18, 2020 County Order on June 5, 2020. The County published an Executive Summary of the June 5, 2020 updates, attached hereto as Exhibit 9; a chart listing places to be open under the new updates, attached hereto as Exhibit 10;  Appendix C-1 Additional Businesses Allowed to Operate Effective June 5, 2020, attached hereto as Exhibit 11;  and Appendix C-2: Allowed Additional Activities Effective June 5, 2020, attached hereto as Exhibit 12.

45.     As of June 5, 2020, the County Order allows individuals the unlimited ability to leave their residence for in-store shopping at retail and shopping centers, television, radio, and other media services, real estate offices, farmers' markets, bicycle supply shops, airports, outdoor dining, grocery stores, recreational institutions, summer camps, and summer school.

46.     The County continues to ban indoor religious service, even after the State permitted houses of worship to start meeting on May 25, 2020.  The County's Frequently Asked Questions Page[13] asks the following: "Can I leave home to go to my church, synagogue, or mosque?" The answer states the following: "No. For your safety as well as the safety of your fellow worshippers, we need to help each other fight the spread of COVID-19 by staying at home. Places of worship may offer remote access to services, such as by email, video streaming, or teleconference." A true and correct copy of the question and answer is attached as Exhibit 13.

47.      "Outdoor museums, historical sites, and gardens" are allowed to open without a limitation on the number of people. Exhibit 11.

---

[13] This page can also be found online at https://www.sccgov.org/sites/covid19/Pages/public-health-orders.aspx.

48.     Restaurants are now open for outdoor dining and are not subject to the restriction of 25 or fewer persons the County applies to outdoor religious services. Restaurants are permitted to have unlimited outdoor seating, as long a social distancing protocols are followed. Exhibit 11.

49.     Summer camps and summer schools are now open and are not subject to the maximum restriction of 25 or fewer persons the County applies to outdoor religious services nor are they required to meet outdoors only.  The only numerical requirement is that children are to meet in stable groups of less than 12 people. Exhibit 11.

50.      In-store retail is now open and is not subject to the maximum restriction of 25 or fewer persons the County applies to outdoor religious services.  The only numerical requirement is that retail is limited to one customer for each 200 square feet of floor space. A ten thousand square foot store, for example, could have as many as 50 customers at a time.  Exhibit 10.

51.     In addition, the County Order requires the hosts of "Small Outdoor Ceremonies and Religious Gatherings" to "maintain a list with the names and contact information of all participants" and "assist the County Public Health Department in any case investigation and contact tracing associated with the gathering." Exhibit 12. No other activities or gatherings are required to maintain such a list.

52.     The County has publicly acknowledged that the right to attend protests regarding racial injustice is a "fundamental right that is critical to the health of our democracy," yet it has not acknowledged the fundamental right to attend worship services. A true and correct copy of two Facebook posts by the Santa Clara Department of Public Health is attached as Exhibit 14.

53.     The County Order states, "Failure to comply with any of the provisions of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both."  Thus, violation of the order risks criminal culpability.  Exhibit 5.

54.     As of June 5, 2020, the County had a cumulative total of 2892 COVID-19 cases and 144 deaths; long-term care facilities accounted for 61 of the 144 deaths.[14]

55.     Approximately two million people live in Santa Clara County.[15]

56.     The County's March 16, 2020 Order explains that "it is essential to slow virus transmission as much as possible to prevent the health care system from being overwhelmed... By reducing the spread of the COVID-19 virus, this Order helps preserve critical and limited healthcare capacity in the County." Exhibit 6.

57.     As of June 5, 2020, the County had a total of 165 unoccupied ICU beds, with only 14 beds occupied by ("confirmed and suspected") COVID-19 patients. The County had 840 available acute hospital beds with only 40 beds occupied by COVID-19 patients. The County had an additional 1231 surge beds with COVID-19 patients occupying none of the surge beds.[16]

## C.     The Religious Beliefs and Practices of Calvary Chapel San Jose

58.     CCSJ is a domestic nonprofit corporation organized under the laws of the State of California.

59.     Presently, CCSJ holds services at 1175 Hillsdale Avenue, San Jose, California.

60.     Prior to COVID-19, CCSJ held one service on Sunday mornings and one service on Wednesday evenings.  The services typically last less than two hours.

61.     CCSJ has an average of 600 people who attend its Sunday morning services. CCSJ's building is 18,000 square feet and the capacity is 1,800 people.

62.     CCSJ has a sincerely and deeply held religious belief that it is essential for them as Christians to assemble and regularly gather in person for the teaching of God's Word, prayer, worship, baptism, communion, and fellowship. This is based on scriptures

---

[14] See Coronavirus (COVID-19) Data Dashboard, Santa Clara County Emergency Operations Center (last visited June 5, 2020) https://www.sccgov.org/sites/covid19/Pages/dashboard.aspx.
[15] See Quick Facts Santa Clara County, United States Census Bureau https://www.census.gov/quickfacts/santaclaracountycalifornia.
[16] See Coronavirus (COVID-19) Data Dashboard, Santa Clara County Emergency Operations Center (last visited June 5, 2020) https://www.sccgov.org/sites/covid19/Pages/dashboard.aspx.

from the Bible, including Hebrews 10:25, Acts 2:40-47, and Acts 5:40-42.   These activities are primarily fulfilled in the gathering of the Church body for worship services at the same location on Sunday mornings.

63.    Based on the Bible, CCSJ believes that we are eternal beings in this temporary world, and that God's Word (the Bible) is even more essential than food based on the following scripture in Matthew 4:4: "[Jesus] answered, 'It is written, "Man shall not live by bread alone, but by every word that comes from the mouth of God." Indeed, the joyful duty to assemble together, in person, for worship services is a central tenet of the Christian faith, both believed and practiced by the Church according to the Bible, a tenet that is especially important to maintain during times of turmoil and trouble in the world: "And let us consider how to stir up one another to love and good works, not neglecting to meet together, as is the habit of some, but encouraging one another, and all the more as you see the Day drawing near." (Hebrews 10:24–25.)

64.    CCSJ also believes that the Bible requires the church to keep one another's confidence and trust, to be discreet, and to refrain from sharing private information about others. (Proverbs 16:28; Proverbs 20:19; Proverbs 25:9; 1 Timothy 5:13; and 2 Timothy 2:16.)

65.    CCSJ's congregation is multi-racial and represents a cross-section of society, from rich to poor and of all ages. Its congregation also includes members and visitors running the gamut of essential workers. These essential workers and service providers receive spiritual support, comfort, guidance, and shelter from the ministry of the CCSJ's personnel and other members. This also includes members that do not have the technological ability or equipment necessary to watch church services online.

66.    Many in CCSJ's congregation are transplants from other states and countries who came to San Jose for economic opportunities, leaving behind family and friends.

67.    The mandated closure of CCSJ is having significant and detrimental secondary effects on the citizens of San Jose. It is preventing the numerous ministries and

social services provided by churches to the poor, unemployed, and distressed. The humanitarian and spiritual support provided by CCSJ's ministries are innumerable.

68.    These include in-person student and youth ministries where youth are provided with emotional and spiritual support, and a safe place to receive mentorship and counseling.

69.    CCSJ has an extensive in-person pastoral counseling ministry for its adult congregants as well, including grief counseling, crisis counseling, prayer, and other mental health support for those struggling with anxiety, depression, stress, marital issues, and loneliness.

70.    CCSJ also has approximately 20 community groups that meet together on Wednesdays for Bible studies, counseling, prayer, and emotional support to one another.

71.    CCSJ has a ministry specific to the Spanish speaking community whereby it provides innumerable material, emotional, and spiritual support.

72.    Every 2-3 months, CCSJ hosts homeless outreach events where they provide bikes, hair-cuts, dentistry, food, and other material items as well as spiritual, mental, and emotional support.

73.    Since the County's initial March 16, 2020 Order, CCSJ has not been able to engage with the community and its congregants to provide necessary social services and humanitarian and spiritual support. Although it continues to try to do so to the extent possible, it is extremely limited by the County's Order.

74.    CCSJ has seen an over fifty percent increase in mental and emotional distress within its church members since COVID-19 pandemic and the March 16, 2020 Order.

**D.    The Religious Beliefs of Southridge Church**

75.    Southridge Church was incorporated as a domestic nonprofit corporation organized under the laws of the State of California in October of 2013.

76.     Presently, Southridge holds services in the auditorium at Oak Grove High School, located at 285 Blossom Hill Road, San Jose, California.  Southridge does not own property.

77.     Prior to COVID-19, Southridge routinely held three Sunday services at 9:00am, 10:30am, and 5:00pm.  Approximately 150 people attend each service. The capacity of the auditorium is 344 people.

78.     Southridge's mission is to reach the San Jose community and, through demonstration of their devotion to God, witness to the local community pursuant to their religious tenets. (Matthew 28:18-20.)    Additionally, Southridge aims to practice exemplification and evangelism as commanded by Christ through the gospel. (Mark 15:15; 1 Corinthians 12:12, 15:58; Ephesians 1:22-23.)

79.     Southridge has a sincerely and deeply held religious belief that it is essential for them as Christians to assemble and regularly gather in-person for the teaching of God's Word, prayer, worship, baptism, communion and fellowship. This is based on scriptures from the Bible, including Hebrews 10:25, Acts 2:40-47, and Acts 5:40-42. These activities are primarily fulfilled in the gathering of the Church body for worship services.

80.     Based on the Bible, Southridge believes that we are eternal beings in this temporary world, and that God's Word (the Bible) is even more essential than food based on the following scripture in Matthew 4:4: "[Jesus] answered, 'It is written, "Man shall not live by bread alone, but by every word that comes from the mouth of God."'"  Indeed, the joyful duty to assemble together, in person, for worship services is a central tenet of the Christian faith, both believed and practiced by the Church according to the Bible, a tenet that is especially important to maintain during times of turmoil and trouble in the world: "And let us consider how to stir up one another to love and good works, not neglecting to meet together, as is the habit of some, but encouraging one another, and all the more as you see the Day drawing near." Hebrews 10:24–25.

81.     Southridge also believes that the Bible requires the church to keep one another's confidence and trust, to be discreet, and to refrain from sharing private information about others. (Proverbs 16:28; Proverbs 20:19; Proverbs 25:9; 1 Timothy 5:13; and 2 Timothy 2:16.)

82.     Southridge's congregation is multi-racial and represents a cross-section of society, from rich to poor and of all ages. The Church's congregation also includes members and visitors running the gamut of essential workers. These essential workers and service providers receive spiritual support, comfort, guidance, and shelter from the ministry of the Church's personnel and its members.

83.     Many in Southridge's congregation are transplants from other states and countries who came to San Jose for economic opportunities, leaving behind family and friends.

84.     The mandated closure of Southridge is having a significant and detrimental secondary effects on the citizens of San Jose. It is preventing the numerous ministries and social services provided by churches to the poor, unemployed and distressed. The humanitarian and spiritual support provided by Southridge's ministries are innumerable.

85.     These include in-person student and youth ministries where youth are provided with emotional and spiritual support, and a safe place to receive mentorship and counseling.

86.     Every month prior to COVID-19, the Southridge congregation hosts a homeless outreach and supplies homeless with blankets, socks, toiletries, food, in addition to prayer, counseling, and spiritual support.

87.     Southridge has an extensive in-person counseling ministry for its adult congregants as well, including grief counseling, crisis counseling, prayer, and other mental health support for those struggling with anxiety, depression, stress, marital issues, and loneliness.

88.     Southridge also provides financial support to its congregants in need by allocating a percentage of donations it receives to give back to its congregants.

89.     Since the County's initial March 16, 2020 Order, Southridge has not been able to engage with the community and its congregants to provide necessary social services and humanitarian and spiritual support. Although it continues to try to do so to the extent possible, it is extremely limited by the County's Order.

90.     Southridge has seen a fifty percent increase in mental and emotional issues in its community since COVID-19 pandemic and the March 16, 2020 Order.

91.     In order to strategize about how to help its community, Southridge conducted a survey to 4,000 people who have attended its church. According to the survey, 79% of the 4,000 stated that attending church in-person would help their mental and emotional health.

## FIRST CAUSE OF ACTION

## THE ORDERS VIOLATE PLAINTIFFS' RIGHT TO FREE EXERCISE OF RELIGION UNDER THE FIRST AMENDMENT TO THE U.S. CONSTITUTION

### (By all Plaintiffs against all Defendants)

92.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

93.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

94.     Southridge and CCSJ have sincerely held religious beliefs that the Bible is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

95.     Southridge and CCSJ have sincerely held religious beliefs, rooted in the Bible, that followers of Jesus Christ are not to forsake the assembling of themselves together.

96.     The County Orders, on their face and as applied, prohibit all faith-based assemblies and gatherings in Plaintiffs' respective places of worship, including leased

buildings or parking lots, even if Plaintiffs follow CDC and state guidelines for houses of worship, which is a violation of Plaintiffs' right to the free exercise of religion.

97.     The County Orders mandate that Plaintiffs' record "names and contact information" of all people that attend religious services and use that information to "assist the County Public Health Department in any case investigation and contact tracing" associated with the religious gatherings, is a violation of Plaintiffs' right to the free exercise of religion.

98.     The County Orders, on their face and as applied, target Plaintiffs' sincerely held religious beliefs and practices.

99.     The County Orders, on their face and as applied, impermissibly burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of its sincerely held religious beliefs or the mandates in Defendants' County Orders.

100.    The County Orders, on their face and as applied, place Plaintiffs in an irresolvable conflict between compliance with the orders and adherence to their sincerely held religious beliefs.

101.    The County Orders, on their face and as applied, put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental teachings and tenets of their religious texts including those tenets requiring assembly.

102.    The County Orders, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Plaintiffs.

103.    The County Orders, on their face and as applied, constitute a substantial burden on Plaintiffs' sincerely held religious beliefs as they are prevented from practicing the teachings of their religious texts.

104.    The County's limitation of religious worship services largely to "email, video streaming, or teleconference to video streaming" substantially burdens houses of

worship because they have to rely on internet based platforms that can refuse to provide services to the houses of worship for any reason, including discriminatory reasons.[17]

105.   Defendants lack a compelling, legitimate, or rational interest in the County Orders' application of differential standards for churches and faith-based gatherings than those applicable to similar gatherings and secular businesses.

106.   Even if the County Orders' restrictions on faith-based gatherings were supported by a compelling interest, which they are not, they do not employ the least restrictive means to accomplish the government's purported interest and are not narrowly tailored to said interest.

107.   The County Orders fail to accommodate Plaintiffs' sincerely held religious beliefs.  Instead, the County orders intentionally aim to frustrate Plaintiffs' practices.

108.   The County Orders specifically target Plaintiffs' sincerely held religious beliefs, and the Orders set up a system of individualized exemptions that permit certain other similarly situated businesses or services to continue operations under certain guidelines while prohibiting faith-based gatherings, such as Plaintiffs, from operating under similar guidelines.

109.   The County Orders, on their face and as applied, constitute a religious gerrymander. *Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520, 534, (1993*).*

110.   The County Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs' immediate and irreparable harm, and actual and undue hardship.

---

[17] *See Riggs v. MySpace, Inc.*, 444 F. App'x 986 (9th Cir. 2011) (holding that the federal Communications Decency Act provides blanket immunity for an interactive computer service that decides to delete user accounts); *See also United States Executive Order on Preventing Censorship*, May 28, 2020 (explaining the harm of blanket immunity for interactive computer services that "wield immense, if not unprecedented, power to shape the interpretation of public events; to censor, delete, or disappear information; and to control what people see or do not see"), https://www.whitehouse.gov/presidential-actions/executive-order-preventing-online-censorship/.

111.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

112.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## SECOND CAUSE OF ACTION

## THE ORDERS VIOLATE PLAINTIFFS' RIGHT TO FREE EXERCISE AND ENJOYMENT OF RELIGION UNDER ARTICLE I, §4 OF THE CALIFORNIA CONSTITUTION

### (By all Plaintiffs against all Defendants)

113.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

114.   Article I, § 4 of the Constitution of the State of California states, "Free exercise and enjoyment of religion without discrimination or preference are guaranteed."

115.   "[T]he religion clauses of the California Constitution are read more broadly than their counterparts in the federal Constitution." *Carpenter v. City and County of San Francisco*, 93 F.3d 627, 629 (1996).

116.   Southridge and CCSJ have sincerely held religious beliefs that the Bible is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

117.   Southridge and CCSJ have sincerely held religious beliefs, rooted in the Bible, that followers of Jesus Christ are not to forsake the assembling of themselves together.

118.   The County Orders, on their face and as applied, prohibit all faith-based assemblies and gatherings in Plaintiffs' respective places of worship, including leased buildings or parking lots, even if Plaintiffs follow CDC and state guidelines for houses of worship, which is a violation of Plaintiffs' right to the free exercise of religion.

119.   The County Orders also mandate that Plaintiffs' record "names and contact information" of all people that attend religious services and use that information to "assist

the County Public Health Department in any case investigation and contact tracing" associated with the religious gatherings, which is a violation of Plaintiffs' right to the free exercise of religion.

120. The County Orders, on their face and as applied, target Plaintiffs' sincerely held religious beliefs and practices.

121. The County Orders, on their face and as applied, impermissibly burden Plaintiffs' sincerely held religious beliefs, compel Plaintiffs to either change those beliefs or to act in contradiction to them, and force Plaintiffs to choose between the teachings and requirements of its sincerely held religious beliefs or the mandates in Defendants' County Orders.

122. The County Orders, on their face and as applied, place Plaintiffs in an irresolvable conflict between compliance with the orders and adherence to their sincerely held religious beliefs.

123. The County Orders, on their face and as applied, put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs by ignoring the fundamental teachings and tenets of their religious text including those tenets concerning assembly.

124. The County Orders, on their face and as applied, are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Plaintiffs.

125. The County Orders, on their face and as applied, constitute a substantial burden on Plaintiffs' sincerely held religious beliefs as they are prevented from practicing the teachings of their religious texts.

126. The County's limitation of religious worship services largely to "email, video streaming, or teleconference to video streaming" substantially burdens houses of worship because they have to rely on internet based platforms that can refuse to provide services to the houses of worship for any reason, including discriminatory reasons.[18]

---

[18] *See Riggs v. MySpace, Inc.*, 444 F. App'x 986 (9th Cir. 2011) (holding that the federal Communications Decency Act provides blanket immunity for an interactive computer service that decides to delete user

127.   Defendants lack a compelling, legitimate, or rational interest in the County Orders' application of differential standards for churches and faith-based gatherings than those applicable to similar gatherings and secular businesses.

128.   Even if the County Orders' restriction on faith-based gatherings were supported by a compelling interest, which they are not, they do not employ the least restrictive means to accomplish the government's purported interest and are not narrowly tailored to said interest.

129.   The County Orders fail to accommodate Plaintiffs' sincerely held religious beliefs.  Instead, the County orders intentionally aim to frustrate Plaintiffs' practices.

130.   The County Orders, specifically target Plaintiffs' sincerely held religious beliefs, and the Orders set up a system of individualized exemptions that permit certain other similarly situated businesses or services to continue operations under certain guidelines while prohibiting faith-based gatherings, such as Plaintiffs', from operating under similar guidelines.

131.   The County Orders, on their face and as applied, constitute a religious gerrymander. *Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520, 534, (1993*)*.

132.   The County Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs' immediate and irreparable harm, and actual and undue hardship.

133.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

134.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

---

accounts); *See also United States Executive Order on Preventing Censorship*, May 28, 2020 (explaining the harm of blanket immunity for interactive computer services that "wield immense, if not unprecedented, power to shape the interpretation of public events; to censor, delete, or disappear information; and to control what people see or do not see"), https://www.whitehouse.gov/presidential-actions/executive-order-preventing-online-censorship/.

1

## THIRD CAUSE OF ACTION

2

## THE ORDERS VIOLATE THE ESABLISHMENT CLAUSE OF THE FIRST

3

## AMENDMENT OF THE U.S. CONSTITUTION

4

### (By all Plaintiffs against all Defendants)

5

135.    Plaintiffs incorporate by reference the allegations in the preceding

6

paragraphs, as if fully set forth herein.

7

136.    The Orders and Defendants' enforcement thereof violate the First

8

Amendment, both facially and as-applied to Plaintiffs. The Establishment Clause of the

9

"First Amendment mandates governmental neutrality between religion and religion, and

10

between religion and nonreligion." *McCreary Cty., Ky. v. Am. Civil Liberties Union of*

11

*Ky.*, 545 U.S. 844, 860 (2005) (*citing Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)).

12

The Establishment Clause applies to the states through the Due Process Clause of the

13

Fourteenth Amendment. *Everson v. Board of Ed. of Ewing*, 330 U.S. 1 (1947).

14

137.    The Orders, as stated, advance no secular purpose. Defendants have made

15

numerous exceptions to their Orders, permitting similarly situated secular activities but

16

not indoor religious worship and limiting drive-in and outdoor services. Defendants have

17

largely limited worship services to "email, video streaming, or teleconference."

18

138.    The County's limitation of religious worship services largely to "email,

19

video streaming, or teleconference to video streaming" substantially burdens houses of

20

worship because they have to rely on internet based platforms that can refuse to provide

21

services to the houses of worship for any reason, including discriminatory reasons.[19]

22

139.    The Orders and Defendants' *ad hoc* enforcement of them have the primary

23

effect of inhibiting religious activity.

24

---

25

[19] *See Riggs v. MySpace, Inc.*, 444 F. App'x 986 (9th Cir. 2011) (holding that the federal Communications

26

Decency Act provides blanket immunity for an interactive computer service that decides to delete user accounts); *See also United States Executive Order on Preventing Censorship*, May 28, 2020 (explaining the

27

harm of blanket immunity for interactive computer services that "wield immense, if not unprecedented, power to shape the interpretation of public events; to censor, delete, or disappear information; and to

28

control what people see or do not see"), https://www.whitehouse.gov/presidential-actions/executive-order-preventing-online-censorship/.

140.   Defendants have failed to avoid excessive government entanglement with religion. Defendants permit only some forms of religious observance, such as livestreamed, at-home religious activities.

141.   There is no historical precedent in the United States for inhibiting religious practices on terms more restrictive than those imposed on identical secular activities, as Defendants do now.

142.   The County Orders, on their face and as applied, have caused, are causing, and will continue to cause Plaintiffs' immediate and irreparable harm, and actual and undue hardship.

143.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

144.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## FOURTH CAUSE OF ACTION

### THE ORDERS VIOLATE PLAINTIFFS' RIGHT TO PRIVACY UNDER ARTICLE I, §1 OF THE CALIFORNIA CONSTITUTION

### (By all Plaintiffs against all Defendants)

145.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

146.   Article I § 1 of the California Constitution expressly protects privacy: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and **privacy**."

147.   The Orders and Defendants' enforcement thereof implicate Plaintiffs' legally protected privacy interest because the Orders mandate that Plaintiffs record "names and contact information" of all people that attend religious services and use that information to "assist the County Public Health Department in any case investigation and contact tracing" associated with the religious gatherings.  Failure to do so constitutes a

"threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both."

148.   When the government invades the privacy protected by California's Constitution, it must show that the need for this intrusion outweighs the individual's privacy interests and that less intrusive measures would be ineffective. No governmental interest justifies this broad intrusion and burden caused by Defendants' mandate that churches record the names and contact information of anyone who attends church for government use.

149.   The County Orders have caused, are causing, and will continue to cause Plaintiffs' immediate and irreparable harm, and actual and undue hardship.

150.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional rights.

151.   WHEREFORE, Plaintiffs respectfully pray for the relief against Defendants as hereinafter set forth in the prayer for relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

A.   That this Court issue a Preliminary Injunction enjoining Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in active concert or participation with them, from enforcing the County Orders so that:

i.   Defendants will not apply the County Orders in any manner as to infringe Plaintiffs' constitutional and statutory rights by discriminating against their right to assembly, speech, and free exercise of religion.

ii.   Defendants will apply the County Orders in a manner that treats Plaintiffs' faith-based gathering on equal terms and in an equal manner with that afforded other non-faith-based gatherings;

iii.   Defendants will permit Plaintiffs to continue to meet so long as Plaintiffs comply with the CDC and state guidelines for houses of worship; and

iv.     Defendants will permit Plaintiffs the opportunity to comport their behavior to any further limitations or restrictions that Defendants may impose in any future modification, revision, or amendment of the County Orders or similar directive, instruction, ordinance, or other legally operative mechanisms.

B.     That this Court issue a Permanent Injunction enjoining Defendants, Defendants' officers, agents, employees, attorneys, and all other persons acting in active concert or participation with them, from enforcing the County Orders so that:

i.     Defendants will not apply the County Orders in any manner as to infringe Plaintiffs' constitutional and statutory rights by discriminating against their free exercise of religion as outlined herein;

ii.     Defendants will apply the County Orders in a manner that treats Plaintiffs' faith-based gatherings on equal terms and in an equal manner with that afforded other non-faith-based gatherings;

iii.     Defendants will permit faith-based gatherings to continue to meet so long as they comply with the CDC and state guidelines for houses of worship; and

iv.     Defendants will permit Plaintiffs the opportunity to comport their behavior to any further limitations or restrictions that Defendants may impose in any future modification, revision, or amendment of the County Orders or similar directive, instruction, ordinance, or other legally operative mechanisms.

C.     That this Court render a Declaratory Judgment declaring that the County Orders both on their face and as applied by Defendants are unconstitutional under the United States Constitution and California Constitution, and declaring that:

i.     Defendants have violated Plaintiffs' right to free exercise of religion by impermissibly prohibiting faith-based gatherings, substantially burdening their sincerely held religious beliefs and applying criteria that are neither neutral nor generally applicable to religious and non-religious gatherings;

ii.    Defendants have violated the Establishment Clause by impermissibly demonstrating hostility towards faith- based gatherings and by impermissibly showing favoritism to certain non-religious gatherings.

D.    That this Court award Plaintiffs nominal damages for the violation of Plaintiffs' constitutional rights.

E.    That this Court adjudge, decree, and declare the rights and other legal relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

F.    That this Court retain jurisdiction over the matter for the purposes of enforcing this Court's order.

G.    That this Court declare Plaintiffs are a prevailing party and award Plaintiffs the reasonable costs and expenses of this action, including reasonably attorney's fees in accordance with 42 U.S.C. §1988.

H.    That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted,

TYLER & BURSCH, LLP

Dated:  June 9, 2020

/s/ Robert H. Tyler, Esq.
Robert H. Tyler
Attorney for Plaintiffs


NATIONAL CENTER FOR LAW &
POLICY

Dated:  June 9, 2020

/s/ Dean R. Broyles, Esq.
Dean R. Broyles
Attorneys for Plaintiffs

1

## VERIFICATION OF COMPLAINT

2

3      On behalf of Southridge Church and as an individual, I, Pastor Micaiah Irmler,
4  declare as follows:

5      1.    I am a party to this action.

6      2.    I have read the foregoing complaint and know of the contents thereof.

7      3.    Based on my own knowledge, the contents of the foregoing complaint are
8  true and correct.

9

10      I declare under penalty of perjury under the laws of the United States of America
11  that the foregoing is true and correct.

12

13      Executed on June 9, 2020, at  San Jose          , California.

14

15

16                              Pastor Micaiah Irmler

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **VERIFICATION OF COMPLAINT**

On behalf of Calvary Chapel San Jose and as an individual, I, Pastor Mike McClure, declare as follows:

1.   I am a party to this action.

2.   I have read the foregoing complaint and know of the contents thereof.

3.   Based on my own knowledge, the contents of the foregoing complaint are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 9, 2020 at ___San Jose_____, California.

_____

Pastor Mike McClure