1   JAMES R. WILLIAMS, County Counsel (S.B. #271253)
    MELISSA R. KINIYALOCTS, Lead Deputy County Counsel (S.B. #215814)
2   ROBIN M. WALL, Deputy County Counsel (S.B. #235690)
    OFFICE OF THE COUNTY COUNSEL
3   70 West Hedding Street, East Wing, 9th Floor
    San José, California 95110-1770
4   Telephone: (408) 299-5900
    Facsimile: (408) 292-7240
5
    Attorneys for County Defendants
6   SARAH H. CODY, M.D., MIKE WASSERMAN,
    CINDY CHAVEZ, DAVE CORTESE,
7   SUSAN ELLENBERG, and JOE SIMITIAN

8

9                  UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                      (San José Division)

11

12   CALVARY CHAPEL SAN JOSE, a California        Case No. 20-cv-03794BLF
     Non-Profit Corporation; PASTOR MIKE
13   MCCLURE, an individual; SOUTHRIDGE           **DEFENDANTS' CORRECTED NOTICE**
     BAPTIST CHURCH OF SAN JOSÉ                   **OF MOTION AND MOTION;**
14   CALIFORNIA dba SOUTHRIDGE CHURCH,            **MEMORANDUM OF POINTS AND**
     a California Non-Profit Corporation; PASTOR  **AUTHORITIES IN SUPPORT OF**
15   MICAIAH IRMLER, an individual,               **DEFENDANTS' MOTION TO DISMISS**

16                  Plaintiffs,                   Date:      Nov. 5, 2020
                                                  Time:      9:00 a.m.
17   v.                                           Crtrm.:    3, 5th Floor
                                                             San José District Courthouse
18   SARA H. CODY, M.D., in her official capacity            280 South 1st Street
     as Santa Clara County Public Health Officer;            San José, California
19   MIKE WASSERMAN, in his official capacity
     as a Santa Clara County Supervisor; CINDY   Judge:     Hon. Beth Labson Freeman
20   CHAVEZ, in her official capacity as a Santa
     Clara County Supervisor; DAVE CORTESE, in
21   his official capacity as a Santa Clara County
     Supervisor; SUSAN ELLENBERG, in her
22   official capacity as a Santa Clara County
     Supervisor; and JOE SIMITIAN, in his official
23   capacity as a Santa Clara County Supervisor,

24                  Defendants.

25

26

27

28

                                              1

## CORRECTED NOTICE OF MOTION AND MOTION

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on **November 5, 2020**, at **9:00 a.m.**, or as soon thereafter as the matter may be heard in the U.S. District Courthouse, 280 South 1st Street, San José, California, the Honorable Beth Labson Freeman presiding, Defendants will appear and move the Court for an order dismissing (1) Plaintiffs' claims for violation of their rights under the First Amendment to the U.S. Constitution and rights to free exercise, enjoyment of religion, and privacy under the California Constitution (First through Fourth Causes of Action); and (2) Defendants Mike Wasserman, Cindy Chavez, Dave Cortese, Susan Ellenberg, and Joe Simitian from the action pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants' motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and other papers on file in this action, and on such oral argument as the Court may permit.

## RELIEF SOUGHT

Defendants move to dismiss (1) Plaintiffs' claims for alleged violations of the First Amendment to the U.S. Constitution and rights to free exercise, enjoyment of religion, and privacy under the California Constitution, and (2) the five County Supervisors as Defendants in the action.


Dated:  July 20, 2020                                      Respectfully submitted,

                                                          JAMES R. WILLIAMS
                                                          County Counsel


                                          By:    */s/ Robin M. Wall*_____
                                                          ROBIN M. WALL
                                                          Deputy County Counsel

                                                          Attorneys for County Defendants

1

2

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................................ 1

II.  BACKGROUND .............................................................................................. 2

    A.   THE PARTIES............................................................................................ 2

    B.   FACTUAL BACKGROUND................................................................... 3

        1.   The COVID-19 Pandemic and The County's Public Health Orders.......... 3

        2.   The Superseding State and County Public Health Orders. ....................... 8

        3.   Plaintiffs' Complaint and Repeated Violations of the Public Health Orders.................................................................................................... 9

    C.   PROCEDURAL BACKGROUND ..........................................................10

III. STANDARDS ..................................................................................................10

    A.   Rule 12(b)(1)............................................................................................10

    B.   Rule 12(b)(6)............................................................................................11

IV.  ARGUMENT ...................................................................................................11

    A.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION.........................................................................................11

    B.   THE PUBLIC HEALTH ORDERS DO NOT VIOLATE PLAINTIFFS' RIGHT TO FREE EXERCISE AND ENJOYMENT OF RELIGION................13

        1.   The County's Public Health Orders Satisfy the Deferential Standard for Emergency Directives. .........................................................................13

        2.   The Court Should Dismiss Plaintiffs' First Claim Under the First Amendment to the United States Constitution and Their Second Claim Under Article I, § 4 of the California Constitution....................................16

    C.   THE PUBLIC HEALTH ORDERS DO NOT VIOLATE THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT ......................20

    D.   PLAINTIFFS' FOURTH CLAIM FOR ALLEGED VIOLATION OF THEIR RIGHT TO PRIVACY SHOULD BE DISMISSED ...........................................22

        1.   Plaintiffs Have Failed to Plead Standing to Assert a Privacy Claim.........22

        2.   Plaintiffs Have Failed to State a Privacy Claim. ......................................23

V.   CONCLUSION ................................................................................................25

**<u>TABLE OF AUTHORITIES</u>**

Page

**Cases**

*Access Fund v. U.S. Dep't of Agric,*
499 F.3d 1036 (9th Cir. 2007) .................................................. 21

*American Family Ass'n, Inc. v. City & Cnty. of San Francisco,*
277 F.3d 1114 (9th Cir. 2002) ................................................. 17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................. 11

*Association of Med. Colls. v. United States,*
217 F.3d 770 (9th Cir. 2000) ................................................... 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................. 11

*Brown v. Woodland Joint Unified Sch. Dist.,*
27 F.3d 1373 (9th Cir. 1994) ................................................... 21

*Calvary Chapel Lone Mountain v. Sisolak,*
No. 2:20-cv-00907, 2020 WL 3108716 (D. Nev. June 11, 2020) .................................. 18, 19, 20

*Calvary Chapel of Bangor v. Mills,*
No. 1:20-CV-00156, 2020 WL 2310913 (D. Me. May 9, 2020)................................. 14

*Campbell–Ewald Co. v. Gomez,*
136 S.Ct. 663 (2016) ................................................................ 11

*Carmichael v. Ige,*
No. 20-00273, 2020 WL 3630738 (D. Haw. July 2, 2020) ........................................ 14

*Cassell v. Snyders,*
No. 20 C 50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020) ................................... 14

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
508 U.S. 520 (1993) ...............................................17, 18, 19

*Cross Culture Christian Center v. Newsom,*
No. 2:20-cv-00832, 2020 WL 2121111 (E.D. Cal. May 5, 2020)..............................13, 14

*Culinary Workers Union, Local 226 v. Del Papa,*
200 F.3d 614 (9th Cir. 1999) ................................................... 11

*Davis v. Berke,*
No. 1:20-CV-98, 2020 WL 1970712 (E.D. Tenn. Apr. 17, 2020)................................ 14

*Elim Romanian Pentecostal Church v. Pritzker,*
962 F.3d 341 (7th Cir. 2020) ...............................................14, 19

ii

*Gish v. Newsom,*
    No. 5:20-cv-00755, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020)........................................ 14

*In re Abbott,*
    954 F.3d 772 (5th Cir. 2020) ...........................................................................................13, 15

*In re Rutledge,*
    956 F.3d 1018 (8th Cir. 2020) ................................................................................................ 15

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905).......................................................................................... 13, 14, 15, 16

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
    624 F.3d 1083 (9th Cir. 2010) ................................................................................................ 22

*Legacy Church, Inc. v. Kunkel,*
    No. CIV 20-0327, 2020 WL 1905586 (D.N.M. Apr. 17, 2020)................................................ 14

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971)....................................................................................................20, 21

*Lighthouse Fellowship Church v. Northam,*
    No. 2:20-cv-204, 2020 WL 2110416 (E.D. Va. May 1, 2020).................................................. 14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).....................................................................................................11, 22

*Nichols v. Brown,*
    859 F. Supp. 2d 1118 ( C.D. Cal. 2012)................................................................................... 12

*Safe Air For Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ................................................................................................ 10

*San Francisco Apartment Assoc. v. City and Cnty. of San Francisco,*
    142 F.Supp.3d 910 (N.D. Cal. 2015) ...................................................................................... 23

*Six v. Newsom*,
    No. 8:20-cv-00877, 2020 WL 2896543 (C.D. Cal. May 22, 2020)........................................... 13

*Smith v. Avino,*
    91 F.3d 105 (11th Cir. 1996) .................................................................................................. 14

*South Bay United Pentecostal Church v. Newsom,*
    140 S.Ct. 1613 (2020) .............................................................................................16, 17, 18

*Spokeo, Inc. v. Robins,*
    136 S.Ct. 1540 (2016) ............................................................................................................ 22

*Stormans, Inc. v. Wiesman,*
    794 F.3d 1064 (9th Cir. 2015) ................................................................................................ 20

*Tolle v. Northam,*
    No. 1:20-cv-00363-LMB-MSN, 2020 WL 1955281 (E.D. Va. Apr. 8, 2020),
    *motion for injunction pending appeal denied*, No. 20-1419 (4th Cir. Apr. 28, 2020).................. 14

iii

*Trunk v. City of San Diego,*
   629 F.3d 1099 (9th Cir. 2011) ............................................................................... 21

*United States v. Chalk,*
   441 F.2d 1277 (4th Cir. 1971) ............................................................................... 14

*Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.,*
   454 U.S. 464 (1982) ............................................................................................. 11

*Vasquez v. Los Angeles County,*
   487 F.3d 1246 (9th Cir. 2007) ..........................................................................20, 21

*Vernon v. City of Los Angeles,*
   27 F.3d 1385 (9th Cir. 1994) ................................................................................ 17


**Codes and Statutes**

**Constitutional Provisions**

U.S. Const. Amend I ................................................................................... passim

Cal. Const. art. I, § 4 ................................................................................ 2, 16

**California Health and Safety Code**

Section 120175 ........................................................................................ 22, 24

Section 120190 ........................................................................................ 22, 24

Section 120215 ........................................................................................ 22, 24

**Rules**

**Federal Rules of Civil Procuedure**

Rule 12(b)(1) ............................................................................................ 10

Rule 12(b)(6) ............................................................................................ 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

The COVID-19 pandemic continues to present the greatest public health challenge the country has faced in over one hundred years.  Confirmed cases are surging in California and across the nation.  State and local health officials continue to grapple with the monumental challenge of protecting the public from a disease that has infected over 3.5 million and killed over 137,000 people in this country in less than six months.

In the County of Santa Clara, public health officials have taken actions necessary to protect the community from the pandemic since the County was identified as an early hotspot back in March.  The County's Health Officer, Dr. Sara Cody, has issued or revised public health orders and directives at least seven times based on the latest available data and an evolving understanding of the novel disease and its impact on communities in the Bay Area.  Plaintiffs—two churches and their respective pastors—challenge a June 5, 2020 public health order that has already been entirely superseded by new State and County directives as health officials respond in real time to the pandemic.

Plaintiffs' federal and state constitutional challenge to the County's June 5 public health order should be dismissed for four reasons.  First, events have outpaced Plaintiffs' Complaint.  On July 13, 2020, the State Public Health Officer issued a statewide public health order that closed indoor operations at places of worship and other facilities in many California counties, including Santa Clara County.  Thus, even if this Court were to grant Plaintiffs' request for an injunction against the County officials named as defendants in this case, Plaintiffs would remain barred from conducting indoor religious services under a State public health order issued and enforced by State officials who are nowhere named in Plaintiffs' Complaint.  The Complaint therefore fails to present a "case or controversy" sufficient to meet that threshold requirement under Article III.

Second, the Complaint erroneously names the five members of the County's Board of Supervisors as defendants, but fails to allege any injury traceable to the County Supervisors.  Indeed, the Complaint does not mention the Supervisors a single time after it names them as defendants.  These five elected officials, who had no involvement in crafting or issuing the public health orders,

1

1  should be dismissed from the action should the case proceed.

2          Third, Plaintiffs' federal and state constitutional claims lack merit.  The County Health

3  Officer's orders issued in response to the COVID-19 pandemic are a valid exercise of her powers

4  and duties under state law to safeguard public safety during this historic public health crisis.  Federal

5  courts, including the United States Supreme Court, have repeatedly, and recently, rejected

6  constitutional challenges like Plaintiffs' to public health orders addressing the pandemic in

7  California and across the nation.  The County's public health orders, which include directives

8  applicable equally to both secular and religious gatherings, are consistent with the free exercise and

9  enjoyment of religion and do not violate the Establishment Clause of the First Amendment or

10  Article I, § 4 of the California Constitution.

11          Fourth, Plaintiffs have not alleged how their privacy interests were injured by the June 5,

12  2020 public health order, and thus they have again failed to satisfy the case-or-controversy

13  requirement—this time with respect to their Fourth Cause of Action for alleged violations of their

14  right to privacy under the California Constitution.  The June 5, 2020 public health order contains a

15  straightforward requirement designed to facilitate contact-tracing that requires hosts of small

16  gatherings to keep a list of attendees and their contact information to assist County health officials in

17  the event of a confirmed COVID-19 infection among gathering attendees.  Plaintiffs claim that this

18  contact-tracing provision "implicates" privacy interests protected by the California Constitution, but

19  fails to state any privacy interest belonging to the churches or the pastors that has been invaded by

20  the directive.  Accordingly, Plaintiffs have failed to plead any "injury in fact," and the Court

21  therefore lacks jurisdiction to consider their claim.  For the same reason, Plaintiffs have also failed to

22  state a claim for the violation of any privacy interest under the California Constitution.

23          For all of these reasons, Defendants respectfully ask the Court to dismiss the Complaint.

24                                          **II.  BACKGROUND**

25  **A.     THE PARTIES**

26          Plaintiffs are two Christian churches—Calvary Chapel San José and Southridge Church—

27  and their lead pastors—Mike McClure and Micaiah Irmler, respectively.  (Compl. at ¶¶ 22-25.)

28  Both churches are located in San José, California, and both pastors are residents of Santa Clara

Defendants' Notice of Motion and Motion: Memorandum of
Points and Authorities ISO Defendants' Motion to Dismiss

20-cv-03794

1    County.  (*Id*.)

2         Defendants are the five members of the Board of Supervisors for the County of Santa Clara

3    and the County's Health Officer, Dr. Sara H. Cody.  (*Id.* at ¶¶ 26-27.)  All are being sued in their

4    official capacity.  (*Id*.)  Dr. Cody issued and signed the public health orders addressing the COVID-

5    19 pandemic that are at issue in this case.  (*Id*. at ¶ 26.)  The Complaint does not identify any

6    conduct by the Supervisors—either collectively or individually—related to Plaintiffs' claims.  The

7    Supervisors are named as defendants solely on the basis of their alleged "broad legislative,

8    executive, and quasi-judicial authority" as elected officials for the County.  (*See id.* at ¶ 27.)

9    **B.    FACTUAL BACKGROUND**

10        1.    The COVID-19 Pandemic and The County's Public Health Orders.

11        The nation and the world are facing a pandemic of a duration and scale not seen for over 100

12   years.  Santa Clara County was an initial hotspot for COVID-19, the disease caused by the novel

13   coronavirus first identified last year.  On March 1, 2020, the County had 12 confirmed cases.  Two

14   weeks later, on March 15, there were 260 confirmed cases.  (County data cited herein regarding

15   confirmed COVID-19 cases and deaths are drawn from the Santa Clara County COVID-19 Cases

16   Dashboard, available at https://www.sccgov.org/sites/covid19/Pages/dashboard-cases.aspx.)

17        On March 16, 2020, under authority granted by the California Health and Safety Code,

18   sections 101040, 101085, and 120175, Dr. Cody and the Public Health Officers for six other Bay

19   Area jurisdictions issued orders directing their residents to shelter in place.  The March 16 public

20   health order for the County of Santa Clara was designed "to slow the spread of COVID-19 to the

21   maximum extent possible."  (Compl., Ex. 6 at ¶ 1.)  The order permitted residents to leave home

22   only for specified reasons, including to operate or patronize "Essential Businesses."  (*Id*. at ¶ 2.)  All

23   public and private gatherings outside a household or living unit were prohibited, except for those

24   "essential" activities expressly identified in the order.  (*Id*. at ¶¶ 2, 10.)  The order did not exempt

25   houses of worship.  The order took effect March 17, 2020 and was set to expire, unless earlier

26   extended, on April 7, 2020.  (*Id*. at ¶ 12.)

27        The pandemic continued to spread.  By the end of March, the County of Santa Clara had

28   1,122 cases and 37 deaths.

3

Defendants' Notice of Motion and Motion: Memorandum of                                    20-cv-03794
Points and Authorities ISO Defendants' Motion to Dismiss

On March 31, 2020, Dr. Cody and the other Bay Area Public Health Officers jointly issued new, stricter orders. These new orders named two objectives: to further slow COVID-19's spread and to "mitigate the [disease's] impact" on "critical healthcare services …." (Compl., Ex. 7 at ¶ 2.) To achieve those aims, the orders extended the shelter period until May 3, 2020 (*id.* at ¶ 16); clarified and narrowed which businesses qualified as "essential" (*id.* at ¶ 13.f); and made essential businesses follow specific "Social Distancing Protocols." (*Id.* at ¶ 13.h.) All public and private gatherings outside the home remained prohibited, except for "essential" activities identified in the new order. (*Id.* at ¶¶ 6, 13.)

By the end of April 2020, the growth in the number of new cases in the County had begun to slow (although the total number of cases continued to rise). On April 29, 2020, Dr. Cody issued a new version of the public health order that extended the shelter period to May 31, 2020, but relaxed certain restrictions. (Compl., Ex 8.) The April 29 order recognized that "[t]he collective efforts taken to date … have slowed the virus' trajectory, but the emergency and the attendant risk to public health remain significant." (*Id.* at ¶ 10.) In light of the progress achieved in the County, the order allowed additional essential and outdoor businesses to reopen. (*Id.* at ¶ 1.) This "initial, measured" reopening was "designed to keep the overall volume of person-to-person contact very low to prevent a surge in COVID-19 cases …." (*Id.*) All public and private gatherings outside the home remained prohibited, except for "essential" activities identified in the new order. (*Id.* at ¶¶ 7, 16.)

At around the same time, Governor Newsom announced the framework the State would follow to gradually loosen the statewide public health orders. In remarks and presentation materials, the Governor emphasized that he would not "preempt[] the[] right to be more stringent at the local level" (Request for Judicial Notice filed concurrently herewith ("Defs.' RJN"), Ex. A), and that "counties may choose to relax stricter local orders at their own pace." (Defs.' RJN, Ex. B at p. 65). Consistent with these representations, the Governor issued Executive Order N-60-20 on May 4, 2020. The Executive Order recognized regional variations in COVID-19 rates and directed the State Public Health Officer to establish a process for jurisdictions that meet certain criteria to impose less-restrictive measures than the State's. (*Id.* at pp. 71–72.) The Executive Order expressly preserved "the existing authority of local health officers to establish … public health measures within their

1    respective jurisdictions that are more restrictive" based on local community needs.  (*Id*. at p. 72.)

2    By mid-May 2020, the growth in new cases in the County remained relatively slow, the

3    curve relatively flat.  On May 18, 2020, Dr. Cody issued a new public health order extending the

4    shelter period, but again relaxing certain restrictions.  (Compl., Ex. 5.)  The order noted that "the rate

5    of increase has slowed in the weeks leading up to this Order," although "[t]he cumulative number of

6    confirmed cases continues to increase."  (*Id*. at ¶ 10.)  Ongoing restrictions were based on:

7    "[E]vidence of continued significant community transmission of

8    COVID-19 within the County and throughout the Bay Area; continued

9    uncertainty regarding the degree of undetected asymptomatic

10   transmission; scientific evidence and best practices regarding the most

11   effective approaches to slow the transmission of communicable diseases

12   generally and COVID-19 specifically; evidence that the age, condition,

13   and health of a significant portion of the population of the County places

14   it at risk for serious health complications, including death, from

15   COVID-19; and further evidence that others, including younger and

16   otherwise healthy people, are also at risk for serious outcomes."

17   (*Id*. at ¶ 9.)  The order concluded that continuation of the prior order was necessary "to slow the

18   spread of the COVID-19 disease, preserv[e] critical and limited healthcare capacity in the County

19   and advance[e] toward a point in the public health emergency where transmission can be

20   controlled."  (*Id*. at ¶ 12.)  All public and private gatherings outside the home remained prohibited,

21   except for "essential" activities identified in the order.  (*Id*. at ¶¶ 7, 15).

22   On June 5, 2020, the County updated the May 18 public health order.  (Compl., Ex. 9.)

23   While public and private gatherings outside the home remained generally prohibited, the updated

24   directives expressly authorized additional activities, including outdoor ceremonies and religious

25   gatherings.  (Compl., Ex. 12 [Appendix C-2:  Allowed Additional Activities].)  The directives noted

26   that "ceremonies and religious gatherings carry a substantial risk of transmission," but that "[t]he

27   risk associated with these activities" could be mitigated, as specified in the directives.  (*Id*. at p. 4.)

28   Accordingly, the directives permitted outdoor gatherings subject to certain measures designed to

5

1  reduce the risk of transmission, including:

2  • limiting such gatherings to "[n]o more than 25 persons";

3  • limiting food and beverages to those necessary for "ceremonial purposes";

4  • prohibiting singing and shouting "due to significantly increased risk of COVID-19

5  transmission";

6  • requiring face coverings and social distancing; and

7  • requiring a designated host to "maintain a list with the names and contact information of

8  all participants" and to "assist the County Public Health Department in any case

9  investigation and contact tracing associated with the gathering."

10  (*Id.*)  Despite the fact that the June 5 order relaxed prior restrictions on religious gatherings, four

11  days later on June 9, 2020, Plaintiffs filed their Complaint challenging the order.  (ECF 1.)

12      Unfortunately, the pandemic has not receded.  Case numbers are rising in the County, in

13  California, and across the nation.  In the County, the total number of cases has gone up to 6,951:

14



15

16

17

18

19

20

21

22

23  / /

24  / /

25  / /

26  / /

27  / /

28  / /

1  Santa Clara County COVID-19 Cases Dashboard (visited July 16, 2020).  Nationwide, the number

2  of new cases has been surging:



**New reported cases by day in the United States**

12  New York Times Online (visited July 16, 2020).  The U.S. has gone from just one confirmed case on

13  January 21, 2020, to well over 3.5 million in less than six months; from zero deaths to over 137,000.

14  *Id.*  There is still no cure, vaccine, or specific treatment for COVID-19.

15      Public reports have detailed the role of "super spreader" events, including church gatherings,

16  in the growth of the pandemic.  For example:

17  • In South Korea, as of March 25, at least 5,080 confirmed cases of COVID-19 were traced

18    back to one individual who attended a religious service in Daegu, *see* Youjin Shin,

19    Bonnie Berkowitz, Min Joo-Kim, *How a South Korean church helped fuel the spread of*

20    *the coronarvirus*, Washington Post, March 25, 2020, available at

21    https://www.washingtonpost.com/graphics/2020/world/coronavirus-south-korea-church/;

22  • In California, 71 cases of COVID-19 have been linked to a church in Sacramento, *see*

23    Anita Chabria, Sean Greene, Rong-Gong Lin II, *Pentecostal church in Sacramento linked*

24    *to dozens of coronavirus cases*, Los Angeles Times, April 2, 2020, available at

25    https://www.latimes.com/california/story/2020-04-02/pentecostal-church-in-sacramento-

26    linked-to-dozens-of-coronavirus-cases;

27  • Near Seattle, following a 2.5-hour church choir practice attended by 61 people, 32

28    participants were confirmed to be infected with COVID-19, 20 were suspected to be

7

infected, three were hospitalized, and two died, *see High SARS-CoV-2 Attack Rate Following Exposure at a Choir Practice — Skagit County, Washington, March 2020*, https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e6.htm; *see also* Richard Read, *A choir decided to go ahead with rehearsal. Now dozens have COVID-19 and two are dead*, Los Angeles Times, March 29, 2020, https://www.latimes.com/world-nation/story/2020-03-29/coronavirus-choiroutbreak;

- In Kentucky, a church revival has been linked to at least 28 cases and two deaths, *see* Bailey Loosmore & Mandy McLaren, *Kentucky county 'hit really, really hard' by church revival that spread deadly COVID-19*, Louisville Courier Journal, April 2, 2020, https://www.courier-journal.com/story/news/2020/04/01/coronavirus-kentucky-church-revival-leads-28-cases-2-deaths/5108111002/;

- In West Virginia, there have been at least 51 confirmed cases and three deaths tied to the resumption of mask-optional services at a church in late May, *see* Kate Conger, Jack Healy and Lucy Tompkins, *Churches Were Eager to Reopen. Now They Are a Major Source of Coronavirus Cases*, New York Times, July 8, 2020, available at https://www.nytimes.com/2020/07/08/us/coronavirus-churches-outbreaks.html; and

- In Texas, about 50 people contracted the virus after a pastor told congregants they could once again hug one another.  *See id.*

2.    The Superseding State and County Public Health Orders.

Since Plaintiffs filed their lawsuit, the County and its Health Officer, Dr. Cody, have continued their work to protect the community from COVID-19.  On July 2, 2020, Dr. Cody issued a new public health order (RJN, Ex. D [July 2, 2020 Health Officer Risk Reduction Order]) which entirely superseded the order challenged in Plaintiff's complaint; and on July 8, 2020, the County issued a superseding mandatory directive for secular and religious gatherings.  (RJN, Ex. E [Mandatory Directive: Gatherings].)

Just three days ago, on July 13, 2020, Governor Newsom announced the statewide closure of all bars as well as the indoor operations of businesses including restaurants, movie theaters, and museums under an order issued by the State Health Officer.  (RJN, Ex. F [July 13, 2020 Statewide

8

1    Public Health Officer Order]; *see also* Wes Goldberg, *Gov. Newsom orders statewide closures of*

2    *indoor activities to fight coronavirus surge*, The Mercury News, July 13, 2020, available at

3    https://www.mercurynews.com/2020/07/13/gov-newsom-announces-closure-of-indoor-reopening-

4    across-california/.)  The order also required the closure of indoor operations for fitness centers,

5    worship services, personal care services, malls, offices, hair salons, and barbershops for the counties

6    on California's "Monitoring List" for three or more days, which included the County of Santa Clara

7    as of July 15, 2020.  (RJN, Ex. F at p. 4; Ex. G [July 13, 2020 Statement of the Santa Clara County

8    Public Health Department Regarding the Governor's Announcement] at p. 2.)  Accordingly, as of

9    July 15, 2020, all indoor worship services are prohibited within Santa Clara County under order of

10   the State Health Officer.

11           3.      Plaintiffs' Complaint and Repeated Violations of the Public Health Orders.

12           Plaintiffs allege that the County Health Officer's June 5 order is too strict, and they should be

13   allowed to hold indoor religious services if they follow lesser restrictions such as the California or

14   Centers for Disease Control and Prevention ("CDC") guidance in place at the time the Complaint

15   was filed.  (Compl., Prayer for Relief, ¶ A.iii.)  Although Plaintiffs hold up the prior State guidance

16   as the appropriate standard, on May 24, 2020, Plaintiffs Calvary Chapel and Pastor McClure

17   announced that they would reopen Calvary Chapel for indoor church services without requiring

18   mitigation measures, social distancing, or masks in violation of both the State and County health

19   orders.  *See* Aldo Toledo, *San Jose: Church pastor vows to fully reopen next week, regardless of*

20   *stay-at-home orders*, The Mercury News, May 24, 2020, available at

21   https://www.mercurynews.com/2020/05/24/san-jose-church-pastor-vows-to-fully-reopen-next-week-

22   regardless-of-stay-at-home-orders/ ("We're going to allow people to do whatever they feel is right,"

23   [church administrator Carson] Atherley said. "We're not promoting or condemning the use of masks

24   or the practice of social distancing.").  And it appears that those Plaintiffs have been holding indoor

25   services since at least May 31, 2020, as Plaintiffs have been recording and posting YouTube videos

26   of their services.  *See, e.g.*, https://www.youtube.com/watch?v=wo5-y5bmNDo (May 31, 2020,

27   service; https://www.youtube.com/watch?v=YyDKAK9kctg (June 7, 2020, service);

28   https://www.youtube.com/watch?v=zHEJz1fw1hA (June 14, 2020, service);

9

1   https://www.youtube.com/watch?v=bMMjGwO8AFQ&feature=emb_rel_pause (June 21, 2020,

2   service); and https://www.youtube.com/watch?v=LMfvEilIRtM (June 28, 2020, service).

3   **C.     PROCEDURAL BACKGROUND**

4          Plaintiffs filed their Complaint on June 9, 2020.  Plaintiffs waited for over two weeks, until

5   June 25, 2020, to serve the Complaint on Defendants.  (ECF 6-11.)

6          On July 2, 2020, Dr. Cody issued the July 2 public health order, superseding the June 5

7   public health order challenged by Plaintiffs.  (RJN, Ex. D.)  On July 8, 2020, the County issued a

8   mandatory directive for gatherings.  (RJN, Ex. E.)  On July 13, 2020, the State Public Health Officer

9   issued an order barring all indoor worship services in Santa Clara County as of July 15, 2020.

10         In the more than five weeks since filing of their Complaint, Plaintiffs have not moved for a

11  temporary restraining order or any other preliminary relief.  In the two weeks since the issuance of

12  the July 2 public health order by Dr. Cody, the one week since the issuance of the County mandatory

13  directive on gatherings, or in the days following this week's State directive barring all indoor

14  worship services, Plaintiffs have not amended their complaint or taken any other action in this

15  lawsuit to respond to the superseding State and County orders.

16                                    **III.  STANDARDS**

17  **A.     Rule 12(b)(1)**

18         A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss

19  under Federal Rule of Civil Procedure 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial

20  or factual."  *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack,

21  the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the

22  complaint.  *Id*.  In a factual attack, the movant disputes the truth of allegations that otherwise would

23  give rise to federal jurisdiction.  *Id*.  "In resolving a factual attack on jurisdiction, the district court

24  may review evidence beyond the complaint without converting the motion to dismiss into a motion

25  for summary judgment."  *Id*.  "The court need not presume the truthfulness of the plaintiff's

26  allegations."  *Id*.  Once the moving party has presented evidence demonstrating the lack of subject

27  matter jurisdiction, the party opposing the motion must present affidavits or other evidence sufficient

28  to establish subject matter jurisdiction.  *Id*.  The party seeking to invoke the jurisdiction of the

                                        10

1   federal courts has the burden of establishing that jurisdiction exists.  *Association of Med. Colls. v.*

2   *United States*, 217 F.3d 770, 778-779 (9th Cir. 2000).

3   **B.      Rule 12(b)(6)**

4          A defendant may also seek dismissal of a complaint for failure to state a claim upon which

5   relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  To survive a Rule

6   12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is

7   plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d

8   929 (2007).  A claim is facially plausible when it "allows the court to draw the reasonable inference

9   that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

10  S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  The Court must accept all well-pleaded factual

11  allegations as true, *Twombly*, 550 U.S. at 555-56; but the Court does not have to accept as true

12  conclusory statements or legal conclusions.  *See Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the

13  elements of a cause of action, supported by mere conclusory statements, do not suffice.").

14                                     **IV.  ARGUMENT**

15  **A.      PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION**

16          "Article III of the Constitution limits federal-court jurisdiction to 'cases' and

17  'controversies.'"  *Campbell–Ewald Co. v. Gomez*, 136 S.Ct. 663, 669, 193 L.Ed.2d 571 (2016).

18  "This requirement precludes the exercise of jurisdiction by a federal court unless the plaintiff has

19  suffered some actual injury or faces a threatened injury, and the injury is fairly traceable to the action

20  challenged and is likely to be redressed by a favorable decision."  *Culinary Workers Union, Local*

21  *226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir. 1999) (*citing Valley Forge Christian Coll. v.*

22  *Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70

23  L.Ed.2d 700 (1982)).  Plaintiffs bear the burden of supporting these elements, including at the

24  pleading stage.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).  Plaintiffs' Complaint

25  fails to meet this threshold requirement for two reasons.

26          First, Plaintiffs' claims have been superseded by the State Health Officer's recent order, and

27  their alleged injury is no longer redressable by an action solely against the County Defendants.  The

28  State Health Officer's most recent order closed indoor activities for "[p]laces of [w]orship" in

                                              11

1   counties on the State's Monitoring List for three or more days, which as of July 15, 2020, included

2   the County of Santa Clara.  (RJN, Ex. F at p. 4.)  Thus, even if this Court were to enjoin the

3   enforcement of the *County* Health Officer's orders and all of the *County* Defendants, Plaintiffs

4   would still be unable to conduct *any* indoor worship services at their facilities due to the *State* order.

5   Indeed, Plaintiffs' requested injunctive relief—to permit Plaintiffs "to continue to meet so long as

6   Plaintiffs comply with the CDC and state guidelines for houses of worship" (Compl. at p. 24:26-

7   27)—no longer makes sense as California's guidelines now prohibit Plaintiffs continuing to meet

8   indoors.  To date, Plaintiffs have made no effort or given any indication that they intend to add the

9   Governor, the State Public Health Officer, or any other state official as a defendant in this or any

10  other action.  Plaintiffs also have no standing to assert a privacy claim with respect to the provision

11  of the County Health Officer's order regarding contact tracing.  *See also* Part D.1, *infra*.  There is,

12  accordingly, no case or controversy for this Court to decide under the current Complaint.

13       Second, Plaintiffs have failed to establish any case or controversy as to the five County

14  Supervisor Defendants in particular.  Plaintiffs seek to enjoin the enforcement of the June 5, 2020

15  County Health Officer's order (*e.g.*, Compl. at ¶¶ 24-25), but again, they have failed to show that

16  any alleged injury is "fairly traceable" to the County Supervisors or is likely to be redressed by an

17  injunction against those local government Defendants.  Plaintiffs have not alleged any conduct by

18  the Supervisors at all, much less a connection to the issuance or enforcement of the June 5 order.

19  *See, e.g.*, *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1130, n.5 ( C.D. Cal. 2012) ("A state official's

20  enforcement connection with a plaintiff's alleged injuries is a factor in both Article III standing and

21  Eleventh Amendment sovereign immunity analyses.").  Plaintiffs allege only that the Supervisors

22  exercise "broad legislative, executive, and quasi-judicial authority under California law, including

23  the supervision of the county sheriff and public health officials" (Compl. at ¶ 27), but this sort of

24  "generalized" governmental and oversight authority is insufficient to establish the requisite

25  connection between the Supervisor Defendants and Plaintiffs' alleged injury.  *See Nichols*, 859 F.

26  Supp. 2d at 1132.  Further, the Supervisors do not in fact oversee, appoint, or supervise the County

27  Public Health Officer, not do they have any control whatsoever over the exercise of her duties under

28  state law to protect residents of the County from communicable diseases.  For these same reasons,

1   Plaintiffs also have not shown that injunctive relief against the County Supervisors would redress

2   any alleged injury.

3          In sum, Plaintiffs have failed to satisfy the threshold requirements of Article III and their

4   claims should be dismissed.  *See also* Part D.1, *infra*.

5   **B.     THE PUBLIC HEALTH ORDERS DO NOT VIOLATE PLAINTIFFS' RIGHT TO
           FREE EXERCISE AND ENJOYMENT OF RELIGION**

6          1.      The County's Public Health Orders Satisfy the Deferential Standard for Emergency

7                  Directives.

8          The standard for constitutional review applicable in the current emergency circumstances

9   brought on by the COVID-19 pandemic is set forth in *Jacobson v. Massachusetts*, 197 U.S. 11, 25

10  S.Ct. 35, 849 L.Ed. 643 (1905).  That is, "when a state or locality exercises emergency police powers

11  to enact an emergency public health measure, courts will uphold it unless (1) there is no real or

12  substantial relation to public health, or (2) the measures are 'beyond all question' a 'plain, palpable

13  invasion of rights secured by [ ] fundamental law.'"  *Cross Culture Christian Ctr. v. Newsom*, --

14  F.Supp.3d -- , No. 2:20-CV-00832, 2020 WL 2121111, at *4 (E.D. Cal. May 5, 2020) (*quoting*

15  *Jacobson*, 197 U.S. at 31); *see also Six v. Newsom*, No. 8:20-cv-00877, 2020 WL 2896543, at *4

16  (C.D. Cal. May 22, 2020) (same).

17         *Jacobson* concerned the state's exercise of its general police powers to promote public safety

18  during a public health crisis—specifically, compulsory vaccination during a smallpox epidemic in

19  the early twentieth century.  As the Supreme Court explained in *Jacobson*:  "[T]he liberty secured by

20  the Constitution . . . does not import an absolute right in each person to be, at all times and in all

21  circumstances, wholly freed from restraint."  197 U.S. at 26.  Individual rights, rather, must at times

22  give way to the "principle of self-defense," which confers on the "community . . . the right to protect

23  itself against" forces that "threaten[] the safety of its members."  *Id*.  Indeed, "*Jacobson* instructs that

24  all constitutional rights may be reasonably restricted to combat a public health emergency."  *In re

25  Abbott*, 954 F.3d 772, 786 (5th Cir. 2020).  "[A]n epidemic of disease" qualifies as a threat

26  implicating core, self-defensive police powers. *Jacobson,* 197 U.S. at 27-28.

27         Courts may invalidate emergency measures taken to repel such threats only if they bear "no

28  real or substantial relation to th[eir] objects" or "beyond all question" effect "a plain, palpable

1  invasion of rights …." *Id.* at 31. *Jacobson* alternatively framed the question as whether the

2  government acted in an "arbitrary, unreasonable manner." *Id.* at 28. Other courts, considering

3  emergency curfews that curtail constitutional rights, have articulated a slightly different but equally

4  deferential test—that the scope of review is limited to … determin[ing] whether" state "actions were

5  taken in good faith and whether there is some factual basis" for them. *Smith v. Avino*, 91 F.3d 105,

6  109 (11th Cir. 1996) (upholding post-hurricane curfew against constitutional challenge and noting

7  that "[i]n an emergency situation, fundamental rights . . . may be temporarily limited or suspended");

8  *United States v. Chalk*, 441 F.2d 1277, 1281 (4th Cir. 1971) (same, as to riot-induced curfew). More

9  recently, the vast majority of courts across the country considering constitutional challenges to

10  restrictions on religious services imposed to combat the spread of COVID-19 have held *Jacobson*

11  applicable and rejected these challenges. *See, e.g.*, *Carmichael v. Ige*, No. 20-00273, 2020 WL

12  3630738 (D. Haw. July 2, 2020); *Elim Romanian Pentecostal Church v. Pritzker*, No. 20 C 2782,

13  2020 WL 2468194 (N.D. Ill. May 13, 2020); *Calvary Chapel of Bangor v. Mills*, No. 1:20-CV-

14  00156, 2020 WL 2310913 (D. Me. May 9, 2020); *Cross Culture Christian Center v. Newsom*, No.

15  2:20-cv-00832, 2020 WL 2121111 (E.D. Cal. May 5, 2020); *Cassell v. Snyders*, No. 20 C 50153,

16  2020 WL 2112374 (N.D. Ill. May 3, 2020); *Lighthouse Fellowship Church v. Northam*, No. 2:20-cv-

17  204, 2020 WL 2110416 (E.D. Va. May 1, 2020); *Gish v. Newsom*, No. 5:20-cv-00755, 2020 WL

18  1979970 (C.D. Cal. Apr. 23, 2020); *Legacy Church, Inc. v. Kunkel*, No. CIV 20-0327, 2020 WL

19  1905586 (D.N.M. Apr. 17, 2020); *Davis v. Berke*, No. 1:20-CV-98, 2020 WL 1970712 (E.D. Tenn.

20  Apr. 17, 2020); *Tolle v. Northam*, No. 1:20-cv-00363-LMB-MSN, 2020 WL 1955281 (E.D. Va.

21  Apr. 8, 2020), *motion for injunction pending appeal denied*, No. 20-1419 (4th Cir. Apr. 28, 2020).

22  Plaintiffs do not plead, nor could they, that the County's public health orders have no real or

23  substantial relation to public health or that the measures are "beyond all question" a "plain, palpable

24  invasion of rights secured by [ ] fundamental law." *Id.* at 30. Accordingly, they have failed to state

25  a claim for any constitutional violation.

26  Under *Jacobson*, the June 5, 2020 public health order unquestionably passes constitutional

27  muster. First, there is no serious question that the June 5 and other public health orders actually and

28  substantially relate to public health objectives. The stated intent of the June 5 order was to minimize

14

1   COVID-19 transmission rates, conserve healthcare resources, and save lives.  (Compl., Ex. 5 at p. 2.)

2   The order sought to achieve that goal by, *inter alia*, limiting travel and gatherings outside the home

3   and the family unit, and, when such activity was permitted, mitigating the risk of COVID-19

4   transmission by requiring facial coverings, and social distancing, among other directives.  (*E.g.*, *id.*

5   at pp. 2-3.)  With respect to ceremonies and religious gatherings in particular, the challenged June 5

6   directives were based on "health-related considerations including the risks of COVID-19

7   transmission associated with types and modes of activity, the ability to substantially mitigate

8   transmission risks associated with the operations, and related [epidemiological] factors …."

9   (Compl., Ex. 12 at p. 1.)  The directives sought to address these considerations and mitigate the risk

10   of transmission by, *inter alia*, requiring that activities occur outdoors, limiting the number of

11   participants, and ensuring adequate social distancing.  (*Id.*)

12          Second, the County's public health orders are not "beyond question" arbitrary or

13   unreasonable, as they were drawn neutrally, apply temporarily, and reasonably make limited

14   exceptions only for activities and businesses that can safely support the basic needs of residents.  *See*

15   *Abbott*, 954 F.3d at 783 (holding that district court erred by declining to apply *Jacobson* to COVID-

16   19 health directive; upholding order against due process challenge due to its facial neutrality, limited

17   temporal scope, and reasonable exceptions).  Plaintiffs urge this Court to instead adopt a different set

18   of requirements to address the public health crisis facing the County by "permit[ting] Plaintiffs to

19   continue to meet so long as Plaintiffs comply with the CDC and state guidelines for houses of

20   worship."  (Compl. at p. 24:26-27.)  But under *Jacobson* the Court is not tasked with determining

21   whether the County Health Officer's order is the best or narrowest response to the public health

22   crisis posed by the COVID-19 pandemic, nor is it tasked with supplanting the expertise of local

23   public health officials.  *See In re Rutledge*, 956 F.3d 1018, 1029 (8th Cir. 2020) ("[T]he judiciary

24   may not 'second-guess the state's policy choices in crafting emergency public health measures.'")

25   (quoting *Abbott*, 954 F.3d at 784).  Instead, the Court must determine whether the measures at issue

26   are unrelated to public health or "beyond all question" an arbitrary or unreasonable violation of

27   fundamental law.  And nothing in Plaintiffs' complaint supports that conclusion.

28   / /

15

Defendants' Notice of Motion and Motion: Memorandum of                                    20-cv-03794
Points and Authorities ISO Defendants' Motion to Dismiss

1        In a recent concurring opinion in *South Bay United Pentecostal Church v. Newsom*, which

2  involved a challenge to California's restrictions on places of worship, Chief Justice John Roberts

3  explained the rationale underlying the deferential *Jacobson* standard in the context of the current

4  pandemic:

> The precise question of when restrictions on particular social
> activities should be lifted during the pandemic is a dynamic and fact-
> intensive matter subject to reasonable disagreement.   Our
> Constitution principally entrusts "[t]he safety and the health of the
> people" to the politically accountable officials of the States "to
> guard and protect."  When those officials "undertake[ ] to act in
> areas fraught with medical and scientific uncertainties," their
> latitude "must be especially broad." Where those broad limits are
> not exceeded, they should not be subject to second-guessing by an
> "unelected federal judiciary," which lacks the background,
> competence, and expertise to assess public health and is not
> accountable to the people.

17  *South Bay United Pentecostal Church v. Newsom*, -- S.Ct. --, 2020 WL 2813056 at *1-2 (May 29,

18  2020) (mem.) (Roberts, C.J., *concurring in the denial of injunctive relief*) (citations omitted).  This

19  broad deference is particularly important when, as is the case with health officials in the County of

20  Santa Clara, "local officials are actively shaping their response to changing facts on the ground." *Id.*

21  Indeed, Dr. Cody has issued and updated County's public health orders and directives seven times in

22  the past five months to reflect the rapidly changing conditions and understanding of the disease and

23  the course of the pandemic—the County's response is based on exactly the kind of  "dynamic and

24  fact-intensive" public health analysis that is entitled to substantial deference.  *See id.*

25        2.   <u>The Court Should Dismiss Plaintiffs' First Claim Under the First Amendment to the United States Constitution and Their Second Claim Under Article I, § 4 of the California Constitution.</u>

27        Even without reference to the emergency-specific standard of *Jacobson*, the County's public

28  health orders easily pass constitutional muster.

16

1    Contrary to Plaintiffs' allegation, the June 5, 2020 public health order does not violate

2    Plaintiffs' free exercise rights.  A regulation or law violates the Free Exercise clause of the First

3    Amendment when it is neither neutral nor generally applicable, substantially burdens a religious

4    practice, and is not justified by a substantial state interest or narrowly tailored to achieve that

5    interest.  *American Family Ass'n, Inc. v. City & Cnty. of San Francisco*, 277 F.3d 1114, 1123 (9th

6    Cir. 2002) (citing *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531-32, 113 S.Ct.

7    2217, 124 L.Ed.2d 472 (1993)).  Plaintiff's state free exercise claim is evaluated under the same

8    standard.  *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392-94 (9th Cir. 1994).  The June 5

9    order imposed identical restrictions on both secular and religious gatherings, and did not violate

10   Plaintiffs' free exercise rights:  the requirements of the order are neutral and generally applicable, are

11   justified by a substantial public health interest, and are carefully and narrowly tailored to achieve

12   vital public health objectives.

13   In *South Bay United Pentecostal Church v. Newsom*, the Ninth Circuit recently rejected a

14   religious challenge to California's COVID-19 public health directives brought by a church and its

15   bishop.  "Where state action does not 'infringe upon or restrict practices because of their religious

16   motivation' and does not 'in a selective manner impose burdens only on conduct motivated by

17   religious belief,' it does not violate the First Amendment."  *South Bay*, 959 F.3d at 939 (quoting

18   *Lukumi*, 508 U.S. at 533).  California's statewide directives withstood constitutional scrutiny under

19   this standard.  *See id.*

20   The County's public health order passes the same test.  The order does not restrict activity

21   because of "religious motivation;" rather, it targets a category of activity—*e.g.*, in-person

22   gatherings—in order to minimize disease transmission.  (*See, e.g.*, Compl., Ex. 5, 12.)  For the same

23   reason, the order does not impose burdens selectively—the order applies equally to both secular and

24   religious gatherings.  (Compl., Ex. 12.)  While the June 5 and other public health orders do

25   distinguish between indoor and outdoor activities, that line is drawn based on the epidemiological

26   risk of the physical activity and has nothing whatsoever to do with religion.  (*See, e.g.*, Compl., Ex.

27   11 at p. 3 ["Interactions and activities that occur outdoors carry a lower risk of transmission than

28   most indoor interactions and activities."].)  Similarly, the orders and directives applicable to different

17

1    types of business activity are expressly based on "health-related considerations," including the

2    impact of reopening on the "volume" of overall activity; "[c]ontact intensity," which relates to the

3    type and duration of contact; "[n]umber of contacts," the number of people who will be in the setting

4    at the same time; and "[m]odification potential," or the degree to which mitigation measures are

5    available to reduce the risk of transmission.  (*E.g.*, Compl., Ex. 11 at p. 1.)  These same factors

6    provided the basis for the challenged directives for gatherings.  (*See also* Compl., Ex. 12 at p. 1.)

7    None of these factors have anything to do with Plaintiffs' religious beliefs; nor do they impose

8    greater burdens on Plaintiffs because of those beliefs.  Accordingly, the public health orders do not

9    violate the First Amendment, and Plaintiffs' first and second causes of action should be dismissed.

10        This conclusion is supported by the Supreme Court's recent denial of injunctive relief in

11   *South Bay*, where Chief Justice John Roberts wrote in his concurring opinion:  "Although

12   California's guidelines place restrictions on places of worship, those restrictions appear consistent

13   with the Free Exercise Clause of the First Amendment."  As the Chief Justice reasoned, where

14   "[s]imilar or more severe restrictions apply to comparable secular gatherings … where large groups

15   of people gather in close proximity for extended periods of time;" and where only "dissimilar

16   activities, … in which people neither congregate in large groups nor remain in close proximity for

17   extended periods," are treated more leniently, there is no First Amendment violation.  *See South Bay*

18   *United Pentecostal Church*, 2020 WL 2813056 at *1-2; *Calvary Chapel Lone Mountain v. Sisolak*,

19   No. 2:20-cv-00907, 2020 WL 3108716, at *2-4 (D. Nev. June 11, 2020) (applying *South Bay* to deny

20   free exercise claim).  Of course, the same is true of the County's public health orders.

21        Nonetheless, Plaintiffs allege that the County's public health orders "specifically and

22   discriminatorily target the religious beliefs, speech, assembly, and viewpoint of Plaintiffs" and

23   "impermissibly burden Plaintiffs' sincerely held religious beliefs."  (*See, e.g.*, Compl. at ¶¶ 99, 102,

24   121, 124.)  As evidence of this alleged "targeting," Plaintiffs offer nothing more than the County

25   Health Officer's orders.  (*See, e.g.*, *id.* at ¶¶ 98, 102.)  Of course, there is no evidence on the face of

26   the orders that Plaintiffs, or any religious practitioners, have been targeted because of their "beliefs"

27   or "viewpoint."  In the absence of well-pleaded factual support for the "targeting" claim, the Court

28   should not accept Plaintiffs' conclusory allegations.  *Compare Lukumi*, 508 U.S. at 534 ("The record

18

1   in this case compels the conclusion that suppression of the central element of the Santeria worship

2   service was the object of the ordinances.") (discussing record evidence).

3        Contrary to Plaintiff's allegations, the June 5 order generally prohibits secular gatherings, but

4   makes an exception to permit "ceremonies and religious gatherings." (Compl., Ex. 12 at p. 4.)  The

5   directive states that these activities are "are vital to people's social and spiritual well being" and sets

6   forth conditions for participation in order to mitigate the risk of COVID-19 transmission.  (*Id.*)

7   Nonetheless, Plaintiffs claim that they are being treated unfairly because the June 5 public health

8   order allegedly sets more lenient conditions for "in-store shopping at retail and shopping centers,

9   television, radio, and other media services, real estate offices, farmers' markets, bicycle supply

10  shops, airports, outdoor dining, grocery stores, recreational institutions, summer camps, and summer

11  school." (Compl. at ¶ 41.).  These activities are not similar to church services; and the dissimilar

12  treatment of dissimilar activities does not establish any constitutional violation.  *See Calvary Chapel*

13  *Lone Mountain*, 2020 WL 3108716, at *4.

14       In applying the Free Exercise Clause, courts often compare the treatment of religious activity

15  to that of "analogous non-religious conduct." *Lukumi*, 508 U.S. at 546.  As the Seventh Circuit has

16  explained, because COVID-19 is spread by aerosol droplets, for purposes of combatting spread of

17  the virus, in-person church services are analogous to other "congregate functions" that occur in

18  single place:

19            [Worship services] seem most like other congregate functions that

20            occur in auditoriums, such as concerts and movies. Any of these

21            indoor activities puts members of multiple families close to one

22            another for extended periods, while invisible droplets containing the

23            virus may linger in the air. Functions that include speaking and

24            singing by the audience increase the chance that persons with

25            COVID-19 may transmit the virus through the droplets that speech

26            or song inevitably produce.

27  *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 346-47 (7th Cir. 2020) (affirming

28  denial of motion for preliminary injunction of state's ten-person limit).  Consequently, religious

1   services are comparable to "secular gatherings, such as concerts, lectures, theatrical performances, or

2   choir practices, in which groups of people gather together for extended periods," but not to activities

3   such as "shopping, in which people do not congregate or remain for extended periods." *Id.*, 2020

4   WL 2517093, at *1 (May 16, 2020) (denying motion for injunction pending appeal).

5          Plaintiffs also allege that the County's public health orders violate the federal and state

6   constitutions "as applied" (Compl. at ¶¶ 98, 102); but the Complaint includes <u>no</u> allegations

7   regarding any enforcement action, much less evidence of selective enforcement.  At most, Plaintiffs

8   point to two Facebook posts by the County of Santa Clara Public Health Department to allege that

9   the County has "acknowledged that the right to attend protests regarding racial injustice is a

10  'fundamental right.'"  (*Id.* at ¶ 52, Ex. 14.)  Of course, the posts do <u>not</u> say that the outdoor protests

11  were permitted under the County's public health orders, because they were not.  Instead, the posts

12  urged protestors to remember that "our community is still facing a health crisis and fighting COVID-

13  19" and to take appropriate mitigation measures, including face coverings, social distancing, and

14  testing.  *Id.*  This type of harm-reduction messaging aimed at individuals violating the County's

15  public health orders does not support or give rise to any constitutional claim.  To state a selective

16  enforcement claim, it is not sufficient for Plaintiffs to suggest that "the directive is not being

17  enforced against secular activities"; they must also demonstrate that Defendants "are only or

18  primarily enforcing the directive against places of worship."  *Calvary Chapel Lone Mountain*, 2020

19  WL 3108716, at *4 (citing *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1083 (9th Cir. 2015)).  The

20  Complaint does not make those allegations.

21         Because the County's public health orders do not target or selectively burden Plaintiffs'

22  religious beliefs or practices, Plaintiffs' first and second causes of action should be dismissed.

23  **C.    THE PUBLIC HEALTH ORDERS DO NOT VIOLATE THE ESTABLISHMENT
       CLAUSE OF THE FIRST AMENDMENT**

24

25         The Plaintiffs' have not stated a claim for any violation of the Establishment Clause.

26         The test set forth in *Lemon v. Kurtzman*, 403 U.S. 602 (1971), "continues to set forth the

27  applicable constitutional standard for assessing the validity of governmental actions challenged

28  under the Establishment Clause."  *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1254 (9th Cir.

20

2007).  Under *Lemon*, a government act is consistent with the Establishment Clause if it: (1) has a secular purpose; (2) has a principal or primary effect that neither advances nor disapproves of religion; and (3) does not foster excessive governmental entanglement with religion.  *Id*. at 1255 (citing *Lemon*, 403 U.S. at 612-13).  In practice, the last two prongs have been "collapsed" to ask "whether the challenged governmental practice has the effect of endorsing religion."  *Trunk v. City of San Diego*, 629 F.3d 1099, 1106 (9th Cir. 2011) (quoting *Access Fund v. U.S. Dep't of Agric*., 499 F.3d 1036, 1043 (9th Cir. 2007) (reviewing cases)).  Nothing in the County Public Health Officer's order supports Plaintiffs' claim.

First, the June 5 order states a plainly secular purpose.  *See Lemon*, 403 U.S. at 612-13.  As stated in the order, "[t]he primary intent of this Order is to ensure that County residents continue to shelter in their places of residence to slow the spread of COVID-19 and mitigate the impact on delivery of critical healthcare services."  (Compl., Ex. 5 at 1.)  Plaintiffs' conclusory assertions to the contrary do not create a factual dispute or basis to imply some other motive.

Second, the June 5 order does not endorse or have the principal or primary effect of advancing or inhibiting religion.  *See Lemon*, 403 U.S. at 612-13.  "Governmental action has the primary effect of advancing or disapproving of religion if it is 'sufficiently likely to be perceived by adherents of the controlling denominations as an endorsement, and by the nonadherents as a disapproval, of their individual religious choices.'"  *Vasquez*, 487 F.3d at 1256 (*quoting Brown v. Woodland Joint Unified Sch. Dist*., 27 F.3d 1373, 1378 (9th Cir. 1994) (internal citation and quotation marks omitted)).  The Court should "analyze the effect prong of *Lemon* from the point of view of a reasonable observer who is 'informed ... [and] familiar with the history of the government practice at issue.'"  *Id.* (citation omitted).  In the context of this case, a reasonable observer who is "informed ... [and] familiar with the history of the government practice at issue" would not view Defendants' restrictions on the physical activities of public gatherings as an act of hostility towards religion.  *See Brown*, 27 F.3d at 1378.  To the contrary, the June 5 order lessened prior restrictions solely as to ceremonies and religious gatherings, but not as to analogous secular gatherings.

For these reasons, the Court should dismiss Plaintiff's third cause of action for violation of the Establish Clause of the First Amendment.

21

1

## D.   PLAINTIFFS' FOURTH CLAIM FOR ALLEGED VIOLATION OF THEIR RIGHT TO PRIVACY SHOULD BE DISMISSED

2

3

### 1.   Plaintiffs Have Failed to Plead Standing to Assert a Privacy Claim.

4

To establish standing under Article III, Plaintiffs must plead facts sufficient to show that they

5

suffered or will suffer an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992);

6

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir.

7

2010).  Courts define an "injury in fact" as an invasion of a legally protected interest that is:

8

(1) "concrete"; (2) "particularized"; and (3) actual or imminent.  *Spokeo, Inc. v. Robins*, 136 S.Ct.

9

1540, 1548, 194 L.Ed.2d. 635 (2016).  "Particularized" simply means that Plaintiffs have been

10

affected "in a personal and individual way."  *Id*.  With respect to their privacy claim, Plaintiffs have

11

not explained what privacy rights have been invaded; and thus, they have not pleaded any "injury in

12

fact" to support standing to assert their privacy claim.

13

Plaintiffs allege that the contact-tracing provision of the June 5 public health order violates

14

Plaintiffs' right to privacy under the California Constitution (Compl. at ¶¶ 145-151), but the

15

Complaint does not identify what privacy interest is allegedly being invaded by asking a gathering

16

host to collect attendee contact information.  The Complaint states only that the contact-tracing

17

provision and the "enforcement" thereof "implicate Plaintiffs' legally protected privacy interest" (*id*.

18

at ¶ 145), but that allegation does not establish an injury in fact to these Plaintiffs.  The contract-

19

tracing provision at issue requires hosts at small outdoor gatherings to "maintain a list with the

20

names and contact information of all participants," and "[i]f a participant tests positive for COVID-

21

19, the host shall assist the County Public Health Department in any case investigation and contact

22

tracing associated with the gathering."[1]  (Compl., Ex. 12 at p. 4, section 5(b)(iv).)  The Complaint

23

does not allege that the two churches or their pastors have a legally protected privacy interest in

24

25

26

---

27

[1] The contact-tracing provision is authorized by California Health and Safety Code sections 120175,

28

120190, and 120215, which authorize case investigations and quarantine of contacts.

22

1  third-party attendee contact information, nor is it clear why they would.[2]  The Complaint also does

2  not allege or explain how collecting third-party contact information and/or sharing that contact

3  information to facilitate contact tracing would invade a legally protected privacy interest of the

4  churches or their pastors.  The Complaint does not even allege that Plaintiffs have collected third-

5  party contact information.

6       To the contrary, the churches and their pastors do not have any identifiable privacy interest in

7  the contact information of third-party attendees, which is all the contract-tracing provision obligates

8  them to collect, were Plaintiffs to conduct their worship services outdoors, which according to the

9  Complaint, they are not yet doing, nor is that the relief they are seeking.  Thus, based on the

10  Complaint, the contact-tracing provision poses no threat of particularized injury to Plaintiffs' privacy

11  interests, and the claim should be dismissed.

12       2.    Plaintiffs Have Failed to State a Privacy Claim.

13       To state a claim for a violation of the right to privacy under the California Constitution, a

14  plaintiff "must allege facts sufficient to show a legally protected privacy interest … ; a reasonable

15  expectation of privacy under the circumstances; and conduct by the defendant constituting a 'serious

16  invasion' of privacy such as constitutes "an egregious breach of the social norms underlying the

17  privacy right."  *San Francisco Apartment Assoc. v. City and Cnty. of San Francisco*, 142 F.Supp.3d

18  910, 933 (N.D. Cal. 2015) (citations omitted).  The Complaint does not satisfy this standard.

19       First, as noted above, Plaintiffs have failed to identify a "legally protected privacy interest,"

20  much less facts supporting such an allegation.  The Complaint does not allege or explain how

21  collecting third-party contact information and or sharing that contact information from outdoor

22  gatherings to facilitate contact tracing would invade a legally protected privacy interest of the

23  churches or their pastors, even assuming Plaintiffs sought to hold their worship services outdoors.

24  / /

25

26

27  [2] The Complaint also does not allege that the non-party attendees have a legally protected privacy

28  interest in the use of their contact information for contact tracing during the pandemic.

23

1    Second, there is no "reasonable expectation of privacy" of such function-specific contact

2    information under the highly unusual circumstances of this case.  The June 5 public health order

3    requires the collection of names and contact information from attendees at outdoor gatherings during

4    a global pandemic, solely for the purpose of contact tracing, should an attendee at the gathering test

5    positive for COVID-19.  There is no reasonable expectation among those who leave the relative

6    safety of their homes to attend gatherings during a pandemic that they should be able to withhold

7    their name and contact information and prevent subsequent contact tracing.  *See, e.g.*, Health and

8    Safety Code sections 120175, 120190, and 120215.

9    Third, and finally, the directive to non-commercial gatherings to collect names and phone

10   numbers of outdoor event attendees is not an egregious breach of social norms.  The directive is no

11   more unusual than a sign-in sheet.  Because Plaintiffs have not alleged facts establishing the

12   elements of a privacy claim, their fourth cause of action should be dismissed.

13   / /

14   / /

15   / /

16   / /

17   / /

18   / /

19   / /

20   / /

21   / /

22   / /

23   / /

24   / /

25   / /

26   / /

27   / /

28   / /

24

## V.  CONCLUSION

With the recent State public health order now in effect in the County, this Court can fashion no meaningful relief for Plaintiffs by issuing an injunction against County officials.  On that basis alone, this Complaint fails to present a "case or controversy."  Similarly, the Court has no jurisdiction to consider Plaintiffs' claims against the Supervisor Defendants because Plaintiffs do not—and cannot—allege any injury fairly traceable to those Defendants.  Plaintiffs have also failed to state a claim for the violation of any federal or state constitutional right.  The County's public health orders are intended to address the local impact of a global pandemic caused by a novel coronavirus that scientists, doctors, and public health officials are still working to understand.  The ongoing response of the County's Health Officer is not a violation of Plaintiffs' rights—it is a critical effort to protect lives and health.  For all these reasons, Plaintiffs' Complaint should be dismissed.

Dated:  July 20, 2020

Respectfully submitted,

JAMES R. WILLIAMS
County Counsel

By:   */s/ Robin M. Wall*
ROBIN M. WALL
Deputy County Counsel

Attorneys for County Defendants

2245157

Defendants' Notice of Motion and Motion: Memorandum of
Points and Authorities ISO Defendants' Motion to Dismiss

20-cv-03794