UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CALVARY CHAPEL SAN JOSE, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SARA CODY, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-03794-BLF<br><br>**ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>[Re: ECF 42] |

"'Our Federalism,' born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future." *Younger v. Harris*, 401 U.S. 37, 44-45 (1971). Our Federalism, as articulated by Justice Black, represents "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44. Amidst the struggling days of the COVID-19 pandemic, Plaintiffs Calvary Chapel San Jose, Southridge Baptist Church, Mike McClure, and Micaiah Irmler (collectively, "Plaintiffs") ask this Court to disregard Our Federalism and seek a temporary restraining order to enjoin 1) enforcement of a preliminary injunction issued by a state court that Plaintiffs have blatantly flouted and 2) the ongoing state court proceedings. *See* Appl. for TRO, ECF 42. After considering the Parties' briefing and oral arguments on December 17, 2020, the Court finds it inappropriate to interfere with the Santa Clara County Superior Court proceedings and invokes the *Younger* abstention doctrine. Accordingly, Plaintiffs' application for a temporary restraining order is DENIED.

## I. BACKGROUND

Every person in the United States is aware of the COVID-19 pandemic, the highly contagious nature of the disease, and the steps public health officers, states, and municipalities across the county have recommended to slow its deadly and destructive path. *See* Decl. of Sara H. Cody ("Cody Decl.") ¶ 6, ECF 55-1. Defendants Sara Cody, the Santa Clara County Public Health Officer; Erica Pan, the Acting California Public Health Officer; Gavin Newsom, the Governor of California; Santa Clara County Supervisors Mike Wasserman, Cindy Chavez, Dave Cortese, Susan Ellenberg, and Joe Simitian; and the County of Santa Clara (collectively, "Defendants") have relied on evolving scientific knowledge and data to implement countywide and statewide measures to curb the spread of COVID-19. Decl. of Marc Lipsitch ("Lipsitch Decl.") ¶ 24, ECF 55-2. Defendants, by their own admission, have decided to ignore the State and County public health orders. See Decl. of Mike McClure ("McClure Decl.") ¶¶ 2, 3, 9, ECF 43.

Plaintiffs resumed holding indoor religious services for 800-1000 people every Sunday starting on May 31, 2020. McClure Decl. ¶¶ 2, 3. Plaintiffs initially filed their complaint in this Court on June 9, 2020, alleging violations of the First Amendment's Free Exercise and Establishment Clauses, as well as a violation of their right to privacy under the California Constitution. *See* Compl., ECF 1. Plaintiffs did not serve Defendants until June 25, 2020. *See* Executed Summonses, ECF 6-11. One day earlier, on June 24, 2020, Santa Clara County ("the County") received an anonymous report of violations at the church. *See* Ex. N, Anonymous Written Complaint 274, ECF 56. Concerning Calvary Chapel San Jose, the author wrote, "I have gone there. The place is full, no masks and no social distancing." *Id.* On August 11, 2020, the County Board of Supervisors adopted Urgency Ordinance No. NS-9.921, declaring violations of the COVID-19 public health orders a public nuisance and authorizing civil administrative fines for violations. First Am. Compl. ("FAC") ¶ 63, ECF 38. On August 21, 2020, the County hand delivered a cease-and-desist letter to Calvary Chapel San Jose. Ex. M, Tr. of October 21, 2020 County Administrative Appeal Hearing ("Hearing Transcript") 32:10-23, ECF 56; Decl. of Melissa Gonzalez ("Gonzalez Decl.") ¶ 8, ECF 55-3. The letter demanded that Calvary Chapel San Jose immediately cease holding indoor gatherings; require participants to wear face coverings,

United States District Court
Northern District of California

1  maintain social distance, and refrain from singing; and submit a County-required social distancing
2  protocol. Gonzalez Decl. ¶ 8. Calvary Chapel San Jose ignored the letter and continued to host
3  large indoor gatherings with no mask or social distancing enforcement. *Id.* ¶¶ 9-74. For instance,
4  on Sunday, August 23, 2020, a County enforcement officer entered Calvary Chapel San Jose and
5  observed singing and "at least 100 people in the church who were not wearing face coverings and
6  not maintaining a distance of at least 6 feet apart." *Id.* ¶ 3, 10. In contrast, the enforcement officer
7  noted that a church next to Calvary Chapel San Jose was holding an outdoor worship service and
8  that attendees were wearing face coverings and maintaining a minimum of six feet of social
9  distancing, in compliance with the public health orders. *Id.* ¶ 9.

10  This evidence is undisputed—Plaintiff Mike McClure, the lead pastor at Calvary Chapel
11  San Jose, stated that the church has been holding indoor services since May 31, 2020, and plans to
12  continue to do so. McClure Decl. ¶¶ 1, 3, 9. McClure additionally stated that he "advised" people
13  inside the church to social distance and wear face masks and that the Church "provides" masks at
14  the entrance, but there is no mention of enforcing these safety measures. *Id.* ¶ 11. This stands in
15  stark contrast to the facts of *Roman Catholic Diocese of Brooklyn v. Cuomo*, where the Court
16  noted that the plaintiffs, who are houses of worship, "have complied with all public health
17  guidance, have implemented additional precautionary measures, and have operated at 25% or 33%
18  capacity for months without a single outbreak." ---- U.S. ----, 2020 WL 6948354, at *2 (Nov. 25,
19  2020).

20  As a result of Calvary Chapel San Jose's noncompliance with the cease-and-desist letter,
21  the County enforcement officers began issuing notices of violation to the church each time it held
22  an indoor gathering in violation of the public health orders. Gonzalez Decl. ¶¶ 9-74. Calvary
23  Chapel San Jose appealed the notices of violation and associated fines, and an administrative
24  hearing was held on October 21, 2020. *See* Hearing Transcript. At the hearing, Calvary Chapel
25  San Jose indicated that it intended to continue its noncompliant indoor gatherings as the County
26  continued to issue fines. Hearing Transcript 117:21-119:14. The hearing officer upheld the fines
27  and stated on the record that "It just seems to me that the church sort of just thumbed its nose at
28  the County, saying, 'We're just going to keep on doing what we're doing, and we don't care what


the law is.' We can't have that. We have to have compliance with the law." *Id.* 120:9-14, 120:20-121:4.

Before even receiving the anonymous complaint on June 24, 2020, the County had been in an informal dialogue with counsel for Calvary Chapel San Jose in attempt to secure the church's voluntary compliance with the State and County public health orders. Declaration of Jeremy A. Avila ("Avila Decl.") ¶¶ 3-6, ECF 56. The conversations started in May, and by September the County offered Calvary Chapel San Jose a proposal to resolve the violations and bring the church into compliance. *Id.* ¶¶ 4-5. Calvary Chapel San Jose declined the proposal on September 30, 2020. *Id.* ¶ 5.

With efforts at voluntary compliance and amicable resolution proving futile, the County counsel and Santa Clara County District Attorney jointly initiated an enforcement action against Calvary Chapel San Jose and McClure in Santa Clara County Superior Court on October 27, 2020. Ex. O., Compl., ECF 56. The complaint alleged two state causes of action: 1) violation of State and County public health orders and 2) public nuisance. *See id.* On October 29, 2020, the state court plaintiffs filed an ex parte request for a temporary restraining order, which Calvary Chapel San Jose opposed by asserting federal constitutional defenses. *See* Ex. L, State Court Docket, ECF 56; Ex P., Decl. of Mike McClure in Opp'n to Defs' Ex Parte Appl. for TRO, ECF 56. After a November 2, 2020 hearing, the state court granted the temporary restraining order and enjoined Calvary Chapel San Jose and McClure from conducting any gathering that did not comply with both the State and County public health orders and operating indoors or outdoors without the prior submission and implementation of a social distancing protocol. Ex. B., November 2, 2020 Order, ECF 42-2.

As the County's investigation and informal efforts to obtain voluntary compliance continued, the County filed a motion to dismiss the federal action on July 17, 2020. *See* Mot., ECF 17. On November 5, 2020, this Court held a hearing on the motion to dismiss and issued a written order on the same day dismissing all claims with leave to amend. Order, ECF 30. This case was without an operative complaint until Plaintiffs filed their amended complaint on November 25, 2020. *See* FAC.

Calvary Chapel San Jose ignored the November 2 state court temporary restraining order and continued to hold indoor gatherings that violated the order every day. Gonzalez Decl. ¶¶ 36-74. On November 24, 2020, the state court issued an Order to Show Cause against Calvary Chapel San Jose and McClure and set a hearing for contempt proceedings. *See* State Court Docket. On the same day, the state court issued a modified temporary restraining order at the request of the County due to the change in public health orders based on the increased number of COVID-19 infections in the County. *See Id*; Order ("State Court Order") 2, ECF 42-5. On December 1, 2020, the state court held a hearing on the County's request for a preliminary injunction, and that was granted in a written order on December 4, 2020. Minute Order, ECF 42-4; State Court Order. Superior Court Judge Peter H. Kirwan considered the federal constitutional arguments advanced by Calvary Chapel San Jose and McClure and the Supreme Court's newly issued guidance in *Diocese of Brooklyn*, and he decided that the issuance of a preliminary injunction requiring Calvary Chapel San Jose and McClure to comply with existing public health orders was appropriate. State Court Order 7-8.

At the contempt hearing on December 8, 2020, the state court held Calvary Chapel San Jose and McClure in contempt for violating the November 2 temporary restraining order and ordered them to pay $55,000 in fines. Opp'n 9, ECF 55. Plaintiffs' counsel confirmed the amount of the fine at this Court's December 17, 2020 hearing.

Against this backdrop, Plaintiffs filed an ex parte application for a temporary restraining order in this Court on December 8, 2020. *See* Appl. for TRO. Plaintiffs ask this Court to enjoin Defendants from "enforcing the Preliminary Injunction in the matter of *the People of the State of California, et al. v. Calvary Chapel San Jose, et al*., Case No. 20CV372285, or any such other future orders from the Superior Court limiting, barring, or prohibiting indoor religious assembly and indoor religious singing(worship) against Plaintiffs or otherwise interfering with Plaintiffs' religious gatherings." Proposed Order, ECF 42-9.  In effect, Plaintiffs ask that they be exempt from all public health restrictions. The Court ordered Defendants to respond to Plaintiffs' filing by December 14, 2020. *See* Order, ECF 51. At the Court's invitation, Plaintiffs submitted a reply brief on December 16, 2020. *See* Reply, ECF 62. The Court heard oral argument from the Parties

on December 17, 2020.

## II. LEGAL STANDARD

Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is an "extraordinary and drastic remedy," that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008) (internal citations omitted). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

## III. DISCUSSION

This Court is mindful that its "obligation to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (citing *Colorado River Water Conservation Distr. v. United States*, 424 U.S. 800, 871 (1976)). An exception to this general rule is the doctrine of abstention, which involves "a decision by a federal court to decline to exercise jurisdiction over the underlying claims for reasons of comity." *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1058 (9th Cir. 2016) (citations omitted). In civil cases, *Younger* abstention is appropriate where a state court proceeding

6

>(1) is ongoing; (2) is a quasi-criminal enforcement action or involves a state's interest in enforcing the orders and judgments of its courts; (3) implicates important state interests; (4) provides an adequate opportunity to raise federal challenges; and (5) would be enjoined by the federal court action or where the federal proceeding would have the practical effect of doing so, and no exception to Younger applies.

*Bristol-Myers Squibb Co. v. Connors*, 444 F. Supp. 3d 1231, 1234 (D. Haw. 2020) (citing *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018)), *aff'd*, 979 F.3d 732 (9th Cir. 2020). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 296 (1970). The Supreme Court has held that abstention is appropriate with respect to Superior Court contempt proceedings. *See Juidice v. Vail*, 430 U.S. 327, 336 (1977) ("federal-court interference with the State's contempt process is an offense to the State's interest . . . likely to be every bit as great as it would be were this a criminal proceeding.") (alteration in original) (quotations and citation omitted); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987) (applying *Juidice*'s holding that a federal court should have abstained from adjudicating a challenge to a State's contempt process).

Plaintiffs do not contest that the state court proceeding is an enforcement action, implicates important state interests, provides an opportunity to raise federal challenges, and would be enjoined by the federal court action. Indeed, the Court in *Diocese of Brooklyn* recently affirmed that "[s]temming the spread of COVID-19 is unquestionably a compelling state interest." 2020 WL 6948354, at *2. In their reply brief, Plaintiffs challenge whether the state court proceedings are "ongoing" as required under *Younger*. While "[a]rguments raised for the first time in a reply brief are waived," *Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) (citation omitted), the Court nonetheless finds that the state court proceedings are, in fact, ongoing, as a preliminary injunction is just the beginning, not the end, of a case. The County confirmed this at the December 17, 2020 hearing by informing the Court that it has begun serving discovery requests in the state court action. Moreover, the Court finds that the case Plaintiffs cite to support their argument that the state court proceedings are not "ongoing," *Hicks v. Miranda*, 422 U.S. 332,

7

349 (1975), actually supports the opposite conclusion. In *Hicks*, the Court held, "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of Younger v. Harris should apply in full force." *Id.* This federal case has not yet advanced past the pleadings stage, and there was no operative complaint in this case when the state court set the contempt hearing.

Plaintiffs argue that there are extraordinary circumstances here that merit an exception to *Younger* abstention. Appl. For TRO 6-7. Federal courts will decline to abstain under *Younger* in "extraordinary circumstances where irreparable injury can be shown." *Brown v. Ahern*, 676 F.3d 899, 903 (9th Cir. 2012). Irreparable injury alone, without a showing of great and immediate need, is not enough. *Younger*, 401 U.S. at 46. "The very nature of 'extraordinary circumstances,' of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury." *Moore v. Sims*, 442 U.S. 415, 433 (1979) (quoting *Kugler v. Helfant*, 421 U.S. 117, 124-25 (1975)). "But whatever else is required, such circumstances must be 'extraordinary' in the sense of creating an *extraordinarily pressing need for immediate federal equitable relief*, not merely in the sense of presenting a highly unusual factual situation." *Moore*, 442 U.S. at 433 (quoting *Kugler*, 421 U.S. at 125) (emphasis added).

Plaintiffs have not presented any evidence demonstrating an extraordinary circumstance— the Court certainly cannot make that determination based on Plaintiffs' argument that "[t]his is a know it when you see it situation." Appl. For TRO 7. Plaintiffs cite *Diocese of Brooklyn* for the proposition that "[t]he loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." 2020 WL 6948354, at *3 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). *Diocese of Brooklyn*, though, did not involve abstention and did not evaluate what constitutes an "extraordinary circumstance" under *Younger*. Plaintiffs have not cited, and this Court is not aware of, any Supreme Court or Ninth Circuit case holding that all First Amendment challenges are extraordinary and immediate under *Younger*. Absent additional evidence, the Court declines to make such a finding on this record, Accordingly, the Court finds that no exception to *Younger* applies, and the Court will abstain from

8

enjoining the state court proceedings and enforcement action.

## IV. ORDER

The Court acknowledges the importance of First Amendment freedoms, as recently reiterated by the Supreme Court in *Diocese of Brooklyn* and the Ninth Circuit in *Dayton Valley v. Sisolak*, ---- F.3d ----, 2020 WL 7350247, at *3 (9th Cir. Dec. 15, 2020). The First Amendment, though, is not the issue before this Court on this narrowly focused temporary restraining order seeking to enjoin the state court proceedings. Our Federalism properly places this dispute in the more-than-capable hands of the Santa Clara County Superior Court. The asserted claims in this federal action are not affected by this order.

Plaintiffs' application for a temporary restraining order is DENIED.

Dated: December 18, 2020

_____
BETH LABSON FREEMAN
United States District Judge