IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CALVARY CHAPEL SAN JOSE ET AL, | ) | CV-20-3794-BLF |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | DECEMBER 17, 2020 |
| | ) | |
| CODY ET AL, | ) | PAGES 1-67 |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |
| _____ | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE BETH LABSON FREEMAN
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S


FOR THE PLAINTIFF:      **BY:  MARIAH ROSE GONDEIRO**
                        TYLER & BURSCH, LLP
                        25026 LAS BRISAS ROAD
                        MURRIETA, CA 92562


FOR THE DEFENDANT:      **BY:  ROBIN MICHAEL WALL**
CODY                    **MELISSA R. KINIYALOCTS**
                        OFFICE OF THE COUNTY COUNSEL
                        COUNTY OF SANTA CLARA
                        70 WEST HEDDING STREET
                        EAST WING, 9TH FLOOR
                        SAN JOSE, CA 95110

APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER:      SUMMER FISHER, CSR, CRR
                              CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

```
 1          APPEARANCES CONTINUED:

 2      FOR THE DEFENDANT:      BY:  TODD GRABARSKY
                                DEPUTY ATTORNEY GENERAL
 3                              300 S. SPRING ST. STE. 1700
                                LOS ANGELES, CA 90013
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          SAN JOSE, CALIFORNIA              DECEMBER 17, 2020

 2                   P R O C E E D I N G S

 3          (COURT CONVENED AT 2:30 P.M.)

 4              THE COURT:  HELLO EVERYONE.  THANK YOU FOR JOINING US

 5      THIS AFTERNOON ON ZOOM.  I WISH WE COULD BE IN THE COURTROOM.

 6      I KNOW IT WOULD BE A BETTER EXPERIENCE, BUT I KNOW YOU HAVE ALL

 7      DONE THIS BEFORE AND WE WILL MAKE THE BEST OF IT.

 8              WE ARE GOING TO CALL THE CASE AND GET YOUR APPEARANCES

 9      OFFICIALLY ON THE RECORD AND THEN WE WILL GET DOWN TO WORK.

10              THE CLERK:  CALLING CASE 20-3794.  CALVARY CHAPEL

11      SAN JOSE, ET AL. VERSUS CODY, ET AL.

12              COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES,

13      BEGINNING WITH PLAINTIFF, AND THEN MOVING TO DEFENDANTS.

14              MS. GONDEIRO:  MARIAH GONDEIRO, COUNSEL FOR THE

15      PLAINTIFFS.

16              THE COURT:  GOOD AFTERNOON.

17              MR. WALL:  GOOD AFTERNOON, YOUR HONOR.

18          ROBIN WALL ON BEHALF OF THE COUNTY DEFENDANTS.

19              THE COURT:  MR. WALL.

20              MS. KINIYALOCTS:  AND MELISSA KINIYALOCTS ON BEHALF

21      OF THE COUNTY DEFENDANTS.

22              THE COURT:  HELLO.

23              MR. GRABARSKY:  GOOD AFTERNOON.

24          DEPUTY ATTORNEY GENERAL TODD GRABARSKY, APPEARING

25      SPECIALLY ON BEHALF OF THE STATE DEFENDANTS WHO HAVE NOT YET
```

1      BEEN SERVED.

2          I'M JOINED BY MY CO-COUNSEL, LISA PLANK, DEPUTY ATTORNEY

3      GENERAL.  I BELIEVE SHE MIGHT BE HAVING SOME TECHNICAL

4      DIFFICULTIES, BUT SHE'S HERE.

5              THE COURT:  OKAY.  GOOD.  THANK YOU.

6          AND MR. GRABARSKY, I APPRECIATE YOU JOINING IN.  I SAW THE

7      REQUEST TO JOIN IN THE ARGUMENTS.  I UNDERSTAND THE STATE'S

8      CIRCUMSTANCE NOW, HAVING NOT BEEN SERVED, AND OF COURSE A TRO

9      CAN BE HEARD WITHOUT THE NEED TO HAVE COMPLETED THE SERVICE.

10          SO LET ME GIVE YOU MY INITIAL THOUGHTS.  I CERTAINLY WANT

11     A FULL ARGUMENT ON THESE ISSUES.

12          MS. GONDEIRO, I AM INCLINED TO GRANT -- OR I'M SORRY, TO

13     DENY THE TRO ON THE BASIS OF YOUNGER ABSTENTION.  SO I

14     CERTAINLY WANT TO SPEND QUITE A BIT OF TIME ON THAT.

15          I APPRECIATE THAT THE SCOPE OF THE REQUESTED RELIEF IS

16     VERY NARROW, AND I THINK THAT FOR ALL RESTRAINING ORDERS, THAT

17     THAT IS A WISE WAY TO GO FORWARD, AND YOURS CERTAINLY IS NARROW

18     AND DIRECTED AT THE CONDUCT YOU ARE SEEKING TO STOP.

19          BUT I THINK THAT THE ACTION BY THE STATE THAT YOU ARE

20     SEEKING TO HALT IS A -- ALTHOUGH IT'S AN ENFORCEMENT ACTION AND

21     IT ALSO HAS A CONTEMPT PROVISION THAT GOES DIRECTLY TO THE

22     AUTHORITY OF THE COURT, AND IT'S CLEAR FROM JUDGE KERWIN'S

23     ORDER, THAT YOU HAVE BEEN GIVEN THE OPPORTUNITY AND WILL

24     CONTINUE TO HAVE THE OPPORTUNITY TO RAISE AND ADDRESS THE

25     CONSTITUTIONAL ISSUES THAT ARE BEFORE THIS COURT.

1        IT DOES APPEAR TO ME, I CAN'T SEE ANY ARGUMENT THAT THAT

2   ACTION IS NOT ONGOING, THERE'S ONLY A PRELIMINARY INJUNCTION,

3   AND THAT IS A TEMPORARY ORDER.

4        AND ON YOUR ISSUE OF IRREPARABLE HARM UNDER THE YOUNGER

5   EXCEPTION, IN YOUR BRIEF, I THINK YOU CONFLATE THE STANDARD FOR

6   IRREPARABLE HARM IN ORDER TO OBTAIN A TRO OR PRELIMINARY

7   INJUNCTION WITH THE MUCH HIGHER EXTRAORDINARY LEVEL THAT YOU

8   NEED TO SHOW TO SHOW IRREPARABLE HARM IN THE CONTEXT OF YOUNGER

9   ABSTENTION.

10        AND THE CASES YOU CITE IN SUPPORT OF IRREPARABLE HARM, AND

11   ESPECIALLY THE BROOKLYN DIOCESE CASE, ARE DEALING WITH THE

12   STANDARD IRREPARABLE HARM FOR AN INJUNCTION AND NOT UNDER

13   YOUNGER.  AND I READ THOSE CASES AS REQUIRING SOMETHING MORE, A

14   STRONGER SHOWING, AND I THINK UNDER THE CIRCUMSTANCES HERE WITH

15   THE ABILITY TO ARGUE THE CONSTITUTIONAL ISSUES IN STATE COURT,

16   THAT CAUSES ME TO CONCLUDE THAT THE EXCEPTION DOES NOT EXIST.

17        IF I REACH THE ISSUE OF YOUNGER ABSTENTION, I WOULD MAKE

18   NO RULING ON THE UNDERLYING SUBSTANCE OF THE REQUEST FOR

19   RESTRAINING ORDER, AND I THINK THAT'S REQUIRED OF ME.

20        I WOULD LIKE TO HEAR YOUR ARGUMENT ON IT, AND I HAVE SOME

21   QUESTIONS, BUT I AM NOT OFFERING ANY TENTATIVE COMMENTS ON IT

22   AT ALL BECAUSE I'M ACTUALLY NOT EXPECTING THAT I WILL GO THERE.

23   IF LATER IN THE ARGUMENT I CHANGE MY MIND OR FEEL THAT I MIGHT,

24   I MAY ADDRESS THAT.

25        BUT THE ONE THING, MS. GONDEIRO, THAT I DO NEED FROM YOU

1    SO THAT IF I DO ADDRESS THAT, I HAVE NO IDEA WHICH STATE AND

2    COUNTY ORDERS YOU ARE CONTESTING.  AND I TRIED TO FOLLOW YOUR

3    COMPLAINT AND I COPIED ALL THE EXHIBITS, BUT YOU HAVE WEBSITES

4    THAT YOU'VE DIRECTED ME TO, WHICH IS COMPLETELY INADEQUATE

5    BECAUSE THE WEBSITES CHANGE AND SOME OF THEM NO LONGER EXIST.

6    AND SO WHEN I OPEN A WEBSITE TODAY, I HAVE NO IDEA IF IT'S THE

7    ONE THAT YOU ARE REFERRING TO.

8         SO I NEED YOU -- I'VE GOT THE FIRST AMENDMENT COMPLAINT IN

9    THE EXHIBITS AND IF YOU'VE GOT HARD COPIES OF THOSE EXHIBITS OR

10   AT LEAST CAN GIVE ME THE ACTUAL DATE OF THE ORDER IN QUESTION,

11   I WILL FIND IT.  AND THAT'S NOT A STUMBLING BLOCK, BUT I NEED

12   TO BE VERY PRECISE ON THIS.

13        WELL, I THINK I WILL LEAVE IT AT THAT.  MS. GONDEIRO, THIS

14   IS YOUR REQUEST FOR TEMPORARY RESTRAINING ORDER, SO I WANT TO

15   GIVE YOU THE OPPORTUNITY TO START.  I WILL GIVE YOU THE LAST

16   WORD AS WELL.

17        MS. GONDEIRO:  THANK YOU SO MUCH, YOUR HONOR.

18        YOUR HONOR, THIS HEARING CONCERNS THE PREEMINENT RIGHT

19   PROTECTED UNDER THE CONSTITUTION.  THE RIGHT TO ASSEMBLE

20   WORSHIP.  THE EXECUTIVE BRANCH IN CALIFORNIA HAS IGNORED THIS

21   RIGHT, AND NOW THE CALIFORNIA STATE COURT, THREE TIMES, HAS

22   IGNORED CLEAR SUPREME COURT AND NINTH CIRCUIT PRECEDENT WHICH

23   UNEQUIVOCALLY STATES THE RESTRICTIONS, AS CONSTRUED IN

24   CALIFORNIA, ARE UNCONSTITUTIONAL, THEREFORE WE ASK THIS COURT

25   TO ENJOIN THE STATE'S PRELIMINARY INJUNCTION AND ISSUE A

1    TEMPORARY RESTRAINING ORDER PREVENTING THE DEFENDANTS FROM

2    ENFORCING THEIR UNCONSTITUTIONAL ORDERS.

3         AS A THRESHOLD MATTER, THIS COURT HAS THE AUTHORITY TO

4    INTERVENE ON MITCHUM V. FOSTER.  THE ANTI-INJUNCTION ACT IS NOT

5    VIOLATED WHEN STATE PROCEEDINGS ARE ENJOINED IN RESPONSE TO

6    CONSTITUTIONAL CLAIMS BROUGHT UNDER SECTION 1983.  ALL OF OUR

7    CONSTITUTIONAL CLAIMS ARE BROUGHT UNDER SECTION 1983.

8         FURTHER, THE COURT CANNOT ABSTAIN WHEN THERE'S IRREPARABLE

9    INJURIES THAT IS GREAT AND IMMEDIATE OR AN UNUSUAL

10   CIRCUMSTANCE.  A STATE CREATES AN IRREPARABLE INJURY THAT IS

11   GREAT AND IMMEDIATE, IF THE EFFECT ON A PLAINTIFF'S SPEECH

12   OUTWEIGHS BOTH THE NEED FOR THE GOVERNMENT TO CONTROL THE

13   CONDUCT BEING REGULATED AND THEIR LACK OF ALTERNATIVE MEANS FOR

14   DOING SO.

15        SANTA CLARA COUNTY WILL LIKELY ARGUE THERE IS A GREAT NEED

16   FOR THEM TO STALK AND HARASS THE CHURCH SERVICES TO

17   ENSURE COMPLIANCE --

18        THE COURT:  I'M SORRY, I DON'T THINK THERE'S ANY

19   ALLEGATION BY THE COUNTY THAT THEY WANT TO HARASS YOU.  I DON'T

20   REMEMBER THEM SAYING THAT THEY WANT TO COME IN AND HARASS.

21        MS. GONDEIRO:  WELL, THAT IS THE UNFORTUNATE EFFECT

22   OF THIS INJUNCTION, IS THAT BY THEM INTERFERING WITH CHURCH

23   SERVICES --

24        THE COURT:  THERE HAS BEEN NO EVIDENCE OF THAT.  YOU

25   RAISE THAT -- YOU THREW THAT IN AT THE END IN YOUR REPLY BRIEF,

1     IT WAS NOT RAISED IN YOUR INITIAL PAPERS.

2          MS. GONDEIRO:  LIKE I SAID, IT'S THE UNFORTUNATE --

3          THE COURT:  IT WAS NOT RAISED, AND IT IS AN

4     EXCEPTION.  YOU DID NOT RAISE BAD FAITH AND HARASSMENT IN YOUR

5     PAPERS AND I WON'T CONSIDER IT.

6          MS. GONDEIRO:  OKAY.  THAT'S FINE, YOUR HONOR.

7     THANK YOU.

8     SANTA CLARA COUNTY WILL ALSO LIKELY SAY THAT OUR CLIENTS

9     ARE LIKELY TO CONTRIBUTE TO A SUPER SPREADER EVENT, BUT THAT IS

10    ALL SPECULATIVE AT THIS POINT.  THEY HAVE YET TO CONTRIBUTE TO

11    ANY KNOWN COVID-19 CASE, AND THE DEFENDANTS DO NOT HAVE

12    EVIDENCE OTHERWISE.

13    FURTHER, AS EXPRESSED IN DR. BHATTACHARYA'S DECLARATION,

14    SANTA CLARA COUNTY CANNOT CLAIM THAT COVID 19 IS SPREAD AT A

15    HIGHER RATE THAN NORMAL WHEN PEOPLE GATHER AT CHURCHES TO SING.

16    INDEED, OUR EXPERT CONCLUDED THAT HE WAS UNAWARE OF ANY

17    EVIDENCE TO SUGGEST GATHERINGS ARE MORE LIKELY TO RESULT IN THE

18    SPREAD OF THE COVID VIRUS THAN MALLS, STORES AND PUBLIC

19    TRANSIT.

20    OPPOSING COUNSEL MAY CLAIM OUR EXPERT RELIES ON BAD -- OR

21    OUR EXPERT MAY RELY ON BAD SCIENCE, BUT THAT WOULD BE

22    INAPPROPRIATE TO SAY AT THIS STAGE UNTIL DISCOVERY IS COMPLETED

23    AND A FULL TRIAL ON THE MERITS IS CONDUCTED, WE WILL NOT KNOW

24    WHOSE SCIENCE IS BETTER.

25    REGARDING THE HARM TO THE PLAINTIFFS, THEY WILL SUFFER

1    GREAT AND IMMEDIATE HARM THAT DEFINITELY RISES TO THE LEVEL OF

2    EXTRAORDINARY HARM.  AS THE SUPREME COURT AFFIRMED IN <u>ROMAN</u>

3    <u>CATHOLIC DIOCESE OF BROOKLYN</u> THE LOSS OF FIRST AMENDMENT

4    FREEDOMS, FOR EVEN MINIMAL PERIODS, UNQUESTIONABLY CONSTITUTES

5    IRREPARABLE HARM.

6        THIS ISN'T JUST A MINIMAL PERIOD, YOUR HONOR.  THEY ARE

7    ASKING FOR -- THEY ARE ASKING THAT OUR CLIENTS COMPLETELY SHUT

8    DOWN THEIR CHURCH FOR MONTHS.  THIS WILL UNDOUBTEDLY LEAD TO

9    IRREPARABLE INJURY.

10        THE COURT:  I WASN'T AWARE OF AN EXISTING ORDER THAT

11    LASTED MORE THAN THREE WEEKS.  I THOUGHT THE GOVERNOR'S ORDER,

12    OR THE LOCAL ORDER YESTERDAY FOR THE BAY AREA, LASTS UNTIL

13    JANUARY 8TH.  AM I MISTAKEN ON THAT?

14        MS. GONDEIRO:  SO THE REGIONAL ORDER LASTS FOR THREE

15    WEEKS, BUT THEN IF I UNDERSTAND CORRECTLY, IT WOULD GO BACK TO

16    THE BLUEPRINT AND THEY WILL STILL BE UNDER TIER 1.  AND UNDER

17    TIER 1, INDOOR SERVICES ARE COMPLETELY BANNED.  BUT EVEN UNDER

18    TIER 2 AND TIER 3, THE LIMITATIONS ARE STILL PRETTY SEVERE

19    BECAUSE ONLY 100 PEOPLE CAN ATTEND, WHEN THE CHURCH CAN FIT UP

20    TO 1,800 PEOPLE, AND 800 PEOPLE GO TO THAT CHURCH.

21        THE COURT:  PASTOR MCCLURE GAVE ME THAT NUMBER.  IS

22    THAT -- I DIDN'T -- I DON'T RECALL THAT.  IN HIS DECLARATION,

23    HE INDICATED THAT THAT WAS THE FIRE CODE OCCUPANCY.  AND I ONLY

24    SAY IT BECAUSE I'M NOT FAMILIAR WITH YOUR FACILITY.

25        MS. GONDEIRO:  UH-HUH.  HE DID STATE IN HIS

1    DECLARATION THAT THE BUILDING COULD FIT UP TO 1,800 PEOPLE.

2         THE COURT:  I HAVE NO DOUBT IT COULD FIT THAT MANY,

3    AND MY CHAMBERS COULD FIT 200, BUT THE FIRE MARSHAL WOULD NOT

4    APPROVE OF IT.  AND THIS IS AN IMPORTANT POINT, ACTUALLY,

5    BECAUSE --

6         MS. GONDEIRO:  OKAY.

7         THE COURT:  I DON'T KNOW THAT I WILL GET TO IT, BUT I

8    DON'T -- AND I JUST -- AND CONFIRMING, HE DID NOT REPRESENT A

9    FIRE MARSHAL CERTIFICATION OF THE FACILITY, WHICH OF COURSE

10   WOULD BE POSTED IN THE CHURCH, BECAUSE I THINK THAT'S REQUIRED

11   BY LAW.  BUT MS. KINIYALOCTS MAY HAVE THAT INFORMATION FOR ME.

12   I'M JUST UNAWARE BECAUSE I'VE NEVER VISITED YOUR CHURCH.

13        MS. GONDEIRO:  OKAY.

14      SO YOUR HONOR, WITH THAT SAID, NOT ONLY DOES THE COURT

15   HAVE A RIGHT TO INTERVENE, IT ACTUALLY HAS A DUTY TO INTERVENE

16   IN LIGHT OF BROOKLYN DIOCESE.

17        DEFENDANT'S CLAIM, YOUR HONOR, THAT --

18        THE COURT:  SO IN THE BROOKLYN DIOCESE CASE, THE CASE

19   DIDN'T COME UP IN THIS SAME PROCEDURAL POSTURE, SO I DON'T --

20   THE UNITED STATES SUPREME COURT DID NOT ADDRESS ABSTENTION IN

21   BROOKLYN DIOCESE.

22        MS. GONDEIRO:  YES, IT WAS AN INJUNCTION, YOUR HONOR.

23      BUT THE COURT MADE CLEAR, YOU KNOW, THAT THESE TYPES OF

24   CAPACITY LIMITATIONS WITH WHICH THE STATE AND COUNTY IS SEEKING

25   TO ENFORCE, ARE UNCONSTITUTIONAL AND ALSO LEAD TO IRREPARABLE

1    HARM.

2              THE COURT:  IS IT YOUR POSITION THAT IF ANY TYPE OF

3    ACTIVITY IS ALLOWED TO GO FORWARD, THAT THE PLACES OF WORSHIP

4    ARE ALLOWED -- MUST BE GIVEN THE SAME OCCUPANCY LIMITS?

5         SO FOR EXAMPLE, IF GROCERY STORES, I BELIEVE A STANDALONE

6    GROCERY STORE TODAY CAN HAVE A 35 PERCENT OCCUPANCY, AND IT'S

7    CONSIDERED ESSENTIAL.  AND UNDER THESE LIMITS, THE PLACES OF

8    WORSHIP ARE IN THE CATEGORY OF GATHERINGS, WHICH IS NOT GROCERY

9    STORES, I THINK WE CAN ALL AGREE ON THAT.  SO WOULD IT BE YOUR

10   POSITION THAT IF GROCERY STORES CAN OPERATE WITH 35 PERCENT,

11   THEN PLACES OF WORSHIP SHOULD BE GIVEN THE SAME?

12             MS. GONDEIRO:  YES, YOUR HONOR.

13        AND I WOULD ALSO SAY THAT THAT'S WHAT THE SUPREME COURT

14   SAYS TOO.  THE SUPREME COURT APPLIES A BROAD COMPARISON AND

15   STATED CLEARLY THAT THE GOVERNOR CUOMO'S CAPACITY LIMITATIONS

16   WERE UNCONSTITUTIONAL BECAUSE IT TREATED BUSINESSES OR

17   RELIGIOUS SERVICES MORE SEVERELY, AND IF JUSTICE KAVANAUGH AND

18   GORSUCH MENTION RETAIL STORES, BICYCLE SHOPS, MALLS, THAT'S

19   EXACTLY WHAT'S HAPPENING HERE, YOU HAVE RELIGIOUS SERVICES THAT

20   IN TIER 1, ARE COMPLETELY BANNED, WHILE MALLS, RETAIL STORES,

21   AND PUBLIC TRANSIT ARE ALLOWED TO REMAIN OPEN ON A CERTAIN

22   CAPACITY PERCENTAGE.

23             THE COURT:  OF COURSE THAT'S NOT THE POSITION YOU

24   TOOK IN YOUR PAPERS, BECAUSE IN YOUR PAPERS, YOU SUGGEST -- YOU

25   ARGUE AND YOU PROVIDE ME WITH AN ORDER BARRING THE COUNTY FROM

1      PROHIBITING INDOOR RELIGIOUS ASSEMBLY.

2          SO THAT WOULD MEAN THAT YOUR ENTIRE MEMBERSHIP OF 1,800

3      COULD COME IN ON SUNDAY MORNING UNDER THE ORDER THAT YOU GAVE

4      ME.  IS THAT STILL YOUR POSITION?

5          MS. GONDEIRO:  WE WOULD LIKE, YOUR HONOR, THAT THE

6      COUNTY AND THE STATE TREAT OUR CLIENTS IN THE SAME WAY THAT

7      THEY TREAT OTHER ESSENTIAL BUSINESSES.  LIKE I SAID, THE

8      BUILDING COULD FIT UP TO 1,800 PEOPLE.  IF THE COUNTY ALLOWS

9      THEM TO, AT THE MINIMUM, SEAT UP TO 25 PERCENT, THAT'S A BIG

10     CHUNK OF THEIR CONGREGATION.

11         THE COURT:  THE RELIEF YOU REQUESTED IN YOUR PAPERS

12     IS NOT THE RELIEF YOU ARE ASKING FOR TODAY.

13         MS. GONDEIRO:  THE RELIEF, YOUR HONOR, THAT I ASKED

14     IN THE PROPOSED ORDER, IS THAT THIS COURT ENJOIN THE

15     PRELIMINARY INJUNCTION.

16         THE COURT:  NO, WELL, THAT'S NOT WHAT IT SAYS.  THAT

17     THEY BE ENJOINED DIRECTLY OR INDIRECTLY FROM TAKING ANY ACTION

18     TO ENFORCE IT OR ANY OTHER SUCH FUTURE ORDERS OF THE COURT

19     LIMITING, BARRING OR PROHIBITING INDOOR RELIGIOUS ASSEMBLY.

20         SO YOU DID ASK FOR MORE.  I JUST ALWAYS NEED CLARITY ON

21     WHAT YOU ARE ASKING FOR, FOR TEMPORARY RESTRAINING ORDER OR

22     PRELIMINARY INJUNCTION.  EVERY JUDGE STARTS WITH THE REQUESTED

23     RELIEF AND WE WORK BACKWARDS BECAUSE THAT'S THE ONLY WAY TO

24     EVALUATE WHAT YOU ARE REQUESTING.  SO THAT'S WHY I'M PRESSING

25     ON THIS, EVEN THOUGH I DON'T -- I WANT TO KNOW WHAT YOU ARE

1    ASKING FOR.  AS I SAY, I DON'T THINK I'M GOING TO GET TO THIS,

2    BUT THESE ARE QUESTIONS I WOULD HATE TO HAVE IF I THEN LET YOU

3    GO AND WAS SITTING HERE TRYING TO FIGURE OUT WHAT TO DO.

4         SO GO AHEAD, PLEASE.

5              MS. GONDEIRO:  NO.  THANK YOU, YOUR HONOR.  AND I

6    APPRECIATE YOU RAISING THOSE QUESTIONS.

7         I WANT TO GO BACK TO ABSTENTION BECAUSE I KNOW THAT THAT'S

8    THE VERY IMPORTANT POINT YOU MAKE.

9              THE COURT:  OKAY.

10             MS. GONDEIRO:  DEFENDANTS CLAIM THIS COURT SHOULD

11   ABSTAIN FROM ENJOINING THE SUPERIOR COURT'S PROCEEDINGS IN

12   LIGHT OF YOUNGER, BUT WHAT THE DEFENDANTS SEEM TO FORGET IS

13   THAT THE PLAINTIFFS ACTUALLY HAD AN ONGOING CASE IN FEDERAL

14   COURT, NOT THE OTHER WAY AROUND.

15        THEY ARE TRYING TO REALLY CHANGE THE NARRATIVE, BUT THE

16   FACTS ARE WE FILED THIS LAWSUIT IN FEDERAL COURT ON JUNE 6TH.

17   PLAINTIFFS SAT ON THEIR HANDS FOR FIVE MONTHS, THEY DID

18   NOTHING, THEY DID NOTHING IN STATE COURT, THEY DID NOT FILE

19   ANYTHING UNTIL THE END OF OCTOBER, RIGHT BEFORE A HEARING ON

20   THE MERITS, RIGHT BEFORE WE HAD A HEARING ON THE MOTIONS TO

21   DISMISS.

22        SO THEIR LAWSUIT, YOUR HONOR --

23             THE COURT:  WELL, WHAT CASE DO YOU POINT ME TO THAT

24   REQUIRES THAT THE STATE COURT ACTION BE FILED IN ADVANCE OF THE

25   FEDERAL ACTION?  I FOUND NONE.  I READ ALL THE CASES YOU CITED

1    TO ME, AND IF I MISREAD THEM, I WOULD APPRECIATE YOU POINTING

2    ME TO ONE THAT SAYS THAT THE STATE CASE MUST BE FIRST FILED AS

3    OPPOSED TO ONGOING.

4           MS. GONDEIRO:  SO THE STATE CASE DOESN'T NEED TO BE

5    FIRST FILED, YOUR HONOR, WHAT'S IMPORTANT IS THAT IT NOT BE

6    FILED BEFORE ANY PROCEEDING ON THE MERITS, BUT WE WERE RIGHT IN

7    THE MIDST OF A HEARING ON THE MERITS WHEN THEY WENT TO STATE

8    COURT TO SEEK INTERVENTION.

9           THE COURT:  WELL, AND OF COURSE AS A RESULT OF THAT

10   HEARING, THERE WAS NO OPERATIVE COMPLAINT BECAUSE I GRANTED THE

11   MOTION TO DISMISS.

12          MS. GONDEIRO:  YES, BUT THERE WAS --

13          THE COURT:  WELL, THERE WAS NO OPERATIVE COMPLAINT.

14   THERE WERE NO CLAIMS PENDING IN FEDERAL COURT.  YOU HAD LEAVE

15   TO AMEND, WHICH YOU TOOK ADVANTAGE OF AND FILED THE AMENDED

16   COMPLAINT ON DECEMBER 11TH, I BELIEVE.

17          MS. GONDEIRO:  YES.

18      BUT I THINK THE POINT IS THAT WE HAD AN ONGOING PROCEEDING

19   ON THE MERITS OCCURRING.

20          THE COURT:  I DON'T DISAGREE WITH THAT, BUT I DON'T

21   SEE ANYTHING IN THE YOUNGER LINE OF CASES THAT SAYS ANYTHING

22   ABOUT THE FEDERAL ACTION.  THEY TALK ABOUT THE STATUS OF THE

23   STATE ACTION AS BEING ONGOING, AND CERTAINLY WITH THE

24   PRELIMINARY INJUNCTION ISSUED IN STATE COURT, THAT IS AN

25   ONGOING MATTER, THAT'S NOT A JUDGMENT, IT'S A PRELIMINARY

```
1    ORDER, AND YOU WILL HAVE YOUR RIGHT TO A TRIAL ON THE MERITS.

2             MS. GONDEIRO:  OKAY, YOUR HONOR.

3         AND AGAIN, YOUR HONOR, NOT ONLY -- I MEAN, AGAIN, SO TWO

4    MAIN POINTS, THE STATE COURT PROCEEDING WAS NOT ONGOING, AND

5    THEY KIND OF OVERLOOKED THAT IN THEIR BRIEFING.

6             THE COURT:  AT WHAT POINT WAS IT NOT ONGOING?

7             MS. GONDEIRO:  BECAUSE THERE WAS NO DECISION -- THERE

8    HAD BEEN NO DECISION ON THE MERITS.

9             THE COURT:  YOU MEAN IN JUNE?  I DON'T UNDERSTAND

10   WHAT YOU MEAN, IT WAS NOT ONGOING.  I KNOW YOU MADE THIS POINT

11   IN YOUR REPLY, AND I DIDN'T UNDERSTAND IT.  SO THE STATE COURT

12   ACTION WAS FILED IN OCTOBER, CORRECT?

13            MS. GONDEIRO:  YES, THE END OF OCTOBER.

14            THE COURT:  AND IT IS STILL -- IT'S STILL A FILED

15   ACTIVE CASE ON THE SANTA CLARA DOCKET, YES?

16            MS. GONDEIRO:  YES.

17            THE COURT:  I DON'T KNOW WHAT THE MEANING OF ONGOING

18   IS IF THAT'S NOT IT.

19            MS. GONDEIRO:  BUT THE POINT IS, THIS FEDERAL COURT,

20   YOUR HONOR -- WE HAD FIRST FILED A CASE HERE AND WE HAD

21   PROCEEDINGS ON THE MERITS.

22            THE COURT:  YES.

23            MS. GONDEIRO:  AND THEY DIRECTLY INTERFERED WITH

24   THOSE PROCEEDINGS BY FILING A CASE IN STATE COURT.

25            THE COURT:  WELL, ARE YOU SUGGESTING THAT THE COUNTY
```

1    COULD HAVE COME INTO FEDERAL COURT TO ENFORCE -- WITH AN

2    ENFORCEMENT ACTION?  I DON'T HAVE JURISDICTION OVER THAT.

3             MS. GONDEIRO:  YOUR HONOR, THEY COULD HAVE FILED A

4    COUNTERCLAIM OR A COUNTER-LAWSUIT AND THEY COULD HAVE SOUGHT

5    RELIEF IN THIS COURT.  THEY DIDN'T NEED TO GO TO STATE COURT TO

6    SEEK RELIEF.

7             THE COURT:  WELL, I WILL LET MS. KINIYALOCTS DISCUSS

8    THAT.  I'M NOT AWARE THAT I WOULD HAVE JURISDICTION TO ENFORCE

9    A COUNTY ORDER AND PROCEED IN CONTEMPT PROCEEDINGS OR ISSUE A

10   PRELIMINARY INJUNCTION AGAINST YOUR CLIENT.

11            MS. GONDEIRO:  SO YOUR HONOR, AGAIN, SO I WILL MAKE

12   THAT POINT AGAIN.  AND THEN SECOND, IT WOULD BE IRREPARABLE

13   HARM THAT RISES TO AN EXTRAORDINARY LEVEL.  WE ARE TALKING

14   ABOUT COMPLETELY BANNING 800 PEOPLE FROM SINGING INDOORS AND

15   DIRECTLY VIOLATING THEIR RIGHTS.  THAT COULD LAST FOR MONTHS.

16        SO NOW I WANT TO GO ON TO THE MERITS AND FOCUS ON THE

17   DIOCESE OF BROOKLYN, WHICH I BELIEVE IS GOING TO ALSO BE THE

18   CRUX OF THIS DISCUSSION.

19            THE COURT:  OKAY.

20            MS. GONDEIRO:  THE SUPREME COURT HELD THE NUMERICAL

21   CAPS IN GOVERNOR CUOMO'S CLUSTER INITIATIVE WERE NOT NEUTRAL

22   AND VIOLATE THE FREE EXERCISE, BECAUSE IN THE RED ZONE, A

23   CHURCH MAY ADMIT TEN PEOPLE, BUT BUSINESSES DEEMED ESSENTIAL,

24   SUCH AS ACUPUNCTURE FACILITIES, CAMPGROUNDS, GARAGES, AND THEN

25   GORSUCH ADDED HARDWARE STORES, LIQUOR STORES, BICYCLE SHOPS,

1    OTHER ESSENTIAL BUSINESSES, AND THEN JUDGE KAVANAUGH ADDED

2    GROCERY STORES, PET STORES, THOSE WERE ALL TREATED -- YOU KNOW,

3    RELIGIOUS SERVICES WERE TREATED MORE HARSHLY THAN ALL THOSE

4    BUSINESSES.

5         THE DEFENDANTS CLAIM THAT THE RESTRICTIONS ARE NEUTRAL

6    BECAUSE THEY TREAT ALL GATHERINGS THE SAME, BUT THIS IS

7    INCORRECT FOR MULTIPLE REASONS.

8         FOR ONE, JUDGE KAVANAUGH REJECTED A SIMILAR ARGUMENT

9    BROUGHT BY NEW YORK WHO CLAIMED THEY DID NOT DISCRIMINATE

10   AGAINST RELIGION BECAUSE SOME SECULAR BUSINESSES, LIKE MOVIE

11   THEATRES, WERE TREATED EQUALLY OR MORE HARSHLY.

12        JUDGE KAVANAUGH HELD UNDER THIS COURT'S PRECEDENT, IT DOES

13   NOT SUFFICE FOR A STATE TO POINT OUT THAT AS COMPARED TO HOUSES

14   OF WORSHIP, SOME SECULAR BUSINESSES ARE SUBJECT TO SIMILARLY

15   SEVERE OR EVEN MORE SEVERE RESTRICTIONS; RATHER, ONCE A STATE

16   CREATES A FAVORED CLASS OF BUSINESSES, AS NEW YORK DID, THE

17   STATE MUST JUSTIFY WHY HOUSES OF WORSHIP ARE EXCLUDED.

18        AND AS YOU WILL SEE, YOUR HONOR, IN EXHIBIT B -- OR

19   EXHIBIT A, WHICH WE ATTACHED --

20            THE COURT:  I AM GIVING NO CREDENCE TO EXHIBIT A

21   BECAUSE IT HAS NO CITATIONS, IT DOESN'T BEAR ANY RESEMBLANCE TO

22   ANY DOCUMENT I'VE EVER SEEN AND IT'S JUST ARGUMENT.  I WILL

23   CONSIDER IT AS ARGUMENT, BUT THAT'S NOT EVIDENCE.  YOU DO

24   UNDERSTAND THAT.

25            MS. GONDEIRO:  I DON'T UNDERSTAND WHY IT ISN'T

1     EVIDENCE BECAUSE THESE ARE -- THESE LIMITATIONS ARE PULLED UP

2     FROM THE COUNTY ORDERS.

3          THE COURT:  YOU DIDN'T CITE THEM.

4          WELL, FIRST OF ALL, THERE'S NO ORDINANCE THAT IDENTIFIES,

5     I DON'T BELIEVE THE ORDINANCE CALLS OUT CHURCHES SEPARATELY.

6     THIS IS A SUMMARY DOCUMENT THAT IS ALLOWED UNDER THE FEDERAL

7     RULES OF EVIDENCE UNDER CERTAIN CIRCUMSTANCES.  AND SUMMARY

8     DOCUMENTS CAN BE VERY HELPFUL, BUT YOU HAVE TO TELL ME WHERE

9     YOU DERIVED THIS INFORMATION.

10         SO FIRST OF ALL, YOU ARE DERIVING SOME OF IT FROM OTHER

11    COURT CASES, AND THEN SOME YOU LABEL CALIFORNIA AND SANTA CLARA

12    WITHOUT TELLING ME WHAT ORDERS IT COMES FROM.  SO I DON'T --

13    CERTAINLY IN ROMAN CATHOLIC DIOCESE, THE SUPREME COURT, AND I

14    HAVE A COPY OF THAT, OF COURSE, I MEAN, THAT WAS EASY TO FIND,

15    I HAVE A COPY OF IT RIGHT HERE, AND CHURCHES WERE IDENTIFIED

16    SPECIALLY, OR HOUSES OF WORSHIP WERE IDENTIFIED EXPRESSLY.

17         SO IT'S A SUMMARY DOCUMENT THAT'S NOT HELPFUL TO ME EXCEPT

18    IN MAYBE THE BROADEST SENSE.

19         MS. GONDEIRO:  IN THE DECLARATION, WE DO CITE TO

20    THE --

21         THE COURT:  WHAT STATE OF CALIFORNIA ORDER ARE YOU

22    TRYING TO -- ARE YOU ASKING ME TO REVIEW ON YOUR CONSTITUTIONAL

23    ARGUMENT?  I NEED TO KNOW WHAT THEY ARE.

24         MS. GONDEIRO:  THE BLUEPRINT.

25         THE COURT:  AND MAYBE THERE'S ONLY ONE DATE, I DON'T

1     KNOW WHETHER IT'S BEEN REVISED OR NOT.

2          MS. GONDEIRO:  BLUEPRINT -- WELL, RIGHT NOW

3     SANTA CLARA COUNTY, AS YOU WILL SEE IN THE EXHIBIT, IS IN THE

4     PURPLE TIER, PLACES OF WORSHIP ARE COMPLETELY BANNED.  I

5     INCLUDE THIS IN MY ARGUMENT SECTION IN THE --

6          THE COURT:  I JUST WANT TO KNOW WHAT DOCUMENT IT IS,

7     THAT'S ALL.  I JUST WANT TO KNOW WHAT IT IS.

8          YOU KNOW, WHEN WE REVIEW THINGS, JUST AS THE SUPREME COURT

9     DID, WE LOOK AT THE DOCUMENT, WE DON'T LOOK AT THE GLOSS PUT ON

10    THEM IN ARGUMENT.

11         SO WHAT'S THE DOCUMENT?  YOU ARE SAYING THE CALIFORNIA

12    BLUEPRINT IS THE STATE DOCUMENT?

13         MS. GONDEIRO:  UH-HUH.

14         THE COURT:  AND YOU ARE TELLING ME THAT THERE'S ONLY

15    ONE OF THOSE.  SO MR. GRABARSKY CAN PERHAPS SAY HE EITHER

16    AGREES WITH THAT OR DISAGREES WITH THAT WHEN I GET TO HIM.

17         AND THEN WHAT'S THE SANTA CLARA DOCUMENT OR MULTIPLE

18    DOCUMENTS THAT YOU ARE --

19         MS. GONDEIRO:  THE SANTA CLARA COUNTY MANDATORY

20    DIRECTIVE ON GATHERINGS, THAT'S ONE.  AND THEN --

21         THE COURT:  WHAT'S THE DATE OF THAT?

22         MS. GONDEIRO:  THE DATE OF THAT IS, I BELIEVE IT WAS

23    SOME TIME IN NOVEMBER.

24         THE COURT:  WELL, WAS THERE ONLY ONE IN NOVEMBER?  I

25    MEAN, WE ALL KNOW THIS HAS BEEN RAPIDLY CHANGING.  YOU HAVE TO

1    CHECK EVERY DAY, NEW INFORMATION COMES OUT.  THE GOVERNOR USED

2    TO WAIT AND DO IT ONCE A WEEK, AND THAT DIDN'T TURN OUT TO BE

3    SUFFICIENT TO GIVE INFORMATION.  NOW IT'S EVERY DAY.

4         SO I JUST WANT TO KNOW WHICH ONE IT IS SO I CAN READ IT.

5              MS. GONDEIRO:  WELL, YOUR HONOR, MOST RECENTLY IN

6    EARLY DECEMBER, THE REGIONAL ORDER, WE WILL JUST LOOK AT THE

7    MOST RECENT ORDER ISSUED BY GOVERNOR NEWSOM.

8              THE COURT:  I DON'T KNOW WHAT YOU ARE -- I'M GLAD --

9    I WILL LOOK AT ANY DOCUMENT YOU WANT, YOU JUST HAVE TO TELL ME.

10   A DOCUMENT HAS A NAME AND A DATE.

11        YOU TELL ME THE "REGIONAL ORDER," I DON'T KNOW WHAT THAT

12   IS.  IF IT'S ATTACHED TO YOUR COMPLAINT, JUST GIVE ME AN

13   EXHIBIT AND I'M GLAD TO LOOK AT THAT.  IF THE DEFENDANTS

14   ATTACHED IT TO THEIR PAPERS, JUST GIVE ME THE EXHIBIT NUMBER.

15   I'M NOT DISAGREEING WITH YOU, I JUST WANT YOU TO TELL ME WHAT

16   DOCUMENT IT IS.

17             MS. GONDEIRO:  YES.

18        YOUR HONOR, I HAVE ALL OF THOSE IN THE FIRST AMENDED

19   COMPLAINT WHICH I CITE TO YOU IN THE STATEMENT OF FACTS.

20             THE COURT:  SO IN THE FIRST AMENDED COMPLAINT YOU DO

21   TWO THINGS, YOU PROVIDE ME WITH 14 EXHIBITS -- WELL, YOU DIDN'T

22   PROVIDE THEM TO ME, I HAD TO PRINT THEM OUT MYSELF, YOU

23   PROVIDED ME WITH 14 EXHIBITS AND THEN A LOT OF CITATIONS TO

24   WEBSITES, AND THEY CHANGED OR WERE NONEXISTENT, SO I CAN'T GO

25   TO AN ACTIVE WEBSITE AND KNOW THAT I'M LOOKING AT WHAT YOU ARE

```
 1        ASKING ME TO LOOK AT.  I HAVE NO WAY OF DOING THAT.
 2            THAT'S THE PROBLEM.  I DON'T KNOW WHEN IT EVER BECAME
 3        ACCEPTABLE TO CITE SOMETHING BY WEBSITE AS OPPOSED TO ATTACHING
 4        IT TO THE DOCUMENT, AND THAT'S WHAT'S CAUSED ME TO HAVE TO ASK
 5        YOU THIS.
 6            I JUST WANT TO KNOW WHAT THE DOCUMENT IS.  AND IF YOU
 7        WOULD LIKE TO SUBMIT THAT TO ME TONIGHT, THAT'S FINE.  I MAY
 8        NOT BE REACHING THIS ISSUE, BUT I JUST WANT A COPY OF THE
 9        DOCUMENT YOU ARE CONTESTING, THAT'S ALL IT IS.
10            MS. GONDEIRO:  YES, YOUR HONOR.  I CAN SUBMIT HARD
11        COPIES OF THAT INSTEAD OF THE ACTUAL WEBSITE TO YOU TONIGHT.
12            THE COURT:  THAT'S WHAT I WILL NEED.
13            MS. GONDEIRO:  THANK YOU.
14            THE COURT:  AND I ASSUME IT'S ONE STATE DOCUMENT, THE
15        BLUEPRINT, AND IT'S -- I DON'T KNOW --
16            MS. GONDEIRO:  YES, THE BLUEPRINT, AND THEN THE
17        REGIONAL ORDER.
18            THE COURT:  AND THE REGIONAL ORDER.  THAT WOULD BE
19        GREAT.  AND IF YOU COULD SUBMIT THOSE TO ME TONIGHT BY THE END
20        OF THE DAY, WHICH I KNOW GOES UNTIL MIDNIGHT, BUT I OBVIOUSLY
21        NEED TO DO THIS QUICKLY.  I MAY NOT BE REACHING IT, SO, YOU
22        KNOW, BUT IF I REACH THIS ARGUMENT, I WANT TO RULE ON WHAT YOU
23        ARE ASKING ME TO RULE ON.  THAT'S THE WHOLE POINT OF MY
24        QUESTION, OKAY.
25            MS. GONDEIRO:  YES.  THANK YOU, YOUR HONOR.
```

1

2          THE COURT:  OKAY.  GO AHEAD.

3          MS. GONDEIRO:  AND SO THE COUNTY ALSO POINTS OUT THAT

4   THE RESTRICTIONS ARE NEUTRAL BECAUSE THEY TREAT ALL GATHERINGS

5   THE SAME.  BUT THERE'S A PROBLEM WITH THAT BECAUSE THE

6   MANDATORY DIRECTIVE ON GATHERINGS, IT APPEARS NEUTRAL ON ITS

7   FACE, BUT IT'S ACTUALLY ACTIVITY, GERRYMANDERING, DOES NOT

8   DEFINE CARD ROOMS, GYMS OR SHOPPING CENTERS, WHERE PEOPLE WILL

9   INEVITABLY GATHER, AND THESE ACTIVITIES ARE SUBJECT TO LIGHTER

10  RESTRICTIONS BECAUSE THEY ARE NOT DEFINED AS A GATHERING.

11         IF THERE'S ANY DOUBT, YOUR HONOR, THAT THE STATE AND

12  COUNTY RESTRICTIONS ARE NOT UNCONSTITUTIONAL, HARVEST ROCK

13  CHURCH AND SOUTH BAY MAKE IT CLEAR.  IN HARVEST ROCK, THE

14  SUPREME COURT VACATED THE LOWER COURT'S DECISION AND REMANDED

15  THE CASE BACK TO THE DISTRICT COURT IN LIGHT OF THE ROMAN

16  CATHOLIC DIOCESE OF BROOKLYN.

17         IN SOUTH BAY, THE NINTH CIRCUIT VACATED THE LOWER COURT'S

18  DECISION, DENYING A MOTION FOR INJUNCTIVE RELIEF FILED BY

19  SOUTH BAY AND REMANDED IT BACK TO THE DISTRICT COURT FOR

20  FURTHER CONSIDERATION.

21         IF IT WERE NOT CLEAR ENOUGH, JUST A FEW DAYS AGO THE

22  NINTH CIRCUIT HELD NEVADA GOVERNOR STEVE SISOLAK'S DIRECTIVE

23  WAS NOT NEUTRAL BECAUSE IT TREATED MANY SECULAR ENTITIES LIKE

24  CASINOS, BOWLING ALLEYS, RESTAURANTS AND ARCADES DIFFERENTLY

25  THAN HOUSES OF WORSHIP.  CASINOS, BOWLING ALLEYS, RETAIL

1    BUSINESSES, RESTAURANTS, ARCADES AND OTHER SIMILAR ENTITIES ARE

2    LIMITED TO 50 PERCENT CAPACITY, YET HOUSES OF WORSHIP ARE ONLY

3    LIMITED TO 50 PEOPLE.

4            THE COURT:  I THOUGHT IT WAS INTERESTING IN THE

5    NINTH CIRCUIT CASE, THAT THE COURT ORDERED THAT THE LIMIT WOULD

6    BE 25 PERCENT, EVEN THOUGH THERE WAS THAT 50 PERCENT.  I

7    THOUGHT IT WAS INTERESTING THAT THERE WERE SOME SERVICES THAT

8    COULD BE AT 50 PERCENT, I THINK YOU QUOTE THAT CORRECTLY.  BUT

9    IN THE CONCLUSION, THE COURT ORDERED THAT THE STATE COULD NOT

10   IMPOSE LIMITS ON IN-PERSON SERVICES IN HOUSES OF WORSHIP THAT

11   ARE LESS FAVORABLE THAN 25 PERCENT.  I'M NOT SURE WHERE THAT

12   CAME FROM, I DIDN'T HEAR THE ARGUMENT OR READ THE BRIEFS, I

13   JUST READ THE NINTH CIRCUIT ORDER.

14           MS. GONDEIRO:  I'M NOT SURE EITHER, BUT I THINK --

15   WELL, WHAT THE COURT DID FIND THOUGH IS THAT THE CAPACITY

16   LIMITATIONS ON RELIGIOUS SERVICES WERE ULTIMATELY

17   UNCONSTITUTIONAL BECAUSE THOSE ESSENTIAL BUSINESSES WERE

18   TREATED MORE FAVORABLY.

19           THE COURT:  YES.

20           MS. GONDEIRO:  AND SO, YOUR HONOR, THESE CASES ALL

21   BUT ASSURE THAT THE ORDERS THAT WE ARE CHALLENGING THAT ARE

22   ENFORCED BY THE STATE AND COUNTY ARE NOT NEUTRAL AND ARE

23   COMPLETELY DISPOSITIVE OF THIS CASE.

24           THE COURT:  SO GOING BACK TO THE ISSUE OF THE YOUNGER

25   ABSTENTION, YOU AGREE THAT YOU HAVE THE FULL -- HAVE HAD AND

1   CONTINUE TO HAVE THE FULL OPPORTUNITY TO ADDRESS THE

2   CONSTITUTIONAL ISSUES BEFORE THE STATE COURT.  AND I ASSUME IN

3   YOUR WRIT OF MANDATE THAT YOU ALREADY FILED, I PRESUME YOU

4   FILED ONE, OR IN YOUR APPEAL, THAT YOU MUST HAVE ALREADY HAVE

5   FILED, BECAUSE OF THE CLAIMED IRREPARABLE HARM, THAT YOU HAVE

6   MADE THOSE ARGUMENTS AND YOU CAN CONFIRM THAT YOU FILED ANY OF

7   THOSE REQUESTS FOR RELIEF.

8          MS. GONDEIRO:  YES, YOUR HONOR.

9      WELL, THE COUNTY MAKES THE POINT THAT WE WAITED TO FILE

10  THIS PRELIMINARY INJUNCTION, BUT THE REASON IS, IS BECAUSE THE

11  ORDERS WERE CONSTANTLY CHANGING.  AND EXTRAORDINARY EVENTS

12  HAPPENED, THEY WENT TO STATE COURT SEEKING TO ENFORCE AN

13  UNCONSTITUTIONAL TEMPORARY RESTRAINING ORDER AND THEN ALSO

14  SOUGHT CONTEMPT.  AND SO NOW OUR CLIENT IS NOW IN CONTEMPT.

15  AND SO THOSE EXTRAORDINARY EVENTS SPURRED THIS TEMPORARY

16  RESTRAINING ORDER BROUGHT IN --

17         THE COURT:  BUT WHAT I'M ASKING IS -- AND I

18  APPRECIATE THAT.  I'M JUST LOOKING FOR SOME DATES HERE.  THE

19  PRELIMINARY INJUNCTION WAS ISSUED ON DECEMBER 1ST; IS THAT

20  CORRECT?  AND THE ORDER WAS ACTUALLY FILED ON DECEMBER 4TH?

21         MS. GONDEIRO:  YES.  THE ORDER WAS FILED, BUT I WANT

22  TO KNOW BECAUSE THIS IS VERY IMPORTANT, THE JUDGE HAS YET TO

23  ACTUALLY SIGN THE PROPOSED ORDER.  AS YOU WILL SEE IN THE ORDER

24  WHICH WE ATTACHED, THE JUDGE HAS HIS REASONING AND THEN HIS

25  CONCLUSION --

1      THE COURT:  SO HE -- THERE IS A WRITTEN FIVE-PAGE

2    ORDER FROM JUDGE KIRWAN GRANTING THE PRELIMINARY INJUNCTION.

3    AND THEN ON THE -- LET'S SEE IF I CAN GET MY HANDS ON THAT.

4    OKAY.  I HAVE A LOT OF PAPERS.  MAYBE THAT WAS IN YOUR PAPERS.

5      MR. WALL:  IF I COULD OFFER A WORD TO HELP,

6    YOUR HONOR.

7      THE COURT:  YES.  THANK YOU, MR. WALL.

8      MR. WALL:  SO THE TRO, THERE WAS A TRO ENTERED IN THE

9    STATE COURT ACTION WHICH WAS FOLLOWED BY A MODIFIED TRO.

10      THE COURT:  YES.

11      MR. WALL:  AFTER THE MODIFIED TRO WAS ENTERED ON

12    NOVEMBER 24TH.

13      THE COURT:  YES.

14      MR. WALL:  THE SUPERIOR COURT JUDGE KIRWAN WENT ON TO

15    HOLD A PRELIMINARY INJUNCTION HEARING ON THE TERMS OF THAT TRO.

16      AND SO WHILE THERE'S A WRITTEN ORDER EXPLAINING THE

17    REASONS FOR GRANTING THE PRELIMINARY INJUNCTION THAT WAS ISSUED

18    ON DECEMBER 4TH AND IT'S ECF FILING 42-5, IT'S AN ATTACHMENT TO

19    THE COMPLAINT.  IT DOESN'T INCLUDE -- IT DOESN'T REPEAT THE

20    TERMS OF THE OF THE REVISED TRO, WHICH IS ECF 42-3, BUT THOSE

21    ARE THE ORDERS THAT -- THOSE ARE THE TERMS THAT IT IMPLEMENTED.

22      AND THE FIRST TERM OF WHICH TO HELP MAYBE SIMPLIFY THE

23    ANALYSIS, IS THAT THE COURT ORDERED CALVARY AND PASTOR MCCLURE

24    NOT TO CONDUCT ANY GATHERING THAT DOES NOT FULLY COMPLY WITH

25    THE STATE AND COUNTY PUBLIC HEALTH ORDERS.  IT WENT ON TO

1    SPECIFY THE SPECIFIC TERMS THAT WERE THEN APPLICABLE ON

2    NOVEMBER 24TH, PURSUANT TO WHICH INDOOR GATHERINGS WOULD HAVE

3    BEEN PROHIBITED AND OUTDOOR GATHERINGS WOULD HAVE BEEN ALLOWED

4    UP TO 200 PEOPLE, AND ALSO FACE COVERINGS WOULD HAVE BEEN

5    REQUIRED.  SOCIAL DISTANCING REQUIREMENTS WOULD HAVE BEEN IN

6    PLACE.  SINGING AND CHANTING INDOORS AT GATHERINGS WOULD HAVE

7    BEEN PROHIBITED, AND OPERATING IN SANTA CLARA COUNTY WITHOUT A

8    SOCIAL DISTANCING PROTOCOL WOULD HAVE BEEN PROHIBITED, ALL OF

9    WHICH CALVARY AND PASTOR MCCLURE ARE IN VIOLATION OF, AND NONE

10   OF WHICH ARE ADDRESSED IN THE ROMAN CATHOLIC DIOCESE DECISION

11   OR THE NINTH CIRCUIT OPINION, EXCEPT FOR THE CAPACITY

12   LIMITATIONS.

13        BUT I JUST WANTED TO HELP YOUR HONOR FIND THAT IN THE

14   RECORD.

15             THE COURT:  ALL RIGHT.

16        SO JUST -- AND I'M JUST LOOKING AT THE RECORD.  SO THE

17    CONTEMPT PROCEEDINGS WERE BASED ON THE MODIFIED TRO, NOT THE

18    PRELIMINARY INJUNCTION?

19             MR. WALL:  IT'S COMPLICATED, YOUR HONOR.

20        THE CONTEMPT PROCEEDINGS WERE BASED ON THE TRO.  SO WHEN

21   THE INITIAL TRO ISSUED ON NOVEMBER 2ND, PLAINTIFFS CALVARY AND

22   PASTOR MCCLURE CONTINUED TO VIOLATE THE PUBLIC HEALTH ORDERS

23   AND WERE THUS IN VIOLATION OF THAT INITIAL TRO.

24        THE CONTEMPT MOTION WAS BROUGHT ONLY AS TO THE VIOLATIONS

25   ON THAT INITIAL TRO ISSUED ON NOVEMBER 2ND, AND SO IT ONLY

1    COVERED THE VIOLATIONS OF THE SUPERIOR COURT'S ORDERS THROUGH

2    NOVEMBER 24TH WHEN THE REVISED TRO ISSUED, WHICH LEAVES THE

3    QUESTION, GIVEN CALVARY AND PASTOR MCCLURE'S ONGOING

4    NONCOMPLIANCE, WHETHER ADDITIONAL MOTIONS FOR CONTEMPT WILL BE

5    BROUGHT IN THOSE PROCEEDINGS.

6              THE COURT:  OKAY.

7         BUT THE -- I'VE GOT AN ORDER DATED DECEMBER 4TH GRANTING

8    THE PRELIMINARY INJUNCTION.  HAS A PRELIMINARY INJUNCTION

9    ISSUED?  MS. GONDEIRO SUGGESTS IT HAS NOT.

10             MS. GONDEIRO:  YES, THE JUDGE HAS NOT ACTUALLY SIGNED

11    THE PROPOSED ORDER WITH THE TERMS OF THE PRELIMINARY

12    INJUNCTION.

13             THE COURT:  DO YOU AGREE, MR. WALL?  IS THAT YOUR

14    UNDERSTANDING AS WELL?

15             MR. WALL:  MY UNDERSTANDING IS THAT THE COURT ISSUED

16    AN ORDER TO THE PLAINTIFFS PURSUANT TO THE REVISED TRO ON

17    NOVEMBER 24TH, AND THEN BY WAY OF THE PRELIMINARY INJUNCTION

18    HEARING, MADE THAT THE PRELIMINARY INJUNCTION, DID NOT ISSUE A

19    SEPARATE ORDER REPEATING THOSE TERMS.

20         THAT THE DECEMBER 1ST -- THE ORDER WAS GRANTED ON

21    DECEMBER 1ST IN THE MINUTE ORDER AT THE HEARING ON THE

22    PRELIMINARY INJUNCTION WHICH WAS TO BE FOLLOWED BY A STATEMENT

23    OF THE REASONS FOR GRANTING THE PRELIMINARY INJUNCTION.

24         PERHAPS MY COLLEAGUE CAN PROVIDE MORE ON THIS ONE.

25             THE COURT:  SO YOU ARE SAYING THAT THE MODIFIED TRO

1    BECAME THE TERMS OF THE PRELIMINARY INJUNCTION.

2              MR. WALL:  THAT'S CORRECT, YOUR HONOR.

3              THE COURT:  OKAY.  ALL RIGHT.

4         NOW LET ME GO BACK TO MS. GONDEIRO.  I JUST AM TRYING TO

5    UNDERSTAND THE DOCUMENTS, THAT WAS THE ONLY REASON FOR THAT

6    DETOUR SO THANK YOU.

7              MS. GONDEIRO:  THAT'S OKAY.  THERE ARE A LOT OF

8    DOCUMENTS.

9              THE COURT:  THERE ARE A LOT OF DOCUMENTS, YES.

10             MS. GONDEIRO:  A LOT OF DOCUMENTS TO KEEP TRACK OF.

11   SO THANK YOU, YOUR HONOR, FOR BEING PATIENT.

12        SO I'M NOW GOING TO TURN TO THE ESTABLISHMENT CLAUSE.

13             THE COURT:  OKAY.

14             MS. GONDEIRO:  THE ORDERS ARE UNCONSTITUTIONAL UNDER

15   THE LEMON TEST WHICH REQUIRES THAT A LAW HAVE A LEGITIMATE

16   SECULAR PURPOSE, THE PRIMARY EFFECT NEITHER ADVANCE OR INHIBIT

17   RELIGION, AND IT DOESN'T RESULT IN EXCESSIVE ENTANGLEMENT OF

18   GOVERNMENT AND RELIGION.

19        THE PRELIMINARY INJUNCTION HAS THE PRIMARY EFFECT OF

20   INHIBITING RELIGION BECAUSE IT TREATS RELIGIOUS GATHERINGS

21   UNIQUELY AND DISCRIMINATORILY.

22             THE COURT:  WHEN YOU SAY "UNIQUELY," WHAT DO YOU MEAN

23   BY "UNIQUELY?"  I THOUGHT THEY WERE PART OF A CATEGORY OF

24   GATHERINGS, AND "UNIQUE" MEANS ONE OF A KIND.

25             MS. GONDEIRO:  YES.

1     AS YOU WILL SEE IN THE GATHERINGS, THE MANDATORY DIRECTIVE

2     ON GATHERINGS, ONLY CERTAIN GATHERINGS ARE LISTED.  YOU KNOW,

3     IT DOESN'T INCLUDE SHOPPING CENTERS OR CARD ROOMS, WHERE THE

4     RESULT OF WHICH MANY PEOPLE WILL BE --

5          THE COURT:  I DON'T DISAGREE WITH THAT, I ONLY HAVE

6     AN ISSUE WITH YOUR USE OF THE WORD "UNIQUE."  UNIQUE IS ONE OF

7     A KIND.  SO THAT'S ALL.  LET'S MOVE ON.

8          MS. GONDEIRO:  OKAY.

9          PLACES OF WORSHIP ARE NOT DEEMED ESSENTIAL AND ARE SUBJECT

10    TO HARSHER RESTRICTIONS WHILE NUMEROUS ENTITIES ARE.

11         AGAIN, THE DEFENDANTS CLAIM THAT THE ORDERS DO NOT HAVE

12    THE PRIMARY EFFECT OF INHIBITING RELIGION BECAUSE THEY ARE

13    NEUTRAL AND GENERALLY APPLICABLE TO ALL GATHERINGS.  BUT AS

14    ESTABLISHED EARLIER WITH THE BROOKLYN DIOCESE CASE THEY ARE NOT

15    NEUTRAL IN LIGHT OF THAT SUPREME COURT CASE, AND NOW WE HAVE A

16    NINTH CIRCUIT CASE.

17         FINALLY, THE RESTRICTIONS FALL SHORT OF THE THIRD PRONG.

18    IN LEMON, THE SUPREME COURT STATED, EXCESSIVE GOVERNMENT

19    ENTANGLEMENT OCCURS WHEN A LAW IS COMPREHENSIVE, DISCRIMINATING

20    AND REQUIRES CONTINUING STATE SURVEILLANCE.

21         THIS IS NOT A ROUTINE, REGULATORY INTERACTION SUCH AS A

22    FIRE INSPECTION OR A BUILDING ZONE INSPECTION OR THE

23    RECORDKEEPING REQUIREMENTS OF THE FAIR LABOR STANDARD ACT.

24    HERE WE ARE TALKING ABOUT DAILY AND PERSISTENT MONITORING OF

25    CHURCH CONGREGANTS, JUST LIKE IN LEMON WHERE PRIVATE SCHOOL

1    TEACHERS HAD TO BE CONTINUALLY MONITORED, THE PRELIMINARY

2    INJUNCTION ALLOWS GOVERNMENT OFFICIALS TO ATTEND CHURCH

3    SERVICES AND PRAYER MEETINGS TO ENSURE COMPLIANCE.  THIS TYPE

4    OF SURVEILLANCE IS UNCONSCIONABLE AND UNDOUBTEDLY RESULTS IN

5    EXCESSIVE ENTANGLEMENT.

6         SO ON CONCLUSION, YOUR HONOR, THE PLAINTIFFS HAVE PROVEN

7    THAT THIS PRELIMINARY INJUNCTION WILL RESULT IN IRREPARABLE

8    HARM.  THE HARM THAT THE COUNTY CITES TO IS ALL SPECULATIVE.

9    THEY HAVE YET TO PROVE THAT THIS CHURCH IS CONTRIBUTING TO A

10   SUPER SPREADER EVENT.  AND WE CAN ALSO PREVAIL ON THE MERITS.

11        AND SO WITH THAT, I ASK THAT THIS COURT GRANT THIS

12   TEMPORARY RESTRAINING ORDER.

13             THE COURT:  OKAY.  THANK YOU.

14        I HAVE ONE MORE COMMENT BEFORE I TURN TO THE COUNTY AND

15   THE STATE.  AND THIS IS BY WAY OF A WARNING FOR THE FUTURE.  I

16   PUT OUT AN ORDER ALLOWING REPLY, AND IT WAS HELPFUL TO ME.  MY

17   ORDER SAID THAT IT WAS TO BE NO MORE THAN FIVE PAGES.

18   CONSIDERING THAT THIS WHOLE CASE IS ABOUT YOUR CLIENT'S

19   CONTEMPT OF A COURT ORDER, I WAS PRETTY SURPRISED THAT YOU

20   VIOLATED MY COURT ORDER BY GIVING ME A SEVEN-PAGE BRIEF.

21        I READ THE WHOLE THING, AND I WILL CONSIDER IT.  IF THAT

22   HAPPENS AGAIN, I WILL THROW AWAY YOUR ENTIRE BRIEF WITHOUT THE

23   OPPORTUNITY TO FILE A COMPLIANT BRIEF; DO YOU UNDERSTAND?

24             MS. GONDEIRO:  YES, YOUR HONOR.

25             THE COURT:  ALL RIGHT.  THANK YOU.

1          LET ME -- I DON'T KNOW WHO IS GOING TO ARGUE FOR THE

2     COUNTY, MR. WALL, MS. KINIYALOCTS.

3              MR. WALL:  I WILL, YOUR HONOR.

4          GOOD AFTERNOON, YOUR HONOR.  THERE ARE FOUR REASONS.

5          PLAINTIFFS FOCUS ON ROMAN CATHOLIC AND CALVARY CHAPEL, AND

6     THERE ARE FOUR REASONS WHY THEY DO NOT CONTROL THIS CASE.  THE

7     FIRST, AS YOUR HONOR POINTS OUT, IS THAT NEITHER CASE INVOLVED

8     AN ABSTENTION ISSUE.  WHEREAS HERE, PLAINTIFFS SEEK INJUNCTION

9     AGAINST A PENDING STATE COURT ENFORCEMENT AND PUBLIC NUISANCE

10    PROCEEDING.

11         THE SECOND AND THIRD REASON ARE LEGAL REASONS.  THERE IS

12    NO EVIDENCE OF RELIGIOUS TARGETING HERE AS THERE WAS IN

13    ROMAN CATHOLIC.  AND THERE IS NO EVIDENCE THAT THE STATE AND

14    COUNTY HAVE SINGLED OUT HOUSES OF WORSHIP FOR ESPECIALLY HARSH

15    TREATMENT, AND THAT'S THE LANGUAGE OF ROMAN CATHOLIC.

16         THERE'S A FOURTH REASON THAT THIS CASE IS DISTINGUISHABLE

17    AND IT'S A FACTUAL ONE.  THESE PARTICULAR PLAINTIFFS, UNLIKE

18    THE PLAINTIFFS IN ROMAN CATHOLIC, DO NOT HAVE A STRONG TRACK

19    RECORD IN COMPLIANCE WITH THE COVID 19 RESTRICTIONS AND

20    REGULATIONS.  THEY HAVE REPEATEDLY VIOLATED STATE AND COUNTY

21    HEALTH ORDERS, AND EVEN THE ORDERS OF ANOTHER COURT, WITH

22    RESPECT TO ASCII LIMITS, MASK REQUIREMENTS, SOCIAL DISTANCING,

23    AND THE OTHER REQUIREMENTS OF THE COUNTY HEALTH ORDER.

24         AND THESE FOUR FACTORS TAKE THIS OUT OF THE GAMBIT OF

25    ROMAN CATHOLIC AND THE NINTH CIRCUIT'S DECISION.

1        I WOULD LIKE TO BEGIN WITH ABSTENTION.  YOU KNOW, AND

2    OBVIOUSLY WHERE I THINK THE COURT SHOULD ABSTAIN FROM ENJOINING

3    THE DEFENDANTS TO FROM CONTINUING TO PURSUE A STATE COURT

4    PUBLIC NUISANCE PROCEEDING.  PLAINTIFFS HAVE OFFERED FOUR

5    ARGUMENTS IN THEIR REPLY, NONE OF WHICH I THINK SUPPORT DENYING

6    ABSTENTION HERE.

7        THE FIRST IS THEY CLAIM WE HAVE NOT SHOWN THAT THIS IS AN

8    ONGOING PROCEEDING IN STATE COURT.  IT OBVIOUSLY IS.  TO GIVE

9    YOUR HONOR AN UPDATE, EARLIER THIS WEEK WE ISSUED WRITTEN

10   DISCOVERY OR DISCOVERY REQUESTS IN THE STATE COURT PROCEEDING.

11   WE ALSO SUBMITTED THIS WEEK THE WRITTEN ORDER ON THE CONTEMPT

12   FINDING FOR THE COURT'S CONSIDERATION.  IT HAS YET TO BE ISSUED

13   BY THE COURT.  THOSE ARE OBVIOUSLY STILL ONGOING PROCEEDINGS.

14   WE ARE STILL AT THE PRELIMINARY INJUNCTION STAGE, OBVIOUSLY, WE

15   HAVEN'T REACHED A FINAL JUDGMENT IN THE ACTION.

16       AND PLAINTIFFS CALVARY AND PASTOR MCCLURE, HAVE FILED A

17   MOTION FOR RECONSIDERATION OF THE PRELIMINARY INJUNCTION IN

18   LIGHT OF THE ROMAN CATHOLIC DECISION AND THE HARVEST ROCK

19   DECISION TO REMAND TO DISTRICT COURT.

20       AND SO NOT ONLY DO THEY HAVE AN OPPORTUNITY TO VINDICATE

21   THEIR FEDERAL RIGHTS IN THE STATE COURT PROCEEDING, THEY ARE

22   CONTINUING TO PURSUE THAT REMEDY, THAT OPTION.

23       SECOND, CALVARY AND PASTOR MCCLURE HAVE ARGUED THAT WE

24   HAVE NOT SHOWN THAT THE FEDERAL ACTION WILL DIRECTLY INTERFERE

25   WITH THE STATE COURT PROCEEDINGS.  THIS IS A STRANGE ARGUMENT

1    GIVEN THAT THE PENDING TRO APPLICATION ASKS YOUR HONOR TO

2    DIRECTLY INTERFERE WITH THE STATE COURT PROCEEDING, WHICH I

3    THINK ADDRESSES THAT.

4         AND AT THIS TIME WE ARE NOT ASKING THIS COURT, FOR

5    EXAMPLE, TO DISMISS THIS ENTIRE FEDERAL LAWSUIT ON ABSTENTION

6    GROUNDS, JUST ABSTAIN FROM ISSUING A TRO THAT WOULD INTERFERE

7    WITH THE PENDING STATE COURT ENFORCEMENT ACTION.

8         THIRD, PLAINTIFFS ACCUSE US, THE DEFENDANTS, OF DELAYING

9    AND BURDENING THE STATE COURT ACTION, AND SAY THAT WE SAT ON

10   OUR HANDS FOR MONTHS.

11        THAT IS NOT THE CASE.  TO WALK THROUGH THE FACTS,

12   YOUR HONOR, ON AUGUST 11TH, 2020, THE BOARD OF SUPERVISORS FOR

13   SANTA CLARA COUNTY PASSED THEIR URGENCY ORDINANCE WHICH

14   ESTABLISHED A COMPREHENSIVE CIVIL ENFORCEMENT PROGRAM IN THE

15   COUNTY WITH RESPECT TO ITS PUBLIC HEALTH ORDERS.  NOW THIS IS

16   MUCH BROADER THAN CHURCH ENFORCEMENT, IT WASN'T PROMPTED BY

17   THIS CASE OR CALVARY'S NONCOMPLIANCE, BUT IT WAS A GENERAL

18   CIVIL ENFORCEMENT PROGRAM COUNTY WIDE.

19        AND THE EVIDENCE OF THAT IS, THAT WAS DISCUSSED IN THE

20   ADMINISTRATIVE HEARING ON OUR -- IT'S IN THE TRANSCRIPT ECF 56,

21   JEREMY AVILA'S DECLARATION IN THE CASE, AND IT'S EXHIBIT M.

22        THE TEN DAYS LATER AFTER THE CIVIL ENFORCEMENT PROGRAM WAS

23   PUT INTO PLACE BY THE BOARD OF SUPERVISORS, THE COUNTY SERVED A

24   CEASE AND DESIST LETTER ON CALVARY AND THAT WAS ON AUGUST 21ST,

25   2020.

1      SOON AFTER THAT, THE CHURCH DID NOT COMPLY, OBVIOUSLY, AND

2    THE COUNTY SERVED NOTICES OF VIOLATION AND ISSUED FINES AGAINST

3    THE CHURCH.

4      THOSE -- THE ISSUANCE OF THOSE VIOLATIONS AND FINES WAS

5    CHALLENGED IN AN ADMINISTRATIVE HEARING BEFORE THE COUNTY, A

6    HEARING OFFICER ON OCTOBER 21ST, AND THOSE FINES WERE UPHELD.

7      THROUGHOUT THIS PERIOD, FROM MAY THROUGH THE END OF

8    OCTOBER, THE COUNTY ALSO MADE SIGNIFICANT EFFORTS TO EDUCATE

9    CALVARY AND PASTOR MCCLURE AND PERSUADE THEM TO FOLLOW THE

10   RULES AND OTHERWISE TRY TO RESOLVE THIS DISPUTE BETWEEN THE

11   COUNTY AND THE CHURCH AND ITS PASTOR, SHORT OF LITIGATION.  AND

12   THAT'S IN MR. AVILA'S DECLARATION AT PARAGRAPHS 3 THROUGH 6.

13     FINALLY, AFTER ALL OF THESE EFFORTS HAVE FAILED, EDUCATION

14   EFFORTS, EFFORTS TO ISSUE VOLUNTARY COMPLIANCE, NOTICES OF

15   VIOLATION, FINES, THE COUNTY BROUGHT SUIT ON OCTOBER 27TH IN AN

16   EX PARTE TRO APPLICATION THE NEXT DAY.

17     THE COUNTY THEN VIGOROUSLY PURSUED THOSE PROCEEDINGS, AND

18   WE OBTAINED A TRO AND THEN A REVISED TRO, AND ULTIMATELY A

19   PRELIMINARY INJUNCTION FROM JUDGE KIRWAN IN THE SUPERIOR COURT.

20     DEFENDANTS -- THE PLAINTIFF CALVARY AND PASTOR MCCLURE

21   ALSO ACCUSE US OF FORUM SHOPPING.  AGAIN, IT'S NOT A FAIR

22   ACCUSATION HERE.  THE COUNTY, ITS HEALTH OFFICER AND ITS

23   DISTRICT ATTORNEY, BROUGHT A PUBLIC NUISANCE AND ENFORCEMENT

24   ACTION ASSERTING VIOLATIONS OF STATE LAW IN STATE COURT, WHICH

25   IS AN APPROPRIATE FORUM.  IT WAS PARTICULARLY APPROPRIATE TO

```
 1    BRING THE STATE COURT CLAIMS IN THAT FORUM AT THE TIME THAT WE
 2    DID BECAUSE WE HAD A PENDING MOTION TO DISMISS IN THIS COURT TO
 3    DISMISS CALVARY'S CLAIMS HERE.
 4         IF WE HAD -- WHETHER OR NOT WE COULD HAVE BROUGHT STATE
 5    CLAIMS IN THIS COURT, IT WOULD HAVE BEEN INAPPROPRIATE TO DO SO
 6    WITH OUR PENDING MOTION TO DISMISS, ASSUMING IT HAD BEEN
 7    GRANTED, AND IT WAS IN FACT GRANTED, THE COURT WOULD HAVE BEEN
 8    LEFT WITH TWO, AT BEST, TWO PENDANT STATE LAW CLAIMS THAT WERE
 9    THEN WITHOUT A FEDERAL JURISDICTIONAL BASIS.
10         AND PLAINTIFFS IN THIS CASE FILED THEIR TRO IN THIS COURT,
11    THEIR APPLICATION, THE MORNING THAT THE CONTEMPT HEARING WAS
12    SET TO TAKE PLACE IN SUPERIOR COURT.
13         NOW THEY COULD HAVE SOUGHT PRELIMINARY RELIEF IN THIS
14    COURT AT ANY POINT SINCE THEY FILED THEIR COMPLAINT.  THEY
15    COULD HAVE BROUGHT IT BACK IN JUNE, JULY, AUGUST, OCTOBER 27TH
16    WHEN WE FILED OUR COMPLAINT IN SUPERIOR COURT, THEY CHOSE NOT
17    TO DO SO, THEY LITIGATED THEIR FEDERAL DEFENSES IN THE STATE
18    COURT, AND NOW HAVING LOST, THEY ARE ASKING THE COURT TO SAVE
19    THEM FROM THE CHOICES THAT THEY HAVE MADE AND FROM THAT
20    DECISION.  AND IT'S INAPPROPRIATE TO DO SO ON COMITY AND
21    FEDERALISM CONCERNS.
22         THE FINAL POINT IS, OF COURSE, THAT THE STATE COURT
23    PROCEEDINGS NOW INVOLVE CONTEMPT PROCEEDINGS.  AND SO THE
24    INTEREST OF THE COURT, THE COURTS OF CALIFORNIA, IN VINDICATING
25    THE RULE OF LAW AND ADHERENCE TO THEIR ORDERS, IS NOW AT ISSUE,
```

1    WHICH MAKES IT INAPPROPRIATE FOR THIS COURT TO INTERVENE OR

2    STOP THE STATE COURT PROCEEDINGS.

3         WITH RESPECT TO --

4         THE COURT:  WOULD YOU ADDRESS THE EXCEPTIONS TO

5    YOUNGER ABSTENTION, AND PARTICULARLY THE ONE EXCEPTION RAISED

6    BY MS. GONDEIRO, WHICH IS IRREPARABLE HARM.

7         MR. WALL:  SO THERE IS NO -- FOR THE SAME REASONS

8    THAT THERE IS NO IRREPARABLE HARM ON THE FREE EXERCISE, THERE'S

9    NO IRREPARABLE HARM TO PLAINTIFFS HERE, THEY HAVE A FULL AND

10   FAIR OPPORTUNITY TO VINDICATE THEIR FEDERAL RIGHTS IN THE STATE

11   COURT IN RESPONSE TO THIS EX PARTE TRO APPLICATION THAT WE

12   INITIALLY FILED ON OCTOBER 28TH.  THE PLAINTIFFS HAD AN

13   OPPORTUNITY TO, AND DID ASSERT THEIR FEDERAL CONSTITUTIONAL

14   RIGHTS, THEIR DEFENSES.  THEY DID NOT PREVAIL ON THAT ARGUMENT.

15   THEY HAD AN ADDITIONAL CHANCE IN CONNECTION WITH THE MOTION,

16   THE APPLICATION TO REVISE THE TRO AND ON THE PRELIMINARY

17   INJUNCTION AS WELL.

18        THE COURT:  SO ARE YOU SUGGESTING THAT THE

19   IRREPARABLE HARM UNDER THE YOUNGER EXCEPTION, NOT FOR THE

20   INJUNCTION, BUT UNDER THE YOUNGER EXCEPTION, IS LIMITED TO AN

21   EVALUATION OF WHETHER THE CLAIMS AND DEFENSES CAN BE BROUGHT

22   AND HAVE A FORUM TO BE BROUGHT BEFORE THE STATE?

23        MR. WALL:  I DO NOT KNOW, YOUR HONOR, IF IT'S LIMITED

24   TO THAT IN EVERY CIRCUMSTANCE.  I THINK THAT IS A FAIR WAY TO

25   DESCRIBE IT IN THIS CASE.  THERE ARE NO OTHER EXCEPTIONAL

1    CIRCUMSTANCES THREATENING IRREPARABLE HARM THAT IS SEPARATE

2    FROM THEIR ABILITY TO LITIGATE AND VINDICATE THEIR FEDERAL

3    RIGHTS.

4         FOR EXAMPLE, THERE ARE ADMINISTRATIVE PROCEEDINGS IN WHICH

5    THE PLAINTIFFS, IN WHICH A PARTY IS NOT ABLE TO ASSERT A

6    FEDERAL CONSTITUTIONAL DEFENSE.  AND IN THOSE CIRCUMSTANCES

7    WHERE A FEDERAL CONSTITUTIONAL RIGHT MAY BE IN JEOPARDY AND

8    THEY CANNOT SERVE SUCH AN OFFENSE, THERE IS AN IRREPARABLE HARM

9    THREATENED.

10        THAT IS NOT THIS CASE, THIS CASE IS AN ORDINARY COURSE

11   REGULATORY PUBLIC NUISANCE PROCEEDING, ALBEIT IN THE

12   EXCEPTIONAL CIRCUMSTANCES OF THE COVID 19 PANDEMIC, BUT A

13   PUBLIC NUISANCE PROCEEDING IN WHICH PLAINTIFF'S LITIGANTS VERY

14   OFTEN ASSERT FEDERAL DEFENSES AND THEY GET A FAIR HEARING IN

15   THE STATE COURTS.

16        THE COURT:  OKAY.

17        WELL, BUT, I MEAN, MS. GONDEIRO IS CORRECT THAT UNDER --

18   IT'S NOT JUST UNDER THE NEW CASES OF THE BROOKLYN DIOCESE OR

19   THE NEW NINTH CIRCUIT CALVARY CASE THAT A PARTY CLAIMING AN

20   INFRINGEMENT OF THEIR CONSTITUTIONAL RIGHT, HERE A FIRST

21   AMENDMENT RIGHT TO FREE EXERCISE OF RELIGION, DOES MAKE A CASE

22   FOR IRREPARABLE HARM.

23        I THINK THAT WHAT MS. GONDEIRO HAS SUBMITTED AS AUTHORITY

24   IS THAT IRREPARABLE HARM, THAT COULD BE ENOUGH IN ORDER TO GET

25   A RESTRAINING ORDER, BUT NOT THE EXTRAORDINARY LEVEL NECESSARY

1    TO QUALIFY AS AN EXCEPTION TO YOUNGER ABSTENTION.  THAT'S WHERE

2    I'M DRAWING THE LINE.

3         BUT MS. GONDEIRO IS COMPLETELY CORRECT THAT WHEN A

4    FUNDAMENTAL RIGHT, SUCH AS FREE EXERCISE OF RELIGION, IS AT

5    ISSUE, AND CLEARLY THESE STATE AND COUNTY REGULATIONS RIGHT

6    NOW, THE CHURCH CANNOT INVITE ANYONE INSIDE TO WORSHIP, IT'S A

7    ZERO OCCUPANCY, IS MY UNDERSTANDING, SO I'M TRYING TO FIND WHAT

8    IS NEEDED FOR YOUNGER ABSTENTION, BECAUSE AS I QUESTIONED

9    MS. GONDEIRO ABOUT THIS, IT'S NOT -- I DON'T THINK IT'S ENOUGH

10   TO BE JUST THE STANDARD IRREPARABLE HARM NECESSARY IN ORDER TO

11   OBTAIN A PRELIMINARY INJUNCTION.

12        MR. WALL:  THAT'S CORRECT, YOUR HONOR.

13        IT NEEDS TO BE EXTRAORDINARY CIRCUMSTANCES.  AND WHAT WE

14   HAVE HERE ARE PARALLEL PROCEEDINGS IN STATE AND FEDERAL COURT,

15   TO WHICH WE SHOULD APPLY ORDINARY COMITY AND FEDERALISM

16   PRINCIPLES AND NOT INTERFERE IN THE STATE COURT PROCEEDING,

17   UNTIL AT WHICH POINT IT INTERFERES WITH THIS PROCEEDING AND WE

18   ARE NOT AT THAT STAGE YET, IF WE WILL EVER GET THERE.

19        MOVING ON, YOUR HONOR, TO THE FREE EXERCISE CLAIM.

20   PLAINTIFFS CITE TWO CASES IN THEIR REPLY BRIEF, ROMAN CATHOLIC

21   AND CALVARY CHAPEL DAYTON VALLEY IN SUPPORT OF THEIR ARGUMENT

22   THAT THERE'S A FREE EXERCISE ISSUE HERE, NEITHER OF WHICH WE

23   BELIEVE CONTROLS THIS CASE AND NEITHER OF WHICH ADDRESSES THE

24   ISSUE BEFORE THIS COURT ON THE FACTUAL RECORD THAT WE HAVE

25   HERE.

1      IN ROMAN CATHOLIC, THE SUPREME COURT ADDRESSED NEW YORK

2  STATE'S HEALTH ORDERS, CITING LUKUMI.  AND THE COURT FOUND THAT

3  THOSE ORDERS, THAT THERE WAS FOR TWO REASONS THAT THEY VIOLATED

4  THE NEUTRALITY PRINCIPLE.

5      THE FIRST REASON WAS THAT THERE WAS EVIDENCE THAT THERE

6  HAD BEEN A TARGETING OF PARTICULAR RELIGIOUS COMMUNITY IN THE

7  WAYS THAT THE LINES WERE DRAWN, AND IN THE STATEMENTS OF THE

8  GOVERNOR.  NOW WHILE NOT DISPOSITIVE OF A NEUTRALITY ISSUE,

9  THEY WERE NONETHELESS CONSIDERATIONS THAT THE COURT DISCUSSES

10 IN ITS OPINION AND PRO CURIUM OPINION.

11     THE SECOND POINT IS THE STRIKING DISPARITY, THEY USED THAT

12 TERM, BETWEEN THE TREATMENT OF CHURCHES IN THE STATE AND THE

13 TREATMENT OF SECULAR ACTIVITIES.

14     SO FOR EXAMPLE, THE ATTENDANCE AT CHURCHES IN THAT CASE

15 MIGHT HAVE BEEN CAPPED AT 10 OR 25 PEOPLE AS COMPARED TO

16 UNLIMITED CAPACITY ATTENDANCE AT AN ESSENTIAL, AND EVEN

17 NONESSENTIAL, BUSINESSES AND ACTIVITIES IN THE STATE.  WE DON'T

18 HAVE THAT DISPARITY HERE.

19     TO CLARIFY ONE THING FOR THE COURT, THE CURRENT STATE, IT

20 IS A DIFFICULT REGULATORY ENVIRONMENT TO UNDERSTAND BECAUSE THE

21 PUBLIC HEALTH ORDERS HERE HAVE BEEN CHANGING ON A FREQUENT

22 BASIS, AND WE HAVE THE OVERLAPPING AND SOMETIMES, THE

23 OVERLAPPING REQUIREMENTS OF STATE AND COUNTY PUBLIC HEALTH

24 ORDERS.

25     THE CURRENT ORDERS ARE IN THE RECORD ATTACHED TO

1     MR. AVILA'S DECLARATION.  THE RISK REDUCTION ORDER, DATED

2     OCTOBER 5TH FROM THE COUNTY, IS EXHIBIT A.

3              THE COURT:  DID YOU SAY H, LIKE HARRY?

4              MR. WALL:  EXHIBIT A, AS IN APPLE, YOUR HONOR.

5              THE COURT:  OKAY.  THANK YOU.

6              MR. WALL:  THE EXHIBIT B IS THE MANDATORY DIRECTIVE

7     IMPLEMENTING THE STATE'S REGIONAL STAY-AT-HOME ORDER.  SO WHAT

8     HAPPENED THERE ON DECEMBER 4TH, THE STATE ISSUED ITS MANDATORY

9     DIRECTIVE, THE STATE REGIONAL STAY-AT-HOME ORDER THAT CARVED

10    THE STATE UP INTO ICU CAPACITY REGIONS AND SAID, WHEN YOUR

11    REGION DROPS BELOW 15 PERCENT ICU CAPACITY, THE TERMS OF THE

12    ORDER APPLY.

13         WHEN THE STATE ISSUED THAT ORDER, NOTWITHSTANDING THE FACT

14    THAT THE BAY AREA REGION WAS NOT YET AT 15 PERCENT ICU

15    CAPACITY, WHICH IT GOT TO YESTERDAY, UNFORTUNATELY.

16              THE COURT:  I KNOW.

17              MR. WALL:  BUT NOTWITHSTANDING THE FACT THAT WE WERE

18    NOT THERE YET, WE WERE ALREADY THERE IN SANTA CLARA COUNTY.

19         AND GIVEN THE NUMBER OF CASES, THE INCREASE IN THE CASE

20    COUNT AND THE STRESS ON THE HOSPITALS AND CRITICAL CARE

21    FACILITIES IN THE COUNTY, OUR PUBLIC HEALTH OFFICER AND FOUR

22    OTHER OFFICERS IN THE BAY AREA IMPLEMENTED THAT STATE ORDER

23    EARLY BEFORE WE WERE ACTUALLY EXPECTED AND BEFORE WE GOT BELOW

24    THE 15 PERCENT.  THAT'S EXHIBIT B.

25              THE COURT:  SO ONE OF MY CONCERNS, AND WHY I ASKED

1    MS. GONDEIRO TO HELP ME OUT, IS THAT THERE'S ALWAYS A LAG TIME

2    HERE.

3         AND SO HER -- I NEED TO KNOW WHAT ORDERS, WHAT PUBLIC

4    HEALTH ORDERS SHE IS ASKING ME TO REVIEW, IF I GET THERE.  AND

5    THESE -- THE REGIONAL ORDER, I THINK CAME IN TO EXISTENCE AFTER

6    THE FACTS OF THIS CASE, BECAUSE JUDGE KERWIN'S ORDER OF

7    CONTEMPT AND HIS PRELIMINARY INJUNCTION ORDER HAVE NOTHING TO

8    DO WITH THE REGIONAL ORDER; ISN'T THAT CORRECT?

9         MR. WALL:  I THINK -- SO IT'S OUR UNDERSTANDING THAT

10   THE PRELIMINARY INJUNCTION ORDER IMPLEMENTS THE REVISED TRO

11   DATED NOVEMBER 24TH, WHICH IS ATTACHED AS THE TRO EXHIBIT C.

12        THE FIRST TERM OF THE TEMPORARY RESTRAINING ORDER

13   PROHIBITS PLAINTIFFS FROM CONDUCTING ANY GATHERING THAT DOES

14   NOT FULLY COMPLY WITH STATE AND COUNTY PUBLIC HEALTH ORDERS.

15        THE COURT:  OH.

16        MR. WALL:  INCLUDING, AND THEN IT SPECIFIES THE THEN

17   CURRENT ORDERS.  BUT THAT FIRST TERM, IN OUR VIEW, OBLIGATES

18   CALVARY AND PASTOR MCCLURE TO FOLLOW THE RULES AS THEY CHANGE.

19        THE COURT:  CHANGE.

20        MR. WALL:  AND OF COURSE SHOULD THEY HAVE -- SO FOR

21   EXAMPLE, PRETEND ON NOVEMBER 24TH, THIS IS NOT THE CASE, BUT

22   THE PLAINTIFFS BELIEVED THAT THE ORDERS WERE CONSTITUTIONAL AND

23   THEY WERE HAPPY TO ACCEPT THEM AND LIVE WITH THEM.  BUT THEN AT

24   SOME SUBSEQUENT DATE, THE STATE AND/OR THE COUNTY HAD ISSUED

25   ORDERS WITH WHICH THEY DISAGREED.  AT THAT POINT THEY COULD

1    SEEK RELIEF FROM JUDGE KIRWAN, ASK FOR A MODIFICATION OF RELIEF

2    FROM HIS PRELIMINARY INJUNCTION ORDER, GIVEN THE CHANGE IN THE

3    RULES.

4        AND AS YOU'VE SEEN, THE SUPERIOR COURT HAS BEEN ABLE TO

5    ACT VERY QUICKLY ON OUR EX PARTE APPLICATIONS, AND AT THE SAME

6    TIME, IT AFFORDED PLAINTIFFS CALVARY AND MCCLURE AN ADEQUATE

7    OPPORTUNITY TO RAISE THEIR DEFENSES.

8        SO FOR THE PURPOSES, I THINK OF CONSIDERING, IF THE COURT

9    WERE TO REACH, I DON'T THINK IT SHOULD OR NEEDS TO, IF THE

10   COURT WERE TO CONSIDER THE CONSTITUTIONALITY OF THE CURRENT

11   ORDERS APPLICABLE TO CALVARY AND TO PASTOR MCCLURE, THEY SHOULD

12   LOOK TO, AND I'M GOING TELL YOU WHERE THEY ARE IN THE RECORD

13   RIGHT NOW.  SO IT'S EXHIBITS A AND B TO THE AVILA DECLARATION

14   WHICH IS AT ECF 56.  AND AGAIN, THAT'S THE RISK REDUCTION ORDER

15   FROM THE COUNTY, AND IT'S A MANDATORY DIRECTIVE IMPLEMENTING

16   THE STATE'S REGIONAL STAY-AT-HOME ORDER.

17       THEN THE CURRENT DIRECTIVE ON GATHERINGS IS EXHIBIT E, AS

18   IN ELEPHANT, TO THAT DECLARATION.  AND IT WAS LAST REVISED

19   DECEMBER 4TH.

20       FOURTH, THE MANDATORY DIRECTIVE ON CAPACITY LIMITATIONS,

21   THE CURRENT VERSION IS EXHIBIT G, AS IN GIRAFFE, TO THAT

22   DECLARATION.  AND AGAIN, IT WAS REVISED ON DECEMBER 4TH.

23       AND THEN THE STATE ORDERS AND GUIDANCE ARE ATTACHED AS

24   EXHIBITS H THROUGH K, OF THE SAME DECLARATION, ALTHOUGH

25   MR. GRABARSKY MAY HAVE MORE INFORMATION FOR YOUR HONOR AS TO

1    THE STATE OF THE ART WITH RESPECT TO THOSE ORDERS.

2              THE COURT:  OKAY.  ARE THOSE ARE ALL THE ORDERS?

3    BECAUSE I WANT TO MAKE A POINT TO MS. GONDEIRO.  IS THAT ALL

4    THE ORDERS THAT YOU THINK ARE --

5              MR. WALL:  I THINK SO, YOUR HONOR.

6              THE COURT:  OKAY.

7         MS. GONDEIRO, I WANT TO MAKE YOUR JOB EASY.  I'M GOING TO

8    RECOMMEND THAT YOU LOOK AT THE DOCUMENTS THAT ARE ATTACHED TO

9    THE AVILA DECLARATION, AND IF YOU AGREE THAT THESE ARE THE ONES

10   I SHOULD LOOK AT, THAT'S ALL YOU NEED TO TELL ME, OKAY.

11             MS. GONDEIRO:  OKAY.

12             THE COURT:  YOU CAN'T DO IT NOW BECAUSE YOU WANT TO

13   STUDY THOSE.  AND YOU ARE GOING TO NEED TO FILE FOR ME EITHER

14   THE DOCUMENTS OR A ONE-LINE STATEMENT THAT YOU CONCUR THAT

15   EXHIBITS A, B, E, G, AND H THROUGH K ARE THE RELEVANT ORDERS AT

16   ISSUE.

17        THAT WILL MAKE YOUR JOB EASY IF YOU AGREE WITH THAT, OKAY.

18             MS. GONDEIRO:  THANK YOU SO MUCH.

19             MR. WALL:  AND IN THAT CONNECTION, WHILE WE ARE

20   TALKING ABOUT THE CHANGING ORDERS OVER TIME, YOUR HONOR, I JUST

21   WANT TO ANSWER THE COURT'S QUESTION ABOUT CALVARY CHAPEL IN THE

22   NINTH CIRCUIT DECISION WHERE THEY ENJOINED ANY GREATER CAPACITY

23   LIMITATION THAN 25 PERCENT.

24        IN THAT CASE, THE COURT WAS CONSIDERING THE

25   CONSTITUTIONALITY OF THE NEVADA RULES AND AGAIN PROPOSED A

1        STRIKING AND EXTREME DISPARITY BETWEEN CHURCH AND CASINO AND

2        OTHER LOCATION ATTENDANCE, WHERE CHURCHES MIGHT BE LIMITED TO

3        50 PEOPLE AND CASINOS COULD OPERATE AT 50 PERCENT, AGAIN, A

4        STRIKING DISPARITY.  AND THEN THEY WENT ON TO APPLY A

5        25 PERCENT CAPACITY LIMIT IN THE INJUNCTIVE RELIEF, ALTHOUGH IT

6        WASN'T COMPLETE INJUNCTIVE RELIEF BECAUSE THEY RESERVED THE

7        QUESTION OF THE EQUITIES TO THE DISTRICT COURT WHEN THEY

8        REMANDED THAT -- WHEN THEY REMANDED THE CASE TO ISSUE

9        INJUNCTIVE RELIEF.

10            WHICH I THINK IS AN IMPORTANT POINT, AND I WILL TALK ABOUT

11       IT IN A MINUTE WHEN I GET TO THE FREE EXERCISE CLAIM.

12            I THINK WHAT IS GOING ON THERE, YOUR HONOR, IS THAT THEY

13       WERE EVALUATING THE CONSTITUTIONALITY OF THE REGULATIONS IN

14       PLACE WHEN THE COMPLAINT WAS FILED AND THE TRO APPLICATION WAS

15       FILED IN THAT ACTION, AND THEN WHAT THEY WERE DOING WAS

16       IMPOSING THE 25 PERCENT LIMITATION THAT WAS THEN APPLICABLE TO

17       CASINOS, RETAIL OPERATIONS AND OTHER FACILITIES IN THE STATE.

18            IT IS NOT CLEAR AND THEY DO NOT EXPLAIN IT AND, YOU KNOW,

19       THERE'S -- OVERALL, THAT DECISION DOES NOT HAVE A GREAT DEAL OF

20       ANALYSIS AND I DON'T THINK IT'S HELPFUL FOR THIS COURT IN

21       ADDRESSING THE FREE EXERCISE DECISION BEFORE THAT, AND I WILL

22       EXPLAIN THAT NOW.

23            SO NOT ONLY IS ROMAN CATHOLIC DISTINGUISHABLE BECAUSE

24       THERE IS NO EVIDENCE THAT WE TARGETED RELIGIOUS COMMUNITIES

25       HERE AND THERE'S NO STRIKING DISPARITY BETWEEN THE TREATMENT OF

1    CHURCHES, GATHERINGS INCLUDING CHURCHES, AND SECULAR

2    ACTIVITIES.

3         SO FOR EXAMPLE, UNDER THE CURRENT RULES, THERE IS A

4    PROHIBITION ON INDOOR GATHERINGS, AND THAT INCLUDES GATHERINGS

5    AT CHURCHES.  THERE IS A 20 PERCENT CAPACITY LIMITATION FOR

6    GROCERY STORES AND RETAIL ACTIVITY AND OTHER ACTIVITIES.  AND I

7    WOULD SAY THAT DISPARITY IS NOT STRIKING, IT'S NOT OF THE SAME

8    MAGNITUDE AS EITHER THE ROMAN CATHOLIC DECISION, WHICH WAS 10

9    TO 25 PEOPLE VERSUS UNLIMITED FOR SECULAR ACTIVITIES, OR THE --

10        THE COURT:  I THOUGHT THAT TODAY, THE STANDALONE

11   GROCERY STORES WERE AT 35 PERCENT.

12        MR. WALL:  SO THAT IS UNDER -- SO HERE AGAIN, THE

13   COMPLICATED NATURE OF THIS REGULATORY ENVIRONMENT.  THE STATE

14   RULE CURRENTLY PERMITS 35 PERCENT OCCUPANCY FOR GROCERY STORES.

15   SANTA CLARA COUNTY HAS A MORE RESTRICTIVE SUPERSEDING RULE THAT

16   LIMITS IT TO 20 PERCENT, AND THAT'S IN THE CAPACITY DIRECTIVE

17   THAT I -- THAT IS AT EXHIBIT G AS IN GIRAFFE TO MR. AVILA'S

18   DECLARATION.

19        THE COURT:  THAT IS HELPFUL.  THANK YOU.

20        MR. WALL:  IN THE COUNTY -- SO BETWEEN ZERO AND

21   20 PERCENT.

22        AND THE COUNTY -- AS WE LAY OUT IN OUR BRIEF, THE COUNTY

23   TREATS SIMILAR ACTIVITIES SIMILARLY.  SO FOR EXAMPLE, ALL

24   GATHERINGS WHICH WOULD BE LONGER DURATION INDOOR GATHERINGS,

25   SOCIAL GATHERINGS, RELIGIOUS GATHERINGS, ARE TREATED THE SAME

1    WAY, WHETHER IT'S IN A CHURCH, WHETHER IT'S IN A LECTURE HALL,

2    WHETHER IT'S IN A SCHOOL AUDITORIUM.  THOSE ARE TREATED THE

3    SAME.  YOU CAN'T GATHER IN THESE PLACES.

4         THE COURT:  SO THAT IS CERTAINLY THE PREMISE ON WHICH

5    THE COUNTY ORDINANCE IS BASED.  BUT IN ROMAN CATHOLIC, I READ

6    THE OPINION, AND ESPECIALLY IN THE CALVARY DECISION FROM THE

7    NINTH CIRCUIT, AS ESSENTIALLY SAYING IF ANY ACTIVITY HAS A

8    HIGHER OCCUPANCY.  AND IT CAN BE AN ESSENTIAL ACTIVITY THAT

9    THAT LINE, THAT CHURCHES AND OTHER HOUSES OF WORSHIP CANNOT BE

10   TREATED DIFFERENTLY THAN THE MOST GENEROUS ALLOCATION TO ANY

11   SERVICE, ESSENTIAL OR OTHERWISE.

12        MR. WALL:  THE ISSUE HERE IS THE QUESTION AS TO

13   WHETHER THE RULES, THE STATE AND COUNTY RULES, ARE NEUTRAL AND

14   OF GENERAL APPLICABILITY, WHICH IS THE STANDARD STATE OF

15   LUKUMI, WHICH IS THE STANDARD APPLIED BY THE SUPREME COURT IN

16   ROMAN CATHOLIC.

17        THE ROMAN CATHOLIC, I WOULD ARGUE THAT THEY HAD -- ON

18   THOSE FACTS, IT WAS AN EASIER DECISION, WHERE THEY HAD EVIDENCE

19   THAT THERE WAS RELIGIOUS GERRYMANDERING TARGETING A SPECIFIC

20   RELIGIOUS COMMUNITY AND THERE WAS A STRIKING DISPARITY IN

21   TREATMENT BETWEEN CHURCHES AND SECULAR SPACES.

22        WE HAVE NEITHER OF THOSE HERE.  SO THOSE FACTS THAT WERE

23   APPLICABLE IN ROMAN CATHOLIC DON'T TELL US WHETHER OUR RULES

24   HERE ARE NEUTRAL.  OUR RULES HERE ARE BASED ON THE RISK PROFILE

25   OF THE ACTIVITIES IN QUESTION.

1       AND SO FOR EXAMPLE, WE HAVE PROVIDED EVIDENCE SUBMITTED

2  WITH -- THE DECLARATION FROM DR. LIPSITCH FROM DR. CODY, THE

3  HEALTH OFFICER IN THE COUNTY, AND THE STATE'S DR. STOTO THAT WE

4  ATTACHED TO MR. AVILA'S DECLARATION THAT GATHERINGS PRESENT A

5  GREATER RISK OF COVID 19 TRANSMISSION AND ARE MORE DANGEROUS

6  THAN OTHER ACTIVITIES.

7       SO FOR EXAMPLE, DR. CODY EXPLAINS THAT THE DURATION AND

8  PROXIMITY OF INTERPERSONAL CONTACT IS RELEVANT FOR COVID 19

9  TRANSMISSION AND INCREASES THE RISK.  THAT'S AT PARAGRAPHS 11

10  AND 18 OF HER DECLARATION.

11      BOTH DOCTORS CODY AND LIPSITCH EXPLAIN THAT THE DURATION

12  OF INTERPERSONAL CONTACT IS RELEVANT.  AND THAT'S AT

13  PARAGRAPH 47 AND 53 OF DR. CODY'S DECLARATION.  AND PARAGRAPHS

14  39 AND 40 OF DR. LIPSITCH'S DECLARATION.  BOTH DOCTORS

15  EXPLAINED THAT INDOOR ACTIVITIES ARE MORE DANGEROUS, AND THAT'S

16  CODY AT PARAGRAPH 33 TO 36, AND DR. LIPSITCH AT PARAGRAPH 38.

17  THAT THE SIZE OF THE GATHERING IS RELEVANT.  AND AGAIN, THAT'S

18  DR. CODY AT PARAGRAPH 36, AND DR. LIPSITCH AT PARAGRAPH 41.

19      AND SPECIFICALLY WITH RESPECT TO INDOOR GATHERING, LIKE

20  CHURCH SERVICES AND LECTURES AT UNIVERSITIES AND INDOOR BAR

21  GATHERINGS, DR. CODY PROVIDES NUMEROUS EXAMPLES OF OUTBREAKS

22  THAT HAVE BEEN TIED TO THOSE ACTIVITIES VIA CONTACT TRACING,

23  AND THAT'S AT PARAGRAPH 40 OF HER DECLARATION.

24      WHAT IS BEFORE THE COURT IS A FACTUAL RECORD THAT SHOWS

25  THAT INDOOR GATHERINGS OF LONGER DURATION AND CLOSER SOCIAL

1      CONTACT ARE MORE DANGEROUS DURING THE PANDEMIC THAN OTHER

2      ACTIVITIES.  AND THAT IS THE LINE THAT WE HAVE DRAWN HERE.

3           SO I WOULD STATE THAT IT CANNOT BE THE CASE THAT CALVARY

4      CHAPEL, THE NINTH CIRCUIT DECISION, AND ROMAN CATHOLIC STAND

5      FOR THE PROPOSITION THAT CHURCHES HAVE TO BE TREATED THE SAME

6      WAY AS ANY OTHER ACTIVITY.

7           AND ONE SHINING EXAMPLE AND PRINCIPAL EXAMPLE IS

8      HOSPITALS.  HOSPITALS TODAY ARE OPERATING AT OVER ONE

9      HUNDRED PERCENT CAPACITY BECAUSE THEY ARE DEALING WITH THE

10     PANDEMIC AND THEY ARE DEALING WITH A SERIOUS ILLNESS AND THE

11     HOSPITALIZATIONS THAT ARE NECESSARY TO DEAL WITH THE SERIOUS

12     CASES.  IT CANNOT BE THE CASE THAT BECAUSE HOSPITALS ARE

13     TREATED DIFFERENTLY THAN CHURCHES, THAT CHURCHES NEED TO BE

14     ABLE TO OPERATE AT ABOVE ONE HUNDRED PERCENT CAPACITY.

15          AND THE DIFFERENCE IS, OF COURSE, THAT THERE'S A SECULAR

16     REASON FOR TREATING HOSPITALS DISTINCTLY FROM GATHERINGS, WHICH

17     IS THAT THEY ARE NECESSARY FOR THE CRITICAL CARE OF THE SICK

18     AND ILL MEMBERS OF OUR COMMUNITY, WHETHER IT'S FROM COVID 19

19     WHICH CONTRIBUTED 99 NEW CASES TO OUR HOSPITALS IN THE COUNTY

20     YESTERDAY, OR WHETHER IT'S THE OTHER ILLNESSES, ACCIDENTS AND

21     PROBLEMS THAT BRING PEOPLE IN FOR CRITICAL MEDICAL CARE.

22          THE LINES THAT THE STATE AND COUNTY HAVE DRAWN HERE ARE

23     DRAWN ON A SIMILAR SECULAR BASIS, WHICH IS THE RISK PROFILE OF

24     THE ACTIVITIES AT ISSUE.

25          NOW NEITHER ROMAN CATHOLIC NOR CALVARY CHAPEL IN THE

1    NINTH CIRCUIT DISCUSS WHETHER THAT IS AN APPROPRIATE

2    DISTINCTION OR PROVIDE, UNFORTUNATELY, ANY GUIDANCE TO THIS

3    COURT ON HOW TO EVALUATE THAT EVIDENCE IN THE CONTEXT OF THE

4    FREE EXERCISE CLAIM.

5         SO WITH RESPECT TO THAT QUESTION, I BELIEVE THIS COURT IS

6    OPERATING ON A BLANK SLATE, IS NOT CONTROLLED BY EITHER ROMAN

7    CATHOLIC OR THE CALVARY CHAPEL DECISION IN THE NINTH CIRCUIT,

8    AND SHOULD RETURN TO -- SHOULD APPLY THE TRADITIONAL METHODS OF

9    ANALYSIS FOR A FREE EXERCISE CLAIM, WHICH WERE NOT OVERTURNED

10   AND WERE IN FACT ENDORSED BY THE CITATION OF LUKUMI AND THE

11   PROCURING OPINION IN ROMAN CATHOLIC, AND CONSIDER WHETHER OR

12   NOT THE RULES HERE ARE NEUTRAL AND OF GENERAL APPLICABILITY.

13        AND ON THE FACTUAL RECORD BEFORE THIS COURT, I MAINTAIN

14   THE COURT SHOULD CONCLUDE THAT THE STATE AND COUNTY'S RESPONSE

15   TO THE PANDEMIC IN ISSUING THESE PUBLIC HEALTH RULES WAS

16   PROPORTIONAL TO THE RISK AND APPROPRIATE.

17        SO WHERE ACTIVITIES PRESENTED A GREATER RISK OF COMMUNITY

18   TRANSMISSION, SERIOUS ILLNESS AND DEATH RELATED TO COVID 19,

19   THE STATE AND COUNTY PLACED GREATER RESTRICTIONS.  WHERE THE

20   ACTIVITIES DON'T PRESENT THE SAME RISK AND A LESSER RISK, THEY

21   IMPLEMENT LESSER RESTRICTIONS.  AND THAT IS A NEUTRAL AND

22   GENERALLY APPLICABLE RULE THAT DOES INCIDENTALLY BURDEN

23   GATHERINGS IN CHURCHES BUT DOES NOT MERIT STRICT SCRUTINY.

24        A FURTHER POINT HERE JUST TO CLARIFY WHAT IS HAPPENING

25   WITH RESPECT TO THE PLAINTIFFS, THE COUNTY DOESN'T REGULATE

1      CHURCHES.  ACTIVITY IN CHURCHES, IT REGULATES GATHERINGS.  AND

2      SO ACTIVITIES IN CHURCHES AREN'T SHUT DOWN.  SO THE

3      ADMINISTRATIVE ACTIVITIES IN A CHURCH CAN CONTINUE AT THE

4      20 PERCENT CAPACITY LIMIT THAT ANY OTHER BUSINESS ALLOWED

5      ACTIVITY WOULD BE ABLE TO CONDUCT IN THE COUNTY.

6          WHAT YOU CAN'T DO IS GATHER AT THE CHURCH.  AND THAT'S FOR

7      THE SPECIFIC EPIDEMIOLOGICAL CONCERNS THAT LARGE GATHERINGS,

8      WHERE THERE IS BROAD COMMUNITY TRANSMISSION OF THE VIRUS, ARE

9      LIKELY TO INCLUDE PEOPLE WHO ARE POSITIVE FOR COVID 19, WHO ARE

10     LIKELY INFECTIOUS, AND WHERE THE GATHERING YOU ARE GOING TO

11     ENGAGE IN ACTIVITIES, IN THIS CASE LIKE SINGING AND CHANTING,

12     NOT WEARING MASKS, NOT SOCIAL DISTANCING, WHICH ARE VERY LIKELY

13     TO SPREAD THE DISEASE AND CAUSE ILLNESS AND DEATH IN OUR

14     COMMUNITY.

15         AND I THINK THAT'S WHY WERE THE COURT, TO REACH THE FREE

16     EXERCISE QUESTION, THAT'S THE ANALYSIS IT SHOULD APPLY AND

17     SHOULD FIND THAT THESE ARE NEUTRAL AND GENERALLY APPLICABLE

18     RULES.

19         AND THE REASONABLENESS OF THE RULES THAT THE STATE AND

20     COUNTY HAVE IMPLEMENTED ARE SUPPORTED BY DR. MARK LIPSITCH, WHO

21     IS ONE OF THE WORLD'S PREEMINENT EXPERTS ON INFECTIOUS DISEASE

22     AND PANDEMIC RESPONSE.  AND IN HIS DECLARATION HE CONCLUDES

23     THAT "WHERE REGIONS ARE EXPERIENCING MODERATE, HIGH OR

24     INCREASING LEVELS OF COMMUNITY TRANSMISSION," WHICH

25     UNFORTUNATELY DESCRIBES BOTH THE STATE'S AND COUNTY, "THAT

1    LOCAL AUTHORITIES SHOULD CLOSE OFF INDOOR SPACES AS APPROPRIATE

2    AND REQUIRE UNIVERSAL MASK USE."

3         UNFORTUNATELY, PLAINTIFF CALVARY AND PASTOR MCCLURE HAVE

4    IGNORED THE RULES THAT REQUIRED THEM TO DO THIS AND DON'T

5    APPEAR TO APPRECIATE THEIR IMPORTANCE IN PROTECTING THE REST OF

6    THE COMMUNITY FROM ILLNESS AND DEATH.

7         DR. LIPSITCH, IN PARAGRAPH 46, CONCLUDES "IT WOULD BE

8    RECKLESS TO LIFT THOSE RESTRICTIONS NOW, GIVEN THE CASE COUNTS

9    AND HOSPITALIZATION RATES THAT THE COUNTY AND THE STATE ARE

10   EXPERIENCING."

11        I MEAN, THE COUNTY IS NOW BELOW 15 PERCENT ICU CAPACITY.

12   STANFORD -- I UNDERSTAND THE STANFORD MEDICAL FACILITIES HAVE

13   NO NON-SURGE CAPACITY LEFT.  WE ARE AT A VERY DIFFICULT POINT

14   IN THE PANDEMIC.  AS YOU MENTIONED, THERE IS HOPE AROUND THE

15   CORNER, GIVEN THE AVAILABILITY OF EFFECTIVE VACCINES, BUT THAT

16   HOPE IS STILL MONTHS AWAY FROM BEING REALIZED.  AND IN THE

17   INTERIM, TO THE EXTENT THAT WE CAN AVOID ILLNESS AND WE CAN

18   AVOID DEATH, WE MIGHT PREVENT THEM ALL TOGETHER.

19        I WILL POINT THE COURT TO ONE DECISION, IT'S NOT CITED IN

20   THE BRIEFS, IT WAS ISSUED ON NOVEMBER 29TH, AND THAT'S

21   COMMONWEALTH V. BESHEAR, IT'S IN THE SIXTH CIRCUIT, IT'S

22   OBVIOUSLY NOT BINDING ON THIS COURT, BUT IT'S A CASE IN WHICH

23   THE CIRCUIT COURT UPHELD A SET OF HEALTH ORDERS POST-ROMAN

24   CATHOLIC.  AND IT EMPHASIZED THERE THAT THE TREATMENT OF

25   SIMILARLY SITUATED ENTITIES IN COMPARABLE WAYS SERVES PUBLIC

1    HEALTH INTERESTS AT THE SAME TIME IT PRESERVES BED ROCK FREE

2    EXERCISE GUARANTEES.

3           THE COURT:  CAN YOU GIVE ME THAT CITE AGAIN.

4           MR. WALL:  I'M SORRY, IT'S WESTLAW CITE 2020

5    WL7017858.  AND IT EMPHASIZES WHAT THE STATE AND COUNTY HAVE

6    DONE, WHICH IS TO TREAT SIMILAR ACTIVITIES SIMILARLY, TREAT

7    DIFFERENT THINGS DIFFERENTLY, AND TO EMPHASIZE THE REQUIREMENT

8    THAT THIS COURT ENGAGE IN THAT FACTUAL INQUIRY ON THE RECORD

9    BEFORE IT, THREE TIMES SINCE THE SUPREME COURT ISSUED ROMAN

10   CATHOLIC DIOCESE, IT HAS REMANDED FREE EXERCISE CLAIMS BACK TO

11   THE DISTRICT COURT FOR CONSIDERATION OF ROMAN CATHOLIC ON THE

12   FACTS IN THOSE COURTS.

13        AND YOU KNOW, THAT INCLUDES THE HARVEST ROCK CASE HERE IN

14   CALIFORNIA.  IT ALSO INCLUDES, I DON'T KNOW IF I HAVE THE

15   CITATIONS FOR THE TWO OTHER CASE, I BELIEVE A NEW JERSEY CASE,

16   AND I'M FORGETTING WHERE THE THIRD CASE IS, BUT THREE CASES

17   HAVE BEEN REMANDED TO DISTRICT COURT FOR CONSIDERATION ON THE

18   FACTS.  AND THAT'S WHAT THE COURT WOULD HAVE TO DO HERE TO

19   REACH THE FREE EXERCISE ISSUES.

20           THE COURT:  JUST AS A POINT OF CLARIFICATION AGAIN, I

21   ACTUALLY DON'T THINK I'M GOING TO REACH THIS ISSUE, BUT

22   MS. GONDEIRO ARGUES THAT CARD ROOMS OR CASINOS ARE TREATED

23   DIFFERENTLY THAN HOUSES OF WORSHIP.  AND ONE OF HER DECLARANTS

24   HAS SUBMITTED PHOTOGRAPHS OF A GATHERING OF 300 PEOPLE.  BUT MY

25   QUESTION FOR YOU IS, IS SHE CORRECT THAT GATHERINGS DOES NOT

1       INCLUDE CARD ROOMS?

2                  MR. WALL:  CARD ROOMS AREN'T REGULATED AS GATHERINGS.

3                  THE COURT:  OKAY.

4                  MR. WALL:  AND CARD ROOMS -- UNDER THE CURRENT RULES,

5       THEY ARE CLOSED, AS ARE GYMS.  THERE WAS A POINT IN TIME AT

6       WHICH CARD ROOMS HAD INDOOR CAPACITY UNDER THE STATE AND COUNTY

7       RULES THAT I BELIEVE 25 PERCENT FOR A COUPLE WEEKS IN OCTOBER

8       AND NOVEMBER.  THAT IS NO LONGER THE CASE AND THEY ARE NOW

9       CLOSED.

10           THE RECENT CAPACITY DIRECTIVE HAS A TABLE THAT SHOWS WHAT

11      IS OPEN AND WHAT IS CLOSED AND THE PERCENTAGES AT WHICH THINGS

12      ARE OPEN.  AND UNFORTUNATELY, GIVEN THE DIRE STATE OF THE

13      PANDEMIC IN THE COUNTY AND THE STATE, MOST THINGS ARE CLOSED,

14      AND ANYTHING THAT'S OPEN IS OPEN AT 20 PERCENT, WITH A COUPLE

15      EXCEPTIONS, LIKE HOSPITALS, AND IT'S ALL LAID OUT IN THAT

16      TABLE.  AGAIN, THAT WAS EXHIBIT G, AS IN GIRAFFE, TO

17      MR. AVILA'S DECLARATION.

18           FINALLY, WITH RESPECT TO THE ESTABLISHMENT CLAUSE, THERE

19      ARE THREE FACTORS ON THE LIMIT TEST.  FIRST, A SECULAR PURPOSE,

20      PREVENTING ILLNESS AND DEATH THAT COVID 19 CAUSES AND REDUCING

21      TRANSMISSION, SLOWING THE PANDEMIC, IS CLEARLY A SECULAR

22      PURPOSE IN WHICH ROMAN CATHOLIC AGREES WITH AND WHICH WE ALL

23      AGREE WITH AND PLAINTIFFS AGREE WITH.

24           THE SECOND POINT IS THAT THE REGULATION CAN'T HAVE THE

25      PRINCIPLE OR PRIMARY FACT THAT IT ADVANCES OR DISAPPROVES

1    RELIGION.  AGAIN, THESE ARE NEUTRAL AND GENERALLY APPLICABLE

2    RULES, PUBLIC HEALTH RULES, BASED ON RISK ASSESSMENTS OF COVID

3    19 TRANSMISSION.  THEY AFFECT SECULAR INDOOR GATHERINGS AS MUCH

4    AS THEY AFFECT INDOOR RELIGIOUS GATHERINGS.  THEY DON'T

5    FOCUS -- THEY DON'T SINGLE OUT RELIGIOUS GATHERINGS FOR ANY

6    DIFFERENT TREATMENT, AND THEY OBVIOUSLY NEITHER ADVANCE OR

7    DISAPPROVE OF RELIGION.

8         THE THIRD POINT, WHICH IS THE POINT THAT PLAINTIFFS,

9    CALVARY AND PASTOR MCCLURE PRINCIPALLY CONTEST, IS THAT SOMEHOW

10   THE REGULATIONS FOSTER EXCESSIVE GOVERNMENTAL ENTANGLEMENT WITH

11   RELIGION.  THEY CITE LEMON IN SUPPORT OF THAT.

12        THE CASE IN LEMON WAS DIFFERENT.  LEMON INSTRUCTS US THAT

13   YOU CAN -- MONITORING CAN ENTANGLE THE GOVERNMENT IN RELIGIOUS

14   AFFAIRS WHERE THE SURVEILLANCE OR THE MONITORING IS NECESSARY,

15   AND THIS IS FROM THE DECISION ON PAGE 620 TO 21, "IS NECESSARY

16   TO ENSURE THAT TEACHERS THERE PLAY A STRICTLY NON-IDEALOGICAL

17   ROLE."

18        AND SO THERE, THE GOVERNMENT SURVEILLANCE WAS TO ENSURE

19   THAT WHEN TEACHERS DID THEIR JOBS, THEY WERE NON-IDEOLOGICAL,

20   HAD TO GO INTO THE CONTENT OF WHAT WAS TAUGHT, THE CONTENT OF

21   WHAT THE TEACHERS WERE SAYING, AND EVALUATE WHETHER IT WAS

22   IDEOLOGICAL OR NOT, WHETHER IT WAS TAINTED BY RELIGION, AND

23   THAT IS A WHOLLY DIFFERENT INQUIRY THAN WHAT A PUBLIC HEALTH

24   OFFICER DOES IN SANTA CLARA COUNTY WHERE THEY FACTUALLY OBSERVE

25   WHETHER PEOPLE ARE GATHERING INDOORS, WHETHER THEY ARE WEARING

1    MASKS, WHETHER THEY ARE OBSERVING SOCIAL DISTANCING

2    REQUIREMENTS, WHETHER THEY HAVE A SOCIAL DISTANCING PROTOCOL ON

3    FILE WITH THE COUNTY, WHETHER THEY ARE SINGING INDOORS, AND

4    THESE ARE OBJECTIVELY EASILY OBSERVABLE THINGS THAT HAVE

5    NOTHING TO DO WITH THE CONTENT OF THE SPEECH OR ANYTHING TO DO

6    WITH RELIGIOUS DOCTRINE OR PRACTICE OR EXPRESSION.  AND SO IT

7    DOESN'T RAISE THE ENTANGLEMENT CONCERN THAT LEMON EXPRESSED.

8         IF THERE ARE -- I THINK -- I HOPE I HAVE ANSWERED --

9    YOUR HONOR ASKED ONE QUESTION OF MS. GONDEIRO WHICH WAS, DOES

10   ROMAN CATHOLIC AND THE NINTH CIRCUIT DECISION IN CALVARY CHAPEL

11   MEAN THAT CHURCHES HAVE TO -- RELIGIOUS GATHERINGS HAVE TO BE

12   GIVEN THE SAME TREATMENT AS ANY OTHER ACTIVITY, AND I HOPE I

13   HAVE ADDRESSED THAT FOR YOUR HONOR.

14        THE COURT:  YOU HAVE.  THANK YOU.

15        ALL RIGHT.  MR. GRABARSKY, DID YOU WANT TO MAKE ANY

16   COMMENTS?

17        MR. GRABARSKY:  YES, YOUR HONOR, JUST A COUPLE MINOR

18    POINTS THAT MIGHT CLARIFY THE RECORD.

19        UNDER JUST SOME OF THE POINTS THAT THE ACTIVITIES THAT

20   MS. GONDEIRO HAD IDENTIFIED, IN THE STATE, CASINOS AND CARD

21   ROOMS ARE TREATED THE SAME AS WORSHIP SERVICES PRESENTLY.  AND

22   THESE ARE, I THINK, SOME OF THE ACTIVITIES THAT THE

23   NINTH CIRCUIT LISTED IN THE CALVARY CHAPEL DAYTON VALLEY

24   OPINION.  SO CASINOS ARE TREATED THE SAME IN CALIFORNIA AS

25   WORSHIP SERVICES, SAME WITH BOWLING ALLEYS, ARCADES AND

1  RESTAURANTS.  SO JUST A POINT OF CLARIFICATION.

2  ALSO JUST TO NOTE TO ADDRESS THE SIXTH CIRCUIT CASE,

3  DURING THIS HEARING I GOT A FRANTIC E-MAIL FROM MY COLLEAGUES

4  THAT THE SUPREME COURT ACTUALLY DENIED THE APPLICATION TO STAY

5  THE SIXTH CIRCUIT DECISION IN COMMONWEALTH V. BESHEAR.  I CAN

6  GIVE YOU THE SUPREME COURT CASE NUMBER.  20, A, AS IN ALPHA,

7  96.  SO JUST TO GIVE YOU THE MOST CURRENT UPDATE.

8  THE COURT:  IT IS CURRENT.

9  MR. GRABARSKY:  YES.

10  AND THEN TO THE POINT, YOUR HONOR'S QUESTION, AND YOU

11  KNOW, AGAIN EMPHASIZE THAT THE STATE JOINS IN THE ARGUMENTS ON

12  THE BRIEFINGS WITH SANTA CLARA AND THE ARGUMENTS TODAY, BUT

13  JUST TO ADDRESS THE QUESTION ABOUT ROMAN CATHOLIC AND CALVARY

14  CHAPEL DAYTON VALLEY, WHETHER THEY MANDATE AUTOMATIC TREATMENT

15  OF WORSHIP SERVICES TO THE MOST FAVORABLE ACTIVITY THAT'S

16  TREATED THE MOST LENIENTLY.  AND I THINK MR. WALL'S POINT ABOUT

17  HOSPITALS, THAT CAN'T BE THE CASE BECAUSE OF HOSPITALS.

18  I WILL JUST NOTE THAT, AND I BELIEVE MR. WALL ADDRESSED

19  THIS, BUT I JUST WANT TO EMPHASIZE THE FACT THAT THE SUPREME

20  COURT HAD THIS QUESTION BEFORE IT, AND THIS WAS THE HARVEST

21  ROCK MATTER, ABOUT A WEEK AFTER ROMAN CATHOLIC WAS ISSUED, THE

22  PLAINTIFFS IN CALIFORNIA, THE HARVEST ROCK MATTER, A CHURCH

23  LOCATED IN CALIFORNIA, ASKED THE SUPREME COURT, SAID HEY, YOU

24  GUYS JUST DECIDED ROMAN CATHOLIC, THEREFORE THAT MANDATES AN

25  AUTOMATIC INJUNCTION OF CALIFORNIA'S RESTRICTIONS.

1       RATHER THAN GRANTING THAT INJUNCTION, THE SUPREME COURT,

2   AS MR. WALL HAD SAID, REMANDED NOT TO THE APPELLATE COURT, THE

3   INTERMEDIARY APPELLATE COURT RATHER, BUT ALL THE WAY TO THE

4   DISTRICT COURT, TO MAKE A FACTUAL INQUIRY ABOUT CALIFORNIA'S

5   RESTRICTIONS IN PARTICULAR.

6       THE COURT:  AND THIS IS THE CASE THAT WENT BACK TO

7   JUDGE BERNAL?

8       MR. GRABARSKY:  YES, YOUR HONOR.

9       THE COURT:  OKAY.  HAS HE SET THIS FOR FURTHER

10  HEARING OR IS HE -- IS IT JUST UNDER SUBMISSION?

11      MR. GRABARSKY:  NO, YOUR HONOR.  THE HEARING IS SET

12  FOR, IN HARVEST ROCK FOR 2:00 P.M. TOMORROW.

13      AND I WILL ALSO NOTE IN THE SOUTH BAY, THE UNITED

14  PENTECOSTAL CHURCH CASE, SIMILAR TRAJECTORY, THAT THE

15  NINTH CIRCUIT VACATED AND REMANDED BACK TO THE DISTRICT COURT.

16  THIS IS BEFORE JUDGE BASHANT IN THE SOUTHERN DISTRICT.  THE

17  BRIEFINGS ARE SUBMITTED AND THE HEARING IS SET FOR TOMORROW

18  MORNING, TO MAKE THAT FACTUAL INQUIRY ABOUT THE PARTICULARITIES

19  OF CALIFORNIA'S RESTRICTIONS IN PARTICULAR.

20      AND -- YEAH.  SO I JUST WANTED TO ALERT THE COURT ON THAT.

21      THE COURT:  THAT'S VERY HELPFUL.  I ONLY READ WHAT I

22  READ IN THE NEWSPAPER ON WHAT JUDGE BERNAL WAS DOING.  IT WAS

23  NOT CLEAR TO ME WHETHER HE HAD AN OPPORTUNITY TO RESET IT

24  BEFORE THE HOLIDAY.

25      MR. GRABARSKY:  YES, YOUR HONOR, HE HAS.

1          THE COURT:  OKAY.

2          MR. GRABARSKY:  AND JUST ANOTHER POINT, FURTHER

3     DISTINGUISHING NEW YORK'S RESTRICTIONS THAT WERE AT ISSUE IN

4     ROMAN CATHOLIC, THOSE RESTRICTIONS APPLIED FOR OUTDOOR WORSHIP

5     AS WELL, ALONG WITH INDOOR, THE 10 OR 25-PERSON RESTRICTIONS;

6     WHEREAS IN CALIFORNIA, ANYWHERE IN THE STATE, WORSHIP SERVICES

7     MAY TAKE PLACE OUTDOORS IN UNLIMITED NUMBERS, THAT MAY NOT

8     FEATURE SINGING AND CHANTING.

9          THE COURT:  I DON'T THINK SANTA CLARA ALLOWS THAT,

10    BUT THE STATE DOES.

11         MR. GRABARSKY:  YES, YOUR HONOR.  ACCORDING TO THIS,

12    YES, THAT'S CORRECT.

13         AND THEN FINALLY, WE HAVEN'T TALKED ALL THAT MUCH ABOUT

14    THE BALANCE OF EQUITIES, I WON'T DISCUSS IT IN GREAT DETAIL,

15    BUT I JUST WANTED TO EMPHASIZE THE FACT THAT STATEWIDE, ICU

16    CAPACITY IS ABOUT THREE PERCENT NOW.  AND AS WE KNOW WITH HOW

17    THIS VIRUS TRANSMITS, YOU KNOW, ALTHOUGH PLAINTIFFS' CHURCHES

18    MIGHT BE LOCATED IN SANTA CLARA COUNTY, I MEAN, JUST THE WAY

19    THIS VIRUS SPREADS, IT CAN QUICKLY GO STATEWIDE.

20         THE STATE'S HOSPITAL, PUBLIC HEALTH RESOURCES, ARE

21    EXTREMELY TAXED RIGHT NOW, AS YOUR HONOR IS AWARE, AND

22    ESSENTIALLY THERE COULDN'T BE A WORSE TIME TO ENJOIN THE

23    STATE'S ORDERS, JUST GIVEN -- PUTTING ALL THE CONSTITUTIONAL

24    ANALYSIS AND THE FIRST AMENDMENT ANALYSIS ASIDE, THE COURT

25    STILL NEEDS TO CONSIDER THE BALANCE OF EQUITIES.

1    AND AGAIN, GIVEN WHAT WE KNOW WITH HOW THIS VIRUS SPREADS,

2    GIVEN THE INCIDENTS OF SUPER SPREADER EVENTS THAT ARE TIED TO

3    LARGE GATHERINGS, ALL TYPES OF LARGE GATHERINGS, INCLUDING

4    WORSHIP GATHERINGS, THERE IS REALLY A CLEAR DANGER HERE OF

5    ENJOINING THE STATE AND THE COUNTY'S CRUCIAL MEASURES TO

6    CONTROL THE VIRUS UNTIL, AS MR. WALL INDICATES, A VACCINE IS

7    WIDELY AVAILABLE THROUGHOUT THE ENTIRE STATE.

8    I'M HAPPY TO ANSWER ANY OTHER ADDITIONAL SPECIFIC

9    CLARIFICATION QUESTIONS.

10    THE COURT:  THAT'S VERY HELPFUL.  THANK YOU.

11    ALL RIGHT.  MS. GONDEIRO, THIS IS YOUR MOTION, I'M GOING

12    TO LET YOU WRAP IT UP AND RESPOND TO WHAT MR. WALL AND

13    MR. GRABARSKY HAVE JUST SAID.

14    MS. GONDEIRO:  OKAY.  WELL, I WILL TRY TO MAKE THIS

15    AS SHORT AS POSSIBLE, IF THAT IS POSSIBLE.

16    THE COURT:  I KNOW.

17    MS. GONDEIRO:  SO I WANT TO START WITH THE

18    ABSTENTION, BECAUSE I KNOW, YOUR HONOR, THAT IS KIND OF THE

19    ISSUE THAT, AT THIS POINT, THAT REALLY NEEDS TO BE RESOLVED.

20    SO THE REASON WHY I BELIEVE YOUNGER DOES NOT APPLY HERE,

21    YOUR HONOR, IS IF YOU LOOK AT THE CASE CALLED HICKS V. MIRANDA,

22    THE COURT STATES THAT "A STATE PROCEEDING IS CONSIDERED TO BE

23    ONGOING WHEN STATE PROCEEDINGS ARE BEGUN AGAINST THE FEDERAL

24    PLAINTIFFS AFTER THE FEDERAL COMPLAINT IS FILED BUT BEFORE ANY

25    PROCEEDINGS OF SUBSTANCE ON THE MERITS HAVE TAKEN PLACE IN THE

1    FEDERAL COURT."

2         AS I STATED EARLIER, WE FILED A COMPLAINT IN JUNE AND THEN

3    THEY FILED MOTIONS TO DISMISS, AND WE WERE RIGHT IN THE MIDDLE

4    OF THOSE BRIEFINGS.  A HEARING WAS CONDUCTED ON NOVEMBER 6TH.

5    AND SO THEY KEEP SAYING THAT WE WAITED FOR MONTHS, BUT THEY

6    ACTUALLY WAITED TO FILE THEIR STATE COURT PROCEEDING.  THEY HAD

7    MONTHS.  THEY HAD SINCE JUNE TO FILE THEIR STATE COURT

8    PROCEEDING, AND THEY DID NOT.

9         SO IT'S JUST -- THEY ARE CHANGING THE NARRATIVE, BUT I

10   JUST WANT TO MAKE SURE THAT IT IS CLEAR THAT WE HAD THIS

11   PROCEEDING, WE WERE RIGHT IN THE MIDDLE OF BRIEFING ON THE

12   MERITS OF A MOTION TO DISMISS, AND THEN THEY INTERVENED -- OR

13   THEY INTERFERED BY GOING TO STATE COURT.

14        THE COURT:  AND I HAVE THE HICKS CITATION IN YOUR

15    REPLY BRIEF.

16        MS. GONDEIRO:  THANK YOU.

17        SO IF THIS COURT STILL THINKS THAT YOUNGER APPLIES, I WILL

18   STILL ARGUE THAT THE HARM PRESENT HERE, THE IRREPARABLE HARM

19   RISES TO AN EXTRAORDINARY LEVEL.  AS ELROD STATES, WHICH

20   BROOKLYN DIOCESE CITES TO, MINIMAL HARM CONSTITUTES

21   IRREPARABLE -- MINIMAL INFRINGEMENT ON FIRST AMENDMENT RIGHTS

22   CONSTITUTES IRREPARABLE INJURY.

23        THE COURT:  IN THE CONTEXT OF A RESTRAINING TRO OR

24    PRELIMINARY INJUNCTION, NOT IN THE YOUNGER CONTEXT, CORRECT?

25        MS. GONDEIRO:  YES.

1           BUT MY POINT IS, YOUR HONOR, THAT CONSTITUTES IRREPARABLE

2     INJURY.  WHAT MAKES THIS EXTRAORDINARY IS THAT THIS ISN'T JUST

3     A MINIMAL INTRUSION, THEY ARE COMPLETELY BANNING ALL INDOOR

4     GATHERINGS FOR, POTENTIALLY, MONTHS.

5           THIS PRELIMINARY INJUNCTION ALLOWS OFFICERS TO GO ON THE

6     PREMISES AND MONITOR PEOPLE, WHICH AS YOU WILL SEE IN THE

7     DECLARATION, CAUSES A LOT OF DISCOMFORT.  PEOPLE DON'T WANT TO

8     BE WATCHED, ESPECIALLY IN THE MOST INTIMATE SETTING, IN A

9     PRAYER ROOM, WHERE YOU ARE TRYING TO JUST BE ALONE WITH JESUS.

10    AND THAT'S THE WORST FEELING TO --

11              THE COURT:  NOW, MY UNDERSTANDING, THAT'S ALONE WITH

12    600 PEOPLE; IS THAT CORRECT RIGHT NOW?

13              MS. GONDEIRO:  SORRY, WHAT WAS THAT?

14              THE COURT:  THAT'S ALONE WITH 600 PEOPLE.

15              MS. GONDEIRO:  WELL, THEY ALSO SEND ENFORCEMENT

16    OFFICERS, YOUR HONOR, DURING PRAYER MEETINGS WHERE THERE'S

17    ONLY --

18              THE COURT:  I'M SORRY, I HAVEN'T HAD THE PLEASURE OF

19    BEING AT YOUR CHURCH.  I DON'T KNOW HOW MANY PEOPLE ATTEND A

20    PRAYER MEETING OR WHAT SIZE ROOM THAT IS, I'M NOT FAMILIAR.

21              MS. GONDEIRO:  PRAYER MEETINGS ARE ABOUT 10, 15

22    PEOPLE.

23              THE COURT:  OKAY.

24              MS. GONDEIRO:  AND SO THAT'S A VERY INTIMATE SETTING,

25    AND TO HAVE SOMEONE COME IN AND WATCH YOU IS VERY

1  DISCOMFORTING, TO SAY THE LEAST.  SO THAT'S ANOTHER REASON WHY.

2        AND ON TOP OF THAT, YOUR HONOR, MY CLIENT IS NOW FACING

3  CONTEMPT CHARGES WHERE HE COULD HAVE TO PAY UP TO $55,000 IN

4  SANCTIONS.  AGAIN, THIS ORDER, THE PROPOSED -- THE CONTEMPT

5  ORDER HAD NOT BEEN FILED BY THE TIME I FILED THIS TRO.  AND SO

6  IF YOU WOULD LIKE, I CAN ALSO ATTACH THAT, YOUR HONOR.

7        THE COURT:  NO, I DON'T THINK I NEED THAT.

8        MS. GONDEIRO:  BUT THIS TYPE OF CONTEMPT, YOUR HONOR,

9  I MEAN, THIS COULD BANKRUPT A CHURCH.  SO ON TOP OF THE

10  CONSTITUTIONAL SIGNIFICANT INTRUSIONS, WE NOW HAVE FINANCIAL

11  HARM THAT COULD LITERALLY DESTROY A CHURCH.  AND SO THESE TWO

12  FACTORS MAKE THE IRREPARABLE HARM RISE TO THE EXTRAORDINARY

13  LEVEL.

14        AND I WANT TO GO BACK TO THE NEUTRAL -- THE COUNTY INSISTS

15  THAT THE ORDERS ARE NEUTRAL, BUT IF YOU LOOK AT PAGE 3 OF THE

16  SUPREME COURT DECISION IN BROOKLYN DIOCESE, IT'S VERY CLEAR,

17  YOUR HONOR, THAT THEY ARE -- THEY KEEP APPLYING A VERY NARROW

18  COMPARISON WHERE THEY ARE LOOKING AT SIMILAR GATHERINGS.

19        THEY DON'T DO THAT HERE.  THEY COMPARE THE CHURCH SETTINGS

20  WITH OTHER ESSENTIAL BUSINESSES.  AND I WILL ALSO NOTE THAT IN

21  THE RED ZONE, TEN PEOPLE MAY BE ALLOWED AT CHURCH, WHILE OTHER

22  ESSENTIAL BUSINESSES CAN OPEN.

23        HERE, YOUR HONOR, INDOOR GATHERINGS AT THIS POINT ARE

24  COMPLETELY BANNED.  SO IT'S ACTUALLY MORE SEVERE, NOT LESS

25  SEVERE.

1           AND AGAIN, THIS WAS CONFIRMED IN THE NINTH CIRCUIT WHERE,

2      AGAIN, THE NINTH CIRCUIT DIDN'T JUST LOOK AT SIMILAR

3      GATHERINGS, IT COMPARED OTHER BUSINESSES TO RELIGIOUS WORSHIP

4      SERVICES.

5           SO IT'S VERY CLEAR, YOUR HONOR, AND JUSTICE KAVANAUGH, HE

6      ALSO MAKES IT VERY, VERY CLEAR, BECAUSE THE STATE BROUGHT THIS

7      SAME ARGUMENT IN THAT CASE, HE SAYS, "ONCE A STATE CREATES A

8      FAVORED CLASS OF BUSINESSES, AS NEW YORK DID, THE STATE MUST

9      JUSTIFY WHY HOUSES OF WORSHIP ARE EXCLUDED."

10          AND FINALLY, YOUR HONOR, THEY MENTION THAT ONE OF THE

11     REASONS WHY THIS CASE IS DISTINGUISHABLE IS BECAUSE OUR CLIENTS

12     ARE NOT SOCIALLY DISTANCING OR WEARING MASKS, BUT THAT IS ALSO

13     A DISPUTED FACT AND IRRELEVANT.

14          THAT WAS NOT -- THE SUPREME COURT YOUR HONOR DID NOT

15     ADDRESS THOSE RESTRICTIONS AND HOLD THAT THOSE RESTRICTIONS

16     WERE NOT -- WERE UNCONSTITUTIONAL.  WHAT WAS AT ISSUE THERE

17     WERE THE CAPACITY LIMITATIONS.  SO ALL OF THAT WAS JUST --

18          THE COURT:  WELL, I THINK IT WAS CAPACITY IN LIGHT OF

19     COMPLIANCE ON EVERYTHING ELSE.

20          MS. GONDEIRO:  YES, YES.  BUT IT WAS ALL DICTA AND

21     IRRELEVANT, YOUR HONOR.

22          THE COURT:  THAT'S FAIR.

23          MS. GONDEIRO:  SO AGAIN, THANK YOU FOR YOUR TIME,

24     YOUR HONOR, AND I ASK THAT IF THIS COURT IS INCLINED TO GRANT

25     THIS TRO, THAT YOU GIVE US THE OPPORTUNITY TO AMEND THE

1    PROPOSED ORDER, BECAUSE SIGNIFICANT DEVELOPMENTS HAVE HAPPENED,

2    INCLUDING THE CONTEMPT HEARING WHERE NOW THE COURT HAS FOUND

3    HIM IN CONTEMPT IN ADDITION TO ISSUING THE PRELIMINARY

4    INJUNCTION.

5              THE COURT:  OKAY.

6         WELL, OF COURSE WE TAKE IT ONE STEP AT A TIME.  AND IN ANY

7    CIRCUMSTANCE WHERE A COURT ISSUES A TRO OR A PRELIMINARY

8    INJUNCTION, THERE IS ALWAYS THE OPPORTUNITY TO MODIFY TO MAKE

9    IT LESS RESTRICTIVE OR MORE RESTRICTIVE.  AND SO CERTAINLY AS

10   THE COUNTY MODIFIED THE TRO IN MAKING IT MORE RESTRICTIVE, I

11   RECOGNIZE THAT, THE SAME OPPORTUNITY EXISTS.

12        SO IT IS MY GOAL TO GET AN ORDER OUT, I WOULD SAY,

13   REALISTICALLY, ON MONDAY.  I'M GOING TO TRY TO DO IT BY

14   TOMORROW, BUT IT'S 4:00 NOW ON THURSDAY, SO I'M NOT SURE THAT

15   THAT'S -- I CAN'T GUARANTEE THAT, BUT MONDAY IS PROBABLY THE

16   BEST THAT I CAN DO.

17        AND I DON'T KNOW WHAT ELSE I CAN SAY.  YOU KNOW, I WILL

18   GIVE IT MY -- I'M GOING TO HAVE TO GET AN ORDER OUT ON A

19   TEMPORARY RESTRAINING ORDER, OF COURSE IT'S NOT THE SAME LENGTH

20   OF A DOCUMENT AS WE WOULD DO ON A PRELIMINARY INJUNCTION, BUT

21   YOU NEED A RESULT AND I CERTAINLY RESPECT THAT.

22        AND SO THAT'S MY BEST ESTIMATE, AND I THINK THAT -- I

23   DON'T THINK ANYTHING IS HAPPENING IN THE STATE COURT OVER

24   TOMORROW OR MONDAY, IS THERE, MS. GONDEIRO?

25              MS. GONDEIRO:  WE DO HAVE A MOTION FOR

```
1    RECONSIDERATION.

2              THE COURT:  WELL, THAT YOU WOULD LIKE TO DO.  AND

3    WHEN IS THAT SET?

4              MS. GONDEIRO:  I DON'T BELIEVE THE COURT HAS SET AN

5    ACTUAL HEARING DATE YET AT THIS TIME.

6              THE COURT:  OKAY.  AND THE COURT MAY NOT.  I DON'T

7    KNOW WHAT THE SUPERIOR COURT LOCAL RULES ARE OR THE STATE, I

8    DON'T REMEMBER THE STATE RULES OF COURT, I GUESS, ON

9    RECONSIDERATION, IT'S BEEN TOO MANY YEARS NOW FOR ME.  BUT YOU

10   DON'T HAVE ANY HEARING, THAT'S FINE.  AND IT'S SOMETHING THAT

11   YOU PUT IN PLACE, IT'S NOT SOMETHING THAT COULD HARM YOU, IS

12   REALLY WHAT I WAS LOOKING FOR.

13             MS. GONDEIRO:  YES, YES.

14             THE COURT:  OKAY.  GOOD.  IT CAN ONLY BENEFIT YOU.

15        ALL RIGHT.  WELL, I WANT TO THANK YOU ALL FOR REALLY

16   EXCELLENT ARGUMENT.  I KNOW I PUT SOME POINTED QUESTIONS TO

17   YOU.  THESE ARE VERY IMPORTANT ISSUES FROM BOTH SIDES.  THESE

18   ARE VERY IMPORTANT AND NO ONE IS SUGGESTING THAT THE ISSUES

19   AREN'T REALLY CRITICAL ALL THE WAY AROUND ON THE FIRST

20   AMENDMENT RIGHT OF FREEDOM OF RELIGION AND FREE EXERCISE AND

21   THE PUBLIC HEALTH CRISIS THAT WE ARE IN NOW.

22        SO I CAN ONLY HOPE THAT ALL OF YOU WILL STAY HOME, STAY

23   SAFE, SAY HEALTHY, AND WHAT I EXPECT IS THAT I WILL FILE MY

24   ORDER FOR YOU ON MONDAY, SO YOU WILL HAVE THAT.  AND BY THE END

25   OF TODAY, YOU WILL EITHER CONFIRM, MS. GONDEIRO, THAT THE
```

66

```
 1      EXHIBITS MR. WALL GAVE US ARE THE ONES YOU WANT ME TO CONSIDER

 2      AND YOU AGREE, OR YOU WILL GIVE ME THEM AS EXHIBITS THAT YOU

 3      WILL FILE ONLINE.

 4              MS. GONDEIRO:  YES.

 5              THE COURT:  AND THAT IS VERY HELPFUL.  AND I'M HOPING

 6      THAT WHAT THE COUNTY HAS DONE WILL EASE YOUR JOB ON THAT AND

 7      YOU CAN SIMPLY AGREE, OR OTHERWISE YOU CAN GATHER THEM FOR ME.

 8              MS. GONDEIRO:  YES.

 9          THANK YOU, YOUR HONOR.

10              THE COURT:  ALL RIGHT.

11          MR. WALL, ANYTHING ELSE?

12              MR. WALL:  NO, YOUR HONOR.

13              THE COURT:  ALL RIGHT.

14          WELL, THANK YOU ALL.  AND HAPPY HOLIDAYS TO ALL OF YOU.

15      AND I WILL -- I WON'T HAVE ANYTHING ELSE SCHEDULED IN THIS CASE

16      AFTER THIS COMES OUT UNTIL YOU FILE SOMETHING.

17          ALL RIGHT.  SO LONG EVERYONE.

18              MS. GONDEIRO:  THANK YOU, YOUR HONOR.

19              MR. WALL:  THANK YOU, YOUR HONOR.

20          (THE PROCEEDINGS WERE CONCLUDED AT 4:05 P.M.)

21

22

23

24

25
```

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9     REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12    CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18    TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24    _____
      SUMMER A. FISHER, CSR, CRR
25    CERTIFICATE NUMBER 13185          DATED: 10/14/21