# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| CALVARY CHAPEL SAN JOSE, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SARA CODY, et al.,<br><br>                    Defendants. | Case No.  20-cv-03794-BLF<br><br>**ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND; GRANTING IN PART WITH LEAVE TO AMEND IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS**<br><br>[Re:  ECF No. 121, 135] |

This case challenges policies and orders issued by the State of California and the County of Santa Clara designed to slow the spread of COVID-19, a highly contagious and deadly disease that has claimed the lives of nearly 1 million Americans and over 6 million people worldwide in just two years.  Beginning in March 2020, both the State and the County issued emergency orders that instituted capacity limits for certain types of facilities, restricted the practice of certain activities (including singing and chanting), and required individuals to wear masks in many situations.  Those orders have been repeatedly amended in response to changing circumstances and new variants of COVID-19.

Plaintiffs Calvary Chapel San Jose, a Christian church; Mike McClure, its lead pastor; Southridge Church, another Christian church; and Micaiah Irmler, its lead pastor, have sued the

State[1] and County,[2] alleging that the emergency orders imposed harsher restrictions on churches than on other institutions. When Calvary Chapel admittedly defied those orders, Plaintiffs allege that the County sent threatening letters to the church's bank and levied against it millions of dollars in fines for the violations. Plaintiffs bring nine claims, alleging violations of their First, Eighth, and Fourteenth Amendment rights under the Federal Constitution, violations of the California Constitution, and a violation of California's Bane Act.

Before the Court are two motions to dismiss, one filed by the State and the other filed by the County. The State argues that (1) Plaintiffs' claims for injunctive and declaratory relief are moot; (2) the Eleventh Amendment bars Plaintiffs' state law claims and claims for damages; and (3) Plaintiffs' claims against the State fail under Rule 12(b)(6). *See* ECF No. 121 ("SMTD"); *see also* ECF No. 132 ("SReply"). In its motion, the County similarly argues that Plaintiffs' claims against it for injunctive and declaratory relief are moot and that Plaintiffs otherwise fail to state plausible claims under Rule 12(b)(6). *See* ECF No. 135 ("CMTD"); *see also* ECF No. 145 ("CReply"). Plaintiffs oppose both motions. *See* ECF Nos. 127 ("SOpp."), 143 ("COpp."). The Court held a hearing on March 10, 2022.

For the reasons discussed on the record at the hearing and explained below, the Court GRANTS the State's motion to dismiss and GRANTS IN PART WITH LEAVE TO AMEND IN PART AND DENIES IN PART the County's motion to dismiss.

## I.    BACKGROUND

As alleged in Plaintiff's Third Amended Complaint and assumed true for the purposes of

---

[1] The "State" includes the two relevant State Defendants: Gavin Newsom, in his official capacity as Governor of California; and Tomas Aragon, in his official capacity as Acting Director of the California Department of Health.

[2] The "County" includes all relevant County Defendants: Santa Clara County itself; Sara Cody, the Public Health Officer for the County; James Williams, the County Counsel; and Mike Wasserman, Cindy Chavez, Dave Cortese, Susan Ellenberg, and Joe Simitian, all members of the County Board of Supervisors, all sued in their official capacities.

United States District Court
Northern District of California

these motions, in December 2019, the World Health Organization reported the emergence of a novel coronavirus in Wuhan, China.  ECF No. 116 ("TAC") ¶ 26.  The virus, dubbed COVID-19, was detected in California in late January 2020 and later spread across the country and the world. *Id.* ¶ 27.

### A.    The State's Policies in Response to COVID-19

Although State health officials initially characterized the risk of COVID-19 to the general public as "low," on March 3, 2020, the State Department of Public Health issued its first detailed guidelines for fighting COVID-19.  *Id.* ¶¶ 29–30.  Governor Newsom declared a state of emergency the next day, and on March 12, 2020, he issued an executive order invoking his emergency powers to "ensure adequate facilities exist to address the impacts of COVID-19," but did not require any facilities to close.  *Id.* ¶¶ 31, 33–34; *see also id.* Ex. 2.

On March 19, 2020, Governor Newsom issued another executive order directing California residents "to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors."  TAC ¶ 37; *see also id.* Ex. 4 ("State Stay at Home Order").  The State Stay at Home Order, Plaintiffs say, had "no rhyme or reason as to the distinctions . . . made between essential and non-essential activities."  *Id.* ¶ 41.  Pet supply stores, marijuana stores, and liquor stores, for example, were permitted to continue operating, while churches were "deemed non-essential and subjected to some of the strictest rules imaginable."  *Id.* ¶¶ 40–41.  The State Stay at Home Order, as implemented, also contained financial penalties for noncompliance.  *Id.* ¶ 42.  On May 4, 2020, Governor Newsom continued the State Stay at Home Order indefinitely and gave discretion to the State Public Health Officer to add to or subtract from the activities prohibited under the Order.  *Id.* ¶ 46; *see also id.* Ex. 5.  Under this plan, the State still treated churches less favorably than similarly situated secular activities.  *Id.* ¶ 47.  This disparate treatment was based on "pure speculation" that churches were more likely to spread COVID-19 "because people gathered close together for extended periods of time and sang together."  *Id.* ¶ 49.  That justification was further undermined, according to Plaintiffs, when State officials actively encouraged Californians to gather in large numbers to protest the death of George Floyd.  *Id.* ¶¶ 50–53, 56.  On May 25, 2020, Governor Newsom allowed churches to

United States District Court
Northern District of California

reopen to 25% building capacity or 100 attendees, whichever was lower, but did not subject similar secular locations to the same limits. *Id.* ¶ 58. Around July 6, 2020, Plaintiffs became subject to State guidance that prohibited them from engaging in singing or chanting at indoor services, even though those activities were not prohibited in some secular situations such as in day camps or childcare centers. *Id.* ¶¶ 64, 66.

On August 28, 2020, the State Department of Public Health issued the "Blueprint for a Safer Economy," which established a procedure for assigning counties to one of four tiers based on the volume of COVID-19 cases or hospital availability in that locality. TAC ¶ 67. Counties in higher risk tiers had greater restrictions on what activities were allowed. *Id.*

On November 16, 2020, the State Department of Public Health issued updated face covering guidance, which required "everyone to wear a mask and maintain 6 feet of distance from one another." TAC ¶ 70. The face covering guidance exempted several categories of individuals, including those younger than two, persons with a medical condition or disability, hearing impaired individuals, and persons for whom wearing a face covering would create a risk related to their work (such as athletes). *Id.* ¶ 72. Certain businesses and industries also were not required to fully comply, including barbershops; hair salons; facial and esthetic care businesses; and television, film, and recording studios. *Id.* ¶¶ 73–74, 76. A week later, the State issued guidance for restaurants that incorporated the face covering guidance and permitted "singing, shouting, playing a wind instrument, or engaging in similar activities" in restaurants and wineries. *Id.* ¶ 78.

On December 3, 2020, the State Department of Public Health issued a new Regional Stay at Home Order that "banned all indoor worship services while allowing only essential businesses to remain open." TAC ¶ 81. The Supreme Court enjoined the part of that Order prohibiting indoor worship services in areas in the highest tier of the Blueprint for a Safer Economy, but denied relief as to the capacity limitations and the ban on singing and chanting during indoor services. *See id.* ¶ 82; *see also S. Bay Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021) (mem.).

**B.    The County's COVID-19 Policies**

A few days after Governor Newsom's March 12, 2020 executive order, government

United States District Court
Northern District of California

United States District Court
Northern District of California

officials in the County—spurred by Defendants Dr. Cody and Williams—issued a Shelter in Place Order requiring residents to shelter in place "indefinitely." TAC ¶ 36 & Ex. 3. Dr. Cody and Williams allegedly believed that 56 percent of Californians would be infected with COVID-19 by mid-May 2020 and that between 250,000 and 500,000 people would die from the virus by June 2020—numbers that formed the basis for a speech given by Governor Newsom in announcing the State's Stay at Home Order, but did not ultimately come true. *Id.* ¶¶ 38–39, 43. Like the State Stay at Home Order, the distinctions that the County's order made between essential and non-essential activities allegedly had "no rhyme or reason." *Id.* ¶ 41. The County extended its Stay at Home Order indefinitely on May 4, 2020. *Id.* ¶ 46.

In deciding which industries to allow to reopen, the County allegedly discriminated against religious activities without evidence that COVID-19 was spreading at a greater rate inside churches as compared to other indoor settings. TAC ¶ 47. Additionally, County officials acknowledged that the virus was "likely" spreading among individuals gathering at protests around the death of George Floyd, but did not seek to restrict those activities, unlike those occurring in churches. *Id.* ¶¶ 55–56. Even after the federal government declared houses of worship "essential" and the Justice Department sent the State a letter arguing that the "lockdown" of churches violated the First Amendment, the County continued to impose its restrictions. *Id.* ¶¶ 57, 59.

On July 2, 2020, the County issued a Risk Reduction Order, which imposed capacity restrictions on indoor and outdoor gatherings, but exempted certain industries like childcare settings, school settings, transportation, hospitals, offices, stores, and restaurants. TAC ¶ 62. The Order was revised on October 5, 2020, allowing more businesses to reopen, but still imposing strict capacity guidelines on certain types of indoor gatherings like indoor religious activities in ways more restrictive than the State guidance required. *Id.* ¶¶ 68–69. Indoor religious services were banned entirely beginning on November 16, 2020 when the County moved into the strictest tier of the State's Blueprint, although shopping, retail, transportation, and construction industries were allowed to remain open. *Id.* ¶ 77.

On February 26, 2021, in a short order, the Supreme Court enjoined enforcement of parts

of the County's orders banning indoor worship services, saying that the outcome was "clearly dictated" by the Court's decision two weeks earlier enjoining parts of the State's orders.  *See* TAC ¶ 83; *see also Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021) (mem.).  The County allegedly still believes it has the power to ban indoor religious activities "if they decide it is necessary to protect public health."  TAC ¶ 83.

### C.    Plaintiffs and Enforcement Actions Against Them

Plaintiffs are two churches and their two lead pastors.  Plaintiff Calvary Chapel San Jose is a Christian church located in San Jose, California led by lead pastor Plaintiff Mike McClure.  TAC ¶¶ 11–12.  Plaintiff Southridge Church is a Christian church also located in San Jose, California and led by lead pastor Plaintiff Micaiah Irmler.  *Id.* ¶¶ 13–14.  As churches located in Santa Clara County, Calvary Chapel and Southridge were both subject to State and County orders issued in the wake of the coronavirus.  Plaintiffs admittedly violated both State and County orders by not complying with indoor gathering restrictions, face covering mandates, or the singing and chanting ban and by failing to sign the County's social distancing protocols.  *Id.* ¶ 84.

On August 11, 2020, the County issued an ordinance permitting it to issue fines for violations of its COVID-19 orders.  TAC ¶ 84 & Ex. 18.  During that month, the County began issuing what would eventually amount to more than $2.8 million in fines against Plaintiffs for violating its COVID-19 orders, despite no COVID-19 case being traced to Plaintiffs' church gatherings.  *Id.*  The County has sought to enforce the fine in state court, and Plaintiffs have been found in contempt of court multiple times for failure to comply.  *See The People of the State of Cal., Cnty. of Santa Clara v. Calvary Chapel San Jose et al.*, No. 20CV372285 (Santa Clara Cty. Super. Ct.).  The County has also allegedly taken other "extreme measures to collect the fines." *Id.* ¶ 85.  The County, led by Williams, sent letters to Calvary Chapel's bank in December 2020 and January 2021 informing it that Calvary Chapel had been fined over $1 million and held in contempt for violating COVID-19 orders.  *Id.* ¶ 85 & Exs. 19–20.  The bank allegedly interpreted the letters "as a threat that the County intended to take the church property to satisfy the fines" and sent a notice of default to Calvary Chapel for noncompliance with government regulations (which was only withdrawn when the bank learned the church was contesting the fines).  *Id.* ¶ 87.

1  Calvary Chapel was forced to make over $800,000 in accelerated payments to the bank, diverting

2  funds from investment in other church efforts.  *Id.* ¶ 88.

3       The State and County orders allegedly interfered with the religious practice of Plaintiffs

4  and their members.  TAC ¶¶ 90–91.  Plaintiffs and their members believe that it is essential for

5  Christians to gather in person to worship.  *Id.*  Many congregants who are elderly or have health

6  problems have difficulty sitting for long periods of time while wearing a face mask, and social

7  distancing rules inhibited their ability to pray for one another.  *Id.*  Several congregants also felt

8  intimidated by the County's enforcement efforts against Calvary Chapel, with some believing that

9  the County may arrest them for going to church.  *Id.* ¶ 92.

10       Both churches allegedly posted signs at all entrances encouraging congregants to socially

11  distance, and both churches provided masks and hand sanitizer to congregants who want them.

12  TAC ¶¶ 94–95.  Both churches say they have complied with the generally applicable social

13  distancing guidelines that others "such as entertainment studios" have been following since March

14  2020.  *Id.*

15      **D.**    **This Lawsuit**

16       Plaintiffs filed this lawsuit on June 9, 2020 against the County.  ECF No. 1.  On November

17  5, 2020, the Court granted the County's motion to dismiss the initial complaint with leave to

18  amend.  ECF No. 30.  Plaintiffs' First Amended Complaint added the State.  ECF No. 38.

19  Plaintiffs then sought a temporary restraining order enjoining the state court proceedings instituted

20  against them for violation of the County orders, which resulted in the state court issuing a

21  preliminary injunction against Calvary Chapel and Pastor McClure.  *See* ECF No. 42; *see also*

22  *Calvary Chapel San Jose*, No. 20CV372285 (Santa Clara Cty. Super. Ct.).  The Court denied the

23  motion for a temporary restraining order, abstaining on the basis of *Younger v. Harris*, 401 U.S.

24  37 (1971).  ECF No. 67.  By stipulation, Plaintiffs filed a Second Amended Complaint.  ECF No.

25  81.  The Court later granted Plaintiffs' motion for leave to file a Third Amended Complaint, which

26  is the operative complaint.  ECF No. 115.

27       The Third Amended Complaint asserts nine claims.  Against both the State and County,

28  Plaintiffs assert three § 1983 claims for violation of the First Amendment's guarantees of free

exercise of religion and the right to assemble and the Fourteenth Amendment's guarantee of equal protection, *see* TAC ¶¶ 99–108 (First Amendment free exercise), 114–123 (First Amendment assembly), 124–129 (Fourteenth Amendment); a claim for violation of the California Constitution's free exercise clause, Cal. Const. art. I, § 4, *see id.* ¶¶ 109–113; and a claim under California's Bane Act, Cal. Civ. Code § 52.1, *see id.* ¶¶ 153–157.  Against the County only, Plaintiffs assert a single § 1983 claim for violation of the Eighth Amendment, *see id.* ¶¶ 130–136; a claim for violation of the California Constitution's excessive fines clause, Cal. Const. art. I, § 7, *see id.* ¶¶ 137–140; and a single § 1983 claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), *see* TAC ¶¶ 149–152.  Calvary Chapel and Pastor McClure separately assert a single § 1983 claim for First Amendment retaliation against County Counsel James Williams, *see id.* ¶¶ 141–148.  These motions followed.

## II.     LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(1)

Federal courts can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate:  those involving diversity of citizenship or a federal question, or those to which the United States is a party.  *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376–77 (2012); *see also Chen-Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992) ("Federal courts have no power to consider claims for which they lack subject matter jurisdiction.").  The Court has a continuing obligation to ensure that it has subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).  A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  The plaintiff bears the burden of establishing subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994).

A jurisdictional challenge may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the Court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction.  *Id.*; *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Where the attack is

factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving a factual dispute as to the existence of subject matter jurisdiction, the Court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.  *Id.*  Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

### B.     Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

United States District Court
Northern District of California

III.     **STATE DEFENDANTS' MOTION TO DISMISS**

The State makes three arguments as to why its motion to dismiss should be granted.  First, it argues that Plaintiffs' claims for injunctive and declaratory relief are moot because the emergency orders that Plaintiffs challenge have been rescinded and the State is subject to several statewide injunctions prohibiting reimposition of those restrictions.  SMTD at 3–9.  Second, the State argues that the Eleventh Amendment bars the state law claims or any claim for damages or other monetary relief asserted against it.  *Id.* at 9.  Finally, the State argues in the alternative that Plaintiffs fail to state a claim under Rule 12(b)(6).  *Id.* at 10–13.  Because the Court agrees with the State's first two arguments, all claims against the State will be dismissed without leave to amend.

### A.     Mootness of Requests for Injunctive and Declaratory Relief

The State first argues that Plaintiffs' claims for injunctive and declaratory relief are moot because the State has rescinded the policies that Plaintiffs challenge and is subject to statewide injunctions prohibiting repetition of that conduct.  SMTD at 3–9.  Plaintiffs counter that their claims are not moot because their claims seek relief against current and non-enjoined State policies and, alternatively, because two exceptions to the mootness doctrine apply.  Opp. at 12–17.  The Court agrees with the State that the injunctive and declaratory relief claims have been mooted by both the statewide injunctions and the rescission of the relevant policies, and also finds that no exception to mootness applies.

### 1.     Rescission of Policies and Statewide Injunctions

The State first argues that Plaintiffs' claims for injunctive and declaratory relief have been mooted due to (1) statewide injunctions entered in multiple cases and (2) the rescission of the policies at issue.  SMTD at 3–9.  Plaintiffs contest whether the injunctions prevent the state from reimposing certain of the restrictions and argue that the State has "repeatedly ignored other court orders during the COVID-19 pandemic."  Opp. at 12–13.  The Court agrees with the State on both accounts.

First, and largely due to the litigation success of Plaintiffs and other religious groups, several statewide injunctions (three in federal court and one in state court) prevent the State from

United States District Court
Northern District of California

1    reimposing the types of restrictions that Plaintiffs challenge in this case.  Judgments entered in

2    other cases that "effectively grant[] the relief [a party] sought in the present action" negate the

3    existence of a live controversy and moot claims.  *See NASD Dispute Resolution, Inc. v. Judicial*

4    *Council of State of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007); *see also Seal-Land Serv., Inc. v.*

5    *Int'l Longshoremen's and Warehousemen's Union*, 939 F.2d 866, 871 (9th Cir. 1991) ("Relief

6    from another tribunal can moot an action.").  The four previously issued injunctions prevent the

7    state from imposing (1) "any capacity or numerical restrictions on religious worship services and

8    gatherings at places of worship," except that if hospital admission rates or statewide daily case

9    rates reach certain levels, the State may impose such restrictions "that are either identical to, or at

10   least as favorable as, the restrictions imposed on other gatherings of similar risk," as identified in

11   relevant Supreme Court cases; (2) "any new public health precautions on religious worship

12   services and gatherings of worship not in the current guidance, unless those precautions are either

13   identical to, or at least as favorable as, the precautions imposed on other similar gatherings of

14   similar risk," as identified in relevant Supreme Court cases; or (3) "any restrictions on the

15   religious exercise of singing and chanting during religious worship services and gatherings at

16   places of worship" aside from rules generally applicable to live events and performances.  Decl. of

17   Todd Grabarsky, ECF No. 121-1, Ex. 1 at 2 (injunction in *Harvest Rock Church v. Newsom*, No.

18   20-cv-6414-JGB (C.D. Cal. May 14, 2021)); *id.* Ex. 2 at 1–2 (injunction in *S. Bay United*

19   *Pentecostal Church v. Newsom*, No. 20-cv-865-BAS (S.D. Cal. June 10, 2021)); *id.* Ex. 4 at 6–7

20   (injunction in *Tandon v. Newsom*, No. 20-cv-7108-LHK (N.D. Cal. June 24, 2021)); *see also id.*

21   Ex. 3 at 12 (injunction in *Burfitt v. Newsom*, No. BCV-20-102267 (Kern Cnty. Super. Ct. June 14,

22   2021)).  These injunctions prevent the State from reimposing capacity limits, the singing and

23   chanting ban, or "any new public health restrictions on religious worship services and gatherings

24   of worship," except as generally applicable to "similar gatherings of similar risk."  Plaintiffs'

25   challenge to the capacity limits, singing and chanting ban, and face covering guidance are thus

26   moot.[3]

27   _____

28   [3] The Court disagrees with Plaintiffs that the injunctions do not moot their claims because the

Second, the State policies at issue have all been rescinded.  "A statutory change . . . is usually enough to render a case moot, even if the [government] possesses the power to reenact the statute after the lawsuit is dismissed."  *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014); *see also N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (amendment of New York rules regarding transport of firearms mooted injunctive and declaratory relief claims that previous version of rules infringed Second Amendment).  Here, each of the challenged State restrictions has been rescinded.  The capacity restrictions and singing and chanting ban were all lifted as to Plaintiffs in April 2021, more than five months before the operative complaint was filed.  Grabarsky Decl. Ex. 6 at 5 ("In response to recent judicial rulings, effective immediately, location and capacity limits on places of worship are not mandatory but are strongly recommended."), Ex. 7 at 6 (indoor singing and chanting restrictions "recommended only").  As to the face covering guidance, the version that Plaintiffs challenge in the operative complaint was also rescinded months prior.  *See* Grabarsky Decl. Exs. 17–18.  Although different face covering guidance was in place at the time Plaintiffs filed the operative complaint, that guidance too has been rescinded, subject to exceptions that do not include Plaintiffs.[4]  *See* Grabarsky Decl. Ex. 17 (rescinding face covering requirements for fully vaccinated individuals, except in certain circumstances not applicable here); *see also* "Governors Newsom, Brown and Inslee Announce Updated Health Guidance," OFFICE OF GOVERNOR GAVIN NEWSOM (Feb. 28, 2022), *available at* https://tinyurl.com/yckhtdm7 (press release announcing that face coverings no

_____

State "repeatedly ignored other court orders during the COVID-19 pandemic" and cannot be expected to comply with the injunctions.  SOpp. at 13.  There is no evidence the State has flouted any court order.  *See Hawse v. Page*, 7 F.4th 685, 692–94 (8th Cir. 2021) ("[T]here is no reasonable expectation that the [c]ounty would flout the Supreme Court's intervening pronouncements on equal treatment between religious exercise and comparable secular activity.").

[4] Plaintiffs' attempt to sweep undefined "future orders intended to combat COVID-19" into their lawsuit is not well taken.  There is no live controversy that can be remedied by Court order as to unspecified and undefinable "future orders."

longer required indoors for unvaccinated individuals as of March 1, 2022, subject to exceptions not applicable here).  This Court joins numerous other courts in declaring moot challenges to rescinded COVID-19 restrictions under similar circumstances.  *See Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021) (suit asserting injunctive and declaratory relief claims against rescinded COVID-19 restrictions moot); *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021) (same); *Hawse*, 7 F.4th at 692 (same); *Denver Bible Church v. Polis*, 2022 WL 200661, at *3–4 (10th Cir. Jan. 24, 2022) (same).

### 2.  Exceptions to Mootness

Plaintiffs' main arguments against mootness invoke two exceptions to the doctrine: voluntary cessation and "capable of repetition, yet evading review."  SOpp. at 14–16.  The Court considers each exception and finds that neither applies.

Plaintiffs first argue that the voluntary cessation exception to mootness applies.  "[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  Hence defendants claiming that voluntary compliance moots a case "bear[] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000); *see also Rosebrock*, 745 F.3d at 971 ("[A] case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [offending] provision.").  This doctrine is aimed to prevent gamesmanship—i.e., to prevent a defendant from engaging in unlawful conduct, stopping when sued to have the lawsuit declared moot, and then resuming the conduct.  *Already*, 568 U.S. at 91.

The Court need not dwell long on this exception because it clearly does not apply. "'[L]egally compelled' cessation of [] conduct is not 'voluntary' for purposes of [the voluntary cessation] exception to the mootness doctrine."  *Sea-Land Serv.*, 939 F.2d at 870 (judgment from circuit court to comply with agency ruling made cessation of conduct involuntary).  Here, four separate courts have entered injunctions against the State that prevent it from reimposing the types of restrictions challenged in this case.  The State is thus not "otherwise unconstrained" from reimposing the challenged restrictions, and its cessation of that conduct was not "voluntary" for

1   the purposes of this exception.  *Rosebrock*, 745 F.3d at 971.

2         Plaintiffs' arguments otherwise miss the mark or have themselves been mooted by

3   subsequent events.  First, Plaintiffs' reliance on *Brach v. Newsom*, 6 F.4th 904, 919 (9th Cir.

4   2021), in which a Ninth Circuit panel found that the voluntary cessation doctrine applied to certain

5   challenges to COVID-19 restrictions in K-12 schools, is misplaced now that the case has been

6   taken en banc.  *See* 18 F.4th 1031, 1032 (9th Cir. 2021) (vacating panel opinion).  Second,

7   Plaintiffs' contention that the State has not rescinded the state of emergency (and thus "retain[s]

8   flexibility in issuing COVID-19 orders," SOpp. at 14–15) does not address the issuance of the

9   injunctions, which restrict the State's ability to issue new COVID-19 orders affecting Plaintiffs.

10  Finally, although not raised directly by Plaintiffs, the Court notes that this case presents different

11  circumstances than the Supreme Court confronted in *Roman Catholic Diocese of Brooklyn v.*

12  *Cuomo*, 141 S. Ct. 63 (2020), in which the Court found the voluntary cessation doctrine applied in

13  a challenge to COVID-19 restrictions.  In *Roman Catholic Diocese*, the plaintiff religious

14  organization challenged New York's COVID-19 scheme that (like the now-rescinded State

15  Blueprint scheme) imposed progressively severe restrictions on areas based on a tiered

16  classification system.  There, New York "regularly change[d] the classification of particular areas

17  without prior notice."  *Id.* at 68 (noting eight changes in the course of the month).  Under those

18  circumstances, with the scheme still in place and the applicants merely move into a less restrictive

19  tier, applicants "remain[ed] under a constant threat that the area in question [would] be

20  reclassified" into a more restrictive tier.  *Id.*  There is no such threat here because the injunctions

21  in place prevent the State from reimposing such restrictions, even with the state of emergency still

22  in place.

23        For similar reasons, the "capable of repetition, yet evading review" exception does not

24  apply.  This exception applies where (1) "the challenged action [is] in is duration too short to be

25  fully litigated prior to its cessation or expiration," and (2) "there [is] a reasonable expectation that

26  the same complaining party [will] be subjected to the same action against."  *Turner v. Rogers*, 564

27  U.S. 431, 439–40 (2011).  Here, there is no "reasonable probability" that Plaintiffs will be

28  subjected to the restrictions they challenge because four permanent injunctions bar the

United States District Court
Northern District of California

reimposition of those restrictions.

Accordingly, due to religious organizations' success in obtaining injunctions that restrict the State's ability to reimpose COVID-19 restrictions against them, Plaintiffs' claims for declaratory and injunctive relief against the State are moot.[5]  Leave to amend is not warranted because the four injunctions prevent the State from reimposing the restrictions.

### B.   Eleventh Amendment Immunity Against Damages Claims

All that remains against the State are Plaintiffs' claims for damages.  The State argues that damages claims asserted against it (and its officials, who are sued in their official capacities) are barred by the Eleventh Amendment.  *See* SMTD at 9.  Plaintiffs do not respond to this argument.

In any case, the Court agrees with the State.  The Eleventh Amendment bars claims for monetary damages against a state or state officials sued in their official capacities, absent waiver or congressional abrogation of the immunity.  *See Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against state officer in official capacity treated as suit against the state itself).  There is no allegation that Congress has abrogated or the State has waived that immunity.  Accordingly, the claims for damages are barred by the Eleventh Amendment and must be dismissed without leave to amend.

*            *            *

All claims for relief against the State are either moot or barred by the Eleventh Amendment.  The Court thus need not reach the State's arguments that Plaintiffs have failed to state a claim under Rule 12(b)(6).  The State's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND, and the State is DISMISSED from this case.

_____

[5] While Plaintiffs argue that some of their claims against the County depend on a declaration of the constitutionality of State COVID-19 policies, the Court finds that it can adjudicate those disputes without the presence of the State and that this does not counsel against dismissing the State from this case.  *Cf. Gator.com v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (mootness inquiry "not relaxed in the declaratory judgment context").

United States District Court
Northern District of California

## IV.   COUNTY DEFENDANTS' MOTION TO DISMISS

The Court now turns to the County's motion to dismiss.  As the State did, the County argues that all claims for injunctive and declaratory relief asserted against it are moot.  CMTD at 2–4.  The County then moves to dismiss each of the individual claims under Rule 12(b)(6).  *Id.* at 4–13.  The Court considers each of these arguments, concluding that the case will go forward against the County on some of Plaintiffs' claims for damages.[6]

### A.   Mootness

The County argues that the injunction and declaratory relief claims are moot because the relevant restrictions have been lifted.  CMTD at 2–4.  Plaintiffs briefly make the same arguments against mootness here as made in opposing the State motion to dismiss.  *See* COpp. at 7–8.

For similar reasons as it concluded in granting the State's motion to dismiss, the Court finds claims against the County for injunctive and declaratory relief to be moot.  Since the conclusion of briefing, the County has entered into a stipulated injunction preventing it from reimposing capacity restrictions affecting religious services or "[a]ny new mandatory public health restrictions that affect religious worship services."  *See* ECF No. 152, Ex. B (injunction in *Gateway*, No. 20-cv-8241 (N.D. Cal., filed Feb. 8, 2022)).  Additionally, the relevant restrictions have been rescinded.  The capacity limit and singing rules were rescinded on March 3, 2021 and have not been reimposed since.  *See* ECF No. 136, Ex. B (press release announcing recession of those restrictions).[7]  The face covering guidance in place at the time the operative complaint was filed explicitly allowed individuals at religious gathering to remove their face coverings, *id.* Ex. F, and even that guidance was recently rescinded.  *See* "County of Santa Clara Universal Indoor

---

[6] Unlike the State, the County does not raise Eleventh Amendment immunity.  *See Ray v. County of Los Angeles*, 935 F.3d 703, 707 (9th Cir. 2019) (noting that "the Supreme Court has long refused to grant Eleventh Amendment immunity to counties").

[7] The Court finds judicial notice of Exhibits B and F is appropriate because they are documents whose "accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201(b); *Merced Irrigation Dist. v. Cnty. of Mariposa*, 941 F. Supp. 2d 1237, 1261–62 (E.D. Cal. 2013).

Mask Mandate to Transition to Recommendation on March 2," SANTA CLARA COUNTY PUBLIC
HEALTH (Mar. 1, 2022), *available at* https://tinyurl.com/377tatdn (County indoor masking
guidance rescinded on March 2, 2022).  Accordingly, the claims for declaratory and injunctive
relief against the County are moot.  *See Sea-Land Serv.*, 939 F.2d at 870; *Rosebrock*, 745 F.3d at
971.

It is unclear if the County also asserts that damages claims alleged against it are moot.  *See*
CMTD at 2 ("Plaintiffs' Claims Are Moot.").  To extent it does so, the Court agrees with Plaintiffs
that the damages claims are not moot despite the injunctions and rescission of the relevant
policies.  *See N.Y. State Rifle & Pistol Ass'n*, 140 S. Ct. at 1526–27 (despite mootness of
injunctive and declaratory relief, remanding for consideration of damages based on the rescinded
rules).  The Court accordingly will proceed to consider the County's Rule 12(b)(6) challenge to
each of Plaintiffs' claims, which now are restricted to their prayer for damages.

### B.    First Amendment Claims

Plaintiffs assert three § 1983 claims premised on alleged violations of the First
Amendment:  one for violation of the Free Exercise Clause, TAC ¶¶ 99–108 (first cause of action);
one for violation of the freedom of assembly, *id.* ¶¶ 114–123 (third cause of action); and one
against James Williams only for First Amendment retaliation, *id.* ¶¶ 141–148 (seventh cause of
action).  The Court analyzes each claim separately.

#### 1.    Free Exercise (1st Claim)

The first cause of action is a § 1983 claim based on alleged violation of the First
Amendment's Free Exercise Clause.  *See* TAC ¶¶ 99–108.   The County argues that its most recent
orders are neutral and generally applicable and thus pass rational basis review.  *See* CMTD at 4–5.
The individual County Defendants contend that they are entitled to qualified immunity on claims
regarding the prior capacity limits that the Supreme Court enjoined in *Gateway* as applied to
religious gatherings.  *Id.* at 5–6.  Plaintiffs respond by saying that many of the County's orders
carved out exceptions for secular activities but not for religious activities, and so the orders are
subject to strict scrutiny.  *See* COpp. at 2.  Plaintiffs also say the County officials are not entitled
to qualified immunity.  *Id.*

"[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). But "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (citing *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. ----, 141 S. Ct. 63, 67–68 (2020)). "It is no answer that a [government entity] treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue." *Id.*

Under these standards, Plaintiffs have adequately pled a claim. It was under these Free Exercise standards that the Supreme Court in *Gateway* enjoined the County's restrictions on indoor religious gatherings, finding the outcome "clearly dictated" by the Court's previous decisions. *Gateway*, 141 S. Ct. at 1460 (citing *S. Bay*, 141 S. Ct. at 716). And because the County officials are sued in their official capacity, they are not entitled to qualified immunity. *Garcia v. Cnty. of Riverside*, 817 F.3d 635, 639 (9th Cir. 2016) (official "may only assert qualified immunity in his individual capacity, not his official capacity"). As to the County's evolving face covering restrictions, Plaintiffs have alleged that the restrictions carved out exceptions for schools, day camps, childcare centers, restaurants, personal care services, sporting events and athletes, and various parts of the entertainment industry, but did not make the same accommodations for religious practice. *See* TAC ¶¶ 6, 50–51, 56, 64–66, 70–76, 78. The Court cannot say as a matter of law that granting exceptions to those types of activities but not religious activities satisfies the Free Exercise Clause, in light of the Supreme Court's pronouncements in *Tandon* and *Roman Catholic Diocese of Brooklyn* that more favorable treatment of "*any* comparable secular activity" subjects a regulation to strict scrutiny.

The County's motion to dismiss the § 1983 claim alleging violation of the First Amendment's Free Exercise Clause is DENIED.

### 2. Assembly (3rd Claim)

The third cause of action is a § 1983 claim premised on an alleged violation of the First

18

United States District Court
Northern District of California

1   Amendment's freedom of assembly.  TAC ¶¶ 114–123.  The County argues that its "current"

2   COVID-19 rules have only an "incidental effect" on the right to assemble and, because they are

3   narrowly tailored to serve a governmental interest and leave open alternative means for assembly,

4   satisfy intermediate scrutiny.  *See* CMTD at 6–7 (citing *Ward v. Rock Against Racism*, 491 U.S.

5   781, 791 (1989)).  Plaintiffs counter that their allegations show that the County orders did not have

6   only an "incidental effect" on religious practice because they prohibited or restricted gathering in

7   person.  *See* COpp. at 3.

8       The level of constitutional scrutiny applied to restrictions on First Amendment speech and

9   assembly freedoms "is dictated by both the intrinsic strength of, and the magnitude of the burden

10  placed on, the speech and associational freedoms at issue."  *Lincoln Club v. City of Irvine*, 292

11  F.3d 934, 938 (9th Cir. 2001).  Restrictions placing a "severe burden on fully protected speech and

12  associational freedoms" are subject to strict scrutiny.  *Id.*  "A regulation that has an incidental

13  effect on expressive conduct is constitutional as long as it withstands intermediate scrutiny."  *Doe*

14  *v. Reed*, 586 F.3d 671, 679 (9th Cir. 2009) (citing *United States v. O'Brien*, 391 U.S. 367, 376

15  (1968)).

16      The Court concludes that Plaintiffs have adequately pled this claim for the same reasons as

17  it found they adequately pled their Free Exercise claim.  Plaintiffs have alleged facts such that the

18  Court cannot conclude, as the County urges, that the County's COVID-19 restrictions had only an

19  "incidental effect" on their right to assemble for religious purposes.  Plaintiffs have alleged that

20  their religion requires that they regularly gather in person to worship, and the County's COVID-19

21  policies at one time prohibited them from doing so.  TAC ¶¶ 117, 121.  Because Plaintiffs have

22  alleged facts supporting a finding that the County's COVID-19 rules are subject to strict scrutiny,

23  the Court cannot, at this juncture, determine whether the evidence will ultimately support that

24  claim.  The Supreme Court found that at least some of the County's restrictions failed strict

25  scrutiny because they treated religious practice more poorly than other comparable activities.  *See*

26  *Gateway*, 141 S. Ct. at 1460.  That conclusion also applies if the restrictions are subject to strict

27  scrutiny in the assembly context.

28      Accordingly, the County's motion to dismiss the § 1983 claim alleging violation of the

19

First Amendment's assembly clause is DENIED.

### 3.   Retaliation (Williams) (7th Claim)

The seventh cause of action is a § 1983 claim for First Amendment retaliation asserted against County Counsel Williams only.  TAC ¶¶ 141–148.  The County argues that this claim is barred by both the *Noerr-Pennington* doctrine and California state law privileges.  CMTD at 9–11.  Plaintiffs contend that no immunity applies.  COpp. at 5–7.  The Court finds that the claim is barred by *Noerr-Pennington* and so does not reach the other immunity arguments.

Under the *Noerr-Pennington* doctrine, "those who petition any department of the government are immune from statutory liability for their petitioning conduct."  *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006 (9th Cir. 2008).  "Conduct incidental to a lawsuit . . . falls within the protection of the *Noerr-Pennington* doctrine," *id.* (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936–38 (9th Cir. 2006) (pre-suit demand letter)), and the doctrine applies to § 1983 claims.  *See Empress LLC v. City & Cnty. of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005).[8]

The two letters sent by the County (on Williams' instructions) to Calvary Chapel's bank fall within *Noerr-Pennington*'s protection.  Those two letters informed the bank that a state court granted the County a preliminary injunction and found Calvary Chapel and McClure in contempt of court for violating public health ordinances.  *See* TAC Ex. 19 (Dec. 15, 2020 letter enclosing court order granting preliminary injunction); *id.* Ex. 20 (Jan. 4, 2021 letter enclosing contempt order and informing bank that the court was considering further sanctions).  Letters informing the bank—an interested party, due to its financial interest in Calvary Church's property—of the existence of the litigation and fines are "conduct incidental" to the state court lawsuit.  *See Elem Indian Colony of Pomo Indians v. Ceiba Legal, LLP*, 2016 WL 6520151, at *1–2 (N.D. Cal. Nov. 3, 2016) (letters to banks asking them to freeze tribe's gambling revenue, federal funding, and

---

[8] In opposition, Plaintiffs do not contend that the "sham litigation" exception to the *Noerr-Pennington* doctrine applies (*see Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998)), so the Court need not consider it.

United States District Court
Northern District of California

1    bank accounts until disputed election could be solved by Bureau of Indian Affairs was "conduct

2    incidental to petitioning activity" and thus protected under *Noerr-Pennington*).

3          Plaintiffs' arguments that *Noerr-Pennington* does not apply are not convincing.  Plaintiffs

4    first point to *Committee to Protect Our Agricultural Water v. Occidental Oil & Gas Corp.*, 235 F.

5    Supp. 3d 1132 (E.D. Cal. Jan. 20, 2017) to argue that the immunity does not extent "to state actors

6    engaging with private entities who are themselves exercising petitioning rights."  COpp. at 5–6.

7    But that is not what Plaintiffs have alleged occurred here.  The bank was not exercising petitioning

8    rights, the County was.  Indeed, the Ninth Circuit case that *Committee to Protect* relies upon

9    rejects the very limitation on *Noerr-Pennington* that Plaintiffs propose.  *See Manistee Town Ctr. v.*

10   *City of Glendale*, 227 F.3d 1090, 1093–94 (9th Cir. 2000) (rejecting limitation of *Noerr-*

11   *Pennington* to private citizens because "[g]overnment officials are frequently called upon to be

12   ombudsmen for their constituents" to "intercede, lobby, and generate publicity to advance their

13   constituents' goals"); *see also B&G Foods N. Am., Inc. v. Embry*, --- F.4th ----, 2022 WL 804287,

14   at *5–7 (9th Cir. Mar. 17, 2022) (government litigation activities protected by *Noerr-*

15   *Pennington*).[9]  The Court also rejects Plaintiffs' second argument that this claim should proceed to

16   discovery because (1) Plaintiffs should be allowed to determine if there was retaliatory motive,

17   and (2) *Noerr-Pennington* immunity is an affirmative defense that should not be resolved at the

18   pleading stage.  *See* COpp. at 6–7.  Plaintiffs provide no authority that the motive for "conduct

19   incidental to litigation" is grounds for finding that conduct outside the typical protection of *Noerr-*

20   *Pennington*, and courts routinely apply *Noerr-Pennington* immunity on a motion to dismiss.  *See,*

21   *e.g.*, *UCP Int'l Co. Ltd. v. Balsam Brands, Inc.*, 420 F. Supp. 3d 966, 980–82 (N.D. Cal. 2019)

22   (dismissing claims based on *Noerr-Pennington* and recognizing that the immunity is "immunity

23   from liability, not from trial") (citing *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d

24   1136, 1140 (9th Cir. 2013)).

25   _____

26   [9] Given this clear Ninth Circuit authority, the Court declines to follow *Hoffman v. Dewitt Cnty.*,

27   176 F. Supp. 3d 795 (C.D. Ill. 2016), an out-of-circuit district court case that arguably places

28   additional limitations on *Noerr-Pennington* protection.

1
2
3
4

The Court finds that leave to amend would be futile.  The letters themselves are attached to the operative complaint, and Plaintiffs have alleged that the letters sought to get Calvary Chapel to "pay the fines," the County's goal in the state court litigation.  TAC ¶ 86.  No additional factual allegations could bring these letters outside of *Noerr-Pennington* immunity.

5
6
7

Because *Noerr-Pennington* immunity applies, the County's motion to dismiss the § 1983 claim against Williams based on First Amendment retaliation is GRANTED WITHOUT LEAVE TO AMEND.

8

### C.     Equal Protection (4th Claim)

9
10
11
12
13
14
15
16
17

Plaintiffs' fourth cause of action is a § 1983 claim premised on a violation of the Fourteenth Amendment's Equal Protection Clause.  *See* TAC ¶¶ 124–129.  The County says this claim should be dismissed because its current and former COVID-19 rules (1) pass rational basis review and (2) are not subject to a higher level of scrutiny because they do not "jeopardize[] exercise of a fundamental right."  CMTD at 7 (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  Plaintiffs point to their allegations that the County orders imposed harsher capacity restrictions on churches while allowing other activities "to remain open or operate under less stringent restrictions," including with exemptions from the face covering guidelines.  COpp. at 2–3 (citing TAC ¶¶ 62, 68–69, 83, 127–28).

18
19
20
21
22
23
24
25
26
27
28

The Court's ruling on the Free Exercise claim informs the analysis here.  Because the Court has concluded that Plaintiffs have adequately alleged a violation of their rights under the Free Exercise Clause, the Court necessarily concludes that the County orders would be subject to a higher level of scrutiny (accepting Plaintiffs' allegations as true) because they "jeopardize[] the exercise of a fundamental right."  *Nordlinger*, 505 U.S. at 10; *accord Ashaheed v. Currington*, 7 F.4th 1236, 1251 (10th Cir. 2021) (equal protection claim triggered strict scrutiny because it alleged "a deprivation of free exercise, a fundamental right," and a classification based on religion).  As the Court has already recognized, the Supreme Court found that at least some of the County's restrictions failed strict scrutiny because they treated religious practice more poorly than other comparable activities.  *See Gateway*, 141 S. Ct. at 1460.  As such, the Equal Protection claim will go forward based on Plaintiffs' allegations.

United States District Court
Northern District of California

1    The Court DENIES the County's motion to dismiss the fourth cause of action.

2    **D.    Excessive Fines (5th Claim)**

3    Plaintiffs' fifth claim is a § 1983 claim based on a violation of the Eighth Amendment's

4    Excessive Fines clause.  TAC ¶¶ 130–136.  The County argues that the claim must be dismissed

5    because Plaintiffs' violations of the County orders were "egregious and put large numbers of

6    people at imminent risk," so the fines imposed ($5,000 per event) were not "grossly

7    disproportionate" to the violations.  CMTD at 7–8.  Plaintiffs argue that this claim must be

8    decided on a "fully evidentiary record" because whether a fine is "excessive" cannot be decided

9    on the pleadings.  *See* COpp. at 4.  The Court agrees with Plaintiffs.

10   The Eighth Amendment prohibits the imposition of "excessive fines."  U.S. Const. amend.

11   VIII.  A fine is unconstitutionally excessive if the amount imposed "is grossly disproportional to

12   the gravity of the [Plaintiffs'] offense."  *United States v. Bajakajian*, 524 U.S. 321, 336–37 (1998).

13   Courts consider four factors to determine whether a fine is "grossly disproportional" to the

14   underlying offense:  "(1) the nature and extent of the underlying offense; (2) whether the

15   underlying offense related to other illegal activities; (3) whether other penalties may be imposed

16   for the offense; and (4) the extent of the harm caused by the offense."  *Pimentel v. City of Los

17   Angeles*, 964 F.3d 917, 922 (9th Cir. 2020).

18   The Court finds that it cannot resolve this claim in favor of the County as a matter of law.

19   *Pimentel* affirmed a district court's decision on summary judgment, and the factors the Court must

20   consider to determine whether the fine was "grossly disproportional" require comparison of the

21   extent of Plaintiffs' violations of the County ordinance to the harms they created.  These are

22   necessarily fact-bound inquiries.  *See Navarro v. City of Mt. View*, 2021 WL 5205598, at *34

23   (N.D. Cal. Nov. 9, 2021) (declining to resolve Excessive Fines claims on motion to dismiss

24   "without the benefit of developed evidence").

25   The Court also notes that the amount of the fine has not been set yet.  In the parallel state

26   court case seeking to collect the fine, the state court recently denied Plaintiffs' demurrer to the

27   claim.  *See* ECF No. 152, Ex. 2 at 1416 (order overruling demurrer, including rejection of Eighth

28   Amendment argument).  But the order on the demurrer does not set the final amount of the fine,

United States District Court
Northern District of California

1    nor does it rule that any fine is necessarily warranted after an examination of evidence.  Without a

2    set amount of money that the County seeks from Plaintiffs—an amount that the Court is not in a

3    position to set, given the proceedings in state court—the Court cannot determine if the fine is

4    excessive or not.

5    The County, likely recognizing this issue, makes a cursory request for the Court to stay this

6    claim (or this lawsuit) to wait for the resolution of the state court litigation.  *See* CMTD at 4, 9;

7    CReply at 2.  The Court agrees with Plaintiffs that the request for a stay is not adequately briefed

8    at present.  However, the Court may be receptive to a request for a stay for two reasons.  First, as

9    noted above, the amount of the fine is not set, so the Court cannot determine if the fine is

10   excessive.  Second, the parties have raised certain issues in the state court litigation that overlap

11   with issues presented here, including Plaintiffs' First, Eighth, and Fourteenth Amendment

12   arguments, such that rulings in the state court may have an effect on resolution of issues in this

13   litigation.  The Court does not prejudge any possible effects of rulings in the state court on this

14   litigation, but notes these issues for the parties' consideration when determining if a request for a

15   stay would be appropriate.

16   The Court DENIES the County's motion to dismiss the seventh claim for violation of the

17   Excessive Fines Clause of the Eighth Amendment.

18       **E.    *Monell* (8th Claim)**

19   Plaintiffs' eighth claim is a § 1983 claim based on *Monell* liability against the County.

20   TAC ¶¶ 141–148.  The County alleges that Plaintiffs' allegations supporting municipal liability

21   are mere conclusions, *see* CMTD at 11, while Plaintiffs say that they successfully state a *Monell*

22   claim on the basis of the ratification of the unlawful COVID-19 policies of the County, *see* COpp.

23   at 7.  The Court finds that the claim is sufficiently pled as to all of the County Defendants except

24   Williams.

25   Under *Monell*, "a municipality may be held liable for a constitutional violation if a final

26   policymaker ratifies a subordinate's actions."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

27   The authorized policymakers must "approve a subordinate's decision and the basis for it."  *Id.*  "A

28   mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983

1    claim." *Id.*  "In order to establish liability for governmental entities under *Monell*, a plaintiff must

2    prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that

3    the municipality had a policy; (3) that this policy amounts to deliberate indifference to the

4    plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional

5    violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (alterations in

6    original) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir.

7    1997)).

8        Although not a model of clarity, Plaintiffs' allegations suffice to state a claim as to most of

9    the County defendants.  Plaintiffs allege that Dr. Cody was responsible for issuing the County's

10    COVID-19 orders, *see* TAC ¶¶ 18, 36, 62, 68, 69, 77, and that the County Supervisors adopted the

11    emergency ordinance that authorized the County to issue fines against Plaintiffs for violating the

12    COVID-19 orders, *see id.* ¶ 19, 84.  Because the Supreme Court has determined that the County

13    orders, at least with respect to certain restrictions applicable to Plaintiffs, violated the Free

14    Exercise Clause, Plaintiffs have adequately pled that these decisions represent ratification of

15    constitutional violations such that *Monell* liability may attach.

16        As to Williams, however, Plaintiffs have not stated a claim.  Williams is alleged to be the

17    County Counsel who is "charged with enforcing the County's public health orders" and who

18    "helped promulgate the orders in March 2020."  TAC ¶ 20.  These allegations, however, are

19    insufficient to establish that he is a "final policymaker" under *Monell*.  As County Counsel,

20    Williams would be expected to defend the County's COVID-19 orders as valid, but there are not

21    allegations consistent with him having "policymak[ing]" authority over what the COVID-19

22    orders would require.  Because the Court cannot definitively say that Plaintiffs cannot allege that

23    Williams had relevant policymaking authority, Plaintiffs will be given leave to amend to explore

24    adding such allegations.

25        Accordingly, the County's motion to dismiss Plaintiffs' *Monell* claim is DENIED, except

26    their request to dismiss the claim as to Williams, which the Court GRANTS WITH LEAVE TO

27    AMEND.

28

United States District Court
Northern District of California

### F.   Bane Act (9th Claim) and State Constitutional Claims (2nd & 6th Claims)

Plaintiffs' ninth claim is a claim against the County for violation of California's Bane Act, Cal. Civ. Code § 52.1.  *See* TAC ¶¶ 153–157.  Their second and sixth causes of action arise under the California State Constitution.  *See id.* ¶¶ 109–113 (Cal. Const. art. I, § 4), 137–140 (Cal. Const. art. I, § 7).  The County argues that these claims are not adequately pled because Plaintiffs have not pled that they timely presented the claim to the County under the Government Claims Act.  *See* CMTD at 11–12.  Plaintiffs do not respond to this argument.

The Court finds that the claims are barred by the Government Claims Act.  A timely presentation of a claim for damages against a local public entity must be made to that public entity no more than six months after a cause of action accrues.  *See* Cal. Gov't Code §§ 900 *et seq. Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).  "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a complaint to [dismissal] for failure to state a cause of action."  *State v. Superior Ct.*, 32 Cal. 4th 1234, 1239 (2004).  Plaintiffs have not pled compliance with the Government Claims Act for these claims, so the claims are subject to dismissal.

The Court will allow leave to amend solely on the claims presentation issue.  The Court notes that the County has previously identified failure to plead compliance with the Government Claims Act as a ground for dismissal in a motion to dismiss it filed over a year ago.  *See* ECF No. 70 at 20–21 (identifying the Government Code requirements as a reason Plaintiffs failed to exhaust their administrative remedies).  Plaintiffs should have sought to fix that deficiency in the the Third Amended Complaint, but because this is the Court's first fulsome order analyzing these claims, the Court will permit leave to amend.  The County's motion to dismiss claims two, six, and nine is GRANTED WITH LEAVE TO AMEND limited solely to the claims presentation issue.

## V.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the State's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.  The State is DISMISSED from this case.  The County's motion to dismiss is GRANTED IN PART WITH LEAVE TO AMEND IN PART AND

DENIED IN PART as follows:

- The County's motion to dismiss all claims for injunctive and declaratory relief is GRANTED WITHOUT LEAVE TO AMEND;

- The County's motion to dismiss Plaintiffs' claims under the First Amendment (claims 1, 3) is DENIED;

- The County's motion to dismiss Plaintiff's state constitutional claims (claims 2, 9) is GRANTED WITH LEAVE TO AMEND, with leave to amend limited to the presentation issue;

- The County's motion to dismiss Plaintiffs' Equal Protection claim (claim 4) is DENIED;

- The County's motion to dismiss Plaintiffs' Excessive Fines claim (claim 5) is DENIED;

- The County's motion to dismiss Plaintiffs' First Amendment retaliation claim (claim 7) is GRANTED WITHOUT LEAVE TO AMEND;

- The County's motion to dismiss Plaintiffs' *Monell* claim (claim 8) is GRANTED WITH LEAVE TO AMEND as to Defendant James Williams and otherwise DENIED; and

- The County's motion to dismiss Plaintiffs' Bane Act (claim 9) claim is GRANTED WITH LEAVE TO AMEND, with leave to amend limited to the claims presentation issue.

Plaintiffs SHALL file any amended complaint within 30 days of the date of this Order. Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in dismissal of the deficient claims with prejudice. Amendment is limited to the scope permitted by this Order.

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

The deadline to complete ADR SHALL be 90 days after the date of this Order.  ECF No. 149.  If the parties wish the Court to refer this case to a Magistrate Judge for a settlement conference, they may submit a stipulation with that request (and may include a request for referral to a specific magistrate judge, if stipulated).

Dated:  March 18, 2022

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California