UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CALVARY CHAPEL SAN JOSE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SARA CODY, et al.,<br><br>Defendants. | Case No. 20-cv-03794-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE FOURTH AMENDED COMPLAINT**<br><br>[Re: ECF No. 179] |

    This case challenges policies and orders of the County of Santa Clara designed to slow the spread of COVID-19, a highly transmissible respiratory disease that has claimed over 1 million lives in the United States and over 6 million lives worldwide since December 2019. Beginning in March 2020, the County issued emergency orders that instituted capacity limits for certain types of facilities, restricted the practice of certain activities (including singing and chanting), and required individuals to wear masks in many situations. Those orders have been repeatedly amended in response to changing circumstances and new variants of COVID-19.

    Plaintiffs Calvary Chapel San Jose, a Christian church; Mike McClure, its lead pastor; Southridge Church, another Christian church; and Micaiah Irmler, its lead pastor, have sued the County, alleging that the emergency orders imposed harsher restrictions on churches than other institutions. Plaintiffs allege that when they admittedly defied the County's orders, the County levied against them millions of dollars in fines for the violations and sent threatening letters to the Calvary Chapel's bank.

    In their Fourth Amended Complaint, Plaintiffs bring eight claims, alleging violations of their First, Eighth, and Fourteenth Amendment rights under the Federal Constitution, violations of

the California Constitution, and a violation of California's Bane Act. Each claim is asserted against Santa Clara County (the "County") and several county officials in their official capacities (the "County Officials"). The County Officials are Dr. Sarah H. Cody in her official capacity as the County's Public Health Officer; James Williams in his official capacity as director of the Santa Clara County Emergency Operations Center; and Mike Wasserman, Cindy Chavez, Dave Cortese, Susan Ellenberg, and Joe Simitian, each in their official capacity as a member of the Santa Clara County Board of Supervisors.

Before the Court is the County's motion to dismiss. Mot., ECF No. 179; Reply, ECF No. 193. The County's motion asks that the court dismiss or strike four components of Plaintiffs' complaint. First, the County asks the Court to dismiss all claims against the County Officials because they are redundant defendants to the County itself. Second, the County asks the Court to strike allegations concerning Defendants' letters to Calvary Chapel's bank because the Court has already held that the *Noerr-Pennington* doctrine protected the defendants from suit for sending the letters. Third, the County asks the Court to dismiss Plaintiffs' Bane Act claim because the conduct upon which Plaintiffs base their claim does not violate the Bane Act and is protected under the *Noerr-Pennington* Doctrine. The County further argues that the Court should dismiss the claim because Plaintiffs failed to plead that they have complied with the claim presentation requirements with the Government Claims Act. Fourth, the County asks the Court to dismiss the damages component of Plaintiffs' California Constitutional claims because, as with their Bane Act claim, Plaintiffs have failed to plead compliance with the Government Claims Act. Plaintiffs oppose the motion. *See* Opp'n, ECF No. 185. The Court held a hearing on September 21, 2022.

For the reasons discussed on the record at the hearing and explained below, the Court GRANTS IN PART WITHOUT LEAVE TO AMEND AND DENIES IN PART the County's partial motion to dismiss.

## I. BACKGROUND

As alleged in Plaintiffs' Fourth Amended Complaint and assumed true for the purposes of this order, in December 2019, the World Health Organization reported the emergence of a novel coronavirus in Wuhan, China. 4th Am. Compl. ¶ 22, ECF No. 167 ("4AC"). The virus, dubbed

COVID-19, was detected in California in late January 2020. *Id.* ¶¶ 22-23. Although State health officials initially characterized the risk of COVID-19 to the general public as "low," on March 3, 2020, the State Department of Public Health issued detailed guidelines for fighting COVID-19. *Id.* ¶¶ 24-26. Governor Newsom declared a state of emergency the next day, and on March 12, 2020, he issued an executive order invoking his emergency powers to "ensure adequate facilities exist to address the impacts of COVID-19." *Id.* ¶¶ 27, 29 & Exhs. 1, 2.

### A. The County's Policies in Response to COVID-19

A few days after Governor Newsom's March 12, 2020, executive order, officials in the County—spurred by Defendants Dr. Cody and Mr. Williams—issued a "Shelter in Place Order" requiring residents to shelter in place indefinitely. 4AC ¶ 32 & Exh. 3. Dr. Cody, as the final policymaker for the Santa Clara County Public Health Department, and Mr. Williams, as the final policymaker for the Emergency Operations Center, made the joint decision to cancel all indoor gatherings. *Id.* ¶ 32.

The County's Shelter in Place Order designated certain activities "essential" and others "non-essential." *Id.* ¶ 36. Essential activities were allowed to continue, while non-essential activities were "shut down." *Id.* Churches were deemed non-essential. *Id.* ¶ 37. Without evidence, County officials asserted that the risk of COVID-19 infection was increased in churches because people gathered close together for extended periods of time and sang. *Id.* ¶ 45. In May, the County extended its Shelter in Place Order indefinitely. *Id.* ¶ 42.

The County banned indoor religious activities and imposed harsher restrictions on churches than similarly situated secular activities even after the federal government declared houses of worship "essential" and the Justice Department sent California's Governor a letter stating that the "lockdown" of churches violated the First Amendment. *Id.* ¶¶ 53, 55.

In the summer of 2020, COVID-19 cases surged across California, including in Santa Clara County. *Id.* ¶ 50. County officials, including Dr. Cody, were aware that the virus was "likely" spreading among individuals gathering at protests following the death of George Floyd, but the County officials did not punish those individuals for violating COVID-19 orders. *Id.* ¶¶ 51-52.

On July 2, 2020, the County issued a Risk Reduction Order, which imposed capacity restrictions

1  on indoor and outdoor gatherings, but exempted certain industries like childcare settings, school
2  settings, transportation, hospitals, offices, stores, and restaurants. *Id.* ¶ 62. Dr. Cody issued a revised
3  order on October 5, 2020, that allowed more businesses to reopen but continued to ban indoor
4  gatherings. *Id.* ¶¶ 64-65. Shortly thereafter, Dr. Cody issued a "Revised Mandatory Gatherings
5  Directive" that allowed indoor religious gatherings but was more restrictive than contemporaneous
6  State guidance. *Id.* ¶ 65.

7  Around November 16, 2020, the State of California moved the County into the strictest tier of
8  the California Department of Public Health's Blueprint for a Safer Economy ("Blueprint"). *Id.* 73.
9  The Blueprint established a procedure for assigning counties to one of four tiers based on the severity
10 of the COVID-19 outbreak in the county. *Id.* ¶ 63, 73. Around the same time, Dr. Cody issued a
11 "Mandatory Directive on Capacity Limitations" that banned indoor worship services but allowed
12 shopping centers, retail stores, grocery stores, public transit, and construction sites to remain open at
13 limited capacity. *Id.* ¶ 73.

14 On February 5, 2021, the United States Supreme Court enjoined California from enforcing the
15 Blueprint's Tier 1 prohibition on indoor worship services. *See id.* ¶ 78; *see also S. Bay United*
16 *Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021) (mem.). A week later, directed by Dr. Cody
17 and Mr. Williams acting in their capacities as public health policymakers, the County reinstated its ban
18 on indoor worship services. 4AC ¶ 79. The Supreme Court enjoined enforcement of parts of the
19 County's orders banning indoor worship services on February 26, 2021. *Id.*; *see also Gateway City*
20 *Church v. Newsom*, 141 S. Ct. 1460 (2021) (mem.).

21 **B.    Plaintiffs and Enforcement Actions Against Them**

22 Plaintiffs are two churches and their two lead pastors. Plaintiff Calvary Chapel San Jose is
23 a Christian church located in San Jose, California led by lead pastor Plaintiff Mike McClure. 4AC
24 ¶¶ 10-11. Plaintiff Southridge Church is a Christian church also located in San Jose, California
25 and led by lead pastor Plaintiff Micaiah Irmler. *Id.* ¶¶ 12-13. As churches located in Santa Clara
26 County, Calvary Chapel and Southridge were both subject to County orders issued in the wake of
27 the coronavirus. Plaintiffs admittedly violated County orders by not complying with indoor
28 gathering restrictions, face covering mandates, or the singing and chanting ban and by failing to

4

sign the County's social distancing protocols. *Id.* ¶ 80.

On August 11, 2020, the County issued an Urgency Ordinance permitting it to issue fines for violations of its COVID-19 orders. *Id.* ¶ 80 & Exh. 18. During that month, the County began issuing what would eventually amount to more than $2.8 million in fines against Plaintiffs for violating its COVID-19 orders, despite no COVID-19 case being traced to Plaintiffs' church gatherings. *Id.* The County has also sought to enforce its orders in state court. *See People v. Calvary Chapel San Jose*, No. 20CV372285 (Super. Ct.).

The County has also allegedly taken other "extreme measures to collect the fines." 4AC ¶ 82. The County, led by Williams, sent letters to Calvary Chapel's bank in December 2020 and January 2021 informing it that Calvary Chapel had been fined over $1 million and held in contempt for violating COVID-19 orders. *Id.* ¶ 81 & Exs. 19-20. The bank allegedly interpreted the letters "as a threat that the County intended to take the church property to satisfy the fines" and sent a notice of default to Calvary Chapel for noncompliance with government regulations (which was only withdrawn when the bank learned the church was contesting the fines). *Id.* ¶ 83. Calvary Chapel was forced to make over $800,000 in accelerated payments to the bank, diverting funds from investment in other church efforts. *Id.* ¶ 84.

The County orders allegedly interfered with the religious practice of Plaintiffs and their members. *Id.* ¶¶ 86-87. Plaintiffs and their members believe that it is essential for Christians to gather in person to worship. *Id.* Many congregants who are elderly or have health problems have difficulty sitting for long periods of time while wearing a face mask, and social distancing rules inhibited their ability to pray for one another. *Id.* Several congregants also felt intimidated by the County's enforcement efforts against Calvary Chapel, with some believing that the County may arrest them for going to church. *Id.* ¶ 88.

### C. This Lawsuit

Plaintiffs filed this lawsuit on June 9, 2020, against the County. *See* ECF No. 1. On November 5, 2020, the Court granted the County's motion to dismiss the initial complaint with leave to amend. *See* ECF No. 30. Plaintiffs amended their complaint and added various state defendants. *See* ECF No. 38. Plaintiffs then sought a temporary restraining order enjoining the state court

1  proceedings instituted against them for violation of the County orders.  *See* ECF No. 42.  The Court
2  denied the motion for a temporary restraining order, abstaining on the basis of *Younger v. Harris*, 401
3  U.S. 37 (1971).  *See* ECF No. 67.  By stipulation, Plaintiffs filed a Second Amended Complaint, *see*
4  ECF Nos. 80, 81, and later, the Court granted Plaintiffs' motion for leave to file a Third Amended
5  Complaint, *see* ECF Nos. 115, 116.  On March 18, 2022, the Court concurrently ruled on separate
6  motions to dismiss filed by the state defendants and the County.  *See* ECF No. 156.  The Court granted
7  the state defendants' motion to dismiss and dismissed the state defendants.  *Id.*  The Court granted in
8  part and denied in part the County's motion to dismiss.  *Id.*  Plaintiffs later filed a Fourth Amended
9  Complaint, which is the operative complaint.  *See* ECF No. 167.

The Fourth Amended Complaint asserts eight causes of action against the County.  Plaintiffs assert four Section 1983 claims for violations of the First Amendment's guarantee of the free exercise of religion, the First Amendment's guarantee of the right to assemble, the Fourteenth Amendment's guarantee of equal protection, the Eighth Amendment's guarantee of freedom from the imposition of excessive fines.  *See* 4AC ¶¶ 95-104 (First Amendment free exercise), 110-19 (First Amendment assembly), 120-125 (Fourteenth Amendment equal protection), 126-132.  Plaintiffs also assert a fifth Section 1983 claim for violations of "First, Eighth and Fourteenth Amendments," citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), as the basis for this claim.  *Id.* ¶¶ 137-40.  Plaintiffs assert two claims under the California Constitution for violations of the free exercise clause (Article I, Section 4) and the excessive fines clause (Article I, Section 17).[1]  *See* 4AC ¶¶ 105-09 (free exercise), ¶¶ 133-36 (excessive fines).  Finally, Plaintiffs assert a claim under California's Bane Act, Cal. Civ. Code § 52.1.  *See id.* ¶¶ 141-45.  This motion followed.

---

[1] Plaintiffs cite Article 1, Section 7 as the basis for their excessive fines claim.  This appears to be a typo, as Section 17 contains the California Constitution's excessive fines clause.  The Court's analysis below is the same regardless of the provision Plaintiffs seek to invoke.

6

## II. LEGAL STANDARD

### A. Federal Rule of Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### B. Federal Rule of Procedure 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) (internal quotation marks omitted). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *See*

7

*Fantasy*, 984 F.2d at 1528 (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (1990) (internal quotations omitted)). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

"While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y. Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone*, 618 F.3d at 973).

### III.   DISCUSSION

In its motion, the County asks that the court dismiss or strike four parts of Plaintiffs' complaint. Specifically, the County asks the Court to (1) dismiss all claims against the County Officials (2) strike allegations concerning Defendants' letters to Calvary Chapel's bank (3) dismiss Plaintiffs' Bane Act claim, and (4) dismiss the damages component of Plaintiffs' California Constitutional claims. For the reasons below, the Court grants the County's motion with regard to issues 1, 2, and 3, and denies with regard to issue 4.

#### A.   Claims Against County Officials

The County requests that the Court dismiss all claims against the County Officials. The County argues that the County officials are redundant defendants because they are sued only in their official capacity and each claim asserted against them is also asserted against the County itself. Mot. 7-10. Plaintiffs conceded at oral argument that the County Officials are redundant to the County itself.

The Court GRANTS the County's request to dismiss all claims against the County Officials. "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant

8

defendant." *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). Here, Plaintiffs assert each of their claims against the County itself and the County Officials in their official capacity. Moreover, Plaintiffs have conceded that the County Officials are redundant to the County. The Court therefore finds it appropriate to DISMISS all claims against the County Officials WITH PREJUDICE, as they are redundant defendants. *See Luke v. Abbott*, 954 F. Supp. 202, 204 (C.D. Cal. 1997) ("[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity. To do so only leads to a duplication of documents and pleadings, as well as wasted public resources for increased attorneys fees.").

### B. Bank Letter Allegations

The County requests that the Court strike Plaintiffs' allegations concerning letters the County Officials sent to Cass Commercial Bank ("Cass Bank") telling it that CCSJ had been held in contempt and fined over $1 million for violating COVID-19 orders. *See* Mot. 13; *see also* 4AC ¶¶ 81-83. The County argues that the *Noerr-Pennington* doctrine immunizes the County from suit for sending the letters and that the Court held as much in its Order granting in part the County's motion to dismiss the Third Amended Complaint. Mot. 13. Plaintiffs contend that the *Noerr-Pennington* doctrine does not apply and note that they disagree with the Court's prior ruling. Opp'n 1, 8-9. Plaintiffs also argue that the Court should not strike the allegations because they are important to Plaintiffs' claims. *Id.*

The Court GRANTS the County's request to strike Plaintiffs' allegations concerning the Cass Bank letters. The Court explained in its order granting in part the County's motion to dismiss Plaintiffs' Third Amended Complaint that the County's conduct—enforcement efforts following judicially approved imposition of fines—is conduct incidental to litigation and therefore falls within the protection of the *Noerr-Pennington* doctrine. *Calvary Chapel San Jose v. Cody*, No. 20-CV-03794-BLF, 2022 WL 827116, at *11 (N.D. Cal. Mar. 18, 2022). The Court is unaware of, and Plaintiffs do not provide, any case law that would change this outcome when the alleged conduct is a "central part of this case." *See* Opp'n 8-9. Because sending the letters was privileged conduct under the *Noerr Pennington* doctrine, it cannot supply a basis for any of

Plaintiffs' claims and thus becomes immaterial. The Court therefore STRIKES the allegations regarding the letters as immaterial to Plaintiffs' claims. *See* Fed. R. Civ. P. 12(f) (court may strike "immaterial" matter); *see also Fantasy*, 984 F.2d at 1528 (district court has discretion to strike allegations when there are no legal theories under which the allegations are relevant).

### C. Bane Act Claim (Eighth Cause of Action)

The County requests that the Court dismiss Plaintiffs' claim alleging violations of California's Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1. The County correctly notes that the Court dismissed the Bane Act claim in Plaintiffs' Third Amended Complaint for failure to plead compliance with the Government Claims Act's presentation requirement.[2] *See* Mot. 15; *see also Calvary Chapel San Jose*, 2022 WL 827116, at *14. The County argues that the Bane Act claim in the Fourth Amended Complaint fails for the same reason. Mot. 15, 17. The County also argues that Plaintiffs have failed to plead facts showing threats, intimidation, or coercion required by the Bane Act. *Id.* at 18. Plaintiffs respond that the Government Claims Act's presentation requirement does not apply because their Bane Act claim "primarily seeks declaratory and injunctive relief with an ancillary request for nominal damages and a civil penalty." Opp'n 7. As to the sufficiency of their pleadings, Plaintiffs argue that the County's imposition of fines and its letters to Cass Bank amount to threats, intimidation, or coercion. *Id.* at 5-6.

The Court GRANTS the County's motion to dismiss Plaintiffs' Bane Act claim because Plaintiffs were required to comply with the Government Claims Act. The Court therefore does not reach the County's argument that Plaintiffs have not plausibly pled the threats, intimidation, or coercion required to state a claim under the Bane Act.

Under the Government Claims Act, a claim for money damages against a local public entity must be presented to the entity within six months or a year after the cause of action accrues depending on the cause of action. *See* Cal. Gov't Code §§ 905, 911.2. "[F]ailure to allege facts

---

[2] The Government Claims Act covers Sections 810-998.3 of the California Government Code. *See* Cal. Gov't Code § 810(b).

demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a [motion to dismiss] for failure to state a cause of action." *State v. Superior Ct.*, 32 Cal. 4th 1234, 1239 (2004) (citing Cal. Gov't Code §§ 905, 911.2, 945.4); *see also Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988) (claims properly dismissed for failure to allege compliance with Government Claims Act).

Plaintiffs do not dispute that they have failed to comply with the Government Claims Act. They instead argue that they were excused from presenting their Bane Act claim because the damages they seek are "ancillary" to the declaratory and injunctive relief they seek. *See* Opp'n 7. Plaintiffs further contend that the Court should disregard their failure to comply with the Government Claims Act because "the Bane Act claim arose [during the litigation]" and therefore the County had "sufficient notice to satisfy any statutory requirements that applied." *See* Opp'n 7-8. The Court finds neither argument persuasive.

Plaintiffs' Bane Act claim is a "claim for money damages" and is therefore subject to the presentation requirement of the Government Claims Act. The Fourth Amended Complaint states that Plaintiffs seek damages "pursuant to California Civil Code Sections 52 and 52.1." 4AC ¶ 145; *see also* Opp'n 1 (stating that Plaintiffs seek a "civil penalty" for violations of the Bane Act). Plaintiffs confirmed at the hearing that they intended to pursue these damages and acknowledged that such damages could amount to hundreds of thousands of dollars. Such civil penalties constitute "money or damages" within the Bane Act. *See Lozada v. City & Cnty. of San Francisco*, 145 Cal. App. 4th 1139, 1163 (2006) ("We are not persuaded that substantial civil penalties and actual damages do not constitute 'money or damages' within the meaning of the Government Claims Act."); *see also Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 763 (2002) ("Exempting damage actions under Sections 51 and 52.1 from the claim filing requirement, even in a case in which that is the primary relief sought, . . . would conflict with the statutory scheme relating to damage claims against public entities and with relevant case law.").

The Court is not convinced by Plaintiffs' argument that the money damages they seek under the Bane Act are incidental to their request for declaratory and injunctive relief and therefore exempt from the claim presentation requirement. To be sure, courts have suggested that

11

a claim may be exempt from the presentation requirement when the monetary relief sought is incidental to the primary injunctive or other extraordinary relief. *See Lozada*, 145 Cal. App. 4th at 1164-65 (collecting cases). But Plaintiffs have identified, and the Court is aware of, no case in which a claim seeking civil penalties on the order of hundreds of thousands of dollars was held to be incidental to the requested nonmonetary relief. *See Williams v. City of Antioch*, No. C 08-02301 SBA, 2010 WL 3632199, at *5 (N.D. Cal. Sept. 2, 2010) ($4,000 fine across 1000 class members not incidental despite Plaintiffs' assertion that primary purpose of action was to obtain injunctive and declaratory relief). This is unsurprising, as allowing such claims to escape the claim presentation requirement would frustrate the Government Claims Act's purpose of enabling a public entity to engage in fiscal planning for potential liabilities. *See Gatto*, 98 Cal. App. 4th at 763.

Nor is the Court convinced by Plaintiffs' argument that it should be excused from the presentation requirement because the County was on notice of Plaintiffs' potential claim. Plaintiffs cite the *City of San Jose v. Superior Court*, 12 Cal. 3d 447 (1974), for the proposition that "courts have disregarded technical defects in the notification process if there was 'some compliance with all of the statutory requirements' and the claim discloses sufficient information to enable the public entity to adequately investigate the merits of the claim."  But Plaintiffs do not plead "some compliance with all of the statutory requirements." They plead no compliance at all. In such cases, the question of whether a defendant knew about potential claims is irrelevant. *See City of San Jose*, 12 Cal. 3d at 456-57 (predicate question is whether there has been "some compliance with all of the statutory requirements" (cleaned up)). As the California Supreme Court explained: "It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge—standing alone—constitutes neither substantial compliance nor basis for estoppel." *Id.* at 455.

Accordingly, Plaintiffs were required to comply with the Government Claims Act's presentation requirement. Their failure to do so bars their Bane Act claim. As Plaintiffs have now had multiple opportunities to address the deficiencies in their Bane Act claim, this claim is DISMISSED WITH PREJUDICE.

### D. State Law Claims (Second and Sixth Causes of Action)

The County lastly requests that the Court strike or dismiss the damages component of Plaintiffs' claims asserting violations of the California Constitution. The County argues that these claims, like the Bane Act claim, must fall because Plaintiffs failed to plead compliance with the claim presentation requirement Government Claims Act. Mot. 19, Reply 9-10. Plaintiffs counter that that their state law Constitutional Claims seek only nominal damages and are therefore presentation was not required. Opp'n 9.

The Court DENIES the County's request to dismiss or strike any of the relief Plaintiffs seek under the California Constitution. Aside from declaratory and injunctive relief, these claims seek only nominal damages.[3] 4AC ¶¶ 109, 136. Such claims are not subject to the claim presentation requirement of the Government Claims Act, as nominal damages are incidental to the declaratory and injunctive relief. *Cf. Indep. Hous. Servs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1358 (N.D. Cal. 1993) (claim presentation requirement does not apply where "potential damages are small and particularly inconsequential compared to the effect of the declarations it seeks"); *M.G.M. Const. Co. v. Alameda Cnty.*, 615 F. Supp. 149, 151 (N.D. Cal. 1985) (same).

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

- The County's motion to dismiss all claims against the County Officials is GRANTED WITHOUT LEAVE TO AMEND.
- The County's motion to strike allegations regarding the County's letters to Cass Bank is GRANTED WITHOUT LEAVE TO AMEND.

---

[3] Plaintiffs also seek costs and attorney's fees. The County does not argue that these necessitate filing a claim under the Government Claims Act. Although Plaintiffs do not expressly state the basis for their request for attorney's fees, the Court notes that statutory attorney's fees are costs and therefore not subject to claim presentation requirement. *See Lozada*, 145 Cal. App. 4th at 1160.

- The County's motion to dismiss Plaintiffs' Bane Act Claim (Eighth Cause of Action) is GRANTED WITHOUT LEAVE TO AMEND.
- The County's motion to dismiss the damages portion of Plaintiffs' state law constitutional claims (Second and Sixth Causes of Action) is DENIED.

Dated:  October 6, 2022

_____
BETH LABSON FREEMAN
United States District Judge