1  JAMES R. WILLIAMS, County Counsel (S.B. #271253)
   MELISSA R. KINIYALOCTS, Lead Deputy County Counsel (S.B. #215814)
2  ROBIN M. WALL, Deputy County Counsel (S.B. #235690)
   XAVIER M. BRANDWAJN, Deputy County Counsel (S.B. #246218)
3  OFFICE OF THE COUNTY COUNSEL
   70 West Hedding Street, East Wing, Ninth Floor
4  San José, California 95110-1770
   Telephone: (408) 299-5900
5  Facsimile: (408) 292-7240

6  Attorneys for Defendant
   COUNTY OF SANTA CLARA

7

8

9                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
10                       (San José Division)

11

12 CALVARY CHAPEL SAN JOSE, et al.,        No. 20-CV-03794 BLF

13          Plaintiffs,                    **DEFENDANT COUNTY OF SANTA
                                           CLARA'S NOTICE OF MOTION AND
14 v.                                      MOTION FOR PARTIAL SUMMARY
                                           JUDGMENT; MEMORANDUM OF
15 SANTA CLARA COUNTY,                     POINTS AND AUTHORITIES IN SUPPORT
                                           THEREOF**
16          Defendant.
                                           Date:    January 26, 2023
17                                         Time:    9:00 a.m.
                                           Crtrm:   3, 5th Floor
18                                         Judge:   The Hon. Beth Labson Freeman

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................3

        A.      The Public Health Orders..................................................................4

        B.      Calvary Violated the Public Health Orders on an Ongoing Basis..........5

        C.      Calvary's Appeal to the Office of the County Hearing Officer.............6

        D.      The Status of this Case......................................................................7

III.    ARGUMENT ....................................................................................................7

        A.      Calvary's Challenge to the Face Covering, Social Distancing, and SDP
                Requirements Are Barred as a Matter of Res Judicata, and Those
                Requirements are Constitutional........................................................7

                1.      Calvary is estopped from re-litigating these claims....................7

                        a.      Calvary's Superior Court appeal had the requisite judicial
                                character......................................................................7

                        b.      The appeal of the OCHO decision involved the same parties........8

                        c.      The appeal of the OCHO decision involved the same cause of
                                action..........................................................................8

                        d.      The Superior Court's decision is a final judgment on the merits ..11

                2.      Calvary is judicially estopped from disputing jurisdiction.......11

                3.      Calvary's claims fail, even if considered anew ......................12

                        a.      The requirements were neutral and generally applicable.............12

                        b.      The requirements pass strict scrutiny...........................14

        B.      The State Singing Restrictions Were Constitutional ............................16

        C.      Calvary Has Not Shown a Substantial Burden on Its Religious Exercise............17

        D.      The Urgency Ordinance Did Not Discriminate Against Religion.........20

        E.      The Public Health Orders Did Not Violate the Fourteenth Amendment..............21

        F.      The Fines Sought Against Calvary Are Not Excessive ......................21

i

1     1.  Res judicata precludes re-litigation of Calvary's claims of excessiveness ...............................................................................21

2

3     2.  Even on the merits, the fines are not unconstitutionally excessive...........22

4       a.  Calvary has—and always had—the ability to pay the fines ..........22

5       b.  Calvary's high degree of culpability renders the fines not excessive .........................................................................................23

6

7       c.  The fines are reasonably related to the harm ................................24

8       d.  The fines are in line with penalties in similar statutes ..................25

IV.  CONCLUSION.......................................................................................................25

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

Defendant County of Santa Clara's Notice of Motion and Motion       20-CV-03794 BLF
for Partial Summary Judgment, MPA in Support Thereof

## TABLE OF AUTHORITIES

**CASES**

*Allen v. McCurry*,
    449 U.S. 90 (1980)................................................................................................................ 8

*Aquino v. Cal. Reconveyance Co.*,
    No. 14-cv-01818-WHO, 2014 U.S. Dist. LEXIS 154757 (N.D. Cal. Oct. 30, 2014) ........... 10

*Asetek Danmark A/S v. CoolIT Sys.*,
    No. 19-cv-00410-EMC, 2022 U.S. Dist. LEXIS 3664 (N.D. Cal. Jan. 7, 2022).................... 11

*Avery v. Cty. of Santa Clara*,
    No. 11-CV-04456-LHK, 2012 U.S. Dist. LEXIS 162911 (N.D. Cal. Nov. 13, 2012). 9, 10, 22

*Balice v. U.S. Dep't of Agric.*,
    203 F.3d 684 (9th Cir. 2000) ............................................................................................... 22

*Boeken v. Philip Morris USA, Inc.*,
    48 Cal. 4th 788 (2010) ........................................................................................................... 9

*Bols v. Newsom*,
    515 F. Supp. 3d 1120 (S.D. Cal. 2021)................................................................................ 16

*Brentwood Rod & Gun Club, Inc. v. Cty. of Contra Costa*,
    No. C 06-04237 MHP, 2008 U.S. Dist. LEXIS 78909 (N.D. Cal. Oct. 7, 2008) ......... 9, 10, 22

*Brodheim v. Cry*,
    584 F.3d 1262 (9th Cir. 2009) ............................................................................................... 9

*Burcham v. City of L.A.*,
    562 F. Supp. 3d 694 (C.D. Cal. 2022) ................................................................................. 14

*C.D. Anderson & Co. v. Lemos*,
    832 F.2d 1097 (9th Cir. 1987) ............................................................................................... 7

*Calvary Chapel of Ukiah v. Newsom*,
    524 F. Supp. 3d 986 (E.D. Cal. 2021)............................................................................. 16, 17

*Canell v. Lightner*,
    143 F.3d 1210 (9th Cir. 1998) ............................................................................................. 18

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993)............................................................................................................. 12

*City & Cty. of San Francisco v. Sainez*,
    77 Cal. App. 4th 1302 (2000) ........................................................................................ 23, 25

*Crowley v. Katleman*,
    8 Cal. 4th 666 (1994) ........................................................................................................ 9

*Does v. Bd. of Regents of the Univ. of Colo.*,
    No. 21-cv-2637-RM-KMT, 2022 U.S. Dist. LEXIS 15144 (D. Colo. Jan. 27, 2022)........... 13

*Eichman v. Fotomat Corp.*,
    147 Cal. App. 3d 1170 (1983) ........................................................................................... 9

*Employment Div., Dept. of Human Resources of Ore. v. Smith*,
    494 U.S. 872 (1990).......................................................................................................... 17

*Fulton v. City of Philadelphia, Pennsylvania*,
    141 S. Ct. 1868 (2021)..................................................................................................... 17

*Gonzales v. Cal. Dep't of Corr.*,
    739 F.3d 1226 (9th Cir. 2014) ........................................................................................... 9

*Guild Wineries & Distilleries v. Whitehall Co.*,
    853 F.2d 755 (9th Cir. 1998) ............................................................................................. 8

*Gutierrez v. City of Long Beach*,
    No. CV 19-9941-DMG (Ex), 2021 U.S. Dist. LEXIS 221668 (C.D. Cal. Nov. 15, 2021) .... 24

*Harvest Rock Church, Inc. v. Newsom*,
    985 F.3d 771 (9th Cir. 2021) ....................................................................................... 15, 16

*Int'l Evangelical Church of Soldiers of the Cross of Christ v. Church of Soldiers of the Cross of Christ of State of Cal.*,
    54 F.3d 587 (9th Cir. 1995) ............................................................................................... 8

*Kay v. City of Rancho Palos Verdes*,
    504 F.3d  (9th Cir. 2007) ................................................................................................... 9

*Kremer v. Chem. Const. Corp.*,
    456 U.S. 461 (1982).......................................................................................................... 7

*Lemmon v. Pierce Cty.*,
    No. C21-5390RSL, 2021 U.S. Dist. LEXIS 156164 (W.D. Wash. Aug. 18, 2021).............. 22

*Lent v. California Coastal Com.*,
    62 Cal. App. 5th 812 (2021) ........................................................................................ 24, 25

*Malik v. Brown*,
    16 F.3d 330 (9th Cir. 1994) ............................................................................................. 17

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
    465 U.S. 75 (1984).............................................................................................................. 7

iv

Defendant County of Santa Clara's Notice of Motion and Motion
for Partial Summary Judgment, MPA in Support Thereof
    20-CV-03794 BLF

*Morris v. Kuehl*,
  No. 2:20-cv-11508-VBF-PD, 2021 U.S. Dist. LEXIS 69621 (C.D. Cal. Apr. 8, 2021) ........ 16

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)................................................................................................... 11

*Ojavan Investors, Inc. v. Cal. Coastal Comm'n*,
  54 Cal. App. 4th 373 (1997) ....................................................................................... 25

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984)..................................................................................................... 16

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*,
  37 Cal. 4th 707 (2005) ............................................................................................... 22

*People v. Braum*,
  49 Cal. App. 5th 342 (2020) ....................................................................................... 23

*Pimentel v. City of Los Angeles*,
  974 F.3d 917 (9th Cir. 2020) .............................................................................. 22, 24

*Porter v. Gore*,
  354 F. Supp. 3d 1162 (S.D. Cal. 2018)....................................................................... 16

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020)............................................................................................ 14, 15

*Rouse v. Whitmer*,
  No. 20-12308, 2022 U.S. Dist. LEXIS 118673 .......................................................... 13

*Rouser v. White*,
  944 F. Supp. 1447 (E.D. Cal. 1996)............................................................................ 18

*Runyon v. Bd. of Trustees*,
  48 Cal. 4th 760 (2010) ................................................................................................. 8

*S. Bay United Pentecostal Church v. Newsom*,
  141 S. Ct. 718 (2021)................................................................................................. 15

*San Diego Police Officers' Ass'n v. San Diego City Emples. Ret. Sys.*,
  568 F.3d 725 (9th Cir. 2009) ................................................................................... 7, 9

*South Bay United Pentecostal Church*,
  985 F.3d 1128 (9th Cir. 2021) ............................................................................. 16, 17

*Stormans, Inc. v. Wiesman*,
  794 F.3d 1064 (9th Cir. 2015) ................................................................................... 14

*Takahashi v. Bd. of Trustees*,
    783 F.2d 848 (9th Cir. 1986) ............................................................. 8, 9

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021)..................................................................... 12

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*,
    450 U.S. 707 (1981).......................................................................... 20

*United States v. Bajakajian*,
    524 U.S. 321 (1998).......................................................................... 22

*United States v. Mackby*,
    339 F.3d 1013 (9th Cir. 2003) ......................................................... 22

*Vasudeva v. United States*,
    214 F.3d 1155 (9th Cir. 2000) ......................................................... 22

*White v. City of Pasadena*,
    671 F.3d 918 (9th Cir. 2012) ............................................................. 8

STATUTES

United States Code

    28 U.S. Code Section 1738 ................................................................. 7

    42 U.S. Code Section 1983 ................................................................. 8

United States Constitution

    Eighth Amendment ........................................................................... 21

California Constitution

    Article I, Section 7 ........................................................................... 21

RULES

Federal Rules of Civil Procedure

    Rule 56 .............................................................................................. 1

Federal Rules of Evidence

    Rule 402 ........................................................................................... 20
    Rule 602 ..................................................................................... 19, 20
    Rule 802 ........................................................................................... 20

1

## NOTICE OF MOTION AND MOTION; RELIEF SOUGHT

2

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

3   PLEASE TAKE NOTICE that on **January 26, 2023** at **9:00 a.m.**, or as soon thereafter as the

4   matter may be heard in the U.S. District Courthouse, 280 South 1st Street, San José, California, the

5   Honorable Beth Labson Freeman presiding, Defendant County of Santa Clara (the "County") will

6   and hereby does move this Court for an order, pursuant to Federal Rule of Civil Procedure Rule 56,

7   granting partial summary judgment in the County's favor on all remaining causes of action by

8   plaintiffs Calvary Chapel San Jose and its Senior Pastor, Michael McClure (collectively, "Calvary").

9   The County seeks partial summary judgment on all remaining causes of action to the extent

10  Calvary challenges: (i) the constitutionality of the State's singing ban and the County's face

11  covering, social distancing, and Social Distancing Protocol public health order requirements; and (ii)

12  the proportionality of the fines sought for Calvary's violations of public health order requirements.

13  The County is not moving on Calvary's claims to the extent they challenge the capacity mandates

14  because the County—consistent with its stipulated court order in *Gateway City Church v. Newsom*,

15  Case No. 5:20-CV-8241-EJD—is not seeking and will not seek to enforce fines for any violations of

16  those capacity mandates.  This Motion is based on: this Notice of Motion, the Memorandum of

17  Points and Authorities herein; the County's Request for Judicial Notice filed on November 18, 2022

18  (ECF 238-1); the Declarations of Stephanie Mackey (ECF 238-2), Melissa Gonzalez (ECF 238-3),

19  Dr. Sara Cody (ECF 238-4), Anjani Sircar (ECF 238-5), Xavier Brandwajn (ECF 239), and Jean

20  Nguyen (ECF 240), all filed on November 18, 2022; the concurrently filed declaration of Xavier M.

21  Brandwajn; the papers on file in this action; and on such oral argument as the Court may permit.

22

## MEMORANDUM OF POINTS AND AUTHORITIES

23

### I.     INTRODUCTION

24  Calvary asks the Court to second-guess today—at a time when effective vaccines, easily

25  accessible testing, and effective treatments are widely available—the life-saving public health

26  decisions that were made at the beginning of a once-in-a-century global pandemic.  In those darker

27  days, County health officials issued a series of public health orders—grounded in the best available,

28  consensus scientific evidence—to control the spread of COVID-19.  And many of the measures in

1

the County public health orders have stood the test of time.  Indeed, the County's death rate from COVID-19 is half the national rate; and the County has the highest vaccination rate of any county of significant population in the United States.[1]  Accomplishing these laudable public health outcomes was a community-wide effort.  Indeed, while most entities in the county made tough sacrifices to keep the community safe by implementing these common-sense health measures, a very small few—including Calvary—notably did not; and without question, no entity was more notorious or flagrant in its chronic, nearly daily and significant violations of the County's public health orders.  In that way, Calvary stands out.  It does not stand out, as it alleges, because it is a church, but rather because for months Calvary refused to comply despite repeated warnings, fines, and knowledge of COVID-19 infections—and death—in its own congregation.  The alleged constitutional import that Calvary now attaches to its admitted violations finds no justification in the law, the record, or common sense.

Crucially, there is already a final state court judgment that resolved—in the County's favor—Calvary's prior challenge to the constitutionality of both (1) the County's requirements regarding face coverings, social distancing, and the submission of a Social Distancing Protocol; and (2) the proportionality of the fines imposed for Calvary's violations.  In March 2021, Calvary petitioned the Superior Court for the County of Santa Clara to review the October 2020 order by the Office of the County Hearing Officer (OCHO), which, after hearing evidence and arguments, ruled that Calvary was required to pay the several hundred thousand dollars in fines that had accrued by that time. Calvary petitioned the Superior Court to consider the constitutionality of the public health orders and the proportionality of the fines.  The Superior Court did so and, in April 2021, affirmed the OCHO decision, after considering and rejecting Calvary's constitutional arguments, *with the benefit of the Supreme Court opinions on which Calvary now relies*.  Calvary noticed—*but then abandoned*—an appeal of the Superior Court's order to the California Court of Appeal.  The Superior Court's ruling is therefore a final judgment with preclusive effect.  As a result, Calvary is foreclosed from seeking, in this case, to vindicate the same primary right that was adjudicated to finality in state court.  And

---

[1] https://data.cdc.gov/d/kn79-hsxy; https://covid.cdc.gov/covid-data-tracker/#datatracker-home.

1   Calvary is judicially estopped from disputing the Superior Court's jurisdiction to hear the

2   constitutional contentions it already and successfully convinced that court to consider.

3       Re-litigation here will not change the result.  The County's public health orders were neutral

4   and generally applicable and supported by the legitimate—indeed, compelling—interest in slowing

5   the spread of a deadly virus during a pandemic, and thus withstand constitutional scrutiny.

6       Further, Calvary's challenges to the two requirements not addressed by the Superior Court—

7   the County's capacity mandates and the State's singing ban—do not fare better.  Following its

8   commitments made in other litigation, the County is not seeking to collect fines for capacity mandate

9   violations.  The State singing ban—which Calvary attacks only after the dismissal of the State

10   defendants—also fails, as the Eastern District of California held, just last year, when it rejected an

11   identical challenge brought by overlapping counsel on behalf of another Calvary Chapel church.

12       Calvary's assertions of a substantial burden on its religious beliefs similarly fail.  There is no

13   evidence of such a burden, as its congregation *tripled* in size while the public health orders were in

14   effect.  Calvary did not require either its staff or congregants to follow the beliefs it now professes—

15   in fact, Calvary facilitated conduct fundamentally inconsistent with those professed beliefs.  Further,

16   Calvary's mission was not financially burdened by fines that Calvary never had any intention of

17   paying despite ample resources.  Indeed, Calvary was flush with cash from the increased tithes and

18   offerings it collected from the influx of new attendees who shared Calvary's political, legal, and

19   personal comfort objections to the COVID-19 related public health orders.  Calvary chose to use that

20   money to pay off millions of dollars in real estate and car loans, leaving millions more available.

21       Therefore, the Court should grant partial summary judgment that: (1) Calvary's challenges to

22   the public health orders regarding face coverings, social distancing, and the submission of a Social

23   Distancing Protocol are barred as a matter of res judicata; (2) if considered here, those restrictions

24   and the State's singing restrictions were nevertheless constitutional; and (3) if this Court were to

25   reach the issue, the fines imposed for Calvary's violations are not excessive.

26                          **II.    BACKGROUND**

27       It is well known globally that COVID-19 is a highly contagious disease.  ECF 238-4, ¶12.

28   The disease can cause severe illness and death and it can cause lingering long-term chronic health

1    conditions.  *Id.*, ¶11.  By June 2021, over 100,000 Santa Clara County residents had contracted

2    COVID-19, and more than 1,700 had died.  *Id.*, ¶22.  At times, the disease spread in Santa Clara

3    County at an alarming rate: for example, in Fall 2020, the average number of new cases per week

4    and the number of people hospitalized with COVID-19 tripled over the span of a month.  *Id.*, ¶23.

5              **A.      The Public Health Orders**

6              The County Health Officer, Dr. Sara Cody, issued a series of Public Health Orders[2] to curtail

7    COVID-19 and protect the public health.  *Id.*, ¶¶30-44.

8              On July 2, 2020, Dr. Cody issued a Risk Reduction Order applicable to all individuals and

9    businesses in the county, including non-profit organizations and religious institutions.  ECF 212-10.

10   This Order required, *inter alia*, that all individuals wear face coverings when entering business

11   facilities or using public transportation.  *Id.* at §10.  The Order also required businesses to submit a

12   Social Distancing Protocol (SDP) attesting to steps taken to protect the health and safety of those

13   working in or entering their premises.  *Id.* at §12(c).  The SDP required each business to certify that

14   it was taking protective measures—including training its employees on preventing COVID-19,

15   appropriately reporting COVID-19 cases to the County Public Health Department, and agreeing to

16   follow any applicable Public Health Orders, guidance, or directives.  *Id.*; ECF 238-4, ¶37.

17             On August 11, 2020, the County adopted Urgency Ordinance No. NS-9.921 (the "Urgency

18   Ordinance") to civilly enforce the Public Health Orders.  ECF 212-28.  The Urgency Ordinance set a

19   range of fines for violations of the public health orders, including for "commercial activities."  *Id.* at

20   §6(b).  "Commercial activities" encompassed activities conducted by any business, including any

21   "non-profit . . . entity, . . . and regardless of the nature of the service, the function it performs, or its

22   corporate or entity structure."  *Id.* at §§2(b), 6(b)(2).

23             On October 5, 2020, Dr. Cody issued a Revised Risk Reduction Order.  ECF 212-5; ECF

24   _____

25   [2] "Public Health Orders" refers in this Motion to the July 2, 2020 Risk Reduction Order, October 5,

26   2020 Revised Risk Reduction Order, May 18, 2021 Safety Measures Order, June 21, 2021 Phase Out

27   Order, May 18, 2021 Mandatory Directive on Face Coverings, and any applicable directives and

28   guidance referenced within, or issued in connection with, the foregoing.

238-4, ¶39.  This Order required compliance with the California Department of Public Health's (CDPH) mandatory guidance on face coverings and with any rules in directives.  ECF 212-5 at §10; ECF 238-1, Exs. A-C.  The October 5, 2020 Order still required all businesses to submit an SDP safety plan.  ECF 212-5 at §12(c); ECF 238-1, Ex. D at 46-55, Ex. E.

On May 18, 2021, given the success of the County's public vaccination campaign and falling COVID-19 case numbers, Dr. Cody issued the Safety Measures Order, under which businesses were no longer required to submit SDPs.  ECF 238-1, Ex. F.  But individuals and businesses were still required to follow the County's May 18, 2021 Mandatory Directive on Face Coverings, which required compliance with the May 3, 2021 CDPH mandatory guidance on face coverings.  *Id.* at §8; ECF 238-1, Exs. G, H; ECF 238-4, ¶41.  By June 21, 2021, in view of further improved conditions, Dr. Cody rescinded provisions of the May 18, 2021 Order relevant here.  ECF 238-1, Ex. I.

### B.  Calvary Violated the Public Health Orders on an Ongoing Basis

To Calvary, the Public Health Orders were merely "recommendations" (ECF 239-1, Ex. A at 141:5-142:5)—not "law[s] that had to be particularly kept" (*id.*, Ex. B at 35:10- 15).  *See also id.*, Ex. C at 64:20-65:23, Ex. D at 231:23-233:5.  Calvary's conduct reflected that notion:

- Beginning in May 2020, Calvary hosted regular large indoor events at which its personnel and attendees were not required to wear face coverings.  *See id.*, Ex. I at 18:14-18, 19:10-19, 41:25-42:1; *id.*, Ex. A at 102:18-21, 103:7-104:17, Ex. B at 33:7-11; ECF 238-3, ¶¶11-46; ECF 238-5, ¶¶10-86; ECF 240, ¶¶9-22; ECF 238-2, ¶¶4-24, 26-70 & Exs. 27-41, 43-132.

- Calvary refused to submit an SDP.  ECF 238-3, ¶¶12, 47; ECF 238-5, ¶¶20-22, 24-27, 31, 34-36, 39, 40, 45, 46, 81, 84, 86; ECF 240, ¶¶9, 11, 12, 19; ECF 239-1, Ex. A at 258:5-259:1; *id.*, Ex. E at 9:1-3, 83:2-5, 84:11-23, 85:12-23, 87:2-18, 91:7-19.

- Most Calvary staff refused to wear face coverings themselves or to require attendees to wear them.  ECF 239-1, Ex. A at 38:16-39:20, 86:15-87:6, 114:9-13, 119:21-121:7,141:24-142:5, 147:17-22, 258:5-259:1, Ex. B at 33:7-35:15, 37:5-12, Ex. F at 93:3-10, Ex. G at 79:9-25.

After receiving complaints from the public about Calvary, the County initiated enforcement of the Public Health Orders.  Between August 2020 and May 2021, County enforcement officers inspected Calvary, verified violations, and issued notices of violation (NOVs) for, *inter alia*, failing

5

1    to require face coverings or social distancing of staff and attendees, permitting singing without face

2    coverings, and refusing to submit an SDP.  ECF 238-3, ¶¶12, 13, 15, 16, 21, 24, 29, 36, 40-44; ECF

3    238-5, ¶¶11, 13-18, 27-29, 40-42, 44-45, 49-50, 60-62, 64-83; ECF 240, ¶¶17, 20-22.

4          The NOVs, however, did not secure Calvary's compliance; instead, Calvary's violations

5    remained open and notorious.  ECF 238-2, ¶¶4-79, Exs. 1-41, 43-149; ECF 238-3, ¶¶11-46; ECF

6    238-5, ¶¶10-86; ECF 240, ¶¶9-22.  Calvary refused to comply despite knowing that (1) its attendees

7    had contracted COVID-19 (ECF 239-1, Ex. G at 91:2-19, Ex. B at 98:23-99:17, 102:8-24, Ex. C at

8    36:21-42:18, 49:15-23, 51:4-8, 52:23-53:10, Ex. H at 41:14-19, 42:20-43:24) and at least one died of

9    it (*id.*, Ex. A at 221:9-225:1, Ex. C at 53:4-10); and (2) a COVID-19 outbreak in Winter 2020 at the

10   school run by Calvary Chapel and on its campus had spread so "aggressively" among students and

11   teachers, many of whose families attended church at Calvary Chapel, that it had to close (*id.*, Ex. F

12   at 17:1-23, 19:25-20:2, Ex. G at 19:20-22, 20:8-13, 39:16-40:4, 43:3-45:4, 46:24-47:8, 53:16-54:10,

13   54:23-55:9, 58:24-62:5, 67:8-21, 71:10-72:4, 93:8-21, Ex. A at 68:24-69:5, 201:5-205:17, 209:4-8,

14   Ex. H at 57:7-16, Ex. B at 26:18-24, 29:1-7, 54:6-58:20, 69:6-70:16, 85:1-86:6, 87:6-89:7).

15         In total, Calvary was assessed $4,303,925 in fines and late fees for its ten months of

16   documented ongoing violations.  ECF 239, ¶28.  In an exercise of prosecutorial discretion, in the

17   related state court action, the People and County seek to collect only $2.87 million.  E CF 238-1, Ex.

18   J.  Specifically, the People and County do not seek to recover fines against Calvary for gathering

19   indoors in violation of capacity restrictions.  *Id.*, Ex. K at 20-21; ECF 233 at 17:15-20.

20         **C.    Calvary's Appeal to the Office of the County Hearing Officer**

21         Calvary elected to challenge the August 23, 2020 NOV and eight other NOVs issued through

22   October 18, 2020 to the OCHO.  ECF 238-1, Ex. L.  At an administrative hearing, the OCHO

23   sustained the violations and fines in the amount owed as of October 21, 2020—$327,750.  *Id.*

24   Calvary appealed the decision to the Superior Court, explicitly asserting *inter alia,* First Amendment

25   and other constitutional defenses.  *Id.*, Ex. M.  On April 8, 2021, the Superior Court upheld the

26   OCHO decision in its entirety, rejecting Calvary's arguments.  *Id.*, Ex. N at 6-8.

27         On May 7, 2021, Calvary noticed its appeal of the Superior Court's ruling to the Sixth

28   District Court of Appeal (*id.*, Ex. O) but, on June 24, 2021, voluntarily abandoned that appeal (*id.*,

6

Defendant County of Santa Clara's Notice of Motion and Motion                    20-CV-03794 BLF
for Partial Summary Judgment, MPA in Support Thereof

1    Ex. P).  The Superior Court's ruling is therefore final and binding.

2          **D.     The Status of this Case**

3          After several challenges to the pleadings, the County is now the only remaining defendant.

4    ECF 222.  And on October 13, 2022, the Court granted a stipulation (pursuant to settlement)

5    dismissing plaintiffs Southridge Baptist Church of San José California (dba Southridge Church) and

6    Micaiah Irmler from this case.  ECF 227.  Trial is scheduled to begin on May 22, 2023.  ECF 72.

7                            **III.     ARGUMENT**

8          **A.     Calvary's Challenge to the Face Covering, Social Distancing, and SDP
                    Requirements Are Barred as a Matter of Res Judicata, and Those Requirements**

9          **are Constitutional**

10         Calvary's challenge to the requirements to wear face coverings, socially distance, and submit

11   an SDP is barred as a matter of res judicata and, in any event, those requirements do not violate the

12   Free Exercise Clause and the Equal Protection Clause.  *Cf.* ECF 167 at ¶¶95-104, 120-125.

13                **1.     Calvary is estopped from re-litigating these claims**

14         As an initial matter, res judicata precludes Calvary from challenging again, in this Court, the

15   constitutionality of the requirements to wear face coverings, socially distance, and submit an SDP.

16         Res judicata, or claim preclusion, "bars all grounds for recovery which could have been

17   asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of

18   action."  *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987).  State rules of

19   preclusion apply in determining the preclusive effect of a state administrative decision or a state

20   court judgment.  *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982).  Under California law,

21   claim preclusion applies when: (1) the party to be precluded was a party or in privity with a party to

22   the previous adjudication; (2) the second lawsuit involves the same "cause of action" as the first; and

23   (3) there was a final judgment on the merits in the first lawsuit.  *San Diego Police Officers' Ass'n v.*

24   *San Diego City Emples. Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).  Each element is met here.

25                a.     *Calvary's Superior Court appeal had the requisite judicial character*

26         Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give

27   to a state-court judgment the same preclusive effect as would be given that judgment under the law

28   of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465

                                          7

1    U.S. 75, 81 (1984); *accord Int'l Evangelical Church of Soldiers of the Cross of Christ v. Church of*

2    *Soldiers of the Cross of Christ of State of Cal.*, 54 F.3d 587, 590 (9th Cir. 1995).  Federal civil rights

3    actions under 42 U.S.C. § 1983 are also subject to preclusion.  *Allen v. McCurry*, 449 U.S. 90, 97-98

4    (1980); *Takahashi v. Bd. of Trustees*, 783 F.2d 848, 850-51 (9th Cir. 1986) (citation omitted).  These

5    same principles apply even if the dispute began in an administrative setting.  "Under California law,

6    a prior administrative proceeding, if upheld on review (or not reviewed at all), will be binding in

7    later civil actions to the same extent as a state court decision if 'the administrative proceeding

8    possessed the requisite judicial character.'"  *White v. City of Pasadena*, 671 F.3d 918, 927 (9th Cir.

9    2012) (quoting *Runyon v. Bd. of Trustees*, 48 Cal. 4th 760, 773 (2010)).  An administrative agency

10   has the requisite judicial character when it "acts in a judicial capacity and resolves disputed issues of

11   fact properly before it which the parties have had an adequate opportunity to litigate."  *Guild*

12   *Wineries & Distilleries v. Whitehall Co.,* 853 F.2d 755, 759 (9th Cir. 1998) (quotation omitted).

13           Here, Calvary's appeal of the OCHO decision to the Superior Court had the requisite judicial

14   character to warrant preclusive effect.  At the underlying OCHO administrative hearing—Calvary,

15   represented by the same firm as here, made opening statements and arguments, submitted evidence,

16   and examined witnesses under oath.  *See* ECF 239-1, Ex. I; ECF 238-1, Ex. N.  A court reporter

17   transcribed the hearing, and the hearing officer issued a written decision on disputed issues of fact

18   that the parties had an opportunity to litigate.  *Id.*  And the Superior Court—which considered the

19   OCHO record and (as discussed below) Calvary's constitutional challenges to the Public Health

20   Orders and resulting fines—obviously had the requisite judicial character.  ECF 238-1, Exs. M, N.

21                         b.     *The appeal of the OCHO decision involved the same parties*

22           Given the recent dismissal of the Southridge plaintiffs (ECF 227), this case now involves the

23   same parties as in the OCHO hearing and Calvary's subsequent appeals to the Superior Court and

24   Court of Appeal.  Although McClure was not a petitioner in those proceedings but is a plaintiff here,

25   he is effectively part of Calvary, or at least in privity therewith, because he is Calvary's Senior

26   Pastor and Rule 30(b)(6) designee.  *See* ECF 239-1, Ex. D at 10:5-7, 19:17-19, 33:10-13.

27                         c.     *The appeal of the OCHO decision involved the same cause of action*

28           In California, a final state court judgment "precludes further proceedings if they are based on

8

1   the same cause of action." *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (quotation

2   omitted).  A "cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding

3   primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in

4   a breach of such primary right and duty." *Id.* at 1268 (citation omitted).  "[A] primary right . . . is

5   indivisible: the violation of a single primary right gives rise to but a single cause of action."

6   *Crowley v. Katleman*, 8 Cal. 4th 666, 681 (1994) (quotation omitted).  "[U]nder the primary rights

7   theory, the determinative factor is the harm suffered." *Gonzales v. Cal. Dep't of Corr.*, 739 F.3d

8   1226, 1233 (9th Cir. 2014) (quoting *Boeken v. Philip Morris USA, Inc.*, 48 Cal. 4th 788, 798 (2010)).

9        "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant

10  then the same primary right is at stake even if in the second suit the plaintiff pleads different theories

11  of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *San Diego*

12  *Police Officers' Ass'n*, 568 F.3d at 734 (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170,

13  1174 (1983)).  Therefore, so long as the same primary right is at issue, res judicata "prevents

14  litigation of all grounds for, or defenses to, recovery that were previously available to the parties,

15  regardless of whether they were asserted or determined in the prior proceeding." *Kay v. City of*

16  *Rancho Palos Verdes*, 504 F.3d 809 (9th Cir. 2007); *see also Takahashi*, 783 F.2d at 849-52.

17       In this case, Calvary seeks to vindicate the same primary right it did in state court—freedom

18  from governmental interference in the exercise of religion.  Both the state proceedings and this case

19  arise from the same or similar public health requirements, allege the same injury (NOVs and fines),

20  and address Calvary's constitutional objections to the Public Health Orders.  That Calvary

21  challenges, in this Court, additional NOVs and fines for its ongoing violations of the same or similar

22  public health requirements does not reflect the assertion of different primary rights.  *See Brentwood*

23  *Rod & Gun Club, Inc. v. Cty. of Contra Costa*, No. C 06-04237 MHP, 2008 U.S. Dist. LEXIS

24  78909, **6-18 (N.D. Cal. Oct. 7, 2008) (granting summary judgment to county on constitutional

25  claims because, *inter alia*, "Plaintiff could undoubtedly characterize itself as having suffered three or

26  four or a dozen separate injuries for the various costs incurred in the permitting process" but "[t]his

27  does not mean that three, four, or a dozen primary rights would be at issue").

28       Additionally, in *Avery v. Cty. of Santa Clara*, No. 11-CV-04456-LHK, 2012 U.S. Dist.

9

1    LEXIS 162911 (N.D. Cal. Nov. 13, 2012), this District granted, on res judicata grounds, summary

2    judgment to the County on plaintiffs' Eighth Amendment and other constitutional challenges to

3    NOVs and related administrative fines imposed for violations of property-related provisions of the

4    Ordinance Code because plaintiffs had unsuccessfully raised those challenges at a County

5    administrative hearing and in an appeal to the Superior Court and, therefore, were merely litigating

6    the same primary right in federal court. *Id.* at **19-53.  The court also rejected plaintiffs' argument

7    that the superior court lacked jurisdiction, ruling that even a potentially voidable superior court order

8    was entitled to preclusive effect: "It would provide a perverse incentive to allow Plaintiffs to

9    relitigate all their claims regarding the constitutionality of the fines now, simply because the fines

10   have accrued to a significant amount as a result of Plaintiffs' failure to take the steps necessary to

11   prevent the fines from accruing." *Id.* at *52; *see also* **24-41.

12        This reasoning applies here.  Per Calvary's petition, the Superior Court adjudicated the

13   constitutionality of the face covering, social distancing, and SDP requirements.  ECF 238-1, Exs. M,

14   N at 4 ("Petitioner contends that its First Amendment right to free exercise of religion is infringed by

15   *the totality of the public health orders*") (emphasis added), 6 ("no court has relieved Petitioner of its

16   obligation to comply with the requirements of face coverings and physical distancing"), 7 ("The

17   court rejects Petitioner's claim that the requirement of a Social Distancing Protocol burdens

18   Petitioner's free religious exercise."), 7-8 ("Petitioner's admissions in the administrative hearing and

19   the overwhelming weight of the undisputed evidence . . . establish indisputably that Petitioner had on

20   that occasion as well been in violation of other public health orders.  Although these other violations

21   were not specifically alleged in the notice of violation, this oversight is harmless on this record.").

22   As in *Brentwood* and *Avery*, the fact that Calvary's fines exposure is much larger now than it was at

23   the time of the Superior Court decision—which is the product of Calvary's own continued

24   defiance—does not save Calvary from the preclusive effect of its prior, unsuccessful challenge to the

25   constitutionality of the County's face covering, social distancing, and SDP requirements.  That

26   Calvary in this case seeks injunctive relief is similarly of no moment for res judicata purposes.  *See,*

27   *e.g.*, *Aquino v. Cal. Reconveyance Co*., No. 14-cv-01818-WHO, 2014 U.S. Dist. LEXIS 154757 *3

28   (N.D. Cal. Oct. 30, 2014) (a party "cannot avoid the bar of res judicata merely by asserting new legal

1  theories or by seeking a different remedy for the same misconduct she previously alleged").

2                  d.      *The Superior Court's decision is a final judgment on the merits*

3          The Superior Court's April 8, 2021 decision is a final judgment.  The OCHO sustained the

4  violations of the Public Health Orders, the County's fine structure for violations, and the fines

5  accrued by October 21, 2020.  ECF 238-1, Ex. L.  The Superior Court affirmed—after considering

6  and rejecting Calvary's constitutional arguments in its petition for review.  *Id.*, Exs. M, N.  Calvary

7  noticed *but then abandoned* a later appeal to the Court of Appeal.  *Id.*, Exs. O, P.  In such an appeal,

8  Calvary could have raised its evidentiary or legal objections to the Superior Court's ruling.  But

9  because Calvary abandoned that appeal, the Superior Court's ruling is final and binding judgment.

10  Nor did Calvary take other steps in state court, like filing a separate writ; instead, it returned to this

11  earlier-filed federal case, raising the same suite of constitutional arguments it argued before the

12  Superior Court.  *Compare* ECF 1 *with* ECF 238-1, Exs. M, N.

13          Thus, res judicata precludes Calvary from relitigating any constitutional or other ground that

14  it raised *or could have raised* in the final Superior Court judgment.

15          **2.**        **Calvary is judicially estopped from disputing jurisdiction**

16          Calvary now asserts that the Superior Court's judgment is not entitled to preclusive effect

17  because that court lacked the jurisdiction to consider Calvary's constitutional arguments.  ECF 252

18  at 3.  But Calvary is judicially estopped from taking that newfound position.  The elements of

19  judicial estoppel are: "(1) a party took a 'clearly inconsistent' position with the one now expressed,

20  (2) the earlier position was accepted by the court to which it was presented, and (3) the party would

21  derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

22  *Asetek Danmark A/S v. CoolIT Sys.*, No. 19-cv-00410-EMC, 2022 U.S. Dist. LEXIS 3664, *21

23  (N.D. Cal. Jan. 7, 2022) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).  Each

24  element is met here:

25          (1)    Contrary to its newfound position that the Superior Court lacked jurisdiction, Calvary

26  previously argued to that court that it "has the right to challenge the constitutionality of the health

27  orders" (ECF 238-1, Ex. M at 6) and then briefed its constitutional arguments there on the record

28  developed in the OCHO hearing (*id.* at 6-11).  Calvary *chose* to do so, even though it now apparently

11

1    wishes it had marshaled additional evidence at the time. *See, e.g.*, ECF 252 at 2-4.

2        (2)    The Superior Court *accepted* Calvary's position and disagreed with the County over

3    "the proposition that the subject of an administrative citation may not raise the constitutionality of

4    the operative ordinance in an appeal to the superior court of an administrative enforcement action,

5    and may only do so by initiating a separate proceeding," and ruled instead that it was required to

6    hear and decided Calvary's constitutional arguments. *Id.*, Ex. N at 6.

7        (3)    If not estopped, Calvary would derive an unfair advantage, unavailable to all other

8    litigants, because it would be allowed—after its unsuccessful dry run at challenging the

9    constitutionality of the Public Health Orders in the Superior Court—to effectively forum shop.

10                **3.        Calvary's claims fail, even if considered anew**

11        Even if not barred or estopped, Calvary's challenges to the face covering, social distancing,

12    and SDP requirements fail on the additional basis that those requirements were constitutional.

13                a.        *The requirements were neutral and generally applicable*

14        Under the Free Exercise Clause, a law that is neutral and of general applicability need only

15    be supported by a rational basis "even if the law has the incidental effect of burdening a religious

16    practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

17    Strict scrutiny applies only where a law treats religious exercise less favorably than "comparable

18    secular activit[ies]." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).  "Comparability is

19    concerned with the risks various activities pose, not the reasons why people gather." *Id.*

20        ***The face covering and social distancing requirements.***  These requirements were neutral,

21    generally applicable, and amply supported by the legitimate—and, indeed, compelling—

22    governmental interest in controlling the spread of COVID-19 because they applied to "*all*

23    individuals, businesses, and other entities in the County." ECF 212-10 at §2; ECF 212-5 at §2; RJN,

24    Ex. F at §2 (emphasis added).  The Risk Reduction Orders—upon which the fines are based—also

25    required that all individuals wear face coverings in indoor public spaces, subject to limited context-

26    specific exceptions for the very young, those with medical conditions or disabilities, or while

27    actively eating and drinking if socially distanced.  ECF 212-5 at §10; RJN, Ex. F at §8; Exs. A-C.

28        Calvary nevertheless asserts that the face covering and social distancing requirements were

                                               12

1    not neutral or generally applicable because the measures exempted government entities from

2    wearing masks "to the extent that such requirements would impede or interfere with an essential

3    government function."  ECF 208 at 15; *see also* ECF 167 at ¶64.  But the essential government

4    function exception did not apply to private actors, could not have exempted Calvary from any public

5    health order requirement, and thus is irrelevant.  ECF 212-10 at 3.  And—other than response

6    personnel, who were exempted from travel quarantine rules to fight California wildfires (ECF 239,

7    Ex. J at 270:11-272:6), which has no bearing here—there is no evidence of exemption from the

8    public health requirements at issue for comparable activities by a governmental entity.

9         Calvary also complains that, unlike churches, youth programs, construction workers,

10    sporting events, and personal care services (e.g., hair salons and cosmetology services) were

11    exempted from face covering and social distancing requirements.  *See, e.g.*, ECF 167 at ¶¶68-72.

12    But these other activities were subject to *additional*, sometimes more stringent, restrictions that did

13    not apply to churches—reflecting that they were *not* comparable from a public health perspective.

14    *See, e.g.*, ECF 211-2—211-35, ECF 212—212-3.  For example, the County's personal care services

15    directives allowed patrons to remove face coverings only for the minimum time and degree

16    necessary to receive treatment to their face, but required personal protective equipment for workers,

17    physical barriers where feasible, and social distancing in certain situations.  ECF 211-5, 211-8.

18         Here, there is no evidence that the secular activities Calvary identifies are comparable—in

19    risk of spread—to large, indoor, close contact, maskless church services.  *See, e.g.*, *Does v. Bd. of*

20    *Regents of the Univ. of Colo.*, No. 21-cv-2637-RM-KMT, 2022 U.S. Dist. LEXIS 15144, **8-16 (D.

21    Colo. Jan. 27, 2022) (students were not likely to succeed on claim that university's refusal to grant

22    them religious exemptions violated free exercise because, *inter alia*, offering employees' ability to

23    request a religious accommodation could not amount to treating comparable secular activity more

24    favorably, given that "Plaintiffs have not shown that employees and students are comparable in this

25    context" or that the result was a mechanism for individualized exceptions); *Rouse v. Whitmer*, No.

26    20-12308, 2022 U.S. Dist. LEXIS 118673, *37 n. 10 (E.D. Mich. June 13, 2022) (in Equal

27    Protection context, finding that "Plaintiffs fail to satisfy the threshold showing that the 'religious

28    activities' in question are similarly situated . . . in all relevant respects" to be valid comparators).

13

1   The evidence shows the opposite.  *See* ECF 238-4, ¶¶45-52; ECF 239-2, Ex. Y at 11-16.

2     ***The SDP requirement.***  The SDP requirement was similarly constitutional because it was

3   neutral and generally applicable to "[a]ll businesses" and supported by the legitimate interest of

4   curbing the spread of COVID-19.  ECF 212-10 at §12(c), ECF 212-5 at §12(c); *see also* ECF 238-1,

5   Ex. D at 46-55.  Calvary's arguments to the contrary—*i.e.*, that the requirement to submit an SDP

6   was an unconstitutional condition because it forced agreement to the capacity restrictions that the

7   Supreme Court ultimately ruled unconstitutional (*e.g.*, ECF 208 at 16)—fail.  The Superior Court

8   rejected Calvary's contentions despite the Supreme Court's opinions on indoor gatherings.  ECF

9   238-1, Ex. M at 9; Ex. N at 7 (Calvary "has not, on this record, met its burden of establishing the

10   impossibility of submitting a Social Distancing Protocol without acquiescing to the indoor gathering

11   ban or an arbitrary capacity limitation.").  As shown above, that ruling has preclusive effect, because

12   Calvary abandoned its state court appeal, including any argument about any defect in that ruling.

13     Nor can Calvary establish that the requirement to submit an SDP was an unconstitutional

14   condition.  Courts have rejected similar challenges to COVID-related laws.  *See, e.g.*, *Burcham v.*

15   *City of L.A.*, 562 F. Supp. 3d 694, 707 n.4 (C.D. Cal. 2022) (city requirement for police officers to

16   vaccinate or test for COVID-19 as an employment condition was not unconstitutional).  Further, the

17   County did not withhold any identified benefit from Calvary for failing to submit a complete SDP.

18   And the SDP allowed Calvary "to explain why any measure that is not implemented is inapplicable

19   to [Calvary]" (ECF 210-20 at 1), which plainly does not show forced consent to conditions.

20     Because the face covering, social distancing, and SDP requirements are neutral and generally

21   applicable, they pass rational basis review.  *See, e.g.*, *Stormans, Inc. v. Wiesman*, 794 F.3d 1064,

22   1083-1085 (9th Cir. 2015) (rejecting free exercise challenge because plaintiffs did not meet their

23   "burden to negat[e] every conceivable basis which might support [the rules]") (quotation omitted).

24         b. *The requirements pass strict scrutiny*

25     Even if strict scrutiny applied, these requirements still pass muster because they were

26   narrowly tailored to a compelling government interest.  The interest behind these requirements was

27   to combat the spread of COVID-19, which is "unquestionably a compelling interest."  *Roman Cath.*

28   *Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020).  And "social distancing requirements [and]

1   masks" were "narrower options" to a ban on indoor gatherings and "routine in religious services

2   across the country [at the time]."  *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 718-19

3   (2021) (Gorsuch, J., conc.); *see also Roman Catholic Diocese*, 141 S. Ct. at 69 (Gorsuch, J., conc.)

4   (capacity restrictions were unconstitutional where they failed to account for other precautions,

5   including "wearing masks").  "The obvious conclusion should be that, because the [government] has

6   found measures like [face masks, physical distancing, . . . and penalties . . . for failure to comply]

7   sufficient to safeguard indoor activities as varied as running a daycare center, shopping in a mall,

8   working in a warehouse or factory, . . . practicing a professional sport, attending a college class, or

9   filming a movie, then surely some combination of similar measures might work for indoor religious

10  worship as well."  *Harvest Rock Church, Inc. v. Newsom*, 985 F.3d 771, 773 (9th Cir. 2021).

11          Here, the science shows that activities occurring without the benefit of face coverings or

12  social distancing (or an SDP requiring a report of compliance with these rules) presented a greater

13  *risk* of harm than those circumstances where such measures were followed.  *See, e.g.*, ECF 239-2,

14  Ex. K at 208:2-209:1, Ex. Y at 1-16, 247:20-248:2; ECF 238-4, ¶¶45-52.  Indeed, County Deputy

15  Health Officer Dr. Sarah Rudman testified that although tracing the source of positive cases can be

16  challenging, there is unmistakable evidence of cases at Calvary Christian Academy—which made no

17  effort to ensure face coverings among faculty or students, for example (ECF 239-2, Ex. L at 140:3-

18  141:7, 146:5-147:15)—and in turn, exposed its staff and students to an unacceptable risk that indeed

19  caused an outbreak of COVID-19 that required the school to shut its doors.  And there is no dispute

20  that the school is "under the church" (ECF 239-1, Ex. D at 87:12-88:12, Ex. A at 54:14-55:3).

21          Despite their chronic violations of the Public Health Orders, throughout this case, Calvary

22  has focused its claims on actual transmission or confirmed positive cases.  That focus is misplaced.

23  To protect the public health, the County had to legislate to reduce transmission and infection risk,

24  not just confirmed cases.  And Calvary cannot offensively use its own refusal to test for or report

25  cases of COVID-19 infection to now argue that the evidence tracing positive cases to Calvary is

26  limited.  ECF 239-2, Ex. H at 44:5-7, 44:17–45:2, 46:11–46:25; *id.*, Ex. X at 95:20–96:19; ECF 239-

27  1, Ex. C 42:9–42:18, 45:24–46:4; *id.*, Ex. G at 35:16–36:15, 39:13–15; 43:3–45:10, 46:24–47:10,

28  61:9-12.  Therefore, even under strict scrutiny, the face covering, social distancing, and SDP

1    requirements pass constitutional muster as a matter of law.

2    **B.      The State Singing Restrictions Were Constitutional**

3          Calvary alleges that California's restriction on singing during the COVID-19 pandemic was

4    unconstitutional.  ECF 167 at ¶¶60-62, 69, 74, 80, 100, 108; *see also* ECF 208 at 14-15 (confirming

5    challenge only to the "State Guidance" on singing).  Calvary cannot prevail for two main reasons.

6          First, Calvary should not be permitted to challenge a singing ban of statewide application in

7    the absence of the State of California, an indispensable party dismissed from this case.  And the

8    Eleventh Amendment bars claims against county officials for enforcing state law, where the relief

9    requested would invalidate that state law and operate against the State.  *Compare Porter v. Gore*,

10   354 F. Supp. 3d 1162, 1179-81 (S.D. Cal. 2018) (dismissing claims that state constitution precluded

11   county sheriff's enforcement of state law) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465

12   U.S. 89 (1984)) *with Bols v. Newsom*, 515 F. Supp. 3d 1120, 1134-35 (S.D. Cal. 2021) (unlike

13   *Porter*, county officials were enforcing county orders alleged to violate the state constitution).

14         Second, several courts in this Circuit have rejected the same type of challenge to the State's

15   singing restrictions that Calvary repeats here.  "In two recent opinions, the Ninth Circuit upheld the

16   State's ban on indoor singing and chanting."  *Morris v. Kuehl*, No. 2:20-cv-11508-VBF-PD, 2021

17   U.S. Dist. LEXIS 69621, **4-5 (C.D. Cal. Apr. 8, 2021) (citing *South Bay United Pentecostal*

18   *Church*, 985 F.3d 1128, 1152 (9th Cir. 2021); *Harvest Rock Church, Inc. v. Newsom*, 985 F.3d 771

19   (9th Cir. 2021)).  Indeed, in *South Bay*, the Supreme Court *affirmed* the Ninth Circuit's decision with

20   respect to the indoor singing ban.  141 S. Ct. at 716.

21         The Eastern District of California has also analyzed in depth the very same State singing

22   restrictions challenged here, including in the non-religious settings that Calvary asserts were

23   "favored" over churches.  *See Calvary Chapel of Ukiah v. Newsom*, 524 F. Supp. 3d 986, 994-99

24   (E.D. Cal. 2021) (discussing California's COVID-19 regulations of singing and chanting in churches

25   and other activities and industries).[3]  In that case, the court rejected another Calvary Chapel church's

26   _____

27   [3] The County is relying on the Eastern District's discussion of the State singing restrictions that

28   Calvary challenges here, rather than burdening the Court by attaching those voluminous documents.

16

1   challenges, on the same constitutional grounds Calvary raises here through overlapping counsel, to

2   the same State singing ban.  Considering evidence of the risk of COVID-19 spread through

3   singing—and the State restrictions on singing in protests, schools and daycare centers, restaurants

4   and bars, entertainment production, and other gatherings—the court found that the State singing ban

5   was neutral, generally applicable, and met rational basis review.  524 F. Supp. 3d at 993-1003.

6   "Given the Ninth Circuit's decisions . . . and the Supreme Court's decision with respect to indoor

7   singing and chanting in *South Bay*, plaintiffs cannot succeed on their free exercise claim here."  *Id.* at

8   1003.  "The record is consistent with these controlling decisions.  Beginning in . . . Summer 2020,

9   the State imposed a ban on indoor signing and chanting across a range of activities, with some

10   tailoring depending on the precise nature of the activity . . . The State's allowing of this indoor

11   activity is consistent with its evaluation of public health data regarding the risks of singing . . . and

12   effective management of those risks."  *Id.*  Further, "the State has now issued protocols allowing

13   those who serve as performers during church services . . . to sing indoors subject to masking and

14   distancing."  *Id.* at 1004.  The court also rejected arguments that the State singing ban violated the

15   Equal Protection Clause (*id.* at 1005-06), a contention Calvary repeats here (ECF 208 at 19-20).

16   In sum, *Calvary Chapel of Ukiah* compels summary judgment on Calvary's constitutional

17   challenge—devoid of new evidence or contrary authority—to the same State singing restrictions.

18   ### C.   Calvary Has Not Shown a Substantial Burden on Its Religious Exercise

19   Calvary asserts that the Public Health Orders violate the Free Exercise Clause of the United

20   States and California Constitutions because they substantially burdened its religious exercise.  ECF

21   167 at ¶¶100-102, 108, 117; *see also* ECF 208 at 17-19.  Besides being foreclosed by res judicata,

22   this claim fails for two additional reasons.

23   *First*, the Public Health Orders are subject to—and easily pass—rational basis review.  *See*

24   *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990); *Fulton v. City*

25   *of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1877 (2021).

26   *Second*, there is no evidence of an actionable burden on Calvary's religious practices.  A free

27   exercise violation requires proof that a "proffered belief" is "sincerely held."  *Malik v. Brown*, 16

28   F.3d 330, 333 (9th Cir. 1994).  This "includes the testimony of plaintiff, plaintiff's conduct, a

17

1   demonstrated willingness to forego privileges by virtue of religious commandment, the consistency

2   of plaintiff's adherence, and other evidence reasonably having a tendency to prove or disprove the

3   issue." *Rouser v. White*, 944 F. Supp. 1447, 1455 n.14 (E.D. Cal. 1996) (denying summary

4   judgment on Free Exercise Clause claim).  "[R]elatively short-term and sporadic" intrusions do not

5   constitute a substantial burden. *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998).

6           Here, Calvary cannot meet these standards.  First, McClure concedes that it is his spiritual

7   obligation—enshrined in Calvary's bylaws—as Calvary's Senior Pastor, to teach the word of God

8   both by word and example.  ECF 239-2, Ex. M at CCSJ000853, §4; ECF 239-1, Ex. D at 29:5-30:10,

9   31:14-33:13.  But the evidence reveals that Calvary's claimed religious beliefs (*e.g.*, ECF 167 at

10  ¶¶86-87, 98-100; ECF 208 at 18) were neither sincerely held nor consistently followed:

11          •       Calvary told its staff and believers *they should decide on their own* whether to comply

12  with health order requirements—without the church's correction based on any alleged inconsistency

13  with religious beliefs or practices.  ECF 239-1, Ex. D at 36:6-8, 30:9-33:13, 36:20-22, 175:2-176:7,

14  189:11-24, 231:4-233:5, 234:18-239:13; ECF 239-2, Ex. N at 28:4-29:21, 50:20-51:13; Ex. O at

15  43:24-47:22; *id.*, Ex. P at 59:18-60:9, 61:6-14, 66:6-15, 67:4-68:6.

16          •       Despite the stated belief of coming to God with unveiled faces, Calvary made face

17  masks available at the door.  ECF 239-1, Ex. D at 253:14-255:22.  Calvary's Assistant Pastor, Brit

18  Grim, testified that Calvary *encouraged* the use of face masks.  *Id.*, Ex. E at 74:11-14.  One Calvary

19  congregant—and declarant in support of its motion for partial summary judgment—admitted that

20  wearing a mask does not stifle fellowship; "It's a choice."  ECF 239-2, Ex. N at 31:22-32:6, 33:3-13.

21          •       With McClure's blessing, Grim wore a mask in front of the congregation during some

22  Sunday services.  ECF 239-1, Ex. D at 235:8-22.  Grim admitted that wearing a mask did not offend

23  his religious beliefs.  *Id.*, Ex. E at 60:22-61:1.  Other church staff also masked without objection

24  from Calvary.  *Id.*, Ex. D at 235:8-22; ECF 239-2, Ex. Q at 40:13-19. 42:2-43:22.

25          •       Despite the professed belief that only close contact worship, including "laying of the

26  hands," begets fellowship, "[p]eople were free to do it if they want to" and it was up to each

27  congregant's individual choice.  ECF 239-2, Ex. N at 28:19-29:21; *see also id.*, Ex. P at 66:6-68:6.

28  Further, Calvary allowed or encouraged social distancing during Sunday services.  ECF 239-1, Ex. E

18

at 38:12-39:25, 42:15-17, 46:15-17; ECF 239-2, Ex. R at CCSJ000804.  Calvary did "not . . . police two congregants who want to pray for one another . . . Sure, they can pray apart."  ECF 239-1, Ex. D at 193:15-17; *see also id.* at 202:19-205:16.  Calvary offered before COVID-19—and still offers— several *remote* ways to attend its religious services.  *Id.* at 197:13-202:18; *id.*, Ex. E at 39:2-40:21.

Second, no admissible evidence shows a substantial burden on Calvary's religious practice:

- The ranks of Calvary's religious congregation *tripled* while the Public Health Orders were in effect (*id.*, Ex. D at 63:6-64:13), which is the antithesis of a burden on religion.

- Calvary did not force anyone to follow the Public Health Orders, which it viewed as mere recommendations.  *See, e.g., id.* at 30:9-33:13, 36:6-8, 36:20-22, 175:2-176:7, 189:11-24, 231:4-233:5, 234:18-239:13; ECF 239-2, Ex. N at 15:25-16:13, 28:4-29:21, 32:1-6, 55:19-56:17; *id.*, Ex. P at 66:6-68:6; *id.*, Ex. O at 43:24-47:22, 131:18-132:14.

- Two Calvary congregants and declarants, Stenehjem and Fraboni, admitted that they have never worshipped, sung, or even been at Calvary while wearing a mask (ECF 239-2, Ex. N at 42:23-43:21; *id.*, Ex. P at 54:3-25, 57:6-20)—rendering their attestations about the burden on their religion "*if*" they had to mask during church service (ECF 208-4 at ¶5; ECF 208-5 at ¶4) mere speculation not based on personal knowledge.  *See* Fed. R. Evid. 602.

In addition, the evidence does not support Calvary's assertion of a substantial *financial* burden on the practice of its religion—that the fines burdened its "ability to pursue church-related projects and ministries" (ECF 208 at 18 (citing ECF 208-1 at ¶¶19-20); *see also* ECF 167 at ¶101).  Calvary was flush with cash from the increased tithing and offerings revenue generated from being the only church in the county openly defying the Public Health Orders; and it had no financial difficulties funding its ministries.  *See* § III(F)(2), *infra*.  Calvary's Board minutes during the pandemic stated that the "the church is financially healthy" and reflected no burden—including from the fines—on the Josiah Project that Calvary now identifies.  *See* ECF 239-2, Ex. S at CCSJ000878, 879; ECF 239-1, Ex. D at 148:4-152:5.  At deposition, Calvary could not identify any delays or financial burdens imposed by the County fines on any church projects, mission trips, camps, or outreach programs—nor could Calvary, given its decision to use increased revenue not to fund projects, but to pay off outstanding loans.  ECF 239-1, Ex. D at 144:3-146:23, 148:4-173:10.

19

The fact that Calvary's objections to the Public Health Orders are based on political, health, or personal comfort concerns—rather than religious views—might explain the tension between the record and Calvary's litigation position.  But objections that are "nonreligious in motivation" do not implicate the Free Exercise Clause.  *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 715-16 (1981).  The record is replete with evidence that betrays Calvary's nonreligious motivations:

- Calvary's comparisons of the Public Health Orders to Adolf Hitler's political tactics (ECF 239-1, Ex. D at 178:1-180:11, 258:3-259:16);

- The admissions by Calvary's declarants that they joined Calvary only after reading "negative" press about the church's political and legal opposition to the Public Health Orders (ECF 239-2, Ex. N at 20:6-21:18; Ex. P at 19:10-22:17, 76:25-77:24, 79:21-80:13; Ex. T at 9:19-12:5);

- One Calvary declarant's testimony that wearing a mask "feels like punishment" because "the County is certainly mandating them" (*id.*, Ex. N at 44:8-45:20, 46:5-14);

- Another Calvary declarant's testimony that "the final straw" making him leave his church of 45 years (for Calvary) was that church's announcement that it would "do whatever Dr. Cody tells us" (*id.*, Ex. T at 29:20-30:12, 34:7-35:1, 36:2-14); and

- Calvary's declarants' admissions that they—and nonparties in their employ—dislike wearing face masks for comfort, medical, or work-related reasons (*id.* at 60:4-62:9; Ex. P at 54:3-57:20, 61:16-62:25; Ex. N at 44:8-47:21; Ex. O at 57:20-60:24, 61:9-62:15, 66:14-75:10, 79:2-80:18, 84:2-87:24).  *Cf.* Fed. R. Evid. 402, 602, 802.

In sum, Calvary cannot prevail on its claim of a substantial burden on its religious exercise.

**D.     The Urgency Ordinance Did Not Discriminate Against Religion**

Calvary asserts that the fines imposed pursuant to the Urgency Ordinance discriminate against religion because the County "never cited non-commercial activities like graduation parties or private gatherings," which Calvary argues are "comparable secular activities."  ECF 208 at 20-21; *see also* ECF 167 at ¶¶99, 102, 106.  At the outset, however, res judicata bars this same argument that Calvary already advanced—and the Superior Court rejected.  ECF 238-1, Ex. M at 7-8, Ex. N.

In addition, the evidence does not bear out Calvary's claim.  The fact that the County's civil enforcement program was complaint-based—as opposed to analytically focused on certain entities,

20

1   industries, or settings—is dispositive.  *See* ECF 239-1, Ex. J at 47:13-50:14, 67:9-25, 174:1-4.  And

2   the County responded to complaints about private activity.  *See, e.g.*, Brandwajn Ex. AA [Santiago

3   Dep.] at 36:15-43:3.  The difference is that—unlike Calvary—nearly every other violator ceased its

4   public health non-compliant conduct after being advised or cited by the County.  Thus, the

5   distinction between commercial and non-commercial activities has nothing to do with religion.

6   Private gatherings can be secular or religious—*e.g.*, a neighborhood book or bible club—just as non-

7   profit corporations can have a secular or religious purpose.  As a result, the County's complaint-

8   based enforcement approach cannot support a discrimination claim.  Indeed, Calvary's claim is

9   effectively one of selective prosecution, which the Court has already ruled "the operative complaint

10   does not expressly claim" (ECF 200 at 4) and is thus not properly raised.

11        Therefore, Calvary cannot prevail on its claim of discrimination against religion.

12        **E.      The Public Health Orders Did Not Violate the Fourteenth Amendment**

13        Calvary cannot establish that the County violated Calvary's "Fourteenth Amendment rights

14   by creating COVID-19 health orders that, as alleged above, treated indoor religious services as less

15   essential and more dangerous than similarly situated secular activities."   ECF 167 at ¶123.  Calvary

16   had the opportunity to raise this constitutional theory in the Superior Court among its other

17   constitutional claims, did not, and is precluded by res judicata from doing so here.  And, as Calvary

18   recognizes (ECF 208 at 19-20), its Fourteenth Amendment claim is predicated on an underlying

19   violation of the Free Exercise Clause, which—as shown above—Calvary cannot establish.

20        **F.      The Fines Sought Against Calvary Are Not Excessive**

21        Calvary also alleges that the fines sought for its violations of the Public Health Orders are

22   excessive in violation of the Eighth Amendment of the United States Constitution and Article I,

23   Section 7 of the California Constitution.  ECF 167 at ¶¶9, 126-132, 133-136.  The County recognizes

24   that the Court has previously stated that it cannot rule on this issue until the state court, in the

25   parallel action, decides the amount.  ECF 156 at 24; ECF 178 at 7-8.  Ultimately, the excessiveness

26   issue should be resolved in the County's favor for several reasons.

27        **1.      Res judicata precludes re-litigation of Calvary's claims of excessiveness**

28        Claim preclusion mandates a ruling in the County's favor.  The Superior Court "reject[ed]

21

1  [Calvary's] contention that the total fines . . . imposed for its violations are excessive," finding that

2  Calvary's "maximalist approach to violation of the public health orders warrants an equally

3  expansive approach to sanctions, including the $5,000 for each day that [Calvary] refused to produce

4  a safety protocol of any kind."  ECF 238-1, Ex. N at 8.  Calvary may not re-litigate its excessiveness

5  challenge here under constitutional theories or otherwise.  *See, e.g.*, *Brentwood Rod & Gun Club*,

6  2008 U.S. Dist. LEXIS 78909 at **6-18; *Avery*, 2012 U.S. Dist. LEXIS 162911 at **19-53.

7        **2.**      **Even on the merits, the fines are not unconstitutionally excessive**

8        The $2.87 million in fines that the County and People seek to recover are not excessive,

9  under either federal or state constitutional standards.  Because the "California Constitution contains

10  similar protections" as the Eighth Amendment (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*,

11  37 Cal.4th 707, 728 (2005)), the County addresses both standards together for convenience.

12        "A fine is unconstitutionally excessive if it is 'grossly disproportional to the gravity of the

13  defendant's offense.'"  *Vasudeva v. United States*, 214 F.3d 1155, 1161 (9th Cir. 2000) (quoting

14  *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).  In making this determination, a court may

15  consider: (1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3)

16  the penalties imposed in similar statutes; and (4) the defendant's ability to pay.  *Bajakajian*, 524 U.S.

17  at 337-38.  A court, however, is not bound by "the consideration of any rigid set of factors."  *United*

18  *States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003).  Thus, a violator's "income earned from the

19  illegal activity can be considered when deciding whether a fine is excessive."  *Vasudeva*, 214 F.3d at

20  1161; *see also Balice v. U.S. Dep't of Agric.*, 203 F.3d 684, 699 (9th Cir. 2000) (fine that was "less

21  than [the fined party's] potential profit" from unlawful activity was "not grossly disproportionate");

22  *see also* ECF 206 at 3-4.  Further, the culpability analysis properly considers the recklessness of the

23  violator's behavior (*Pimentel v. City of Los Angeles*, 974 F.3d 917, 922-25 (9th Cir. 2020)) and

24  ability to pay "where punishment is meted out for a failure to pay" (*Lemmon v. Pierce Cty.*, No.

25  C21-5390RSL, 2021 U.S. Dist. LEXIS 156164, *19 (W.D. Wash. Aug. 18, 2021)).  Here, each of

26  these factors guides the Court to enter partial summary judgment in the County's favor.

27        a.      *Calvary has—and always had—the ability to pay the fines*

28        Calvary falsely alleges that the fines imposed against it were "bankruptcy inducing."  ECF

22

1  167 at ¶101.  The undisputed evidence shows that Calvary always had the ability to pay the fines.

2           At the end of 2019, Calvary had collected tithes and offerings of $973,443, yielding cash

3  assets of $574,186.  ECF 239-2, Ex. U at CCSJ000874-75.  By the end of 2020—the first year of

4  COVID-19—Calvary had $1,676,903 in cash—including tithes and offerings revenue of $2,174,310,

5  more than double that of 2019—and total liabilities of $2,208,503.  *Id.* at CCSJ000876-77.  By the

6  end of 2021, after choosing to pay off over $2 million in liabilities (ECF 239-2, Ex. V at CCSJ1001),

7  Calvary still had $2,268,492.69 in cash (*id.* at CCSJ000999)—including from its *$5,451,006.82 in*

8  tithes and offerings revenue that year (*id.* at CCSJ000975, 982, 989, 996).  Calvary *chose* to use

9  these contributions to pay off mortgage and car loans rather than bear any accountability for its

10  health order violations.  ECF 239-1, Ex. D at 124:20-22; 76:8-78:25, 125:11-128:18.  And,

11  according to its latest financials, Calvary has no liabilities but cash assets of almost $4.45 million

12  (ECF 239-2, Ex. W at CCSJ001146, 1148)—more than the $2.87 million sought to be collected and

13  re-distributed to businesses that complied with the Public Health Orders (*see* 238-1, Ex. V).[4]

14                          b.        *Calvary's high degree of culpability renders the fines not excessive*

15           As shown above, Calvary blatantly violated the health restrictions relating to face masks,

16  social distancing, and the SDP—for months, during the most dangerous periods of the pandemic,

17  even while Calvary's in-person attendees contracted or died of COVID-19, and undoubtedly raised

18  the transmission and death rate throughout the community.  Accordingly, its culpability is

19  unquestionably high.  Calvary's assertion of its good faith adherence to sincerely held religious

20  beliefs (*e.g.*, ECF 167 at ¶¶86, 98, 100; ECF 208 at 21) rings hollow given that Calvary *facilitated*

21  deviations from those professed beliefs by its staff and congregants.  *See* §III(E), *supra*.  The fine

22  imposed is therefore proportional to Calvary's culpability and the risk of harm created by Calvary's

23  disregard for the law and the public health.  *See, e.g.*, *People v. Braum*, 49 Cal. App. 5th 342, 361

24  (2020) (upholding $6 million fine where defendant took "no action in response" to a notice of civil

25  violation and continued to defy the law); *City & Cty. of San Francisco v. Sainez*, 77 Cal. App. 4th

26  1302, 1322-23 (2000) (penalty not excessive where defendant engaged in "numerous instances of

27  

28  [4] *See also* https://eservices.sccgov.org/OffAgenda/Home/ViewFile/682.

1   ignoring or disobeying orders to abate or rectify" violations).

2                      c.      *The fines are reasonably related to the harm*

3          "[I]if culpability is high or behavior reckless, the nature and extent of the underlying

4   violation is more significant.  Conversely, if culpability is low, the nature and extent of the violation

5   is minimal."  *Pimentel*, 974 F. 3d at 923.  Here, the fines are reasonably related and proportional to

6   the relevant harm—the increase in *risk of spread of a deadly virus*—that Calvary's well-documented

7   and admitted violations created.  *See, e.g.*, ECF 238-4, ¶¶45-52; ECF 239-2, Ex. Y at 1-16.

8          Calvary's refrain in this case has been that the County cannot trace one COVID-19 case to

9   Calvary.  ECF 167 at ¶¶8, 59; ECF 208 at 22.  False.  Even under Calvary's myopic view of harm

10  limited to confirmed positive cases—which it failed to report—the evidence *does show* COVID-19

11  cases traced to Calvary Christian Academy (ECF 210-11 at 137-38), which is "under the church"

12  (ECF 239-1, Ex. D at 87:12-88:12; Ex. A at 54:14-55:3).  As shown above, a major COVID-19

13  outbreak among students and teachers forced that school's closure.  Further, as shown above,

14  Calvary knew that at least one of its congregants died of COVID-19 (*id.*, Ex. A at 221:9-225:1; *id.*,

15  Ex. C at 53:4-10), and that other church attendees had contracted COVID-19 or displayed COVID-

16  19 symptoms.  Calvary's own declarants contracted what they believed was COVID-19 and were

17  aware of other congregants experiencing the same, during the times they were attending in-person

18  religious services at Calvary.  ECF 239-2, Ex. N at 56:18-57:3; *id.*, Ex. P at 73:19-74:18.  This is

19  merely the evidence available *despite* Calvary's failure to test for—or report—cases among staff,

20  students, and congregants, as discussed above.  Moreover, expert mobility data allows the reasonable

21  tracing of COVID-19 cases to Calvary's in-person gatherings.  *See* ECF 239-2, Ex. Z at 3-8.

22         As a matter of law, Calvary may not complain that the cumulative fine amount is excessive

23  when it deliberately continued to violate the Public Health Orders for months, accruing daily fines in

24  the process.  *See Gutierrez v. City of Long Beach*, No. CV 19-9941-DMG (Ex), 2021 U.S. Dist.

25  LEXIS 221668, **7-8 (C.D. Cal. Nov. 15, 2021) (rejecting Eighth Amendment claim of excessive

26  fines and holding that "[b]ecause Plaintiff had it within his control to stop the accumulation of

27  penalties but chose not to do so, his culpability is greater, which justifies an increase in those

28  penalties") (citing *Lent v. California Coastal Com.*, 62 Cal. App. 5th 812, 857 (2021) ("courts

                                                    24

1    routinely consider a person's unwillingness to comply with the law when considering whether a fine

2    is excessive under the Eighth Amendment")); *Sainez*, 77 Cal. App. 4th at 1315-16 (defendants

3    "cannot complain" about the "cumulative size of the penalty" "when they had control over [a] time

4    period yet allowed the penalties to accumulate"); *Ojavan Investors, Inc. v. Cal. Coastal Comm'n*, 54

5    Cal. App. 4th 373, 398 (1997) (upholding $9.5 million fine because the cumulative total "is large

6    only because [defendants] violated the Coastal Act 73 times and refused to remedy the violations").

7            d.    <u>*The fines are in line with penalties in similar statutes*</u>

8         The Urgency Ordinance's fines are in line with those imposed by other counties' similar

9    COVID-19 ordinances.  *See, e.g.*, ECF 238-1, Ex. R at §7.99.05(D), (F) (Marin County: up to

10   $10,000 for commercial entities, including fines that double daily up to that amount); Ex. S at

11   §VI(E) (Sonoma County: $1,000 for a first violation, $5,000 for a second violation, and $10,000 for

12   each additional violation for commercial entities); Ex. T at §8.85.050(D)(2) (Napa County: $5,000

13   for commercial activities); Ex. U at §6 (San Mateo County: up to $3,000 for each violation).  Other

14   Santa Clara County provisions impose similar fine amounts for analogous violations.  *See* Ordinance

15   Code §§A1-37, A1-42(b)(2), B11-345.  *See generally Lent*, 62 Cal. App. 5th at 856-60 (comparing

16   fines imposed by various statutes passed by the same body, the California Legislature).

17        In sum, Calvary cannot establish that the fines sought are unconstitutionally excessive.

18                   **IV.    CONCLUSION**

19        For the foregoing reasons, the Court should grant the County's Motion in its entirety.

20   Dated:  December 22, 2022               Respectfully submitted,

21                              JAMES R. WILLIAMS
                           COUNTY COUNSEL
22

23                    By:  */s/ Xavier M. Brandwajn*        
                           XAVIER M. BRANDWAJN
24                              Deputy County Counsel

25                              Attorneys for Defendant
 2738659                           COUNTY OF SANTA CLARA
26

27

28

                                25