**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |
|---|---|
| CALVARY CHAPEL SAN JOSE, et al., | Case No.  20-cv-03794-BLF |
| Plaintiffs, |  |
| v. | **ORDER GRANTING MOTION TO DISMISS AND STAY UNDER *YOUNGER* ABSTENTION DOCTRINE** |
| SARA CODY, et al., | |
| Defendants. | [Re: ECF No. 224] |

In this case, Plaintiffs Calvary Chapel San Jose and its Pastor Mike McClure (together "Calvary") challenge Defendant the County of Santa Clara's enforcement of public health orders related to the COVID-19 pandemic.  Calvary asks this Court to find that the public health orders violate its civil rights and that fines predicated on the orders that the County seeks to collect in a proceeding in state court are unlawful.

Before the Court is the County's motion to dismiss and stay Calvary's claims under the *Younger* abstention doctrine.  *See* Mot., ECF No. 224; Reply ECF No. 242.  Calvary opposes the motion.  Opp'n, ECF No. 234.  The Court heard oral argument on the motion on January 26, 2023.  ECF No. 269.  For the reasons discussed below and during oral argument, the County's motion to dismiss and stay is GRANTED.

## I.     BACKGROUND

Calvary brought this action on June 9, 2020, against Santa Clara County's Public Health Officer and members of Santa Clara County's Board of Supervisors.  Compl., ECF No. 1.  The complaint asserted causes of action under the federal and California constitutions and sought to enjoin enforcement of certain public health orders related to COVID-19.  *Id.*  The County moved to dismiss the Complaint on July 20, 2020.  *See* ECF No. 20.

United States District Court
Northern District of California

On October 27, 2020, the County and its Public Health Officer filed a complaint in Santa Clara County Superior Court. *See* Request for Judicial Notice ("RJN") Ex. A, ECF No. 242-1. The County sought to enjoin Calvary from violating public health orders. *Id.* At the time, no matters had come before the Court. Pending matters were scheduled for hearing in November 2020.

This Court heard argument on the County's motion to dismiss on November 5, 2020. *See* ECF No. 32. The Court granted the motion to dismiss that day in a four-page order. ECF No. 30. Calvary filed an amended complaint about three weeks later. Am. Compl., ECF No. 38. The complaint added several causes of action, including a claim under the Bane Act, for which Calvary sought penalties. *Id.* at p.35.

Shortly after filing its amended complaint, Calvary applied for a temporary restraining order. *Ex Parte* Appl. for TRO ("TRO Appl."), ECF No. 42. Calvary asked this Court to enjoin enforcement of a preliminary injunction issued by the Santa Clara Superior Court that "allow[ed] enforcement officers to ensure compliance with State and County public health orders." *Id.* at 3, 14. This Court denied Calvary's application, "find[ing] it inappropriate to interfere with the Santa Clara County Superior Court proceedings" and indicating that *Younger* abstention would preclude federal court involvement. Order Deny. Appl. For TRO 1, ECF No. 67. The County did not affirmatively seek an order on *Younger* abstention at that time.

This Court held an initial case management conference on January 21, 2021. ECF No. 71. On March 4, 2021, the Court permitted Calvary to file a second amended complaint pursuant to a stipulation by the parties. *See* ECF Nos. 80, 81. Two months later, the parties stipulated to permit Calvary to file a third amended complaint. *See* ECF Nos. 87, 88. Shortly thereafter, this Court stayed discovery until 10 days after the filing of Calvary's third amended complaint noting that "[i]t is not reasonable to require Defendants to respond to discovery without knowing the boundaries of the claims against them." ECF No. 97.

In July 2021, the County amended its complaint in the state court action seeking to collect fines for violations of the public health orders. *See* 1st Am. Compl. for Inj. Relief and to Recover Admin. Fines, *California v. Calvary Chapel San Jose*, No. 20CV372285 (July 29, 2021).

United States District Court
Northern District of California

1    On September 30, 2021, Calvary filed its third amended complaint. Third Am. Compl.,

2    ECF No. 116. The complaint again challenged the constitutionality of the public health orders and

3    included a claim under the Bane Act. *Id.* The County filed a motion to dismiss the complaint,

4    which the Court granted in part and denied in part. *See* ECF Nos. 135, 156.

5    Calvary subsequently filed a fourth amended complaint. 4th Am. Compl. ("4AC"), ECF

6    No. 167. The County again filed a motion to dismiss. ECF No. 179. The Court granted in part

7    and denied in part the County's motion. ECF No. 222. In its order, the Court granted the

8    County's motion to dismiss Calvary's Bane Act claim without leave to amend. *See id.* at 14.

9    The County filed the present motion to dismiss five days after the Court dismissed

10   Calvary's Bane Act claim. *See* Mot. Shortly thereafter, the County filed its answer to the fourth

11   amended complaint. *See* ECF No. 229.

12   **II.    JUDICIAL NOTICE**

13   The County requests the Court judicially notice 11 documents filed in the Santa Clara

14   Superior Court in *The People of the State of California v. Calvary Chapel San Jose*, No.

15   20CV372285 and 4 documents filed in California Court of Appeal in *Calvary Chapel San Jose v.*

16   *The People of the State of California*, No. H048708. *See* Request for Judicial Notice ("RJN"),

17   ECF No. 242-1.

18   The documents filed in Santa Clara Superior Court are: (1) Complaint for Injunctive

19   Relief, RJN Ex. A; (2) Opposition to Motion for Preliminary Injunction, RJN Ex. B; (3)

20   Memorandum of Points and Authorities in Opposition to Plaintiff's Request for Contempt and/or

21   Sanctions, RJN Ex. C; (4) Motion for Reconsideration of the Court's Order Granting the

22   Preliminary Injunction, or, in the Alternative, Motion to Dissolve the Preliminary Injunction and

23   Vacate the Contempt Proceedings, RJN Ex. D; (5) Memorandum of Points and Authorities in

24   Opposition to Plaintiffs' Ex Parte Application for Order to Show Cause re: Contempt and/or

25   Sanctions, RJN Ex. E; (6) Defendants Calvary Chapel San Jose and Mike McClure's Closing

26   Argument, RJN Ex. F; (7) Memorandum of Points and Authorities in Support of Defendants'

27   Motion to Dissolve the Preliminary Injunction, RJN Ex. G; (8) Defendants' Notice of Demurrer

28   and Demurrer to the First Amended Complaint, RJN Ex. H; (9) Defendants' Reply in Support of

1    Motion to Dissolve the Preliminary Injunction, RJN Ex. I; (10) Defendants' Reply in Support of

2    Demurrer to First Amended Complaint, RJN Ex. J; and (11) Defendants' Answer to the First

3    Amended Complaint for Injunctive Relief and to Recover Administrative Fines, RJN Ex. K.

4         The documents filed in the California Court of Appeal are: (1) Verified Petition for

5    Immediate Review, RJN Ex. L; (2) Reply in Support of Petition for Immediate Review, RJN Ex.

6    M; (3) Appellants' Opening Brief, RJN Ex. N; and (4) Reply in Support of Appellants' Opening

7    Brief, RJN Ex. O.

8         Courts may properly take judicial notice of other court filings and matters of public record.

9    *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing *Burbank-*

10   *Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)).

11   Calvary has neither opposed the request for judicial notice nor disputed the authenticity of the

12   documents.  The Court GRANTS the request for judicial notice.

13        The Court also takes judicial notice of the First Amended Complaint for Injunctive Relief

14   and to Recover Administrative Fines filed in *The People of the State of California v. Calvary*

15   *Chapel San Jose*, No. 20CV372285, on July 29, 2021 ("State Court FAC").  *See* Fed. R. Evid.

16   201(c)(1) ("The court . . . may take judicial notice on its own"); *Ray v. Lara*, 31 F.4th 692, 697

17   (9th Cir. 2022) ("Although neither party requested judicial notice of the complaint in [another

18   case], this court may take judicial notice on its own." (internal quotations omitted)).

19   **III.    LEGAL STANDARD**

20        The parties dispute whether the County's motion is procedurally proper.  The County

21   contends that it properly brings its motion under Federal Rule of Civil Procedure 12(h)(3), which

22   requires that a court dismiss an action over which it lacks subject matter jurisdiction.  Mot. 2.  The

23   County further contends that the motion would also be proper under Rule 12(b)(1).  *Id.*  Calvary

24   responds that the County's motion is improper because *Younger* is not jurisdictional.  Opp'n 2-4.

25   Calvary contends that the County's motion should have been brought as "a motion for abstention"

26   or a motion under Rule 12(b)(6).  The County replies that the Ninth Circuit has considered such

27   motions under Rule 12(b)(1), 12(b)(6), or as a freestanding "motion for abstention."  Reply 1.  The

28   County further replies that the procedural vehicle argument is immaterial, as the pleadings closed

United States District Court
Northern District of California

1  shortly after they filed their motion, and the motion can therefore be treated as a motion for

2  judgment on the pleadings under Rule 12(c).  *Id.* at 2.

3  The Court agrees that the County's motion can be treated as a motion for judgment on the

4  pleadings under Federal Rule of Civil Procedure 12(c) now that the pleadings are closed.

5  Accordingly, the Court will interpret the County's motion as a motion brought under Rule 12(c)

6  and finds that *Younger* abstention may be raised in such a motion.  *See, e.g.*, *Saraswati v. Cnty. of*

7  *San Diego*, No. 07CV1415 WQH POR, 2010 WL 4569888, at *2 (S.D. Cal. Nov. 4, 2010)

8  ("*Younger* abstention is properly raised in a motion for judgment on the pleadings pursuant

9  to Rule 12(c)." (citing *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v.*

10  *City of San Jose,* 546 F.3d 1087, 1089 (9th Cir.2008)).

11  Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but

12  early enough not to delay trial—a party may move for judgment on the pleadings."  A Rule 12(c)

13  motion is "functionally identical" to a Rule 12(b)(6) motion, and the same legal standard applies

14  to both.  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir.

15  2011).  Thus, when considering a Rule 12(c) motion, a district court "must accept the facts as pled

16  by the nonmovant."  *Id.* at 1053.  The district court then must apply the *Iqbal* standard to

17  determine "whether the complaint's factual allegations, together with all reasonable inferences,

18  state a plausible claim for relief."  *Cafasso*, 637 F.3d at 1054 & n.4 (citing *Ashcroft v. Iqbal*, 556

19  U.S. 662 (2009)).

20  "When considering a judgment on the pleadings, a court should not blindly accept the

21  allegations in the pleadings as true if these allegations are contradicted by uncontested facts set

22  forth in (1) exhibits to the nonmoving party's pleading, (2) documents that are referred to in the

23  non-moving party's pleading, or (3) facts that are included in materials that can be judicially

24  noticed."  *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

## IV.    DISCUSSION

26  The County seeks *Younger* abstention, asserting that a ruling by this Court on Calvary's

27  federal claims would interfere with state proceedings.  Mot. 1.  The Court is mindful that its

28  "obligation to hear and decide a case is 'virtually unflagging.'"  *Sprint Commc'ns, Inc. v. Jacobs*,

United States District Court
Northern District of California

571 U.S. 69, 77 (2013) (citing *Colorado River Water Conservation Distr. v. United States*, 424 U.S. 800, 871 (1976)).  An exception to this general rule is the doctrine of abstention, which involves a "decision by a federal court to decline to exercise jurisdiction over the underlying claims for reasons of comity."  *Washington v. Los Angeles Cty. Sheriff's Dep't*, 833 F.3d 1048, 1058 (9th Cir. 2016) (citations omitted).  *Younger* and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 431 (1982); *Younger v. Harris*, 401 U.S. 37 (1971).  The Supreme Court has "identified two sources for this policy: the constraints of equity jurisdiction and the concern for comity in our federal system."  *Gilbertson v. Albright*, 381 F.3d 965, 970 (9th Cir. 2004).  "*Younger* abstention permits federal courts to preserve respect for state functions such that the national government protects federal rights and interests in a way that will not unduly interfere with the legitimate activities of the States."  *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (internal quotations omitted).  "*Younger* abstention is a jurisprudential rather than a jurisdictional question."  *Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*, 48 F.3d 391, 394 n.3 (9th Cir. 1995).

### A.   Younger Abstention

A federal court may abstain under *Younger* in three categories of cases: "(1) parallel, pending state criminal proceedings, (2) state civil proceedings that are akin to criminal prosecutions, and (3) state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts."  *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (internal quotation marks and citations omitted).  First identified in *New Orleans Public Service, Inc. v. Council of New Orleans* ("*NOPSI*"), 491 U.S. 350 (1989), these three categories are known as the *NOPSI* categories. *See Sprint*, 571 U.S. at 72-73..

To warrant *Younger* abstention, a state civil action must fall into one of the *NOPSI* categories and must also satisfy three "*Middlesex* factors": the state proceedings must (1) be "ongoing," (2) "implicate important state interests," and (3) provide "an adequate opportunity . . . to raise constitutional challenges."  *Herrera*, 918 F.3d at 1044 (quoting *Middlesex*, 457 U.S. at

432).  If the state proceedings fall into one of the *NOPSI* categories and meet the three *Middlesex* factors, a federal court may abstain under *Younger* so long as "the federal action would have the practical effect of enjoining the state proceedings."[1]  *Id.* quoting (*ReadyLink*, 754 F.3d at 759).

Even if all the requirements for *Younger* abstention have been met, a federal court may reject abstention upon a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief."  *See Younger*, 401 U.S. at 45.  "A plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies."  *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citations omitted).

Calvary argues that the County has not met the *Middlesex* factors and it has waived *Younger* abstention.

### 1.  *NOPSI* Categories

The County's suit in state court is a nuisance action to enjoin Calvary's violations of state and county public health orders.  RJN Ex. A; State Court FAC.  The County contends and Calvary does not dispute that the proceeding falls within the third *NOPSI* category because it is a civil enforcement proceeding.  Mot. 4.  And the Ninth Circuit has recognized that such nuisance actions to enforce state and local laws fall within the third *NOPSI* category.  *See Herrera*, 918 F.3d at 1045.  Accordingly, the Court finds that the state proceeding falls within the third *NOPSI* category.  The Court therefore proceeds to analyze whether the state proceeding satisfies the *Middlesex* factors.

### 2.  *Middlesex* Factors

As noted above, to warrant *Younger* abstention, a state civil action must satisfy three "*Middlesex* factors": the state proceedings must (1) be "ongoing," (2) "implicate important state interests," and (3) provide "an adequate opportunity . . . to raise constitutional challenges."  *Herrera*, 918 F.3d at 1044 (quoting *Middlesex*, 457 U.S. at 432).

---

[1] The Ninth Circuit has also referred to the three *Middlesex* factors and the requirement that the federal action have the practical effect of enjoining the state court proceedings together as "*Younger* factors."  *See Credit One Bank, N.A. v. Hestrin*, No. 21-56271, 60 F.4th 1260, 2023 WL 2213469, at *3 (9th Cir. Feb. 27, 2023).

United States District Court
Northern District of California

### a. State Proceedings are Ongoing

"State proceedings are ongoing for the purposes of *Younger* abstention if they are initiated before any proceedings of substance on the merits have taken place in the federal court. Put another way, the commencement of state proceedings only ceases to require federal abstention after the federal court proceedings have moved beyond an embryonic stage." *Credit One Bank, N.A. v. Hestrin*, 60 F.4th 1260, 2023 WL 2213469, at *4 (9th Cir. Feb. 27, 2023) (citations and internal quotations marks omitted).

The County argues that the state proceedings are considered "ongoing" for *Younger* purposes because County filed its enforcement action in state court before any proceedings of substance on the merits had taken place in this Court.  Mot. 5.  The County notes that when it filed its complaint in state court, this Court had not yet held a hearing or case management conference. Reply 5.  Calvary argues that this factor is not satisfied because this Court has now heard multiple motions to dismiss and motions to stay, the parties have "finalized fact discovery," and the parties have conducted a settlement conference.  Opp'n 8.

This factor of the *Younger* analysis looks to the extent to which a federal court has considered the merits of a case before the state proceeding was initiated.  *See Credit One*, 2023 WL 2213469, at *4.  For example, in *Credit One*, the court held that the state action was "ongoing" where, at the time the state action was filed, the federal docket contained only 25 entries and the only significant proceeding that had occurred in the federal court was the denial of a motion to dismiss that only briefly touched on the merits of the case.  *Id.* at *4-5.  Conversely, in *Hoye v. City of Oakland*, the court held that the state court proceeding was not "ongoing" where it was filed after the federal court had denied a motion for a temporary restraining order and held four status conferences and hearings. 653 F.3d 835, 844 (9th Cir. 2011).  Likewise in *Nationwide Biweekly Administration, Inc. v. Owen*, the court held that the state action was not "ongoing" where it was filed after "the district court spent a substantial amount of time evaluating the merits of the cases in considering and denying (in a detailed and reasoned order) Nationwide's motions for preliminary injunctions."  873 F.3d 716, 729 (9th Cir. 2017).

The Court finds the state court proceeding here is "ongoing" for *Younger* purposes because

8

the federal court had not considered the merits of the case at all before the state court proceeding was initiated.  At the time the state court case was filed, the docket in this federal action contained only 23 entries.  Most were routine administrative entries common in all federal cases: the complaint, summonses, clerk's entries, a motion to dismiss, and a clerk's entry setting a scheduling conference.  The motion had not yet been heard by the Court.  Nor had the Court held any other hearing or issued a substantive ruling on any issue in the case.  This Court had done even less on the case before the state court case was filed than the court in *Credit One*, which had ruled on a motion to dismiss and at least briefly considered the merits of the case.  *See Credit One*, 2023 WL 2213469, at *4.  Therefore, just as the state court proceedings were ongoing for *Younger* purposes in *Credit One*, they are "ongoing" for *Younger* purposes here.

Calvary asks this Court to look to the current status of the federal proceeding, rather than the status when the state court case was filed, to determine whether any proceedings of substance of the merits have taken place.  But the cases upon which Calvary relies do not support this standard.  *See Hoye*, 653 F.3d at 844 (analyzing status of federal proceedings as of date state case was filed); *Nationwide*, 873 F.3d at 730 (same).  Accordingly, the Court declines consider proceedings that occurred in this Court after initiation of the state court proceeding in its analysis of this *Middlesex* factor.

Calvary also notes that the County sought injunctive relief in its original complaint in state court "but did not seek to collect fines from Plaintiffs until July 2021."  Opp'n 9.  In its briefing, Calvary made no attempt to explain the import of this point.  At oral argument, however, Calvary argued that the Court should make this assessment as of the date of the amended complaint.  Calvary has not identified, and the Court is not aware of, any case in which a court has taken the approach Calvary endorses.  Calvary's contention is contrary to longstanding Ninth Circuit precedent which requires this analysis to be made as of the filing of the state proceedings.  *See Credit One*, 2023 WL 2213469, at *4; *Nationwide*, 873 F.3d at 728 ("State proceedings are 'ongoing' if they are initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)).

9

United States District Court
Northern District of California

1   As the state court action was initiated before any proceedings of substance on the merits have

2   taken place in this Court, the Court finds that the state proceeding was ongoing and the first

3   *Middlesex* factor is satisfied.

4                    **b.  State Proceedings Implicate Important State Interests**

5        The second *Middlesex* factor requires that the state proceedings implicate important state

6   interests.   *Herrera*, 918 F.3d at 1044.  The *Younger* doctrine recognizes that a state's ability to

7   enforce its laws "'against socially harmful conduct that the State believes in good faith to be

8   punishable under its laws and Constitution'" is a "basic state function" with which federal courts

9   should not interfere.  *Miofsky v. Superior Court of the State of Cal., In and For Sacramento Cnty*.,

10   703 F.2d 332, 336 (9th Cir. 1983) (quoting *Younger*, 401 U.S. at 51-52).   "Where the state is in an

11   enforcement posture in the state proceedings, the 'important state interest' requirement is easily

12   satisfied, as the state's vital interest in carrying out its executive functions is presumptively at

13   stake."  *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 884 (9th Cir. 2011) (citing

14   *Fresh Int'l Corp. v. Agric. Labor Rels. Bd.*, 805 F.2d 1353, 1360 n.8 (9th Cir. 1986)).

15        The County argues that the state court action implicates important state interests because it

16   seeks to enforce public health orders that were issued to slow the spread of COVID-19.  Mot. 6.

17   Calvary concedes that the County has an interest in enforcing health and safety orders but argues

18   that "[the County's] interest in protecting the public from COVID-19 is now a moot issue."

19   Opp'n 9.  Calvary also argues that "the County does not have a legitimate interest in collecting

20   unconstitutional fines predicated upon unconstitutional public health orders."  *Id.*  Finally, Calvary

21   argues that the abstention is inappropriate in cases involving facial challenges based on the First

22   Amendment.  *Id.* at 10.

23        The Court finds that the state enforcement action here implicates important state interests.

24   The Ninth Circuit has held that state actions seeking to enforce health and safety provisions and to

25   abate public nuisances implicate important state interests and thus satisfy the second *Middlesex*

26   factor.  *See Herrera*, 918 F.3d at 1045 (citing *Woodfeathers, Inc. v. Washington Cnty., Or.*, 180

27   F.3d 1017, 1021 (9th Cir. 1999), and *Potrero Hills Landfill*, 657 F.3d at 884).  The state court

28   action here is such a proceeding.  This is evident from the face of the complaint, which asserts

1     causes of action for public nuisance and violation of public health orders.  *See* RJN Ex A, ¶¶ 75-

2     87; State Court FAC.

3           Calvary concedes that "the County does have an interest in enforcing health and safety

4     provisions."  Opp'n 9.  Calvary nevertheless argues that the action does not implicate important

5     state interests because the County "now primarily seeks to collect . . . fines from Plaintiffs."  *Id.*

6     The Ninth Circuit "ha[s] been clear that '[w]here the state is in an enforcement posture in the state

7     proceedings, the 'important state interest' requirement is easily satisfied.'"  *Credit One*, 2023 WL

8     2213469, at *10 (quoting *Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 883-84 (9th Cir. 2011)).

9     Here, the County is seeking to enforce public health orders in the state proceeding and is thus in an

10    "enforcement posture."  This is true whether the County seeks this enforcement through an

11    injunction or through fines.  Accordingly, the "important state interest" requirement is "easily

12    satisfied."  *See id.*

13          Calvary also argues that the action here does not implicate important state interests because

14    "the County does not have a legitimate interest in collecting unconstitutional fines predicated on

15    unconstitutional public health orders."  Opp'n 9.  But Calvary's premise is flawed, as the fines are

16    predicated on multiple public health orders that have not been found unconstitutional by any court.

17    Calvary may prove correct that the orders are unconstitutional, but the Court cannot assume that

18    outcome at this stage in the analysis.  *Cf. Hicks v. Miranda*, 422 U.S. 332, 352 (1975) (reversing

19    district court for not dismissing a under *Younger* and noting that "it seems to us that the District

20    Court's judgment rests almost entirely on its conclusion that the California obscenity statute was

21    unconstitutional and unenforceable. But even assuming that the District Court was correct in its

22    conclusion, the statute had not been so condemned in November 1973.")

23          Finally, Calvary asserts that "[t]he Supreme Court and Ninth Circuit have refrained from

24    abstaining in cases involving facial challenges based on the First Amendment."  Opp at 10.  But

25    *Younger* itself belies this argument, as *Younger* involved a facial First Amendment challenge and

26    the Supreme Court held that the federal court should have abstained.  *See Younger,* 401 U.S. at 38-

27    39, 54.  Indeed, clarifying the primary case upon which Calvary relies, the Supreme Court in

28    *Younger* explained, "We do not think [*Dombrowski v. Pfister*, 380 U.S. 479 (1965),] stands for the

United States District Court
Northern District of California

1   proposition that a federal court can properly enjoin enforcement of a statute solely on the basis of

2   a showing that the statute 'on its face' abridges First Amendment rights." *Id.* at 53.  Rather,

3   federal intervention requires some additional showing of "bad faith, harassment, or any other

4   unusual circumstance that would call for equitable relief."  *Id.* at 54.[2]

5       In view of the foregoing analysis, the Court finds that the state proceeding implicates the

6   important state interest of enforcing public health orders and therefore satisfies the second

7   *Middlesex* factor.

### c.  State Proceedings Provide Adequate Opportunity to Raise Constitutional Challenges

9       The inquiry under the third *Middlesex* factor is whether the state proceeding will provide

10  plaintiffs a sufficient forum for raising their federal constitutional challenges.  *Younger* abstention

11  reflects a general sense of respect for the integrity of state proceedings, and a presumption "that

12  state procedures will afford an adequate remedy, in the absence of unambiguous authority to the

13  contrary."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).  Thus, "[w]here vital state interests

14  are involved, a federal court should abstain 'unless state law clearly bars the interposition of the

15  constitutional claims.'"  *Lebbos v. Judges of Superior Court, Santa Clara Cnty.*, 883 F.2d 810,

16  815 (9th Cir. 1989) (quoting Middlesex, 457 U.S. at 432).  This factor "does not turn on whether

17  the federal plaintiff actually avails himself of the opportunity to present federal constitutional

18  claims in the state proceeding, but rather whether such an opportunity exists."  *Herrera*, 918 F.3d

19  at 1046; *Canatella v. California*, 404 F.3d 1106, 1111 (9th Cir. 2005).  "[T]he burden on this point

20  rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'"

21  *Herrera*, 918 F.3d at 1037 (quoting *Pennzoil*, 481 U.S. at 14).

22      The County argues that this factor is met here because Calvary has had an opportunity to

23  raise its federal constitutional challenges in the state proceedings and has, in fact, done so.  Mot. 6;

24  Reply 8.  Calvary responds that the state court is set to hear a summary judgment motion filed by

---

[2] Calvary also relies on *Playtime Theaters, Inc. v. City of Renton*, 748 F.2d 527 (9th Cir. 1984).
That opinion stated that "*Pullman* abstention would almost never be appropriate in first
amendment cases."  *Playtime Theaters*, 748 F.2d at 532.  It notably did not invoke the First
Amendment as a reason to avoid *Younger* abstention.  *Id.* at 533.

1    the County and Calvary "does not have an adequate opportunity to file a cross-complaint in state

2    court and reach a decision on the merits before the state court rules on the County's motion."

3    Opp'n 10-11.

4         The Court finds this *Middlesex* factor satisfied.  Calvary has the burden of showing that

5    state procedural law barred presentation of its claims, *Herrera*, 918 F.3d at 1037, and it has made

6    no such showing.  Indeed, it appears that Calvary has presented its constitutional defenses

7    throughout the state court proceedings.  *See* RJN Ex. B, at 7-8; RJN Ex. C, at 1, 5-10; RJN Ex. D,

8    at 1-2, 5-11; RJN Ex. E, at 1, 6-12; RJN Ex. F, at 1-4, 6-7; RJN Ex. G, at 1, 4-10; RJN, Ex. H, at

9    1, 3-12; RJN Ex. I, at 1-7; RJN Ex. J, at 1-7; RJN Ex. K, at 3; RJN Ex. L, at 7-8; RJN Ex. M, at 5-

10   14; RJN Ex. N, at 5, 13-18; RJN Ex. O, at 4-11.  On this record, the Court cannot say that Calvary

11   was barred from presenting its claims.  *See Woodfeathers*, 180 F.3d at 1020 ("State courts are

12   presumed adequate to raise federal questions in the absence of unambiguous authority to the

13   contrary." (internal quotation marks and citation omitted)).

14        The Court finds unconvincing Calvary's argument that it "do[es] not have an adequate

15   opportunity to file a cross-complaint in state court and reach a decision on the merits before the

16   state court rules on the County's [pending motion for summary judgment]."  Opp'n 10-11.

17   Calvary cites no authority for the proposition that it must be able to present its constitutional

18   arguments as claims in a cross-complaint rather than raise them as defenses as it did here.  Even if

19   Calvary were right that this requirement exists, Calvary's argument would fail because Calvary

20   has made no effort to show that it was barred from filing such a cross-complaint.  *See, e.g.*,

21   *Herrera*, 918 F.3d at 1037 ("A federal court's exercise of *Younger* abstention does not turn on

22   whether the federal plaintiff actually avails himself of the opportunity to present federal

23   constitutional claims in the state proceeding, but rather whether such an opportunity exists."); *see*

24   *also Gilbertson v. Albright*, 381 F.3d 965, 983 (9th Cir. 2004) ("Although Gilbertson could have

25   presented all of his constitutional claims in the state proceeding, he chose not to do so. However,

26   failure to avail himself of the opportunity does not mean that the state procedures are

27   inadequate.) (citing *Juidice v. Vail*, 430 U.S. 327, 337 (1977)).

28        The Court finds that Calvary has not shown that state procedural law barred or bars

United States District Court
Northern District of California

1 | presentation of its claims and therefore finds that the state proceeding satisfies the third *Middlesex*

2 | factor.

3 | *       *       *

4 | The Court finds that the state proceeding satisfies the three *Middlesex* factors.  The Court

5 | therefore proceeds to analyze whether the federal action would have the practical effect of

6 | enjoining the state proceedings.

7 | ### 3. Effect of Relief on Ongoing State Action

8 | The final *Younger* factor requires that "the requested relief seeks to enjoin or has the

9 | practical effect of enjoining the ongoing state judicial proceeding." *Credit One*, 2023 WL

10 | 2213469, at *3.  Under Ninth Circuit case law, "'direct interference' is not required as a

11 | precondition for *Younger* abstention." *Gilbertson*, 381 F.3d at 978.

12 | The County argues that each form of relief Calvary requests—injunctive, declaratory, and

13 | monetary—would have the practical effect of enjoining the state proceeding.  Mot. 7-9.  Calvary

14 | argues that adjudicating its claims in this Court would not enjoin the state court proceedings

15 | because it does not "ask the Court to enjoin the state court proceedings" and "the County would

16 | simply be bound by the rulings of this Court under issue and claim preclusion."  Opp'n 11.

17 | The Ninth Circuit's decision in *Herrera v. City of Palmdale*, 918 F.3d 1037 (9th Cir.

18 | 2019), is instructive.  In *Herrera*, the City of Palmdale brought a nuisance suit against a motel

19 | owner in state court.  *Herrera*, 918 F.3d at 1041.  The City sought a declaration that the motel is a

20 | public nuisance, appointment of a receiver to take possession and control of the property, and

21 | injunctive relief prohibiting the motel owner from maintaining public nuisances and requiring the

22 | motel owner to abate its violations of the law.  *Id.* at 1041-42.  The motel owner sued the city in

23 | federal court under § 1983 alleging numerous federal constitutional violations and violation of the

24 | Fair Housing Act.  *Id.* at 1041.  The motel owner sought injunctive, declaratory, and monetary

25 | relief.  *Id.*  The Ninth Circuit analyzed each form of relief in turn.  *Id.* at 1048-49.

26 | Addressing the request for injunctive relief, the court explained that "[c]ertainly, the [motel

27 | owner's] request that the Court enjoin the City from closing the motel and evicting the [owner]

28 | would enjoin directly the state action."  *Id.* at 1048.  Turning to the declaratory relief, the court

United States District Court<br>Northern District of California

United States District Court
Northern District of California

1  held that abstention was also appropriate because it would have the same practical effect as

2  injunctive relief on a pending state proceeding as a result of the preclusive effect of the federal

3  Court judgment.  *Id.*  Finally, addressing the request for monetary relief, the Court determined that

4  relief on certain of the claims would create a federal court judgment with preclusive effect over the

5  ongoing state action.  *Id.*  The court provided the example of a determination by the federal court

6  that the state action constituted an unconstitutional taking.  *Id.*  The court explained that "[p]lainly,

7  such determination that the state proceeding itself is unconstitutional would interfere with the

8  ongoing enforcement action in the same way as a declaratory judgment by the federal court."  *Id.*

9  The court concluded, therefore, that *Younger* abstention was also appropriate to these claims.  *Id.*

10  at 1048-49.

11          The Court finds that the injunctive, declaratory, and monetary relief Calvary seeks here,

12  like the relief sought in *Herrera*, would enjoin or have the practical effect of enjoining the state

13  proceeding.  As to injunctive relief, Calvary's complaint "seeks to enjoin enforcement of the

14  fines." 4th Am. Compl. ("4AC") ¶¶ 104, 109, 119, 125, 132, 136, ECF No. 167.  Calvary thus

15  asks this Court to enjoin the very relief the County seeks in state court to enforce the public health

16  orders.  *See* Opp'n 9; State Court FAC, at p.38.  Abstention is therefore appropriate because

17  granting the relief Calvary requests would "enjoin directly the state action."  *See Herrera*, 918

18  F.3d at 1048.

19          Abstention is also appropriate as to Calvary's request for declaratory relief because

20  granting the relief would have the practical effect of enjoining the state proceeding.  Calvary's

21  complaint requests a judicial declaration that the public health orders upon which the fines were

22  predicated are unconstitutional.  4AC ¶¶ 104, 109, 119, 125, 132, 136.  As Calvary's complaint

23  concedes, "[s]uch a determination will resolve the constitutionality of the fines levied against the

24  Plaintiffs."  *See id.*  Thus, a determination in this Court on the constitutionality of the public health

25  orders would preclude the state court from making such a determination and would have the

26  practical effect of enjoining it from ruling on the County's request for fines.  Abstention is

27  therefore appropriate because the declaratory relief Calvary requests would "have the same

28  practical impact as injunctive relief on [the] pending state proceeding as a result of the preclusive

1    effect of [this Court's] judgment." *See Herrera*, 918 F.3d at 1048.

2         Abstention is appropriate as to Calvary's request for nominal damages for the same reason.

3    Calvary seeks nominal damages for each alleged violation of its civil rights.  4AC ¶¶ 104, 109,

4    119, 125, 132, 136.  To grant this relief, this Court would first have to determine whether the

5    County violated Calvary's civil rights through its attempts to enforce the public health orders—

6    including through its attempts to collect fines in state court.  Such a determination "would create a

7    federal court judgment with preclusive effect over the ongoing state action."  *See Herrera*, 918

8    F.3d at 1048.  *Younger* abstention is therefore appropriate here because success by Calvary on its

9    claims for nominal damages "would invalidate the [state] enforcement proceeding."  *See id.* at

10   1048-49.

11        Neither of the two cases on which Calvary relies undermines the conclusion that *Younger*

12   abstention is appropriate here.  In the first, *AmerisourceBergen Corp. v. Roden*, the Ninth Circuit

13   held abstention was not appropriate because there was only a "potential conflict" with ongoing

14   state court proceedings.  495 F.3d 1143, 1151 (9th Cir. 2007).  There, a former employee sued his

15   employer in state court for breach of contract related to his termination.  *Id.* at 1145.  While the

16   state court proceeding was ongoing, the employer filed an action in federal court seeking a

17   judgment that the employee breached his contract with the employer by failing to repay a loan.  *Id.*

18   at 1146.  The district court abstained under *Younger*, but the Ninth Circuit reversed.  *Id.* at 1147.

19   The Ninth Circuit held that the employer's claim did not have the practical effect of enjoining the

20   state court proceedings because the employee had not disputed his obligation to repay the loan in

21   state court and the employer had not attempted to enforce its right to receive repayment in state

22   court.  *Id.* at 1151.  Thus, there was only a "potential conflict" because a decision from the federal

23   court would not dictate the outcome of any issue pending before the state court.  Here, however,

24   this Court is being asked to determine the constitutionality of the fines the County seeks to collect

25   in the state court proceeding.  *See* 4AC ¶¶ 104, 109, 119, 125, 132, 136.  The conflict here is

26   therefore not merely "potential," as a decision from this Court that the fines are unconstitutional

27   would have the effect of enjoining the state court proceeding.

28        The second case on which Calvary relies, *Montclair Parkowners Association v. City of*

United States District Court
Northern District of California

1    *Montclair*, 264 F.3d 829 (9th Cir. 2001), is even further afield.  In *Montclair*, the plaintiff brought

2    parallel affirmative litigation in federal and state court, asserting claims under the federal

3    constitution in federal court and claims under state law in state court.  *Id.* at 830-31.  The court

4    held that the "mere pendency of a parallel state court proceeding challenging [a law challenged in

5    federal court] is insufficient to trigger *Younger* abstention."  *Id.* at 831.  *Montclair* is therefore

6    distinguishable from the case before this Court, as it is not the "mere pendency" of the County's

7    enforcement action that renders abstention appropriate here.  Rather, it is the fact that Calvary asks

8    this Court to rule on the constitutionality of the very relief the County seeks to obtain in state

9    court.

10       In sum, the Court finds that Calvary's requested relief has the practical effect of enjoining

11   the ongoing state judicial proceeding.  Therefore, because the state proceedings fall within a

12   *NOPSI* category and satisfy the *Middlesex* factors, abstention under *Younger* is appropriate absent

13   an exception.

14                **4.  Younger Exceptions for Bad Faith and Irreparable Injury**

15       If state proceedings are conducted in bad faith or to harass the litigant, or other

16   extraordinary circumstances exist, the district court may exercise jurisdiction even when the

17   criteria for *Younger* abstention are met.  *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 621

18   (9th Cir. 2003) (citing *Gibson v. Berryhill*, 411 U.S. 564, 578–79 (1973), and *Partington v.*

19   *Gedan*, 961 F.2d 852, 861 (9th Cir.1992)).  "A plaintiff who seeks to head off *Younger* abstention

20   bears the burden of establishing that one of the exceptions applies."  *Diamond "D" Const. Corp.*

21   *v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citations omitted).  For the following reasons, no

22   such showing has been made here.

23                **a.  Bad Faith**

24       In rare cases, a district court may exercise jurisdiction even when *Younger* abstention

25   would otherwise be warranted.  "In the *Younger* abstention context, bad faith 'generally means

26   that a prosecution has been brought without a reasonable expectation of obtaining a valid

27   conviction.'"  *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (quoting *Kugler*

28   *v. Helfant*, 421 U.S. 117, 126 n.6 (1975)).  Such "bad faith" might arise in cases involving

                                              17

1   "repeated harassment by enforcement authorities with no intention of securing a conclusive

2   resolution" or where there is evidence of "pecuniary bias by the tribunal."  *Partington v. Gedan*,

3   961 F.2d 852, 861–62 (9th Cir. 1992).  "'[I]t is only when the state proceeding is brought with no

4   legitimate purpose that [the] state interest in correcting its own mistakes dissipates' and the 'bad

5   faith' exception to *Younger* applies."  *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 596-97

6   (9th Cir. 2022) (quoting *Diamond "D" Const.*, 282 F.3d at 200)).

7       Calvary argues that the County has acted in bad faith by filing its motion "at this stage,"

8   after the close of fact discovery, and "is attempting to forum shop to avoid an adverse decision by

9   this Court."  Opp'n 12-13.  The County responds that it brought its motion as soon as *Younger*

10  applied to all of the remaining claims and did so before the pleadings had even closed.  Reply 10.

11  The County further notes that the bad faith exception focuses on whether the state court

12  proceeding, not an action taken in federal court, is in bad faith.  *Id.*

13      The Court finds no bad faith here.  Calvary does not contend, much less offer any facts to

14  suggest, that the state proceeding was brought with no legitimate purpose.  *See Applied*

15  *Underwriters*, 37 F.4th at 596.  Calvary instead focuses on the County's filing of this motion as

16  evidence of bad faith.  Although there has never been a barrier to earlier filing of this abstention

17  motion, the Court declines to find that filing now was made in bad faith.  The Court is also not

18  convinced by Calvary's bald assertion that "[t]he County has acted with no intention of securing a

19  conclusive resolution in this case."  Opp'n 13.  Indeed, Calvary asserted in its briefing that the

20  state proceeding is nearing a hearing on summary adjudication.  *Id.* at 10.  Accordingly, the Court

21  finds no bad faith warranting its intervention in the state proceeding.

22          **b.  Other Extraordinary Circumstance**

23      Federal court intervention in a state proceeding may be warranted upon a showing of

24  "extraordinary circumstances" that present a "danger of irreparable loss [that] is both great and

25  immediate."  *See Younger*, 401 U.S. at 45.  "'[S]uch circumstances must be 'extraordinary' in the

26  sense of creating an extraordinarily pressing need for immediate federal equitable relief, not

27  merely in the sense of presenting a highly unusual factual situation.'"  *Moore v. Sims*, 442 U.S.

28  415, 433 (1979) (quoting *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)).

United States District Court
Northern District of California

18

1    Calvary asserts that it will "suffer irreparable injury if the Court does not continue to

2    exercise its jurisdiction." Opp'n 13. The County responds that Calvary has not identified an

3    irreparable injury because it has not pointed to any alleged constitutional violation that could not

4    be vindicated after the conclusion of the state court proceedings. Reply. 10-11.

5    Calvary has not demonstrated an irreparable injury that would justify this Court's

6    intervention. Calvary's asserted irreparable injury appears to be that it will have to litigate in state

7    court. This cannot be an irreparable injury within the meaning of *Younger*, as it would nullify the

8    doctrine. To the extent Calvary means to assert that its irreparable injury is that the state court

9    may grant the County's requested relief, this too is not an irreparable injury within the meaning of

10   *Younger*. *Cf. Baffert*, 332 F.3d at 321 ("Plaintiff's claim of 'extraordinary circumstances' is rooted

11   only in the claimed constitutional violation.").

12                                  *       *       *

13   In sum, the Court finds that all of the conditions required for the application of *Younger* are

14   satisfied and Calvary has not demonstrated an exception to *Younger* that would justify federal

15   court intervention in the state proceeding.

16   **B.    Waiver**

17   Calvary contends that even if the requirements for the application of *Younger* are satisfied,

18   the Court should decline to abstain because the County waived its right to raise the doctrine.

19   Specifically, Calvary argues that the County has "waived [*Younger*] abstention through untimely

20   filing." Opp'n 5. Calvary notes that the County litigated multiple motions to dismiss before

21   raising the doctrine. *Id.* at 6. The County replies that it did not waive *Younger* because it never

22   did so through an express statement. Reply 3. The County further notes that it raised *Younger*

23   early in the case in response to Calvary's motion for a temporary restraining order and now raises

24   it again, shortly after this Court's dismissal of Calvary's Bane Act claim, at the first instance at

25   which *Younger* applies to all of Calvary's claims. *Id.* at 2.

26   A state may waive its right to raise *Younger* abstention where "the State expressly

27   urge[s] . . . the District Court to proceed to an adjudication of the constitutional merits." *See*

28   *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 800 (9th Cir. 2001) (citing *Ohio*

United States District Court
Northern District of California

1    *C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 626 (1986)); *see also Ohio Bureau of*

2    *Emp. Servs. v. Hodory*, 431 U.S. 471, 480 (1977) ("If the State voluntarily chooses to submit to a

3    federal forum, principles of comity do not demand that the federal court force the case back into

4    the State's own system.").

5        The Court finds applicable the Ninth Circuit's analysis in *Columbia Basin Apartment*

6    *Association v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001).  There, the Ninth Circuit held that the

7    City of Pasco did not waive its right to raise *Younger* even though (1) the City had agreed to stay

8    state proceedings pending resolution of the federal proceedings; (2) the City had moved for, and

9    the district court had decided, summary judgment on the merits in the federal proceeding; and (3)

10   *Younger* was raised for the first time on appeal.  268 F.3d at 796, 799-800.  The Court explained

11   that "the record [did] not reflect that the City 'expressly urge[d]' the district court to adjudicate the

12   constitutional merits of this case. . . . On the contrary, the City filed its claims in state court. The

13   Appellants filed this matter in a federal forum."  *Id.* at 800.

14       The record here provides an even less compelling basis to find waiver than in *Columbia*

15   *Basin*.  Here, the County raised *Younger* in a motion to dismiss less than a week after the Court

16   dismissed Plaintiffs' Bane Act claim.  The County justifies this timing by arguing that this is the

17   "first instance of this litigation during which *all* of Plaintiffs' claims unquestionably require

18   abstention under *Younger*."  Reply 3.  At the time, the County had not filed a summary judgment

19   motion.  On this record, the Court does not find that the County has waived the right to invoke the

20   *Younger* doctrine.

21       None of the cases on which Calvary relies compels a different outcome.  In two of the

22   cases Plaintiffs rely upon, the state voluntarily chose to submit to the federal forum and therefore

23   expressly waived their right to invoke *Younger*.  *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S.

24   471, 479 (1977) ("[A]ppellants have not argued that Younger requires a remand with directions to

25   the District Court to abstain, and at oral argument they resisted the suggestion of such a remand.");

26   *Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Loc. 54*, 468 U.S. 491, 500 n.9 (1984) (no

27   abstention where state's attorney general "submit[ted] to the jurisdiction of [the] Court in order to

28   obtain a more expeditious and final resolution of the merits of the constitutional issue").  In

United States District Court
Northern District of California

20

another, the Ninth Circuit held that the state court proceedings were not "ongoing" because the state trial court had stayed its proceedings pending resolution of the federal proceedings. *Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102, 1106-07 (9th Cir. 1988). In another, the Seventh Circuit held that non-state parties who appealed an order preliminarily enjoining a state commission could not invoke *Younger* on behalf of the state commission because the state commission did not itself appeal. *Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995, 997 (7th Cir. 2000).

Calvary's reliance on *Adibi v. California State Board of Pharmacy*, 461 F. Supp. 2d 1103 (N.D. Cal. 2006), is also misplaced. There, the court held on summary judgment that abstention was warranted under *Younger* and noted "the primacy of *Younger* abstention even when belatedly raised." *Adibi*, 461 F. Supp. 2d at 1109. Although the court discussed a court's potential discretion when abstention comes up late in the litigation, it noted Ninth Circuit authority stating that "[i]n addressing *Younger* abstention issues, district courts . . . may not exercise jurisdiction when [the specific legal] standards are met; there is no discretion vested in the district courts to do otherwise." *Id.* at 1111 & n.3 (citing *Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001)). Consistent with Ninth Circuit precedent, the Court finds that it does not have discretion to abstain where, as here, the requirements for *Younger* abstention are met. *See Green*, 255 F.3d at 1093; *Canatella*, 404 F.3d at 1113; *see also Columbia Basin*, 268 F.3d at 799 ("When the case is one in which the *Younger* doctrine applies, the case must be dismissed." (quoting *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000)).

Even if abstention were discretionary, the Court would abstain. In *Adibi*, the Court stated that "[t]o the extent courts have some discretion in deciding whether to abstain when the issue of abstention comes up late in the litigation, courts generally consider [1] competing 'fairness considerations,' [2] whether abstention would result in 'duplicious [sic] litigation and waste of resources,' and [3] whether belated abstention would serve the 'purposes that animate the abstention principle.'" 461 F. Supp. 2d at 1111-12 (citations omitted). Calvary contends that "[f]airness requires this case to continue" because abstaining would "allow[] the County to avoid an adverse judgment." Opp. 7. The Court finds no merit in the bald assertion that either party has

a greater or lesser chance of an "adverse judgment" in this Court or the state court. Moreover, the other two considerations highlighted in *Adibi* strongly favor abstention. First, the state proceeding remains ongoing, and thus continued action in this Court would result in wasted resources by allowing these matters to proceed in parallel. Second, *Younger* abstention is animated by primarily "the concern for comity in our federal system." *Gilbertson*, 381 F.3d at 970. Abstention here respects this concern, as the state court proceeding remains ongoing and Plaintiffs have not identified any bar to having their rights vindicated in that forum. The Court finds therefore that even if it had discretion to decline to abstain, it would not exercise that discretion.

Finally, *Hill v. Blind Industries and Services of Maryland*, 179 F.3d 754 (9th Cir. 1999), does not undermine the Court's conclusion. There, the Ninth Circuit held that a party waived Eleventh Amendment immunity—not *Younger* abstention—by participating in extensive pretrial activities and waiting until the first day of trial before objecting to the federal court's jurisdiction. *Hill*, 179 F.3d at 756. The court was concerned that the party had sought to hedge its bets by waiting until the first day of trial. *Id.* at 756. The court noted that the trial court properly took the issue under advisement, which gave the party the opportunity to withdraw the motion if it prevailed at trial. *Id.* That issue is not present here. The County filed its motion five days after the Court dismissed Plaintiffs' Bane Act claim, before the pleadings were set and before the Court had ruled on any motion for summary judgment, not during, or even of the eve of trial. Although the Court agrees with Calvary that the County could have raised this issue earlier, it does not perceive that the County is raising the issue at this stage as a tactic to hedge its bets.

Accordingly, the Court finds that the County has not waived its right to invoke *Younger* abstention. As the Court has found that all of the requirements for *Younger* abstention have been met, the Court turns to the impact of *Younger* abstention on the present case.

## C.    Application of *Younger* to the Instant Case

The Ninth Circuit has explained that the application of *Younger* abstention depends on the nature of a plaintiff's claims. Specifically, "when a court abstains under *Younger*, claims for injunctive and declaratory relief are typically dismissed." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1042 (9th Cir. 2019). However, the Ninth Circuit "has also recognized that, when a district

United States District Court
Northern District of California

court abstains from considering a *damages* claim under *Younger*, it must *stay*—rather than dismiss—the damages action until state proceedings conclude." *Id.* (emphasis in original).

Here, Calvary seeks injunctive relief, declaratory relief, and nominal damages. *See* 4AC ¶¶ 104, 109, 119, 125, 132, 136. Accordingly, Calvary's claims for injunctive and declaratory relief are DISMISSED WITHOUT PREJUDICE to pursue the claims in the state court proceeding, and Calvary's claims for nominal damages are STAYED pending resolution of the state court proceeding.

## V.   ORDER

For the foregoing reasons, it is hereby ordered that Calvary's claims are:

1. DISMISSED WITHOUT PREJUDICE to the extent they seek injunctive relief;

2. DISMISSED WITHOUT PREJUDICE to the extent they seek declaratory relief; and

3. STAYED pending resolution of the state court proceeding to the extent they seek monetary relief.

The Parties shall file a joint status report within 10 days of the conclusion of the state court proceeding.


Dated:  March 10, 2023

_____
BETH LABSON FREEMAN
United States District Judge